IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
JUL 10 2013
7-10-13
THOMAS G BRUTON
CLERK, U S DISTRICT COURT

ANNABEL K. MELONGO,

  Plaintiff,

  V.

ROBERT PODLASEK Assistant State Attorney,
JULIE GUNNIGLE Assistant State Attorney,
KATE O'HARA (STAR NO. 423) Cook County Investigator,
JAMES DILLON (STAR NO. 1068) Cook County Sherriff,
ANTONIO RUBINO (STAR NO. 5043) Cook County Sherriff Investigator, RICH LESIAK (STAR NO. 5000) Cook
County Sherriff Investigator, UNKNOWN COOK COUNTY
SHERIFF OFFICERS, Dr. MATTHEW S. MARKOS Director
Forensic Clinical Services, MARILYN FILISHIO Official
Court Reporters administrator, PAMELA TAYLOR Official
Court Reporter Assistant Administrator, LAUREL LAUDIN
Official Court Reporter, KYLE FRENCH Assistant Attorney
General, AMBER HAQQANI Computer Forensic Expert,
LISA MADIGAN Illinois Attorney General,
ANITA ALVAREZ Cook County State Attorney,
TOM DART Cook County Sherriff, COOK COUNTY,

  Defendants.

1:13-cv-04924
Judge John F. Grady
Magistrate Judge Sheila M. Finnegan

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Annabel K. Melongo, Pro Se, complains of defendants ROBERT PODLASEK Assistant State Attorney, JULIE GUNNIGLE Assistant State Attorney, KATE O'HARA (STAR NO. 423) Cook County Investigator, SERGEANT JAMES DILLON (STAR NO. 1068) Cook County Sherriff, ANTONIO RUBINO (STAR NO. 5043) Cook County Sherriff Investigator, RICH LESIAK (STAR NO. 5000) Cook County Sherriff Investigator, UNKNOWN COOK COUNTY SHERIFF OFFICERS, Dr. MATTHEW S. MARKOS Director Forensic Clinical Services, MARILYN A. FILISHIO Official Court Reporters Administrator, PAMELA TAYLOR Official Court Reporter Assistant Administrator, LAUREL LAUDIN Official Court Reporter, KYLE FRENCH Assistant Attorney General, AMBER HAQQANI Computer Forensic Expert, LISA MADIGAN Illinois Attorney General, ANITA ALVAREZ Cook County State Attorney, TOM J. DART Cook County Sherriff, COOK COUNTY as follows:

1

## INTRODUCTION

1. In January of 2010 and continuing thereafter, the above Defendants engaged in conspiracy to cause Plaintiff Annabel K. Melongo to be charged of six counts of eavesdropping and to spend more than 20 months of unlawful incarceration at the Cook County Jail.
2. Defendants' conspiracy included a willful disregard of a statutory exemption, 720 ILCS 5/14-3(i), and the conscious use of a statute, 720 ILCS 5/14-2, lacking a criminal mental state.
3. As a direct consequence to Defendants' actions, Plaintiff endured extraordinary hardships and underwent incalculable loss, pain and humiliation for which she's now seeking redress.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution as well as deprivation of rights under state law.
5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

6. Plaintiff ANNABEL K. MELONGO, 40, is from Cameroon, West Africa, and came to the United States on a student visa. She's a resident of Cook County, Illinois.
7. At all times relevant hereto, Defendants Robert Podlasek and Julie Gunnigle were attorneys licensed to practice law in the State of Illinois and duly appointed Cook County Assistant State's Attorneys.
8. At all times relevant hereto, Kate O'Hara (Star No. 43) was an investigator employed by Cook County State Attorney office.
9. At all times relevant hereto, Sgt. James Dillon (Star No. 1068), Investigator Antonio Rubino (Star No. 5043), Investigator Rich Lesiak (Star No. 5000) and the unknown Cook County sheriff officers were duly appointed members of the Cook County Sherriff Police Department.
10. At all times relevant hereto, Mrs. Pamela Taylor and Mrs. Laurel Laudin were Official Court Reporters employed by the Official Court Reporters and paid by the State Of Illinois.
11. At all times relevant hereto, Mr. Kyle French was an attorney licensed to practice law in the State of Illinois and a duly appointed Assistant Illinois Attorney General.
12. At all times relevant hereto, Mrs. Amber Haqqani was a computer forensic expert employed by the Illinois Attorney General.

13. At all times relevant hereto, Dr. Matthew S. Markos was the director of Forensic Clinical Services which provide comprehensive and diagnostic clinical services to the court and related agencies under the court's jurisdiction. The agency employs psychiatric, psychological and social service methods in the delivery of clinical services and submits clinical opinions and recommendations to the court.

