**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNABEL K. MELONGO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT PODLASEK, JULIE GUNNIGLE,** | ) | **Case No. 13 C 4924** |
| **RANDY ROBERTS, KATE O'HARA, JAMES** | ) | |
| **DILLON, ANTONIO RUBINO, RICH** | ) | |
| **LESIAK, DR. MATTHEW MARKOS,** | ) | |
| **MARILYN FILISHIO, PAMELA TAYLOR,** | ) | **Judge John Z. Lee** |
| **KYLE FRENCH, CAROL SPIZZIRI, LISA** | ) | |
| **MADIGAN, TOM DART, UNKNOWN COOK** | ) | |
| **COUNTY SHERIFF'S OFFICERS, COOK** | ) | |
| **COUNTY, ILLINOIS, DETECTIVE** | ) | |
| **WILLIAM MARTIN, and VILLAGE OF** | ) | |
| **SCHILLER PARK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

In this action alleging various constitutional violations and state law claims, Plaintiff

Annabel K. Melongo sues Assistant State's Attorneys Robert Podlasek, Julie Gunnigle, and

Randy Roberts ("ASA Defendants"); Investigators Kate O'Hara, James Dillon, Antonio Rubino,

and Rich Lesiak ("Investigator Defendants"); Cook County Sheriff Tom Dart, several unknown

Cook County Sheriff's officers, and Cook County ("County Defendants"); Illinois Attorney

General Lisa Madigan ("Madigan") and former Assistant Attorney General Kyle French

("French"); Schiller Park Detective William Martin ("Martin") and the Village of Schiller Park

("Schiller Park"); and individuals Dr. Matthew Markos, Marilyn Filishio, Pamela Taylor, and

Carol Spizziri (collectively, "Defendants"). Before the Court are three motions to dismiss: a

motion filed by the ASA Defendants, Investigator Defendants, and County Defendants; another

filed by Defendants Martin and Schiller Park; and another filed by Defendant French.[1]  For the following reasons, the Court grants in part and denies in part Defendants' motions.

## Factual Background[2]

The allegations contained in Melongo's complaint stem from a long chain of events set in motion in Spring 2006 when hundreds of financial records at the Save-A-Life Foundation ("SALF") were mysteriously deleted.  2d Am. Compl. ¶ 4.  Carol Spizziri founded SALF, a now defunct non-profit organization, after her daughter's life was claimed in a car accident.  *Id.* ¶ 2.  A savvy fundraiser, she "cultivated relationships with prominent politicians" and raised more than $9 million for the organization.  *Id.* ¶ 32.  Questions about how SALF actually used that $9 million, however, began to surface in 2006; an investigation into the organization's finances was underway.  *Id.* ¶ 33.  Spizziri, anticipating increased scrutiny, destroyed SALF's financial records.  *Id.* ¶ 37.  She then fabricated a story by which Melongo—a former SALF employee still bitter over her recent termination—remotely accessed the organization's servers and deleted those records.  *Id.* ¶¶ 35–36.  To further paint Melongo as the perpetrator, Spizziri forwarded emails from her own account to that of Melongo.  *Id.* ¶ 38.

Spizziri followed up her accusation by exerting pressure on then-Cook County State's Attorney, Dick Devine, whom she knew personally, to prosecute Melongo for computer tampering.  *Id.* ¶¶ 36, 39.  Devine in turn directed Investigator Randy Roberts, Assistant Attorney General Kyle French, and Detective William Martin to go through with an investigation of Melongo.  *Id.* ¶ 39.  Roberts, French, and Martin proceeded to search Melongo's apartment.

---

[1] Illinois Attorney General Madigan and individual defendants Markos, Filishio, Taylor, and Spizziri have not filed motions to dismiss.  The legal sufficiency of the complaint as to these defendants is not at issue in this opinion.

[2] The facts set forth below are taken from Melongo's Second Amended Complaint and are assumed to be true for the purposes of this motion.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)

*Id.* ¶ 40.  A subsequent examination of Melongo's computer revealed no evidence that she destroyed the financial records; nevertheless, the State charged her with three counts of computer tampering on January, 17, 2007.  *Id.* ¶¶ 41–43.

