Annabel Melongo v. ASA Robert Podlasek, et al.

13 C 4924

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# Exhibit A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ANNABEL K. MELONGO,**      ) | |
|      ) | |
| Plaintiff,      ) | **SECOND AMENDED** |
|      ) | **COMPLAINT AND JURY** |
|      ) | **TRIAL DEMAND** |
|      ) | |
| v.      ) | |
|      ) | |
|      ) | **13-cv-04924** |
| **ASA ROBERT PODLASEK; ASA JULIE**      ) | |
| **GUNNIGLE; INVESTIGATOR KATE**      ) | |
| **O'HARA (Star No. 423); INVESTIGATOR**      ) | |
| **JAMES DILLON (Star No. 1068);**      ) | |
| **INVESTIGATOR ANTONIO RUBINO (Star**      ) | |
| **No. 5043); INVESTIGATOR RICH LESIAK**      ) | |
| **(Star No. 5000); UNKNOWN COOK COUNTY**      ) | |
| **SHERIFF OFFICERS; DR. MATTHEW S.**      ) | |
| **MARKOS; ASST. ATTY. GENERAL KYLE**      ) | |
| **FRENCH; COOK COUNTY SHERIFF**      ) | |
| **THOMAS DART; COOK COUNTY**      ) | |
| **COOK COUNTY; INVESTIGATOR RANDY**      ) | |
| **ROBERTS; SCHILLER PARK DET.**      ) | |
| **WILLIAM MARTIN; VILLAGE OF**      ) | |
| **SCHILLER PARK; CAROL SPIZZIRRI.**      ) | |
|      ) | |
| Defendants.      ) | |

**NOW COMES** Plaintiff, **ANNABEL K. MELONGO,** by and through her attorney,

**JENNIFER BONJEAN** of the **BONJEAN LAW GROUP, PLLC,** and for cause of action

against the defendants, both jointly and severally, respectfully states as follows:

### INTRODUCTION

1.     Eight years ago, Plaintiff was arrested and charged with computer tampering

based on the unsupported, false allegations of her former employer, Defendant Carol Spizzirri,

Case: 1:13-cv-04924 Document #: 48 Filed: 11/05/14 Page 2 of 26 PageID #:131

2.     Defendant Spizzirri was the Founder and President of a now defunct non-profit organization known as Save a Life Foundation ("SALF"). Defendant Spizzirri held herself out as a certified nurse who began SALF after she lost her daughter in a fatal hit and run car accident. Defendant Spizzirri claimed that her daughter's life would have been saved had she received prompt emergency first aid at the scene of the accident. Based on this story, Defendant Spizzirri created SALF with a purported mission of training emergency responders in life supporting first aid.

3.     In and around Spring, 2006, Defendant Spizzirri and SALF came under scrutiny for its questionable financial activities. Spizzirri was exposed as a serial fabricator who lied about her credentials (she is not a certified nurse) and the underlying facts of her daughter's death (her daughter crashed her own car while under the influence of alcohol and did not die as a result of not receiving first aid emergency care). Critically, serious questions were raised regarding SALF's use of nearly $9 million of state and federal funding.

4.     Around that time, SALF's computer servers crashed, allegedly deleting hundreds of financial records. Defendant Spizzirri falsely accused Plaintiff, her former employee, of causing the deletion of SALF's financial records. On information and belief, Defendant Spizzirri herself was responsible for SALF's computer crash and the resulting destruction of financial records.

5.     Defendant Spizzirri used her influence and power with Illinois politicians, including Former Cook County State's Attorney Dick Devine to embark on a 'witch hunt' of Plaintiff and frame Plaintiff for computer tampering.

6.     Defendants Roberts, Martin, and French conducted no meaningful investigation,

2

of Spizzirri's claims, ignored exculpatory evidence, and falsely charged and prosecuted Plaintiff for the offense of computer tampering.

7.      On July 29, 2014, Plaintiff was exonerated of all computer tampering charges.

8.      On April 13, 2010, while Plaintiff's computer tampering charges pended in the Circuit Court of Cook County, Plaintiff was arrested again without probable cause for violating the Illinois Eavesdropping Statute, recently struck down as unconstitutional by the Illinois Supreme Court, *People v. Melongo*, 2014 IL 114852 (March 20, 2014). *See also, ACLU of Illinois v. Anita Alvarez*, 679 F. 3d 583 (7th Cir. 2012).

