UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNABEL K. MELONGO )<br><br>                  Plaintiff, )<br>                   )<br>     v.               )<br>                   )<br>ASA ROBERT PODLASEK, ET AL. )<br>                   )<br>              Defendants. ) | Case No.13-CV-4924<br><br>Honorable Judge John Z. Lee<br><br>Magistrate Judge Sheila M. Finnegan |

**PLAINTIFF'S LOCAL RULE 56.1(b) RESPONSIVE STATEMENT OF FACTS**

Pursuant to Local Rule 56.1(b), Plaintiff submits the following responsive statement of facts responding to each fact stated in Defendants' Rule 56.1(a) Statement of Facts and states the additional facts that require denial of Defendants' Motion for Summary Judgment. This Responsive Statement of Facts is provided solely in connection with the Defendants' pending Statute of Limitations Motion and without the benefit of any deposition discovery. Plaintiff reserves the right to supplement or amend her Responsive Statement of Facts based on the discovery of additional information.

**RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

     1.     Plaintiff is an adult resident citizen of Cook County, Illinois. (See Plaintiff's Second Amended Complaint ("Complaint"), ¶14, a true and accurate copy of which is attached hereto as Exhibit A.) . Defendants all reside in this district and/or resided in this district during the alleged events giving rise to Plaintiff's Complaint. (Ex. A, ¶¶15-25.) This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)-(3)-(4), and 1367. (Id., ¶29.) Venue is proper pursuant 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to this claim occurred in this judicial district. (Id., ¶28.)

     **RESPONSE:** No dispute, except that Plaintiff does not currently reside in Illinois, but she did at the time the Complaint was filed.

     2.     At all times relevant to the Complaint, Spizzirri was the founder/principal of the Save-A-Life Foundation ("SALF"). (Id., ¶31.)

1

**RESPONSE:** No dispute.[1]

3. *In the Spring of 2006, Spizzirri accused Plaintiff, a recently terminated SALF employee, of remotely deleting files from SALF's servers. (Id., ¶36.)*

**RESPONSE:** No dispute.

4. *Plaintiff claims Defendants Roberts, French, and Martin investigated Spizzirri's accusations by effectuating a search of Plaintiff's apartment, arresting her, and initiated computer tampering charges against her. (Id., ¶¶39-40.)*

**RESPONSE:** Plaintiff does not dispute that Roberts, French, and Martin effectuated a search of Plaintiff's apartment, arrested her, and initiated computer tampering charges against her; Plaintiff disputes that these defendants conducted any meaningful investigation, but Plaintiff further contends that whether they investigated Spizzirri's accusations or not is not material to the present motion for summary judgment based solely upon the statute of limitations.

5. *Plaintiff alleges that there was no factual basis to support a finding of probable cause that Plaintiff had committed an act of computer tampering. (Id., ¶40.) Nevertheless, on October 31, 2006, Plaintiff was charged with three (3) counts of computer tampering for allegedly remotely deleting computer files belonging to SALF (the "Computer Tampering Arrest"). (Id., ¶30.) Plaintiff was arrested shortly thereafter in 2006. (Id., ¶1.)*

**RESPONSE:** Disputed only because Plaintiff was charged with two counts of computer tampering in 2006, not three. The State included three charges when it re-indicted Plaintiff in May 2008. (Pl.'s Ex. A ¶13, Melongo Decl.) Otherwise paragraph 5 is not disputed.

6. *On January 17, 2007, Plaintiff was indicted on three (3) counts of computer tampering and a superseding indictment was issued on May 28, 2008 (the "Computer Tampering Charges"). (Id., ¶43.)*

**RESPONSE:** Disputed only because Plaintiff was indicted for two counts of computer tampering in 2007, not three. The State included three charges when it re-indicted Plaintiff in May 2008. (Pl.'s Ex. A ¶13, Melongo Decl.) Otherwise paragraph 6 is not disputed.

---

[1] Where, as in Fact No. 2, defendants' citation does not support the stated fact, but the parties agree that the fact is true, plaintiff has not provided corrected citations.

*7. Plaintiff was arraigned on the Computer Tampering Charges on June 18, 2008. (Id., ¶45.)*

**RESPONSE:** Disputed. Plaintiff was not present at the June 18, 2008 hearing at which she was purportedly arraigned. (Pl.'s Ex. A ¶2, Melongo Decl.)