14. Each of the above defendants (paragraphs 7-13) is sued in his individual capacity.

15. At all times relevant hereto, Mrs. Marilyn A. Filishio was the administrator of the Official Court Reporters with duties to oversee the recording of certain court proceedings verbatim either through the taking of stenographic notes or by an electronic recording system approved by the Illinois Supreme Court. In her capacity, she ensures that all transcripts prepared as the official record of court proceedings are prepared pursuant to applicable Illinois Supreme Court rules. This suit is brought against Mrs. Filishio in her individual and official capacity.

16. At all times relevant hereto, Defendant Lisa Madigan was the Attorney General of the State of Illinois. In that capacity, she "consult[s] with and advise[s] the several state's attorneys in matters relating to the duties of their office; and when, in [her] judgment, the interest of the people of the state requires it, [ s ]he shall attend the trial of any party accused of crime, and assist in the prosecution." 15 ILCS 205/4. This suit is brought against Attorney General Madigan in her individual and official capacity.

17. At all times relevant hereto, Defendant Anita Alvarez was the State Attorney responsible for enforcing criminal laws within Cook County. This suit is brought against State Attorney Alvarez in her individual and official capacity.

18. At all times relevant hereto, Defendant Tom J. Dart was the Cook County Sheriff responsible for patrolling unincorporated areas of Cook County as well as assisting suburban police departments with police operations including, but not limited to, detective and evidence services, narcotics interdiction, bomb detection and disposal, vice operations, gang crimes investigation, hostage, barricade and terrorist incidents. This suit is brought against Cook County Sheriff Dart in his individual and official capacity.

19. Defendant Cook County is a County in the state of Illinois which employs or employed Mr. Robert Podlasek, Mrs. Julie Gunnigle, Mrs. Kate O'Hare, Dr. Matthew Markos and Mrs. Anita Alvarez.

## ALLEGATIONS OF FACT

### A. FACTS

20. On October 31, 2006, Plaintiff was charged with three counts of Computer tampering alleging remotely deleting files, mostly financial, belonging to Save-A-Life Foundation Inc., a now defunct non-for-profit organization with ties to the Illinois Attorney General and the Cook County State Attorney Office.

21. The investigation that led to these charges was conducted by Mr. Kyle French of the Illinois Attorney General Office, Mr. Randy Roberts, Executive Assistant to Cook County State Attorney and Mr. William Martin, detective at the Schiller Park Police.

22. On November 15, 2006, upon being informed of the charges against her, Plaintiff surrendered to a judge in the Rolling Meadows Courthouse. She was later released on an I-Bond.

23. On January 10, 2007, the charges against Plaintiff were dismissed for lack of evidence.

24. On or about July of 2008, when Plaintiff ordered the January 10, 2007, transcript, to her surprise, not only the date of the hearing, but its content were tampered with. The transcript stated that the dismissal was no longer due to lack of evidence but rather, due to a superseded indictment not corroborated by any court record. When Plaintiff called the court reporter, Mrs. Annemary Tabor, to inquire, the court reporter hung up after telling Plaintiff that the transcript was a faithful representation of the proceedings.

25. On January 17, 2007, Plaintiff was indicted in 2600 California Ave., Chicago, IL, on the same computer tampering charges and her Rolling Meadows I-Bond was transferred.

26. On May 28, 2008, a new indictment on the same charges superseded the January 2007 indictment. The arraignment's date was set for June 18th, 2008.

27. Upon realizing that she wasn't arraigned on June 18th, 2008, Plaintiff ordered various court records to confirm this. Indeed, the docket, the judge's half sheets and notes and the court call sheet showed no arraignment.

28. On December 4th, 2010, when Plaintiff received the arraignment's transcript from Mrs. Laurel Laudin, the transcript showed an arraignment. Plaintiff as a result, called Mrs. Laurel Laudin. Mrs. Laudin told Plaintiff that she was properly arraigned. When Plaintiff threatened to file a complaint, Mrs. Laudin hung up.

29. On December 10, 2009, Mrs. Pamela Taylor, an assistant administrator at the Official Court Reporters and supposedly Mrs. Laudin's supervisor, called Plaintiff and forbade her to ever call Mrs. Laudin. Irritated, Plaintiff hung up.

30. Minutes later, Mrs. Pamela Taylor called back Plaintiff and left a voicemail wherein Mrs. Taylor reiterated that Mrs. Laudin shouldn't be contacted. Mrs. Taylor made herself available for any discussion related to the tampered court transcript.

31. Later that day, using the phone number prescribed in the voicemail, Plaintiff called Mrs. Taylor. Unconstrained, Mrs. Taylor answered Plaintiff's questions and discussed the facts surrounding the tampered court transcript. Plaintiff recorded that conversation.

32. On December 15, 2009, and December 16, 2009, subsequent phone conversations on the tampered court transcript between Plaintiff and Mrs. Taylor continued. Plaintiff recorded said conversations as well.