A hearing on those charges occurred on June 18, 2008.  *Id.* ¶ 44.  Melongo claims to have not been present at the hearing but noticed the transcript listed her as having been in court and speaking on the record.  *Id.* ¶ 45.  She contacted the court reporter several times in an attempt to have the record corrected.  *Id.* ¶¶ 46–47.  Pamela Taylor, supervisor of the Official Court Reporters office, eventually informed Melongo that any future questions should be directed to her.  *Id.* ¶ 48.  When Melongo called Taylor to speak with her on December 15, 2008, and December 16, 2008, Melongo secretly recorded the phone conversations in an effort to prove that she was not present at the hearing and that the court reporter falsified the record.  *Id.* ¶¶ 49–50.  Melongo posted these conversations on her website.  *Id.* ¶ 52.  That website would soon become the subject of an investigation by French and the Illinois Attorney General's office.  *Id.* ¶ 54.

On March 3, 2010, French, along with Assistant State's Attorneys Podlasek and Gunnigle, moved to have Melongo psychologically examined to determine her fitness to stand trial and represent herself.  *Id.* ¶ 56.  In response, Melongo posted on her website that she "has a big surprise in store for the court in its attempt to push her out of the case by pretending that she is psychologically unbalanced.  The surprise will be known on April 14, 2010."  *Id.* ¶ 57.

Melongo submitted to a psychological exam conducted by Dr. Matthew Markos on April 13, 2010.  *Id.* ¶ 58.  Podlasek and Gunnigle, now aware of the "surprise" message posted on Melongo's website, instructed Investigator James Dillon to interrupt the exam and arrest Melongo.  *Id.* ¶ 59.  Cook County Correctional officers arrived thereafter and spoke with Dr. Markos privately.  *Id.*  After Dr. Markos returned, he "attempted to elicit incriminating responses

3

from [Melongo] . . . about her website." *Id.* ¶ 60. Melongo explained that the "surprise" was newly hired counsel. *Id.* ¶ 58. As Melongo left the exam, Investigators Dillon, Rubino, and Lesiak arrested, detained, and interrogated her for threatening a public official. *Id.* ¶¶ 61–62. The charges were not pursued. *Id.* ¶ 63.

The State did, however, pursue charges against Melongo for violating the Illinois Eavesdropping Act and filed a complaint against Melongo on April 13, 2010 for recording her conversations with Taylor. *Id.* ¶ 63. Melongo maintains that, specifically, Assistant State's Attorneys Podlasek and Gunnigle, Assistant Attorney General French, and Inspectors Rubino, Lesiak, Dillon, and O'Hara "singled out" Melongo and instituted these charges "purely out of vindictiveness and retaliation." *Id.* ¶ 65.

Melongo's bond was initially set to $30,000, then raised to $500,000, before ultimately being lowered to $300,000. *Id.* ¶¶ 69–70. Because Melongo could not afford to post bond, she remained incarcerated in Cook County Jail or under electronic monitoring for more than twenty months. *Id.* ¶¶ 70, 79. After several attempts to have the charges dismissed, Melongo was eventually released on July 26, 2012, two months after the Seventh Circuit held the Illinois Eavesdropping Act unconstitutional. *Id.* ¶¶ 71–86.

On July 28, 2014, the State dropped two of the three counts of computer tampering—nearly eight years after the charges were initially brought. *Id.* ¶ 87. A trial commenced on the remaining charge for unlawfully accessing Spizziri's email account. *Id.* ¶ 88. After a computer forensic analyst testified during the State's case-in-chief that no forensic evidence showed Melongo accessed Spizziri's email or SALF's servers, the trial judge granted defense counsel's motion for a directed verdict of not guilty. *Id.* ¶¶ 89–90.

**Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

**Analysis**

Melongo's Second Amended Complaint contains six counts. Defendants argue that Counts I through IV should be dismissed. 2d Am. Compl. ¶¶ 92–111. Counts V and VI relate to damages and are not the subject of these motions. *Id.* ¶¶ 107–11.