9.      Plaintiff was accused of secretly recording three separate telephone conversations she had with Pamela Taylor, a supervisor in the Official Court Reporters office of the Circuit Court of Cook County, Criminal Division and posting those conversations to her website www.illinoiscorruption.net

10.     At that time, Plaintiff's website www.illinoiscorruption.net chronicled her efforts to defend against criminal charges of computer tampering which she claimed were the product of prosecutorial misconduct and political corruption. Plaintiff's stated purpose in maintaining her website is to expose corruption in the Cook County criminal justice system.

11.     Even though Defendants knew that Plaintiff's conduct of recording Taylor was protected under a statutory exemption of the Illinois Eavesdropping statute, Defendants arrested, detained, and later maliciously prosecuted Plaintiff for violating the Eavesdropping Statute. Defendants did so to retaliate against Plaintiff for exercising her First Amendment rights to free speech and freedom of press.

12.     Plaintiff's charges for eavesdropping were dismissed in their entirety on July 26,

3

2012. However, Plaintiff was incarcerated at the Cook County Jail for 20 months as a result of the eavesdropping charges and spent an additional six (6) months on house arrest before the dismissal of the charges.

13.     After eight years, 20 months of incarceration, two trials, and an appeal, Plaintiff has been vindicated of all wrongdoing.

## PARTIES

14.     Plaintiff Annabel Melongo is an adult resident citizen of Cook County, Illinois

15.     On information and belief Defendant Robert Podlasek is an adult resident of Cook County, Illinois. At all times material hereto, Defendant Podlasek was a duly appointed Assistant Cook County State's Attorney and was acting under the color of state law. Podlasek is sued individually and in his official capacity as a, Assistant Cook County State's Attorney.

16.     On information and belief Defendant Julie Gunnigle is an adult resident of Cook County, Illinois. At all times material hereto, Defendant Gunnigle was a duly appointed Assistant Cook County State's Attorney and was acting under the color of state law. Gunnigle is sued individually and in her official capacity as an Assistant Cook County State's Attorney.

17.     On information and belief Defendants Dillon, Rubino, and Lesiak (and unknown Cook County sheriff officers) are adult residents of Cook County, Illinois. At all times material hereto, Defendants Dillon, Rubino, and Lesiak were duly appointed members of the Cook County Sheriff's Department and were acting by virtue of their position as a law enforcement officer and under color of state law. They are sued in their individual and official capacities as officer of the Cook County Sheriff's Department.

18.     On information and belief, Defendant Kyle French is an adult resident of

4

Anchorage, Alaska. At all times material hereto, Defendant French was a duly appointed Assistant Illinois Attorney General and was acting under color of state law. French is sued individually and in his official capacity as an Assistant Illinois Attorney General.

19. On information and belief, Dr. Matthew S. Markos is an adult resident of Cook County, Illinois. At all times material hereto, Dr. Markos was the director of Forensic Clinical Services and was acting in a law enforcement capacity and under color of state law. Markos is sued individually and in his official capacity.

20. Cook County Sheriff, Thomas Dart, was elected Sheriff of Cook County and was responsible for the day to day operation of the Cook County Jail, including his employees. Dart in his capacity as Cook County Sheriff existed as such under the laws of the State of Illinois and the United States.

21. Cook County is a municipality chartered by the State of Illinois and as such is a political subdivision of the State of Illinois and among its other functions operates and maintains a law enforcement agency known as the Cook County Sheriff's Department. Cook County is under a duty to run its policing activities in a lawful manner so as to preserve the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the United States and the State of Illinois.

22. On information and belief, Defendant Roberts is an adult resident of Cook County, Illinois. At all times material hereto, Defendant Roberts was a duly appointed member of the Cook County State's Attorney's office and was acting by virtue of his position as a law enforcement officer and under color of state law. He is sued in his individual and official capacity as an investigator in the office of the Cook County State's Attorney.

5

23.     Schiller Park Detective William Martin is an adult residence of Cook County, Illinois.  At all times material hereto, Defendant Martin was a duly appointed members of the Schiller Park Police Department and was acting by virtue of his position as a law enforcement officer and under color of state law. Defendant Martin is sued in his individual and official capacity as officer of the Schiller Park Police Department.

24.     The Village of Schiller Park  is a municipality chartered by the State of Illinois and as such is a political subdivision of the State of Illinois and among its other functions operates and maintains a law enforcement agency known as the Schiller Park Police Department. Schiller Park is under a duty to run its policing activities in a lawful manner so as to preserve the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the United States and the State of Illinois.

25.     Carol Spizzirri is an adult resident of San Marcos, California. She was the Founder and President of the Save a Life Foundation ("SALF") at all times relevant to the claims herein..