*8. On or about October 7, 2009, Plaintiff, pro se, filed a Motion Requesting the Chief Judge Hear the Petition for Substitution of Judge and Prosecutor For Cause. (See Plaintiff's pro se Motion Requesting the Chief Judge Hear the Petition for [Substitution of] Judge and Prosecutor for Cause, file stamped October 7, 2009, a true and accurate copy of which is attached hereto as Exhibit B.) In that motion, which sought the removal of the judge who had been presiding over her case and French, Plaintiff alleges corruption and misconduct by the Attorney General's Office and the State's Attorney's Office relative to her case. (Ex. B.)*

**RESPONSE:** Not disputed.

*9. On or about October 28, 2009, Plaintiff, pro se, filed a Motion to Dismiss Indictment, seeking the dismissal of the Computer Tampering indictment. (See Plaintiff's pro se Motion to Dismiss Indictment, file stamped October 28, 2009, a true and accurate copy of which is attached hereto as Exhibit C.) In that motion, Plaintiff asserts that Defendant Martin perjured himself before the grand jury. (Ex. C.) Further, Plaintiff's motion references evidence gathered in discovery during the pendency of the Computer Tampering Charges and asserts that she has been denied due process. (Id.)*

**RESPONSE:** Not disputed.

*10. On or prior to October 28, 2009, Plaintiff believed that Defendant Martin had perjured himself before the grand jury for the Computer Tampering Charges. (See Plaintiff's Responses to Defendant Martin's Requests to Admit, ¶7, a true and accurate copy of which is attached hereto as Exhibit D; Ex. C.)*

**RESPONSE:** Not disputed.

*11. On or about February 3, 2010, Plaintiff, pro se, filed a Motion to Compel Discovery or to Dismiss related to the Computer Tampering Charges (See Plaintiff's pro se Motion to Compel Discovery or to Dismiss, file stamped, February 3, 2010, a true and accurate copy of which is attached hereto as Exhibit E.) In that motion, Plaintiff acknowledged that she had previously received materials in discovery, including police reports, three CDs, correspondence from the Attorney General's Office, reports of an Attorney General forensic expert, a list of deleted files, printouts of logs, and email communications of various parties. (Ex. E.) Plaintiff had also received a list of witnesses. (Id.)*

**RESPONSE:** Not disputed.

*12. On July 6, 2010, Plaintiff filed a motion to Dismiss the Computer Tampering Charges, alleging that she had been denied "fundamental due process" based on Martin's alleged perjury to the grand jury and that the results of the investigation revealed that she had not committed the crime. (See Plaintiff's pro se Motion Dismiss, a true and accurate copy of which is attached hereto as Exhibit F.)*

**RESPONSE**: Plaintiff disputes that she filed the Motion attached as Exhibit F to Defendants' Statement of Facts on July 6, 2010, or that it was a "*pro se*" Motion. Plaintiff's former attorney drafted and purportedly filed the Motion on July 6, 2010. His signature is on the document. However, it became unclear whether the document had been filed or not, so on January 11, 2012, Plaintiff, acting *pro se*, asked for and was granted permission to re-file the motion as of July 6, 2010. (Pl.'s Ex. Y at 4-6, Jan. 11, 2012 Tr.) Otherwise, not disputed.

*13. After reviewing the transcript from her June 18, 2008 arraignment on the Computer Tampering Charges, Plaintiff contacted the court reporter for the proceedings to inquire why the transcript indicated that she had been present for the arraignment when she contended was not present. (Ex. A, ¶46.)*

**RESPONSE**: Not disputed.

*14. On December 10, 2009, Pamela Taylor ("Taylor"), a supervisor with the court reporter's office, informed Plaintiff that she should not contact the court reporter again and to contact Taylor directly if she had any issues with the transcript. (Id., ¶48.)*

**RESPONSE**: Not disputed.

*15. Plaintiff contacted Taylor directly on December 10, 2009, December 15, 2009, and December 16, 2009 regarding the transcript. (Id., ¶49.)*

**RESPONSE**: Not disputed.

*16. Plaintiff recorded her telephone conversations with Taylor. (Id., ¶¶49-50.)*

**RESPONSE**: Plaintiff does not dispute that she recorded telephone conversations with Taylor on December 10, 2009, December 15, 2009, and December 16, 2009.