33. On December 17th, 2009, Plaintiff transcribed and posted the recordings on her website, the *illinoiscorruption.net*. Additionally, she added a note on that website stating that her actions were protected by 720 ILCS 5/14-3(i), an exemption permitting recording to prove a crime. The *illinoiscorruption.net* website was a chronological description of Plaintiff's computer tampering case[1].

34. On December 18, 2009, using the Internet's links of the recorded conversations on the *illinoiscorruption.net* website, Plaintiff contacted an FBI agent.

35. On January 8th, 2010, while *Pro Se*, Plaintiff filed an amended motion to dismiss the charges of computer tampering. The grounds of her motion were perjured statements of the state's witness, Detective William Martin of Schiller Park Police, and prosecutorial misconduct of the state prosecutor, Mr. Robert Podlasek.

36. On or about January 15, 2010, Amber Haqqani, a computer forensic expert working under the direction of Mr. Kyle French, captured the *illinoiscorruption.net* website. Subsequent captures were used as evidence at Plaintiff's eavesdropping trial.

37. On or about March 2010, and continuing thereafter, Mrs. Kate O'Hara, Mrs. Julie Gunnigle and Mr. Robert Podlasek opened an investigation and issued subpoenas to GoDaddy, Yahoo and financial institutions to find out the owner and the email activities of the *illinoiscorruption.net* website.

38. On March 3rd, 2010, Plaintiff was scheduled to argue her motion to dismiss the computer tampering charges. However, Mr. Kyle French, Mr. Robert Podlasek and Mrs. Julie Gunnigle moved to request a psychological evaluation ("BCX") on Plaintiff to determine her fitness to stand trial and to represent herself.

39. On April 13, 2010, at around 11.00am, Plaintiff submitted to the BCX and Dr. Markos posed as the psychological examiner. During the examination session, unknown Cook County sheriff officers

---

[1] The *illinoiscorruption.net* website has since evolved into portraying events of the eavesdropping case, its appeal at the Illinois Supreme Court and the present Civil Right case. At the time of Plaintiff's arrest on the eavesdropping charges, the website averaged 5,000 hits. It was used or referenced by many media outlets.

knocked at the door and Dr. Markos left the room for a short period. When he came back, the interrogation shifted from a psychological angle to the *illinoiscorruption.net* website. Dr. Markos wanted to know its owner, the author of the posts and the meaning of the word "SURPRISE" on the March 3rd, 2010, entry of the website. Plaintiff avoided the self-incriminatory questions the best she could. Afterward, Dr. Markos ended the session. As Plaintiff was stepping out of her psychological evaluation, she was arrested by unknown Cook County Sherriff Officers. Her Miranda Rights were never read and the charges against Plaintiff never stated. Plaintiff, in handcuffs, was immediately taken to Cook County Central Intelligence Unit ("CIU") for further processing.

40. Once at CIU, Sgt. James Dillon, Investigator Rich Lesiak and Investigator Antonio Rubino also tried to extract self-incriminatory statements from Plaintiff regarding the *illinoiscorruption.net* website. However, Plaintiff wouldn't answer any question and referred all inquiries to her lawyer, Mr. Nick Albukerk. Two U.S Marshalls also came and asked the same self-incriminatory questions. Plaintiff, again, wouldn't answer and referred the U.S. Marshalls to her lawyer. Later that day, she finally learned that she was charged of eavesdropping. After being processed, she was transferred to Maywood Jail where she spent the night.

41. On April 13th, 2010, Mrs. Pamela Taylor filed a criminal complaint against Plaintiff alleging violation of the Illinois Eavesdropping statute. Worth noting, the complaint was never signed or sworn.

42. On April 13th, 2010, Investigator Kate O'Hara successfully obtained a search warrant and an arrest warrant for the charges of eavesdropping against Plaintiff. Judge James Linn signed both warrants.

43. On April 14, 2010, Plaintiff initial bond was set to $30,000 at the bond court.

44. On April 20th, 2010, Judge Mary Brosnahan, upon Mr. Robert Podlasek and Julie Gunnigle request, set Plaintiff's additional bond to $500,000D for violation of I-Bond conditions.

45. On April 27th, 2010, Plaintiff was indicted with three counts of recording phone conversations with Mrs. Pamela Taylor, 720 ILCS 5/14-2(a)(1), and three counts of publishing said conversations on the *illinoiscorruption.net* website, 720 ILCS 5/14-2(a)(3). At the indictment, Mrs. Julie Gunnigle was the state attorney and Mrs. Kate O'Hara was the state's witness.

46. On May 5th, 2010, Judge Brosnahan, upon Plaintiff's motion, reduced the bond to $300,000D. Plaintiff's final bond became $330,000D. Not being able to post it, Plaintiff remained incarcerated at the Cook County Jail for more than a year and half.

47. On July 26th, 2010, Plaintiff, through her lawyer, was scheduled to argue her motion to dismiss the computer tampering charges. However, Mr. Podlasek and Mrs. Julie Gunnigle switched election to the Eavesdropping charges.