I.     **Counts I and IV**

In Count I, Melongo brings § 1983 claims against the ASA Defendants, Investigator Defendants, French, and Martin for "depriv[ing] Plaintiff of her rights guaranteed under the First, Fourth, and Fourteenth Amendments." *Id.* ¶ 92. Although Melongo lists a number of freedoms that Defendants allegedly violated, she does not identify in her complaint the specific legal theories under which she claims § 1983 liability. *See id.* Melongo clarifies in her response

5

briefs, however, that she pursues claims for false arrest under the Fourth Amendment and retaliatory arrest under the First Amendment. *See* Dkt. 64 at 4–6.

In Count IV, Melongo raises a number of state law claims against those same defendants, as well as Defendants Dart and Spizzirri. These state law claims include false arrest, false imprisonment, malicious prosecution, conspiracy, slander, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendants contend the claims raised in Counts I and IV are barred by various immunities and the statute of limitations. Defendants also argue these claims fail under Rule 12(b)(6). The Court addresses each of these arguments in turn.

### A.   Immunity Defenses

In their motions, Defendants assert several immunities: sovereign, absolute, qualified, and statutory. Immunity is an affirmative defense. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (qualified immunity); *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010) (absolute immunity); *Higgins v. Mississippi*, 217 F.3d 951, 953 (7th Cir. 2000) (sovereign immunity). Because its applicability typically depends on the facts of the case, dismissing the complaint on this basis at the pleading stage will often be inappropriate. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

### 1.  Sovereign Immunity

The Eleventh Amendment bars claims against state officials acting in their official capacities for money damages. *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005). Melongo sues Sheriff Dart in his official capacity and sues French, the ASA Defendants, Martin, and the Inspector Defendants in both their individual and official capacities, but seeks relief only in the

form of money damages. Thus, these defendants argue any official capacity claims against them must be dismissed on sovereign immunity grounds.

Before the Court can determine whether sovereign immunity applies, it is necessary to first determine which defendants are "state officials" under the Eleventh Amendment. To answer this question, the Court looks to State law. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994) ("Whether a particular official is the legal equivalent of the State itself [for the purposes of sovereign immunity] is a question of that State's law."). And under Illinois law, State's Attorneys and Assistant Attorney Generals are state officials. *See Illinois Educ. Ass'n v. Illinois State Bd. of Educ.*, 791 N.E.2d 522, 528 (Ill. 2003) (Attorney General); *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1271 (Ill. 1990) (State's Attorney). The sheriff and any sheriff employees are not. *See Scott v. O'Grady*, 975 F.2d 366, 370 (7th Cir. 1992) (citing *People ex rel. Davis v. Nellis*, 94 N.E. 165, 169 (Ill. 1911), and *Holda v. County of Kane*, 410 N.E.2d 552, 559 (Ill. App. Ct. 1980)).[3] Accordingly, any official capacity claims are dismissed as to the ASA Defendants and French. The Court denies the motion as to the Sheriff Dart, the Inspector Defendants, and Martin.

## 2. Grand Jury Immunity

Martin argues he is absolutely immune from suit insofar as he is alleged to have falsely testified before a grand jury. Dkt. 53 at 7–8. Martin is correct on this point. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012) ("grand jury witnesses . . . enjoy the same [absolute]

---

[3] There are limited circumstances that can affect the application of sovereign immunity, but those circumstances do not exist here. First, sovereign immunity does not apply where the officials act outside the scope of their employment. *See Benning v. Board of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir.1991). But Melongo only alleges facts by which the ASA Defendants and French were acting within the scope of duties imposed by their employment—whether investigatory or prosecutorial. Second, county officers may be entitled to sovereign immunity when they act to enforce orders issued by state courts, or when the State exercises a substantial degree of control over the officers. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). This scenario does not exist here either, nor do Defendants contend it does.

immunity as witnesses at trial"). Therefore, Martin's motion is granted to the extent Melongo relies upon Martin's Grand Jury testimony to form the basis of her claims against him.