## JURISDICTION AND VENUE

26.     Each and all acts of defendants, other than Defendant Spizzirri, were performed under the color and pretense of the Constitutions, statutes and ordinances, regulations, customs, and usages of the United States of America, the State of Illinois, the County of Cook, and under the authority of their office as law enforcement officers for Cook County, Illinois.

27.     The incidents which give rise to this cause of action occurred within this jurisdiction and within two years of the filing of this Complaint.

28.     Venue is proper in this venue pursuant to 28 U.S.C. § 1391, as all the defendants

are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district.

29.     Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiffs further invoke the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein:

30.     On October 31, 2006, Plaintiff Melongo was charged with three (3) counts of Computer Tampering under 720 ILCS 5/16-D-3(a)(3) . The indictment alleged that Plaintiff remotely deleted files, mostly financial, that belonged to the Save-A-Life Foundation ("SALF"), a now defunct non-profit organization with ties to numerous prominent Cook County and Illinois politicians. .

31.     Founded in 1993 by Defendant Spizzirri, SALF's mission was to pass and help to implement legislation nationwide that would require training in first aid and cardiopulmonary resuscitation for police, firefighters, teachers, public safety workers, and emergency dispatchers. SALF was a member organization of the Federal Emergency Management Agency and received nearly $9 million in federal and state funding during its existence.

32.     Defendant Spizzirri cultivated relationships with prominent politicians to advance SALF and gain access to state and federal funding. By way of example, United States Secretary of Education Arne Duncan was a prominent supporter of SALP when he was CEO of the

7

Chicago Public School. Dick Durbin, one of the highest ranking senators in the United States Senate was one of SALF's strongest supporters. Illinois Congresswoman Jan Schankowski sponsored a Congressional Budget earmark for SALF. Former U.S. Senator Republican Norm Coleman sponsored a bill that would have awarded SALF millions if it had passed, and in 2006 the U.S. Conference of Mayors adopted the Community Response Systems Initiative Resolution, committing their support to SALF.

33.     However, since November of 2006, SALF has been the subject of dozens of news/investigative reports that exposed SALF's founder Defendant Carol Spizzirri as a serial fabricator and questioned the organizations claims, practices, and finances. To date, the greater than $9 million received by SALF in state and federal funds remains unaccounted for. Meanwhile, Defendant Spizzirri has relocated to California, avoiding further scrutiny of her conduct while operating SALF.

34.     The Illinois Attorney General, Charitable Trust Bureau represents that there is an ongoing investigation into SALF's activities. However, to date, no civil or criminal action has been brought against Defendant Sprizzirri.

35.     In and around mid-2006, Defendant Spizzirri became aware that SALF's financial activities were coming under scrutiny and that her financial activities as the President of SALF might be examined.. In fact, in November, 2006, Reporter Chuck Goudie from ABC News Chicago aired a series of investigative reports that discredited Defendant Spizzirri and her organization.

36.     In Spring, 2006, knowing SALF's financial record might come under review, Defendant Spizzirri falsely accused Plaintiff of remotely deleting financial files from SALF

8

servers, claiming that Plaintiff was angry at Spizzirri for terminating her. Defendant Spizzirri

contacted the Illinois Attorney General's office and reached out directly to her personal friend

Cook County State's Attorney, Dick Devine, demanding that criminal charges be brought against

Plaintiff.

37.     On information and belief, Defendant Spizzirri herself caused the destruction of

SALF's financial records and then fabricated a narrative accusing Plaintiff of tampering with the

SALF servers and causing the destruction of hundreds of financial records. Using her power,

influence, and relationships, Defendant Spizzirri embarked on a "witch hunt" to have Plaintiff

prosecuted for the offense of computer tampering all while diverting attention away from her

own misconduct and questionable financial dealings.

38.     Specifically, Defendant Spizzirri falsely claimed that Plaintiff had unlawfully

accessed Spizzirri's email account and forwarded emails from Spizzirri's account to Plaintiff's

Yahoo email address. In truth, Spirzzirri herself forwarded the emails in an attempt to paint

Melongo as a bitter, computer hack whose goal was to retaliate against her former employee by

destroying financial records. Defendant Spizzirri also falsely accused Plaintiff of remotely

accessing SALF's servers, changing passwords, deleting financial files, and even stealing

SALF's credit card numbers for the purpose of making purchases.