*17. In November, 2009, Plaintiff created a website, www.illinoiscorruption.net, in an effort "to chronicle her efforts at defending against the computer tampering charges which she claimed were instituted without probable cause and as a result of political pandering." (Id. ¶51.)*

4

*On December 17, 2009, Plaintiff posted her recorded conversations with Taylor online on her website, www.illinoiscorruption.net (hereafter referred to as the "website").(Id., ¶52.)*

  **RESPONSE:** Not disputed.

  18. *On April 13, 2010, a criminal complaint was filed against Plaintiff and she was arrested for violations of the Illinois Eavesdropping Act for recording and posting her conversations with Taylor on Plaintiff's website. (Id., ¶¶8, 63.)*

  **RESPONSE:** Plaintiff does not dispute that on April 13, 2010, a criminal complaint was filed against her for violating the eavesdropping statute based on her recording and posting her conversations with Taylor. (Pl.'s Ex. B, April 13, 2010 Criminal Complaint.) Plaintiff disputes that she was arrested on April 13, 2010 for violating the eavesdropping statute. She was arrested on that date for supposedly threatening a public official, although she did not learn that that was the basis for her arrest until September 2012. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. A ¶¶6, 11, Melongo Decl.) The arrest warrant for eavesdropping did not issue until 2:49 p.m., but police records show that Plaintiff was arrested at 12:45 p.m. in response to a report from the State's Attorney regarding Plaintiff allegedly threatening a public official. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. D at 3, April 13, 2010 Complaint for Arrest Warrant.)

  19. *Plaintiff's website includes a webpage titled "Day of Arrest." (See "Day of Arrest" webpage at http://illinoiscorruption.net/eavesdropping/arrest.html, a true and accurate printout of which is attached hereto as Exhibit G.) Plaintiff specifically chronicles the events surrounding her April 13, 2010 arrest on the "On the "Day of Arrest" webpage. (Ex. G.) On this webpage, Plaintiff states that on the date of her arrest she was informed by a member of law enforcement that she was being charged for violating the Illinois Eavesdropping Statute. (Ex. G.)*

  **RESPONSE:** Not disputed.

  20. *More than four months prior to her arrest, Plaintiff made an entry on the "Chicago Courthouse" webpage of her website, dated December 10, 2009 explaining that Section 14-3(i) to the Illinois Eavesdropping Act provided an exemption that allowed her to legally make a secret tape recording of her telephone conversation with Defendant Taylor." (See "Chicago Courthouse" webpage at http://illinoiscorruption.net/computertampering/chicago.html, a true and accurate printout of which is attached hereto as Exhibit H.) Plaintiff's entry on the "Chicago Courthouse" webpage*

5

*of her website, as described above, was part of her criminal case file and has been in existence since at least March 8, 2010. (Ex. H.)*

**RESPONSE:** Not disputed.

21. *Plaintiff knew that she was being charged with violating the Illinois Eavesdropping Statute on the date of her arrest on April 13, 2010, and believed that her rights were being violated at the time of her arrest. (See Ex. G and Ex. H.)*

**RESPONSE:** Plaintiff does not dispute that she knew she was being charged with violating the eavesdropping statute hours after being arrested on April 13, 2010, the day of her arrest; Plaintiff denies that she was arrested for violating the eavesdropping statute, or that she knew on the day of her arrest, or until September 2012, that she was arrested, without probable cause, for allegedly threatening a public official. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. A ¶¶6, 11, Melongo Decl.)

22. *On April 27, 2010, Plaintiff was indicted for three (3) counts of recording phone conversations and three (3) counts of publishing the conversations for Plaintiff's recorded conversations with Taylor on Plaintiff's website (the "Eavesdropping Charges"). (Ex. A, ¶69.) Plaintiff alleges that Defendants Podlasek, Gunnigle, French, Rubino, Lesiak, Dillon and O'Hara singled out Plaintiff for prosecution of the Eavesdropping Charges out of vindictiveness and retaliation for posting the conversations on her website. (Id., ¶65.)*

**RESPONSE:** Not disputed.

23. *On May 5, 2010, Plaintiff was incarcerated because she could not make her $300,000 bail. (Id., ¶70.)*

**RESPONSE:** Plaintiff does not dispute that she was continuously incarcerated from her April 13, 2010 arrest (for allegedly threatening a public official – a fact she did not learn until September 2012) until and after May 5, 2010. (Pl.'s Ex. A ¶¶7, 11, Melongo Decl.) To the extent Fact No. 23 purports to state that she was not incarcerated until May 5, 2010, Plaintiff disputes it. Plaintiff does not dispute that she could not make her bail; her combined bail on both charges was $330,000, not $300,000. Plaintiff disputes that she was incarcerated "because" she could not make bail. She was incarcerated "because" of the baseless charges against her.