48. On December 13th, 2010, Plaintiff's first motion to dismiss the eavesdropping charges was denied by Judge Brosnahan. The basis of the motion was the statutory exemption under 720 ILCS 5/14-3(i).

49. On January 12th, 2011, Plaintiff's trial on the Eavesdropping charges commenced.

50. On January 13, 2011, Mrs. Pamela Taylor, testifying for the state, stated that she willingly participated in the conversations. Mrs. Laudin, also testifying for the state, stated that she deleted the audiotape of the arraignment's hearing to preserve memory in her computer. The FBI agent, Dana DePooter, testifying for the defense, acknowledged receiving an email complaint from Plaintiff regarding the tampered court transcript.

51. On January 14th, 2011, Judge Brosnahan, with a jury hung at 7-5, declared a mistrial.

52. On April 11th, 2011, Judge Steven J. Goebel replaced Judge Mary Brosnahan by order of Chief Judge Timothy C. Evans.

53. On or about August of 2011, Plaintiff fired her lawyer, Mr. Nick Albukerk, and became, again, *Pro Se*.

54. On August 31st, 2011, Plaintiff, with the help of her friend, filed a motion for standby counsel or electronic monitoring given that the maximum time allowed for her incarceration was up on October 14th, 2011.

55. On September 14th, 2011, Mr. Robert Podlasek requested that Plaintiff's eavesdropping legal file[2] be handed to him in order to redact social security and credit card numbers. Judge Joyce, presiding for Judge Goebel, upon Plaintiff's objection, refused to make such a ruling.

56. On September 15th, 2011, Judge David K. Frankland of Sangamon County declared the Eavesdropping law unconstitutional in *People v. Allison*, No. 2009-CF-50.

57. On September 20th, 2011, Mr. Robert Podlasek renewed his request in front of Judge Goebel to acquire Plaintiff's eavesdropping legal file. Plaintiff objected anew but Judge Goebel overruled and handed Plaintiff's eavesdropping file to Mr. Podlasek with instructions that third parties social security and credit card numbers be redacted. However, Mr. Podlasek used the opportunity to remove documents from Plaintiff's eavesdropping file and ignored Judge Goebel's orders. For instance, Mr. Podlasek removed police reports and various discovery documents pertaining to the eavesdropping case and left credit card and social security numbers un-redacted.

58. On September 20th, 2011, and continuing thereafter, Judge Goebel's signed various court orders allowing Plaintiff to make phone calls to her family oversea. The orders were ignored by Cook County Jail's administration, although the calls were at the expenses of Plaintiff.

---

[2] Mr. Podlasek requested both the computer tampering and eavesdropping legal files. For the sake of this case, Plaintiff limits Mr. Podlasek's request to that of the eavesdropping file.

59. On October 5th, 2011, during argument on Plaintiff's electronic monitoring motion, Plaintiff told Judge Goebel that any incarceration at the Cook County Jail past October 14th, 2010, would be unconstitutional.

60. On October 13th, 2011, Judge Goebel granted Plaintiff's motion for electronic monitoring and restricted Plaintiff to movements pre-approved by either the court or the electronic monitoring program.

61. On October 20th, 2011, Plaintiff was released from Cook County Jail and transferred to the electronic monitoring program. This occurred a week after the lawful detention had expired.

62. On November 10th, 2011, Mr. Robert Podlasek motioned the court to revoke Plaintiff's bond stating that Plaintiff made an unauthorized movement to her former lawyer and stole her own legal file while at that lawyer's office. Plaintiff requested leave to reply. Although said request was granted and Plaintiff was given the opportunity to respond within four days, Mr. Podlasek, dissatisfied by the Judge's decision, called the electronic monitoring program and requested that Plaintiff be put in custody right away. Unknown Cook County officers arrested Plaintiff without a judge's order or probable cause. Plaintiff was sent back to jail.

63. On November 14th, 2011, Judge Goebel reinstated Plaintiff's bond after reviewing all evidence. That same day, while still in jail, Plaintiff filed her already typed motion to dismiss the eavesdropping charges on grounds of unconstitutionality.

64. On November 23rd, 2011, Plaintiff was released from the Cook County jail and transferred back to the electronic monitoring program. Plaintiff spent more than 6 months on house arrest. She was released from the electronic monitoring program on June 20th, 2012.

65. On November 30th, 2011, Plaintiff filed an amended motion to dismiss the eavesdropping charges against her.

66. On February 14th, 2012, Mr. Robert Podlasek filed his response to Plaintiff's amended motion to dismiss.

67. On March 2nd, 2012, Judge Stanley Sacks of Cook County declared the Eavesdropping statute unconstitutional in *People v. Drew*, 10CR00046.