### 3. Prosecutorial Immunity

French and the ASA Defendants argue that as prosecutors they are absolutely immune from a lawsuit for damages relating to their initiation and presentation of the State's case. Dkt. 55 at 6; Dkt. 62 at 2–4. This may be true, but absolute immunity does not extend to situations where a prosecutor performs administrative or investigatory functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). And in this case, Melongo alleges that French and the ASA Defendants took on an investigatory role, searching her home, effectively using her exam with Dr. Markos as an interrogation, and ordering the Investigator Defendants to arrest her. *See* 2d Am. Compl. ¶¶ 40, 58–62. The Court thus finds it inappropriate to rule on absolute immunity at this stage of the proceedings.

### 4. Qualified Immunity

French, the ASA Defendants, and the Investigator Defendants also assert qualified immunity bars the present action against them. "Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (quoting *Harlow*, 457 U.S. at 818). The proceedings, however, are too recent to determine whether qualified immunity applies here. For example, there are insufficient facts to conclude whether the Defendants acted without probable cause in the face of exculpatory evidence. The Court thus denies Defendants' motions to dismiss on the grounds of qualified immunity.

### 5. Illinois Tort Immunity Act

The ASA Defendants, Investigator Defendants, and County Defendants, lastly assert that any claims against them are still barred pursuant to the Illinois Tort Immunity Act. The Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. But viewing the allegations in a light most favorable to Melongo, it is not unreasonable to conclude Defendants' actions constituted willful and wanton conduct. Accordingly, the Court denies Defendants' motion to dismiss on this basis. *See*, *e.g.*, *McDonald v. Camarillo*, No. 10 C 1233, 2010 WL 4483314, at *2 (N.D. Ill. Nov. 1, 2010).

### B. Statute of Limitations Defense

Defendants additionally argue that the claims delineated in Counts I and IV are time barred. *See* Dkt. 53 at 8–11; Dkt. 55 at 4–5; Dkt. 62 at 4–5. But, on a motion to dismiss, the Court will typically not consider an affirmative defense—such as the statute of limitations—because "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). And in this case, Melongo argues that the doctrine of equitable tolling defeats the statute of limitations defense. Dkt. 64 at 8. Thus the Court declines to dismiss the claims in Counts I and IV based on the statute of limitations at this stage and finds a more developed factual record is necessary to properly decide the issue of equitable tolling.

### C. Failure to State a Claim

Defendants additionally contend Melongo's Second Amended Complaint fails to state a claim pursuant to Rule 12(b)(6). To the contrary, Melongo's complaint sets forth a detailed narrative from which it can be reasonably inferred that Defendants arrested and prosecuted her

without probable cause and in retaliation for what she was posting on her website. This is sufficient to state a prima facie case for her false arrest, retaliatory arrest, and false imprisonment claims. *See Thayer v. Chiczewski*, 705 F. 3d 237, 251 (7th Cir. 2012) (stating elements of First Amendment retaliatory arrest and Fourth Amendment false arrest); *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990) (stating elements of state law false arrest and false imprisonment). Moreover, Melongo sufficiently pleads a claim for malicious prosecution as she alleges she spent twenty months incarcerated as the result of an arbitrary prosecution that ultimately terminated in her favor. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997). Further, her complaint states a claim for civil law conspiracy, insofar as the Defendants are alleged to have agreed to arrest and prosecute her without probable cause. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). And finally, given that Melongo pleads she was the subject of an investigation for several years and spent twenty months incarcerated because of Defendants' intentional or negligent actions, the Court finds she has sufficiently stated a claim for intentional and negligent infliction of emotional distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 812 (Ill. 1988) (intentional); *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991) (negligent). The Court accordingly denies Defendants' motions to dismiss as to these claims. However, for the reasons below, the Court finds Melongo fails to state a claim for fraud and slander.