39.     With a directive from Dick Devine, Defendant Cook County Investigator Randy

Roberts along with Defendant Kyle French and Defendant Martin accepted Defendant Spizzirri's

fabricated theory that Plaintiff had accessed SALF's servers and destroyed hundreds of financial

records with no meaningful investigation. Indeed, these Defendants ignored ample exculpatory

evidence showing that Plaintiff had no ability to access SALF's servers and could not have

committed the offense of computer tampering.

40.    No factual basis existed to support a finding of probable cause that Plaintiff had committed an act of computer tampering. Notwithstanding, Defendants Roberts, Martin and French effectuated a search of Plaintiff's apartment, arrested Plaintiff, and initiated computer tampering charges against her.

41.    The Illinois Attorney General conducted an in-depth forensic analysis of Plaintiff's computer which resulted in a report thousands and thousands of pages in length. Testimony from the Forensic Expert revealed that no evidence derived from Plaintiff's computer showed that Plaintiff had accessed Defendant Spizzirri's emails or the SALF servers, let alone caused those servers to crash or caused the destruction of hundreds of financial records.

42.    Despite this stunning absence of evidence, Defendants Roberts, French, and Martin continued to pursue criminal charges against Plaintiff. Defendant Ma

43.    After a finding of no probable cause, the State indicted Plaintiff on three counts of computer tampering on January 17, 2007, based on perjured testimony of .Defendant Martin. The State superceded Plaintiff's original indictment with a new a indictment on May 28, 2008.

44.    The report of proceedings reflect that Plaintiff's counsel appeared in court and entered a plea of not guilty to the superceding indictment on behalf of Plaintiff. Plaintiff did not indicate on the record that she understood the charges and the court directed all communication to her attorney - even referring to Plaintiff in the third person. However, at the conclusion of the proceeding the court inquired about Plaintiff's bond:

| The Court: | There was some alleged deficiencies in the first indictment that |
|---|---|
| | Counsel talked about, '07 nolle pros case, superseded by 08-10502. |

10

|                   | Did she have a cash bond on that, or what kind of bond was she out on? |
| The Defendant:    | I-bond. |
| The Court:        | I-bond. |

45.     The isolated "I-Bond" statement allegedly uttered by "The Defendant" is the only indication that Plaintiff was present in court on June 18, 2008. Indeed, the docket sheet, the half sheet, the judge's notes, and the court call sheet all indicate that Plaintiff was not present in court that day.

46.     After reviewing the report of proceedings from the June 18, 2008 court date, Plaintiff contacted the office of the Official Court Reporters and spoke with Official Court Reporter Laurel Laudin who purportedly transcribed the proceedings. Plaintiff told Laudin that she was not present at the June 18, 2008 proceedings and questioned her as to why the transcript suggested she was. Ms. Laudin denied any inaccuracies in the transcript and eventually hung up the phone.

47.     Laudin later admitted that she destroyed the audio recording of the June 18, 2008 court proceedings which would have proved that Plaintiff was not present at the arraignment.

48.     On December 10, 2009, Pamela Taylor, the supervisor of the Official Court Reporters office contacted Plaintiff and admonished her not to contact Ms. Laudin again. Irritated, Plaintiff hung up the phone. Taylor called Plaintiff back a second time and left a message on her voice mail instructing her to contact Taylor directly if she had any additional questions about the June 18, 2008 transcript.

11

49.     Later that day, Plaintiff complied with Taylor's instructions and called her to question and discuss the accuracy of the June 18, 2008 transcripts. Plaintiff recorded the conversation. Plaintiff recorded additional conversations with Taylor on December 15 and December 16, 2009.

50.     Plaintiff recorded her conversations with Taylor in an effort to gather evidence to prove that she was not actually present for the June 18, 2008 court date where she was allegedly arraigned on a superceding computer tampering indictment. Furthermore, Plaintiff intended to prove that the court reporter fabricated the report of proceedings when she indicated that Defendant was present in open court and later destroyed the audio tape that would have proved that fabrication.

51.     In November, 2009, Plaintiff created a website known as www.illinoiscorruption.net to chronicle her efforts at defending against the computer tampering charges which she claimed were instituted without probable cause and as a result of political pandering. On her website, Plaintiff states that she launched the site in an attempt to bring public attention to the abuses of the criminal justice system in Illinois.

52.     On December 17, 2009, Plaintiff posted her conversations with Taylor on her website www.illinoiscorruption.net. Plaintiff noted that the recording of her conversations with Taylor was protected by 720 ILCS 5/14-3(I), an exemption to the Illinois Eavesdropping statute that permits the secretive recording of conversations to prove a claim.