6

  24. *On October 20, 2011, Plaintiff was released from jail and placed on an electronic monitoring program. (Id., ¶79.)*

  **RESPONSE:** Not disputed.

  25. *On November 23, 2011, Judge Goebel removed Plaintiff from her electronic monitoring program, reinstated her bond, and ordered her back to jail. (Id., ¶¶80-81.)*

  **RESPONSE:** Disputed. On November 21, 2011, Judge Goebel *reinstated* Plaintiff's electronic monitoring and ordered her released from jail. (Pl.'s Ex. V, Nov. 21, 2011 Electronic Monitoring Order.) (At that time, Plaintiff had been improperly placed in jail based on defendant Podlasek's actions. (*See* Pl.'s Stmt. of Add'l Facts ¶¶23-24; Pl.'s Ex. A ¶9, Melongo Decl.; Pl.'s Ex. S at 2:8-10, 4:16-18, 5:3-7, 6:27-7:11, Nov. 10, 2011 Tr.; Pl.'s Ex. T, Cook County Sheriff Property Receipt.)) She later was released pursuant to the Court's order.

  26. *On May 8, 2012, the Seventh Circuit declared the Illinois Eavesdropping Act unconstitutional; on June 19, 2012, the Eavesdropping Charges against Plaintiff were dismissed. (Id., ¶¶85-86.)*

  **RESPONSE:** Plaintiff does not dispute when the Seventh Circuit declared the Illinois Eavesdropping Act unconstitutional in *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), but does dispute any implication that the 7th Circuit decision directly applied to her. Plaintiff disputes that the eavesdropping charges against her were dismissed on June 19, 2012. On June 19, 2012, Judge Goebel granted a motion to dismiss, but the charges were not officially dismissed until July 26, 2012. (Pl.'s Ex. E at 14, June 19, 2012 Transcript; Pl.'s Ex. F, July 26, 2012 Written Order.) Moreover, the State appealed the July 26, 2012 dismissal and continued to pursue its prosecution of Plaintiff until March 20, 2014, when the Illinois Supreme Court affirmed the dismissal. (Pl.'s Ex. G, State's Notice of Appeal; Pl.'s Ex. H, *People v. Melongo*, 2014 IL 114852.)

  27. *On July 29, 2014, Plaintiff was acquitted of the Computer Tampering Charges. (Ex. D, ¶8.)*

**RESPONSE:** Not disputed.

28. *On July 10, 2013, Plaintiff filed her original complaint in this matter, alleging claims against Defendants Robert Podlasek and Julie Gunnigle, Investigator Defendants, Sheriff Dart, Cook County, and Defendant French. (See Docket # 1).*

**RESPONSE:** Plaintiff does not know what "Investigator Defendants" means and does not admit any inference from such term. Plaintiff does not dispute that she filed her original complaint on July 10, 2013 and that Defendants Podlasek, Gunnigle, Dart, Cook County, and French, among others, were named as defendants.

29. *On August 16, 2013, the Court entered an order indicating that amendments to Plaintiff's Complaint would relate back to her July 10, 2013 original complaint for purposes of the statute of limitations so long as the amended complaint asserts claims or defenses that arose out of the conduct alleged in the original complaint. (Docket # 8.) At this time, the Court also appointed counsel for Plaintiff. (Id.)*

**RESPONSE:** Plaintiff does not dispute that the August 16, 2013 order was entered, that it recited law regarding the relation-back principle, and that it appointed counsel for Plaintiff. The order and its contents are not a material fact.