68. On March 6th, 2012, Mr. Robert Podlasek motioned the court to have Plaintiff's bond revoked alleging that Plaintiff forged Dorothy Brown's signature and issued unauthorized subpoenas. Judge Goebel put the case on recall and asked Plaintiff to present evidence against the forgery charges and to bring the responses to the unauthorized subpoenas. After hearing both arguments, Judge Goebel found no forgery and confiscated the subpoenas' responses tendered by Plaintiff.

69. On March 19th, 2012, Plaintiff argued her amended motion to dismiss and to declare the Eavesdropping statute unconstitutional.

70. On May 8th, 2012, the United States Court Of Appeals for the Seventh Circuit in *ACLU v. Alvarez*, Nr. 11-1286, ruled that the Illinois Eavesdropping statute violates substantive First Amendment and Due Process Rights.

71. On June 19th, 2012, Judge Goebel heard arguments on the new *ACLU v. Alvarez*'s ruling. After the arguments were over, Judge Goebel dismissed Plaintiff's eavesdropping case but omitted to do so according to Illinois Supreme Court Rule 18. This rule prescribes how an Illinois Court ought to declare a statute unconstitutional.

72. On June 25th, 2012, Plaintiff motioned up her case to request an amended order in compliance with Illinois Supreme Court Rule 18. Judge Goebel granted Plaintiff's motion.

73. On July 26th, 2012, Judge Goebel officially dismissed Plaintiff's eavsdropping charges in a manner indicative of her innocence.

### B. The Malicious Prosecution

74. Mrs. Laurel Laudin deleted the audio-tape of the proceedings which was crucial evidence in Plaintiff's criminal case. Moreover, although Plaintiff made serious allegations of court transcripts being tampered at the Official Court Reporters and there was tangible evidence to that effect, neither Mrs. Lisa Madigan nor Mrs. Anita Alvarez nor Mrs. Marilyn Filishio opened an investigation into the matter. Instead Mrs. Madigan investigated Plaintiff's eavesdropping case as early as January 2010 and Mrs. Alvarez's investigation followed in March of 2010; which investigations led to the unlawful arrest, incarceration and prosecution of Plaintiff.

75. There's a huge discrepancy between Cook County Sheriff Police's documents and those presented by the Cook County State Attorney. Apparently, Plaintiff was arrested because she supposedly threatened a public official using the word "SURPRISE" on her website. The psychological evaluation was less about Plaintiff's mental state but rather getting self-incriminatory statements using the influence of Dr. Markos. When that failed, Sgt. James Dillon, Investigators Antonio Rubino and Rich Lesiak and two U.S. Marshalls continued the same line of questioning when Plaintiff was transferred to CIU. It's only when they couldn't get the desired answers that the charges were switched to eavesdropping. Mrs. Pamela Taylor helped in this by filing a criminal complaint that was never signed or sworn.

9

76. After Plaintiff fired her lawyer, she needed to call her family to hire a new lawyer. However, though the Cook County Jail once granted a similar request, the jail administration completely ignored Judge Goebel's orders to let Plaintiff make oversea phone calls.

77. Mr. Robert Podlasek violated Plaintiff's work-product and attorney-client privileges when he acquired Plaintiff's eavesdropping legal file on the basis of a Supreme Court Rule that never existed. Mr. Podlasek also violated Plaintiff's Due Process Rights when he removed and redacted information he wasn't supposed to in Plaintiff's eavesdropping file. Finally, Mr. Podlasek unlawfully asked Cook County Sherriff to arrest Plaintiff in November of 2011 although he didn't have probable cause and there was no pending arrest warrant against Plaintiff.

78. On September 15th, 2011, Judge David K. Frankland of Sangamon County declared the Eavesdropping law unconstitutional. On March 2nd, 2012, Judge Stanley Sacks of Cook County made a similar ruling. On May 8th, 2012, the Seventh District Court of Appeals ruled that the Eavesdropping law violated substantive First and Due Process Rights. However, neither Mrs. Lisa Madigan nor Mrs. Anita Alvarez nor Mr. Robert Podlasek moved to dismiss Plaintiff's eavesdropping case based on these rulings.

79. There have been numerous citing of employees at City Hall and at Chicago Tribune who did what Plaintiff was accused of, namely, recording phone conversations without the consent of all parties. However, neither Mrs. Madigan nor Mrs. Alvarez nor Mr. Dart nor Mr. Podlasek ever opened an investigation into the allegations, let alone prosecute City Hall's employees or Tribune's Reporters.

### C. Plaintiff's Damages

80. Plaintiff has suffered enormous injury as a direct and proximate result of the misconduct of Defendants alleged in the preceding paragraphs. Plaintiff spent more than 20 months in jail and about 6 months on house arrest for a crime of which she was completely innocent. Following her wrongful arrest, incarceration and house confinement, Plaintiff was separated from her family and friends, lost all property and important academic and legal documents.

81. Plaintiff was wrongly condemned by individuals she came in contact with, which caused Plaintiff great anguish, shame and humiliation. Plaintiff's incarceration was lonely and arduous. Given the unfamiliar settings, she suffered daily rejections, humiliations and indignities.