### 1. Fraud

In Illinois, the elements of common law fraud are: "(1) a false representation of a material fact; (2) the defendant must know of the falsity but, nevertheless, makes the statement for the purpose of inducing the plaintiff to rely on it; (3) the plaintiff must justifiably rely on the statement; and (4) the plaintiff must have suffered damages as a consequence." *In re Witt*, 583

N.E.2d 526, 531 (Ill. 1991). It should also be noted that "[a]llegations of fraud . . . are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'all averments of fraud . . . with particularity.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (quoting Fed. R. Civ. P. 9(b)). Melongo does not plead *any* facts under which she reasonably relies on a false statement of the defendants to her detriment, let alone with the requisite specificity required for claims of fraud. The Court dismisses without prejudice Melongo's claims of fraud.

### 2. Defamation - Slander

Under Illinois law, the elements of a defamation claim are (1) a defamatory assertion of fact about the plaintiff; (2) publication to a third party; and (3) injury to the plaintiff's reputation. *Krasinski v. United Parcel Serv., Inc.*, 124 Ill.2d 483, 490 (1988). It is not clear from Melongo's complaint or her response briefs which specific defendants made defamatory statements about her, what those statements concerned, and to whom they were published. Based on the Court's reading of the Second Amended Complaint, it can only assume Melongo intends to bring such claims against Spizzirri, who is alleged to have falsely accused her of a crime, and Martin, who is alleged to have falsely testified before the Grand Jury. But Spizzirri has not yet been served and is not a party to the motions at issue here. And, as noted above, any statements made by Martin as a Grand Jury witness are subject to absolute immunity and cannot form the basis of a defamation claim against him. As to all other defendants, the Court finds Melongo has failed to state a claim as her complaint is devoid of facts from which one could reasonably construe a claim of defamation. Accordingly, the Court grants Defendants' motions to dismiss as to the defamation claims.

## II.     Count II

Cook County seeks to dismiss Count II, in which Melongo raises a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  In Count II, Melongo asserts Cook County should be held directly liable for its "custom of allowing police officers to arrest citizens under the Illinois Eavesdropping Statute knowing that probable cause did not justify the arrest . . . ."  2d Am. Compl. ¶ 96.  Cook County, apparently misconstruing Count II, initially challenged its legal sufficiency on the grounds that Melongo cannot hold Cook County vicariously liable under the theory of *respondeat superior*.  *See* Dkt. 55, at 3.  This may be true, but liability under *Monell* does not rest on the theory of *respondeat superior*; rather, it rests on the premise that "a government's policy or custom . . . inflicts the injury [for which] the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.

Nevertheless, as Cook County ultimately identifies in its reply brief, Count II fails for different reasons.  First, Cook County does not control the Sheriff of Cook County or its officers; "[t]he Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners."  *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) (citing Ill. Const. Art. VII, § 4(c)).  The same is true with respect to the Assistant State's Attorneys.  *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999) ("[T]he Illinois Supreme Court has held that state's attorneys are state officials."); *Ingemunson*, 549 N.E.2d at 1271 ("State's Attorneys are State officers under the language of the [Illinois] constitution, not . . . county officers.").  Thus, Melongo effectively brings a § 1983 claim against an entity, Cook County, "for 'practices, policies, or actions' . . . unrelated to that entity," which the Seventh Circuit holds she cannot do.  *Thompson*, 882 F.2d at 1187.  Count II is therefore dismissed.

## III.    Counts III

In Count III, Melongo similarly attempts to plead a *Monell* claim against Schiller Park. Although Melongo claims she was arrested "due to [Schiller Park's] permanent and well-settled practice or custom of allowing police officers to arrest citizens under the Illinois Eavesdropping Statute knowing that probable cause did not justify the arrest solely to retaliate against those citizens exercising their Frist Amendment rights," such boilerplate allegations do not suffice. Melongo provides no factual support other than the facts of her own case and consequently her *Monell* claim against Schiller Park fails. *See Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to Monell liability."). The Court dismisses Count III.

## Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motions to dismiss [52][55][62]. Plaintiff's official capacity claims against Defendants Podlasek, Gunnigle, Roberts, and French are dismissed with prejudice. Count II is dismissed with prejudice. Count III and Count IV's fraud and slander claims are dismissed without prejudice. In all other respects, the motions are denied.


Dated: 6/9/15

John Z. Lee

13