53.     Plaintiff also contacted the FBI to report her belief that the June 18, 2008 transcripts were falsified or doctored. FBI agent Dana DePooter testified under oath that she received an email from Plaintiff complaining that the June 18, 2008 transcript had been tampered

12

with or doctored.

54.     In and around January, 2010, Defendant French of the Illinois Attorney General office began investigating Plaintiff's website and instructed a Senior Computer Evidence Recovery Technician to capture the website for investigative purposes. On information and belief, French also instructed the technician to monitor Plaintiff's website.

55.     On January 8, 2010, Plaintiff, acting *pro se*, filed a motion to dismiss the computer tampering charges on the grounds that the State suborned perjury from its witnesses during the grand jury proceedings that resulted in her indictment.

56.     On March 3, 2010, the date on which Plaintiff was scheduled to argue her motion to dismiss the charges, Defendants French, Podlasek, and Gunnigle moved to have Plaintiff psychologically examined ("BCX") to determine her fitness to stand trial and to represent herself despite the fact that no evidence suggested that Plaintiff suffered from any mental health issues or that she did not understand the charges against her or could not assist in her own defense. .

57.     Thereafter, Plaintiff posted on her website that "Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending that she is psychologically unbalanced. The surprise will be known on April 14, 2010."

58.     On April 13, 2010, Plaintiff submitted to a psychological exam to be conducted by Defendant Markos. While Plaintiff was undergoing the evaluation, Defendants Podlasek and Gunnigle contacted Defendant Dillon instructing Dillon to arrest Plaintiff because of the "inappropriate" "surprise" message posted on her website. Plaintiff explained to Dr. Markos that the surprise to which she referred was her hiring of a new attorney.

59.     As a result of this direction, unknown Cook County Correctional officers were dispatched to the Criminal Court facility where they interrupted Plaintiff's evaluation by Defendant Markos and asked to speak with Defendant Markos privately.

60.     After leaving the room for a short period, Defendant Markos returned and began questioning Plaintiff extensively about her website and her entries on the website, including the "surprise" post. Markos attempted to elicit incriminating responses from Plaintiff during this so-called psychological exam about her website.

61.     Immediately after the evaluation, Plaintiff stepped outside and was arrested by unknown Cook County Sheriff officers and transferred to the Cook County Central Intelligence Unit ("CIU"). Plaintiff was arrested for allegedly threatening a public official.

62.     Plaintiff was interrogated by Defendants Dillon, Lesiak, and Rubino regarding her website and Plaintiff asserted her right to counsel. Defendants Dillon, Lesiak, and Rubino had no probable cause to detain Plaintiff for threatening a public official, but notwithstanding the lack of probable cause, Defendants Dillon, Lesiak and Rubino arrested and detained Plaintiff. They did so at the behest of Defendants Podlasek, Gunnigle, and French. Defendants Podlasek and Gunnigle were actively investigating the case, including taking action to subpoeana the websites' records.

63.     The State abandoned its threatening a public official charge, and on April 13, 2010, a complaint was filed against Plaintiff for violating the Illinois Eavesdropping statute when she recorded her conversations with Pamela Taylor and posted those conversations on her website. Although the alleged complainant on the Eavesdropping charges was Pamela Taylor, the complaint itself does not bear her signature.

14

64.     No probable existed to justify the eavesdropping charges where Plaintiff recorded her conversations with Taylor for the purpose of establishing that the Court Reporters office had falsified transcripts that erroneously suggested that Plaintiff had been arraigned on a superceding indictment when, in fact, she was not even present in court when the alleged arraignment took place. Indeed, Plaintiff herself reported the actions of the court reporter to the F.B.I. and published the recordings on her website.

65.     Defendants Podlasek, Gunnigle, French, Rubino, Lesiak, Dillon and O'Hara singled out Plaintiff for prosecution under the eavesdropping statute despite recognizing that a statutory exemption applied to Plaintiff. Defendants arrested Plaintiff and instituted charges against her purely out of vindictiveness and retaliation.

66.     Additionally, City Hall employees and Chicago Tribune reporters regularly recorded conversations without the consent of all parties. Despite having knowledge of these violations of the eavesdropping statute, neither the Illinois Attorney General, nor the Cook County State's Attorney, nor the Cook County Sheriff's office investigated, arrested, and prosecuted these violators.

67.     Despite an absence of probable cause to charge Plaintiff under the Illinois Eavesdropping Statute, Defendant O'Hara, at the instruction of Defendants Podlasek and Gunnigle ,obtained a search warrant to search Plaintiff's home.