30. *Since that time, Plaintiff has had numerous counsel represent her in this matter. (Docket # 8, 15, 16, 21, 25, 105, 106, 121-123.)*

**RESPONSE:** Plaintiff does not dispute that more than one counsel has represented her from time to time in this case. That is not a material fact. Plaintiff disputes the reference to "numerous counsel," which is in any case irrelevant to the pending Motion.

31. *On June 5, 2014, Plaintiff, through her retained counsel, filed her First Amended Complaint in this matter. (Docket # 24.) On November 5, 2014, Plaintiff filed her Second Amended Complaint, alleging claims—for the first time—against newly named Defendants Roberts, Martin, and Spizzirri. (Docket # 48.)*

**RESPONSE:** Not disputed.

8

**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

1. On March 3, 2010, the Judge in Plaintiff's computer-tampering case ordered Plaintiff to undergo a psychological evaluation to determine whether she was fit to represent herself *pro se*. (Pl.'s Ex. I, March 3, 2010 Order.)

2. Shortly thereafter, Plaintiff posted on her website (www.illinoiscorruption.net) that "Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending she's psychologically unbalanced. This surprise will be known on April 14, 2010." The surprise was that she had retained a lawyer. April 14, 2010 was her next Court date. (Pl.'s Ex. A ¶3, Melongo Decl.; Pl.'s Ex. J at 28, Plaintiff's Website.)

3. In an earlier entry on the same page, Plaintiff referred to another "surprise" for a judge: "But little did [the chief judge] know that Annabel had a surprise in the form of 'substituting a judge as a right.'" This indicated that when Plaintiff referred to a "surprise," it had no threatening aspect. (Pl.'s Ex. A ¶4, Melongo Decl.; Pl.'s Ex. J at 11, Plaintiff's Website.)

4. On April 13, 2010, Plaintiff attended the ordered psychological evaluation with Defendant Markos and was later found fit to stand trial. (Pl.'s Ex. K, April 20, 2010 Psychological Evaluation Report.)

5. On April 13, 2010 at 12:30 p.m., members of the State's Attorney's Office, whom Plaintiff believes to be Defendants Podlasek and Gunnigle, contacted Defendant Dillon in order to have Plaintiff arrested for purportedly threatening a public official based on the comment on her website about a "surprise" for the judge. (Pl.'s Ex. C, FOIA Response.)

6. During Plaintiff's psychological evaluation with Defendant Markos, police officers interrupted the evaluation and spoke to Defendant Markos outside of the evaluation room. (Pl.'s Ex. A ¶5, Melongo Decl.)

9

7.	Immediately after returning to the evaluation after speaking with the police officers, Defendant Markos asked Plaintiff about the "surprise" statement. (Pl.'s Ex. A ¶5, Melongo Decl.)

8.	Plaintiff informed Defendant Markos that the "surprise" was that she had hired a lawyer who would appear at the next hearing on April 14, 2010. (Pl.'s Ex. A ¶5, Melongo Decl.; Pl.'s Ex. K, April 20, 2010 Psychological Evaluation Report.)

9.	When the psychological examination concluded, at approximately 12:45 p.m. several police officers arrested Plaintiff. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. A ¶6, Melongo Decl.)

10.	Plaintiff was transported to the Cook County Sheriff's Criminal Intelligence Unit. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. A ¶6, Melongo Decl.)

11.	When Plaintiffs asked the arresting officers why she was being arrested, they refused to answer. (Pl.'s Ex. A ¶6, Melongo Decl.)

12.	At 2:49 p.m. on April 13, 2010, after Plaintiff had already been arrested for purportedly threatening a public official, an arrest warrant was issued for Plaintiff based on her purportedly violating the Illinois eavesdropping statute based on facts unrelated to the "surprise" statement on her website. (Pl.'s Ex. D, April 13, 2010 Complaint for Arrest Warrant; Pl.'s Ex. C, FOIA Response.)

13.	Later on April 13, 2010, Plaintiff was informed that she was being charged with criminal eavesdropping. (Pl.'s Ex. A ¶6, Melongo Decl.)

14.	Plaintiff was never informed that the reason for her arrest was the "surprise" comment on her website and not the facts underlying the eavesdropping charges until she

received a copy of the police reports related to the arrest that were sent to her on September 27, 2012. (Pl.'s Ex. A ¶¶6, 11, Melongo Decl.)