82. In addition to these emotions, Plaintiff was deprived of the opportunity to further pursue her education and to live as a free citizen. Plaintiff also has an arrest record on the charges.
83. Following her release from jail, Plaintiff has struggled to forget the humiliations and hardships while in custody. She suffers constantly from the feeling that life's opportunities have been stolen from her and has constant nightmares of being arrested and going back to jail on bogus charges.
84. Plaintiff must also live with lasting psychological damage caused by Defendants, who used a variety of traumatizing and coercive tactics to extract confessions from her in an attempt to use her words and website as self-incriminatory statements.

### D. Policies and Practices

85. Defendants violated Plaintiff's Constitutional rights and otherwise injured her as a proximate of their adherence to the following policies and practices:

   a. The Illinois Attorney General, Mrs. Lisa Madigan, The Cook County State Prosecutor, Mrs. Anita Alvarez, the Cook County Sherriff, Mr. Tom J. Dart, showed a deliberate indifference to training their personnel in the light of the Eavesdropping statute; specifically its lack of a criminal mental state and its statutory exemption under 720 ILCS 5/14-3(i) didn't stop Mr. Dart's employees from arresting and incarcerating eavesdropping detainees, didn't stop Mrs. Alvarez's prosecutors from prosecuting at least three individuals and didn't stop Mrs. Madigan's employees from assisting and investigating eavesdropping cases.

   b. That deficiency in training caused the Plaintiff's unlawful arrest, incarceration and prosecution. Furthermore, the unknown Cook County Sheriff Officers also showed training's deficient in November of 2011, when they arrested Plaintiff without probable cause and an arrest warrant.

   c. Moreover, Mrs. Madigan and Mrs. Alvarez demonstrated a tacit acceptance and/or authorization of this unconstitutional statute. Mrs. Madigan assisted the state prosecutors in *People v. Melongo* and in *People v. Allison*. Additionally, although the *Allison*'s Court declared the eavesdropping statute unconstitutional on First and Fourteenth Amendments grounds, neither Mrs. Madigan nor Mrs. Alvarez moved to dismiss the still pending *People v. Drew* and *People v. Melongo*'s cases.

   d. The Official Court Reporters' policy and practice permitting court reporters to delete audio-tape of court proceedings even if such tapings constitute crucial evidence in determining the accuracy of transcripts greatly injured Plaintiff.

11

  e. Plaintiff's injury amounted to present a defense lacking the crucial evidence that was the audio-tape of the challenged transcript. Moreover, the lack of that crucial evidence caused Plaintiff's unlawful arrest, incarceration and prosecution.

  f. By enforcing such a policy and practice, Mrs. Filishio tacitly authorized violating Plaintiff's Due Process Rights.

86. The above-described widespread practices and policies, so well-settled as to constitute *de facto* policies at the Illinois Attorney General Office, at the Official Court Reporters, at the Cook County Sheriff and at the Cook County State Attorney Office during the time period at issue, existed and thrived because Cook county, Cook County Sheriff, the Official Court Reporters and the Illinois Attorney General failed to address them.

## COUNT I
## 42 U.S.C. § 1983 – Due Process, Fourteenth Amendment

87. Plaintiff repeats and re-alleges paragraphs 1 through 86 as if fully set forth herein.

88. As described more fully above, all of the individual Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to a fair trial.

89. In the manner described more fully above, Defendants used a statute that lacks a criminal mental state, deliberately ignored a statutory exemption, fabricated false reports, deleted evidence and violated Plaintiff's work-product and attorney-client privileges, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent these misconducts, the prosecution of Plaintiff could not and would not have been pursued.

90. As a result of this deprivation of her constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

91. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

92. The misconducts described in this Count was undertaken pursuant to the policies and practices of the Illinois Attorney General prosecutors and forensic experts, Cook County Sherriff Officers and investigators, Cook County State Attorney prosecutors and investigators, Official Court Reporters and was tacitly ratified by policy-makers for Cook County, Cook County Sherriff, the Official Court Reporters and the Illinois Attorney General with final policymaking authorities.

## COUNT II
## 42 U.S.C. § 1983 – Conspiracy

93. Plaintiff repeats and re-alleges paragraphs 1 through 92 as if fully set forth herein.

94. The individual Defendants reached an agreement amongst themselves to falsely charge Plaintiff with eavesdropping and to deprive Plaintiff of her Constitutional rights, as described above.

95. Each individual Defendant conspired, and continues to conspire, to use a statute lacking a criminal mental state and to ignore a statutory exemption which, if considered, would have led to Plaintiff's more timely dismissal of the false criminal charges as described above.