68.     On April 14, 2010, Plaintiff appeared in bond court and her bond was set at $30,000D Bond. But on April 20, 2010, at the request of Defendants Podlasek and Gunnigle, Judge Mary Brosnahan raised Plaintiff's bond to $500,000D bond.

69.     On April 27, 2010, Plaintiff was indicted for three (3) counts of recording phone

15

conversations under 720 ILCS 5/14-2(a)(1), and three (3) counts of publishing said conversation on Plaintiff's website www.illinoiscorruption.net.

70. On May 5, 2010, Judge Brosnahan reduced Plaintiff's bond to $300,000D bond. Unable to make bond, Plaintiff was incarcerated for more than 20 months in the Cook County Jail. During her incarceration, Plaintiff exercised due diligence in attempting to learn the basis for her arrest and determine the individuals responsible for that her wrongful arrest.

71. Plaintiff filed a motion to dismiss the eavesdropping charges on December 13, 2010 which was denied by the Judge Brosnahan.

72. On January 12, 2011, Plaintiff's trial on the eavesdropping charges commenced.

73.. On January 14, 2011, Judge Brosnahan declared a mistrial because the jury was unable to reach a unanimous verdict on the charges.

74. On April 11, 2011, Chief Judge Timothy C. Evans reassigned Plaintiff's cases to the Honorable Judge Steven J. Goebel.

75. Thereafter, Plaintiff terminated her attorney and proceeded *pro se.* Plaintiff remained incarcerated.

76. On September 14, 2011, Judge David K. Frankland of Sangamon County declared the Illinois Eavesdropping Statute unconstitutional. *People v. Allison*, 2009-CF-50.

77. On September 20, 2011, ASA Podlasek moved before Judge Goebel to confiscate Plaintiff's legal files related to the computer tampering and eavesdropping charges allegedly for the purpose of redacting third-party social security numbers and credit card numbers. Judge Goebel granted ASA Podlasek's motion and ordered Plaintiff's former attorney to hand over her legal files to ASA Podlasek. ASA Podlasek demanded that Plaintiff relinquish both her case file

16

on the eavesdropping charges and the computer tampering charges.

78.     ASA Podlasek removed various documents from Plaintiff's file, including police reports and other memoranda critical to her defense.

79.     On Plaintiff's motion, Judge Goebel released Plaintiff from the Cook County Jail and the Cook County Sheriff placed her in the electronic monitoring program on October 20, 2011 - a week after the maximum sentence for the offense of eavesdropping had expired.

80.     On November 10, 2011, Defendant Podlasek moved before Judge Goebel to revoke Plaintiff's bond, alleging that she had made an unauthorized movement to her former attorney's office and "stole" her own legal file. The Court allowed Plaintiff to stay at liberty and to respond in writing to Defendant's motion. Notwithstanding the Court's order, Defendant Podlasek contacted the electronic monitoring program and instructed unknown Cook County sheriff officers to arrest Plaintiff.

81.     Plaintiff was imprisoned again until November 23, 2011 when Judge Goebel reinstated Plaintiff's bond and recommitted her to the electronic monitoring program.

82.     On November 30, 2011, Plaintiff filed an amended motion to dismiss the eavesdropping charges.

83.     On March 2, 2012, Circuit Court Cook County Judge Stanley Sacks declared the Illinois Eavesdropping statute unconstitutional. *People v. Drew*, 10 CR 00046.

84.     On March 19, 2012, Plaintiff argued her motion to dismiss the eavesdropping charges.

85.     On May 8, 2012, the United States Court of Appeals for the Seventh Circuit declared the Illinois Eavesdropping statute unconstitutional in *ACLU v. Alvarez*, 679 F. 3d 582

(7th Cir. 2012)..

86.     On June 19, 2012, Judge Gobel granted Plaintiff's motion to dismiss and on July 26, 2012, officially dismissed the eavesdropping charges.

87.     On July 28, 2014 - eight years after Plaintiff was charged with three counts of computer tampering - the State of Illinois dismissed two of the counts without explanation. Specifically, the State dismissed all charges related to allegations that Plaintiff had accessed the computer servers of SALF and caused the deletion or destruction of data.

88.     However, the State proceeded to prosecute Plaintiff for unlawfully accessing Defendant Spizzirri's email account and for altering data by forwarding two emails to herself. The parties picked a jury and the State put on its case in chief.

89.     A computer forensic analyst who previously worked for the Illinois Attorney General and conducted a complete forensic analysis of Plaintiff's computer testified that no forensic evidence showed that Plaintiff had accessed Spizzirri's email or servers.