15. From April 13, 2010 until approximately October 20, 2011, Plaintiff was held in jail in pretrial detention. (Pl.'s Ex. A ¶7, Melongo Decl.)

16. During that time, she was not permitted to see certain discovery information, including police reports, as required by state law. (Pl.'s Ex. L at 8:17-22, June 24, 2011 Tr.)

17. On September 20, 2011, after Plaintiff had discharged her criminal defense attorney, the attorney brought his files for Plaintiff's case to Court, pursuant to a prior court order. Defendant Podlasek argued that he as the prosecutor, should take custody of all discovery material in the file in order to redact personal information. The Court ordered Plaintiff's former attorney to separate privileged and non-privileged material for the next court date. (Pl.'s Ex. M at 2:20-3:17; 8:23-9:23; 14:4-15:14, Sept. 20, 2011 Tr.)

18. On October 5, 2011, Plaintiff's former attorney brought to court a box containing discovery material from the case and a file containing attorney-client privilege information. The court ordered the attorney to retain the attorney-client file and make a copy for plaintiff, and to turn over the box of discovery material to Defendant Podlasek to redact confidential information such as personal addresses, social security numbers, and credit card numbers. (Pl.'s Ex. N at 4:6-6:23, Oct. 5, 2011 Tr.)

19. On October 13, 2011, the Court ordered Plaintiff to be released into electronic monitoring under a program sponsored by the Sheriff's Women's Justice Programs; she was released and admitted to the program on October 20, 2011. (Pl.'s Ex. O, Oct. 13, 2011 Electronic Monitoring Order; Pl.'s Ex. P, Nov. 9, 2011 Sheriff's Women's Justice Programs Report.)

20. Plaintiff sought and received permission for movement from the Sheriff's Women's Justice Programs to work on her defense to pending charges on November 7, 2011. (Pl.'s Ex. Q, Nov. 7, 2011 Permission for Movement.)

21. On November 7, 2011, Plaintiff visited her former attorney's office for a prearranged meeting for the purpose of picking up the attorney-client file he had retained. While at her former attorney's office, she was given, reviewed, and took with her when she left the attorney-client file that had been marked with a sticky note stating "Copy File – Give to Annabel Melongo." (Pl.'s Ex. A ¶8, Melongo Decl.; Pl.'s Ex. R, Copy of Sticky Note.)

22. On November 9, 2011, Plaintiff's counselor and a supervisor at the Sheriff's Women's Justice Programs signed a report that stated that she was "an active participant and appears to be responding well to treatment offered to her." The report does not say that Plaintiff's trip to her attorney's office two days before violated the terms of her electronic monitoring. (Pl.'s Ex. P, Nov. 9, 2011 Sheriff's Women's Justice Programs Report.)

23. The next day, prior to a scheduled court hearing on November 10, 2011, Defendant Podlasek filed a motion to revoke Plaintiff's electronic monitoring because she had: (a) visited her attorney's office; and (b) taken her legal file. The Judge ordered that Plaintiff had until Monday, November 14, 2011 to respond to the motion. (Pl.'s Ex. S at 2:8-10, 4:16-18, 5:3-7, 6:27-7:11, Nov. 10, 2011 Tr.)

24. Despite the Judge's order, Defendant Podlasek had Plaintiff arrested later in the day on November 10, 2011. After being arrested, Plaintiff asked the reason for her arrest and was told that she stole some documents. (Pl.'s Ex. A ¶9, Melongo Decl.; Pl.'s Ex. T, Cook County Sheriff Property Receipt.)

25. At the November 14, 2011 hearing scheduled for the motion to revoke Plaintiff's electronic monitoring, Plaintiff attempted to inform the Court of Defendant Podlasek's actions on November 10, 2011 that led to her improper arrest. The Court instead said that Plaintiff could return to electronic monitoring if she brought the file from her former attorney to the next court hearing, to which Plaintiff agreed. The Court refused to hear Plaintiff describe what Defendant Podlasek had done to cause her improper arrest. (Pl.'s Ex. U at 2:12-22; 5:2-24; 6:22-7:6, Nov. 14, 2011 Tr.)

26. An order re-instating Plaintiff's electronic monitoring was entered on November 21, 2011. (Pl.'s Ex. V, Nov. 21, 2011 Electronic Monitoring Order.)