96. In this manner, the Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

97. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

98. As a direct and proximate result of Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

99. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

100. The misconducts described in this Count was undertaken pursuant to the policies and practices of the Illinois Attorney General prosecutors and forensic experts, Cook County Sherriff Officers and investigators, Cook County State Attorney prosecutors and investigators, Official Court Reporters and was tacitly ratified by policy-makers for Cook County, Cook County Sherriff, the Official Court Reporters and the Illinois Attorney General with final policymaking authorities.

## COUNT III
## 42 U.S.C. § 1983 – Equal Protection, Fourteenth Amendment

101. Plaintiff repeats and re-alleges paragraphs 1 through 100 as if fully set forth herein.

102. As described more fully above, City Hall's employees and Chicago Tribune's reporters recorded phone conversations without the consent of all parties. However neither the Illinois Attorney General, nor the Cook County State Attorney, nor the County Sherriff investigated, arrested, incarcerated or prosecuted said individuals.

103. Defendants Lisa Madigan, Anita Alvarez, Robert Podlasek, Julie Gunnigle, Investigator Kate O'Hara, Tom J. Dart, Sgt. James Dillon, Investigators Antonio Rubino and Rich Lesiak as well as the

unknown Cook County Sherriff singled out Plaintiff and unlawfully arrested, incarcerated and prosecuted Plaintiff whereby violating Plaintiff's Equal protection Rights based on deep-seated animosity and vindictiveness stemming from the computer tampering case; in which Plaintiff turned down three plea agreements, had a pending motion to dismiss based on unlawful acts of Mr. Kyle French and Mr. Podlasek and created a highly-visited website, *illinoiscorruption.net*, depicting her wrongful prosecution.

104. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

105. As a direct and proximate result of these Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT IV
### 42 U.S.C. § 1983 – Unreasonable Seizure, Fourth Amendment

106. Plaintiff repeats and re-alleges paragraphs 1 through 105 as if fully set forth herein.

107. As described more fully above, in April of 2010, Sgt. James Dillon, Investigators Antonio Rubino, Rich Lesiak, Kate O'Hara and the unknown Cook County Sherriff officers unreasonably seized Plaintiff in violation of the Fourth Amendment of the United States Constitution. In November of 2011, unknown Cook County Sherriff Officers, following Mr. Podlasek's orders also unreasonable seized Plaintiff in violation of the Fourth Amendment of the United States Constitution.

108. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

109. As a direct and proximate result of these Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT V
### 42 U.S.C. § 1983 – False Arrest And Imprisonment, Fourth Amendment

110. Plaintiff repeats and re-alleges paragraphs 1 through 109 as if fully set forth herein.

111. As described more fully above, Mr. Robert Podlasek, Mrs. Julie Gunnigle, Mrs. Kate O'Hara, Mr. Tom Dart, Sgt. James Dillon, Investigators Antonio Rubino, Rich Lesiak, and the unknown Cook County Sherriff officers arrested and caused the confinement of Plaintiff without probable cause in violation of the Fourth Amendment of the United States Constitution.

112. As described more fully above, Plaintiff stayed at the Cook County Jail for more than 20 months, remained an additional week in jail past her maximum lawful detention, was re-incarcerated for about 2

weeks in November of 2011 following an arrest without probable cause and warrant and was confined for more than six months at her house under electronic monitoring.

113. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights. The above Defendants acted with the intention to confine Plaintiff within fixed boundaries, the above Defendants' actions directly or indirectly resulted in Plaintiff's confinement, Plaintiff was aware of the confinement.

114. As a direct and proximate result of the above Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VI
## 42 U.S.C. § 1983 – Free Speech, First Amendment

115. Plaintiff repeats and re-alleges paragraphs 1 through 114 as if fully set forth herein.

116. As described more fully above, the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to free speech by prosecuting Plaintiff based on what she posted on the *illinoiscorruption.net* website.

117. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

118. As a direct and proximate result of Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VII
## 42 U.S.C. § 1983 – Freedom of Press, First Amendment

119. Plaintiff repeats and re-alleges paragraphs 1 through 118 as if fully set forth herein.

120. As described more fully above, the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to freedom of press by targeting Plaintiff and the *illinoiscorruption.net* website.

121. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

122. As a direct and proximate result of Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VIII
### 42 U.S.C. § 1983 – Petition Right, First Amendment

123. Plaintiff repeats and re-alleges paragraphs 1 through 122 as if fully set forth herein.

124. As described more fully above, the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to petition the government for redress of grievances given that evidence obtained from eavesdropping can't be used in any court proceedings.

125. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

126. As a direct and proximate result of the Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VIIII
### State Law Claim – Malicious Prosecution

127. Plaintiff repeats and re-alleges paragraphs 1 through 126 as if fully set forth herein.

128. As described more fully above, Defendants caused Plaintiff to be subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

129. Defendants also accused Plaintiff to be the perpetrator of criminal activities knowing those accusations to be without probable cause given that Plaintiff was charged with a statute that lacks a criminal mental state and that she was exempted from prosecution because her recordings were made to prove a crime against her.