90.     At the close of the State's case, the defense moved for a directed finding and Cook County Circuit Court Judge Joyce entered a directed finding of not guilty.

91.     After eight years since charges were originally brought, two of which were spent in custody, Plaintiff was exonerated of all charges.

<u>COUNT I</u>

**<u>FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST DEFENDANTS PODLASEK, GUNNIGLE, O'HARA, DILLON, RUBINO, LESIAK, FRENCH, MARKOS, UNKNOWN CO OK COUNTY SHERIFF POLICE OFFICERS, COOK COUNTY INVESTIGATOR ROBERTS, SCHILLER PARK POLICE OFFICER MARTIN</u>**

18

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

92.     Defendants Podlasek, Gunnigle, O'Hara, Dillon, Rubino, Lesiak, French, Markos, Roberts, Martin, and unknown Cook County Sheriff Police officers committed the above described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers, and substantially deprived Plaintiff of her clearly established rights, privileges, and immunities, guaranteed to her by the United States Constitution and in violation of 42 U.S.C. § 1983, and deprived Plaintiff of her rights guaranteed to her under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including but not limited to:

a.     freedom from unlawful search and seizure;

b.     freedom from unlawful arrest and seizure of her person;

c.     freedom from deprivation of liberty and property without due process of law;

d.     freedom from summary punishment;

e.     freedom from arbitrary government activity which shocks the conscious of a civilized society.

f.     freedom from the arbitrary denial of free speech and press under the First Amendment

g.     freedom from retaliatory arrest

h.     freedom from irrational differential treatment in violation of the equal protection clause.

93.     As a direct and proximate result of the acts and omissions of defendants Podlasek, Gunnigle, O'Hara, Dillon, Rubino, Lesiak, French, Markos, Roberts, Martin, and unknown Cook

19

County Sheriffs, Plaintiff's constitutional rights were violated and Plaintiff was injured and sustained substantial injuries.

## COUNT II

## FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST COOK COUNTY

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

94.     Defendant County of Cook is under a duty to supervise the members of the Cook County Sheriff's Police Department and to ensure that the policing activities of the Cook County Sheriff are run in a lawful manner preserving to the citizens of Cook County the rights, privileges, and immunities guaranteed to them by the Constitutions of both the United States of America and the State of Illinois.

95     Defendant Cook County permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice, and/or custom of its officers, particularly Defendants Rubino, Dillon, and Lesiak, falsely arresting individuals under the Illinois Eavesdropping Statute in retaliation for an exercise of free speech by citizens of Cook County, Illinois in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

96.     Defendant Cook County is directly liable for the Plaintiff's damages due to its permanent and well-settled practice or custom of allowing police officers to arrest citizens under the Illinois Eavesdropping Statute knowing that probable cause did not justify the arrest solely to retaliate against those citizens for exercising their First Amendment rights thereby creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard for the welfare of the public at large, including Plaintiff.

20

97.     As a direct and proximate result of the foregoing policy, practice, and custom of Cook County and the Cook County Sheriff's Department, the violation of the constitutional rights of the citizens of Cook County were substantially certain to occur.

98.     As a direct and proximate result of the foregoing policy, practice, and custom of Cook County and Cook County Sheriff's Department, Plaintiff's constitutional rights were violated and Plaintiff was injured and damaged.

## COUNT III

## FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST VILLAGE OF SCHILLER PARK

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

99.     Defendant Village of Schiller Park is under a duty to supervise the members of the Schiller Park Police Department and to ensure that the policing activities of the Schiller Park Police Department are run in a lawful manner preserving to the citizens of Schiller Park the rights, privileges, and immunities guaranteed to them by the Constitutions of both the United States of America and the State of Illinois.

100.    Defendant Village of Schiller Park permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice, and/or custom of its officers, particularly Defendant Martin, falsely arresting individuals where no probable cause existed and without conducting any meaningful investigation and ignoring exculpatory evidence in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

101.    Defendant Village of Schiller Park is directly liable for the Plaintiff's damages

21

due to its permanent and well-settled practice or custom of allowing police officers to arrest

citizens under the Illinois Eavesdropping Statute knowing that probable cause did not justify the

arrest solely to retaliate against those citizens for exercising their First Amendment rights thereby

creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and

reckless disregard for the welfare of the public at large, including Plaintiff.

102.    As a direct and proximate result of the foregoing policy, practice, and custom

of Village of Schiller Park and the Schiller Park Police Department, the violation of the

constitutional rights of the citizens of Schiller Park were substantially certain to occur.