27. On November 30, 2011, Plaintiff submitted to the Court the file from her former lawyer. (Pl.'s Ex. W at 2:5-10, Nov. 30, 2011 Tr.)

28. On December 7, 2011, Defendant Podlasek tendered to Plaintiff a portion of the discovery files from her former lawyer, which did not reflect any redactions. The Court again refused to allow Plaintiff to explain Defendant Podlasek's involvement in her improper arrest and additional nearly two-week detention. (Pl.'s Ex. X at 2:23-5:8; 9:1-21, Dec. 7, 2011 Tr.)

29. On January 11, 2012, Defendant Podlasek tendered to Plaintiff additional discovery files from her former lawyer, which did not reflect any redactions. (Pl.'s Ex. Y at 3:6-12, Jan. 11, 2012 Tr.)

30. On January 23, 2012, Defendant Podlasek tendered to Plaintiff additional discovery files, stating some had been redacted. (Pl.'s Ex. Z, at 2:23-3:7, Jan. 23, 2012 Tr.)

31. On February 3, 2012, Defendant Podlasek tendered to Plaintiff what he claimed to be the remainder of her former lawyer's files, stating some had been redacted. However, despite nearly four months having elapsed since Plaintiff's former attorney turned over the discovery

files to Defendant Podlasek, Plaintiff noted and stated to the Court that numerous documents containing personal information like credit card numbers had *not* been redacted, while non-personal information *had* been redacted. Defendant Podlasek took back some documents for further redaction. (Pl.'s Ex. AA at 3:8-14, 5:5-6:15, 12:22-23, Feb. 3, 2012 Tr.)

32. On February 14, 2012, Defendant Podlasek informed the Court that he had not completed the additional redactions. Plaintiff informed the Court that Defendant Podlasek had removed entire subpoena responses from the discovery material. (Pl.'s Ex. BB at 3:22-24, 5:18-6:4, Feb. 14, 2012 Tr.)

33. Plaintiff acted diligently to uncover the information that had been removed, before Plaintiff had the opportunity to see documents in her former attorney's discovery files held by Defendant Podlasek that contained such information. Between February 2012 and July 2012, Plaintiff sought copies of documents related to her criminal case from the State's Attorney's Office. In that period she also re-issued subpoenas previously issued by her former lawyer, which the Court allowed in part, over Defendant Podlasek's objection on June 4, 2012. (Pl.'s Ex. CC at 13:6-14:20, 17:20-21:17, June 4, 2012 Tr.; Pl.'s Ex. A ¶10, Melongo Decl.)

34. On July 27, 2012, Plaintiff issued a subpoena to the Cook County Sheriff's Police seeking documents related to her April 13, 2010 arrest. That subpoena was quashed at the request of Defendant Podlasek. (Pl.'s Ex. DD, July 27, 2012 Subpoena; Pl.'s Ex. A ¶12, Melongo Decl.)

35. In or around September 2012, Plaintiff made a FOIA request to the Cook County Sheriff's Police for records related to her April 13, 2010 arrest. She received a response dated September 27, 2012 that contained the police reports related to her arrest. This was the first time Plaintiff had seen the police reports. Upon examining the police reports, Plaintiff learned for the

first time that she had been arrested on April 13, 2010 for allegedly threatening a public official. (Pl.'s Ex. C, FOIA Response; Pl.'s Ex. A ¶11, Melongo Decl.)

36. The eavesdropping charges against Plaintiff were dismissed by written order entered on July 26, 2012. (Pl.'s Ex. F, July 26, 2012 Written Order.)

37. The State appealed the July 26, 2012 dismissal of the eavesdropping charges against Plaintiff. (Pl.'s Ex. G, State's Notice of Appeal.)

38. The State continued to pursue its eavesdropping charges against Plaintiff until the Supreme Court of Illinois affirmed the dismissal of those charges on March 20, 2014. (Pl.'s Ex. H, *People v. Melongo*, 2014 IL 114852.)


Dated: November 22, 2016

Respectfully submitted,

s/ William J. Katt
William J. Katt

Michael L. Shakman
Daniel M. Feeney
William J. Katt
Julia K. Schwartz
Miller Shakman & Beem LLP
180 N. LaSalle St., Suite 3600
Chicago, Illinois 60601

*Counsel for Plaintiff*