130. Mrs. Pamela Taylor, Mrs. Laurel Laudin, Mr. Kyle French, Mrs. Amber Haqqani, Mr. Robert Podlasek, Mrs. Julie Gunnigle and Investigator Kate O'Hara actions were aimed at silencing Plaintiff by sending her to jail. Sgt. James Dillon, investigators Antonio Rubino and Rich Lesiak and the unknown Cook County Sherriff Officers later made statements about Plaintiff's alleged culpability with the knowledge that such statements were unfounded and false. The Defendants in this count also fabricated evidence, withheld exculpatory information, deleted crucial evidence and violated Plaintiff's work-product and attorney-client privileges.

131. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

132. As a direct and proximate result of the above Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT X
### State Law Claim – Civil Conspiracy

133. Plaintiff repeats and re-alleges paragraphs 1 through 132 as if fully set forth herein.

134. As described more fully above, the Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

135. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

136. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

137. As a proximate result of the Defendants' conspiracy, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT XI
### State Law Claim – Intentional Infliction of Emotional Distress

138. Plaintiff repeats and re-alleges paragraphs 1 through 137 as if fully set forth herein.

139. The acts and conduct of Defendants as set forth above were extreme and outrageous. Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

140. The Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

141. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

142. As a proximate result of the Defendants' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT XII
### State Law Claim – Consumer Fraud and Deceptive Business Practices

143. Plaintiff repeats and re-alleges paragraphs 1 through 142 as if fully set forth herein.

144. The Official Court Reporters office tampered with Plaintiff's transcript and deceived and misled Plaintiff by concealing, veiling and misrepresenting the facts of the merchandise.

145. Mrs. Laurel Laudin, acting as an employee of the Official Court Reporters Office, deleted the original audio-tape of the transcript to conceal and suppress the facts of the purchased merchandise. Mrs. Pamela Taylor, acting as an assistant administrator of the Official Court Reporters office, stood by Mrs. Laurel Laudin's actions.

146. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

147. As a proximate result of the Official Court Reporters Office's actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT XIII
### State Law Claim – Breach Of Fiduciary Duty

148. Plaintiff repeats and re-alleges paragraphs 1 through 147 as if fully set forth herein.

149. As described more fully above, Dr. Markos and Plaintiff had a doctor-patient relationship during and after the psychological evaluation. However, Dr. Markos used the psychological examination as a mean to help the state prosecutors in Plaintiff's ongoing criminal investigation. In doing so, Dr. Markos abused Plaintiff's trust and violated the doctor-patient privilege he had with her.

150. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

151. As a proximate result of Dr. Markos' actions, Plaintiff's rights were violated. She suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT XIV
### State Law Claim – RespondeAt Superior

152. Plaintiff repeats and re-alleges paragraphs 1 through 151 as if fully set forth herein.

153. At all times relevant hereto, Defendants were members or agents of either the Illinois Attorney General, or Cook County, or the Cook County Sherriff or the Official Court Reporters, acting within the scope of their employment and under color of law.

154. Defendants Illinois Attorney General Office, Cook County, Cook County Sherriff and the Official Court Reporters are liable as principals for all torts committed by their agents.

## COUNT XV
### State Law Claim – Indemnification

155. Plaintiff repeats and re-alleges paragraphs 1 through 154 as if fully set forth herein.

156. Illinois law provides that public entities are directed to pay any tort judgment from compensatory damages for which employees are liable within the scope of their employment activities.

157. At all times relevant hereto, Mrs. Anita Alvarez, Dr. Matthew Markos, Mr. Robert Podlasek, Mrs. Julie Gunnigle and investigator Kate O'Hare were employees of Cook County who acted within the scope of their employment in committing the misconduct described herein.

158. At all times relevant hereto, Mr. Tom J. Dart, Sgt. James Dillon, investigators Antonio Rubio and Rich Lesiak and the unknown Cook County Sherriff Officers were employees of the Cook County Sherriff who acted within the scope of their employment in committing the misconduct described herein.

159. At all times relevant hereto, Mrs. Marilyn Filishio, Mrs. Pamela Taylor and Mrs. Laurel Laudin were employees of the Official Court Reporters who acted within the scope of their employment in committing the misconduct described herein.

160. At all times relevant hereto, Mrs. Lisa Madigan, Mr. Kyle French and Mrs. Amber Haqqani were employees of the Illinois Attorney General Office who acted within the scope of their employment in committing the misconduct described herein.

**WHEREFORE**, Plaintiff Annabel K. Melongo respectfully requests that this Court enters judgment in her favor and against Defendants, awarding compensatory damages for the injuries that she has suffered, costs and reasonable attorneys' fees, and punitive damages against each of the individual defendants in their individual capacities; and for such further and additional relief as this Court may deem appropriate and just.

### JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: **Annabel K. Melongo**, Pro Se.

Annabel K. Melongo
P.O Box 5658
Chicago, IL 60680
312-415-6632