103.    As a direct and proximate result of the foregoing policy, practice, and custom

of Village of Schiller Park and the Schiller Park Police Department, Plaintiff's constitutional

rights were violated and Plaintiff was injured and damaged.

### COUNT IV

### STATE LAW TORTS AGAINST DEFENDANTS PODLASEK, GUNNIGLE, O'HARA, DILLON, RUBINO, LESIAK, FRENCH, MARKOS, ROBERTS, MARTIN, UNKNOWN COOK COUNTY SHERIFF POLICE OFFICERS AND CAROL SPIZZIRRI

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint

and by reference makes said paragraphs a part hereof as if fully set forth herein

104.    The acts, omissions and conduct of defendants Podlasek, Gunnigle, French,

O'Hara, Dillon, Lesiak, Rubino, Markos, Roberts, Martin, Spizzirri, and unknown Cook County

Sheriff Police officers constitute false arrest, false imprisonment, malicious prosecution,

conspiracy, slander, fraud, negligent infliction of emotional distress and intentional infliction of

emotional distress.

105.    As a direct and proximate result of the aforementioned acts and omissions of

defendants, Plaintiff has been injured and damaged.

106.    Cook County Sheriff Thomas Dart, pursuant to the principle of *respondiat superior*, is responsible for the wrongful conduct of its deputies as alleged above.

## COUNT V

## AGAINST COOK COUNTY FOR INDEMNIFICATION

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

107.    Pursuant to 745 ILCS 10/9/-102, 55 ILCS 5/4-6003, and 55 ILCS 5/5-1106, COOK COUNTY is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer, such as the Cook County Sheriff and its deputies, including Defendants Rubino, Lesiak, and Dillon, acting within the scope of his employment is found liable.

108.    The acts and/or omissions of Defendants Rubino, Lesiak, and Dillon were committed in the scope of their employment.

109.    In the event, that a judgment for compensatory damages is entered against Defendants Rubino, Lesiak, and Dillon, COOK COUNTY must pay the judgment as well as the associated attorneys' fees and costs.

## COUNT VI

## PUNITIVE DAMAGES AGAINST DEFENDANTS PODLASEK, GUNNIGLE, O'HARA, DILLON, RUBINO, LESIAK, FRENCH, MARKOS, UNKNOWN COOK COUNTY SHERIFF POLICE OFFICERS, ROBERTS, MARTIN, AND SPIZZIRRI

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

23

110.    The actions and/or omissions of defendants Podlasek, Gunnigle, O'Hara, Dillon, Rubino, Lesiak, French, Markos, Roberts, Martin, Spizzirri, and unknown Cook County Sheriff Police officers were unlawful, conscience shocking, and unconstitutional, and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the Plaintiff to a substantial award of punitive damages against defendants.

### DAMAGES

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

111.    As a direct and proximate result of the aforementioned actions and omissions of the defendants, Plaintiffs was injured and damaged.  The damages for which Plaintiff seeks compensation from the defendants, both jointly and severally, include, but are not limited to, the following:

    a.    emotional pain and suffering of a past, present, and future nature;

    b.    loss of enjoyment of life of a past, present, and future nature;

    c.    fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of the injuries sustained as a result of the illegal actions of defendants.

    d.    loss of earning capacity;

    e.    attorney's fees pursuant to 42 U.S.C. § 1988;

    f.    punitive damages against applicable defendants;

    g.    pre-and post-judgment interest;

    h.    declaratory judgment and injunctive relief holding that the policies,

24

practices or customs of defendants, complained of herein are illegal and unconstitutional;

i.      preclusion of defendants O'Hara, Dillon, Lesiak, and Rubino from seving as police officers; and

j.      all such relief, both general and specific, to which Plaintiff may be entitled to under the premises.

## PRAYERS FOR RELIEF

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the defendants both jointly and severally, for her personal injuries and prays for a judgment against the defendants for compensatory damages solely in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which she may be entitled under the premises.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues defendants Podlasek, Gunnigle, O'Hara, Dillon, Rubino, Lesiak, French, Markos, Roberts, Martin, and Spizzirri in an amount solely to be determined by a jury as reasonable and for all such further relief, both general and specific, to which she may be entitled under the premises.

112.    **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

Respectfully submitted,


**BONJEAN LAW GROUP, PLLC**
**1000 Dean St., Ste. 345**
**Brooklyn, New York 11238**
**(718) 875-1850**
**(718) 230-0582**

By: s/ JENNIFER BONJEAN