## INDEX OF PLAINTIFF'S EXHIBITS

**Exhibit**          **Document**

A.          Declaration of Annabel K. Melongo
B.          April 13, 2010 Criminal Complaint
C.          September 27, 2012 FOIA Response
D.          April 13, 2010 Complaint for Arrest Warrant
E.          June 19, 2012 Transcript
F.          July 26, 2012 Order
G.          August 9, 2012 State's Notice of Appeal of July 26, 2012 Ruling
H.          March 20, 2014 *People v. Melongo*, 2014 IL 114852 (Ill.)
I.          March 3, 2010 Order
J.          Copies of Plaintiff's Website (www.illinoiscorruption.net)
K.          April 20, 2010 Psychological Evaluation Report
L.          June 24, 2011 Transcript
M.          September 20, 2011 Transcript
N.          October 5, 2011 Transcript
O.          October 13, 2011 Electronic Monitoring Order
P.          November 9, 2011 Sheriff's Women's Justice Programs Report
Q.          November 7, 2011 Permission for Movement
R.          Copy of Sticky Note
S.          November 10, 2011 Transcript
T.          November 10, 2011 Cook County Sheriff Property Receipt
U.          November 14, 2011 Transcript
V.          November 21, 2011 Electronic Monitoring Order
W.          November 30, 2011 Transcript
X.          December 7, 2011 Transcript
Y.          January 11, 2012 Transcript
Z.          January 23, 2012 Transcript
AA.          February 3, 2012 Transcript
BB.          February 14, 2012 Transcript
CC.          June 4, 2012 Transcript
DD.          July 27, 2012 Subpoena to Cook County State's Attorney's Office

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANNABEL K. MELONGO ) | Case No.13-CV-4924 |
| ) | |
| Plaintiff, ) | |
| ) | Honorable Judge John Z. Lee |
| v. ) | |
| ) | Magistrate Judge Sheila M. Finnegan |
| ASA ROBERT PODLASEK, ET AL. ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF ANNABEL K. MELONGO IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Annabel K. Melongo states as follows:

1.      The matters stated in this Declaration are true of my personal knowledge.

2.      I was not present at the hearing on June 18, 2008 at which I was purportedly arraigned for computer tampering.

3.      The "surprise" referenced in the statement on my website illinoiscorruption.net – "Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending she's psychologically unbalanced.  This surprise will be known on April 14, 2010." – was that I had retained a lawyer.  April 14, 2010 was my next court date.

4.      I used the word "surprise" on my website in other instances, none of which conveyed a threat of any sort.

5.      During my psychological examination with Dr. Markos on April 13, 2010, police officers interrupted the examination by knocking on the door.  Dr. Markos left the room with the officers for about 10 minutes.  When Dr. Markos returned to the room, he immediately began questioning me about the statement on my website that I had a "big surprise in store for the

court." I explained to Dr. Markos that the "surprise" was that I had retained a lawyer who would appear at the next hearing scheduled for April 14, 2010.

6.      When the April 13, 2010 psychological examination concluded, I opened the door to leave and was immediately arrested by multiple police officers. I asked the officers why I was being arrested and they refused to answer. They transported me to the Cook County Sheriff's Criminal Intelligence Unit for questioning. While at the Criminal Intelligence Unit on April 13, 2010, I was informed that I was being charged with criminal eavesdropping.

7.      I was jailed continuously from April 13, 2010 until approximately October 20, 2011. (I also was jailed at other times.)

8.      On November 7, 2011, I visited my former attorney's office in a prearranged meeting for the purpose of picking up the attorney-client file he had retained. While at the attorney's office, I was given, reviewed, and took with me when I left the attorney-client file that had been marked with a sticky note stating "Copy File – Give to Annabel Melongo."

9.      On November 10, 2011, after the court hearing at which the judge had given me until November 14, 2011 to respond to the prosecution's motion to revoke my electronic monitoring, I was arrested. After being arrested, I asked the reason for the arrest and was told that I stole some documents. I was placed in Cook County jail.

10.     Between February 2012 and July 2012, I sought copies of documents related to my criminal case from the State's Attorney's Office. When I was unable to obtain all documents related to my criminal case, I served a subpoena and later a FOIA request on the Cook County Sheriff's Police.

11.     I did not receive a copy of the police reports related to my April 13, 2010 arrest until I received the FOIA response from the Cook County Sheriff's Office dated September 27,

2012. Upon examining the police reports, I learned for the first time that I had been arrested on April 13, 2010 for allegedly threatening a public official.

12. My July 27, 2012 subpoena to the Cook County Sheriff's Police was quashed by the Court at the request of Defendant Podlasek.

13. I was originally charged in 2006 and indicted in 2007 with two counts of computer tampering. The State included three charges when I was re-indicted in May 2008.

14. The document attached to my Local Rule 56.1(b) Responsive Statement of Facts ("Statement of Facts") as Exhibit C is a true and accurate copy of the FOIA response dated September 27, 2012 that I received from the Cook County Sheriff's Office.

15. The documents attached as Exhibits B, D through I, K through O, S, and U through DD to my Statement of Facts are true and accurate copies of transcripts, orders, reports, and filings in the underlying criminal proceedings against me.

16. The document attached as Exhibit J to my Statement of Facts is a true and accurate copy of a page on the website I maintained, www.illinoiscorruption.net, as of the March 8, 2010.

17. The documents attached as Exhibits P and Q to my Statement of Facts are true and accurate copies of official records related to my electronic monitoring, including a copy of the November 9, 2011 report prepared by the Sheriff's Women's Justice Programs (Exhibit P) and the November 7, 2011 permission for movement from the Sheriff's Women's Justice Programs (Exhibit Q).

18. Exhibit R to my Statement of Facts is a true and accurate copy of the adhesive note that was attached to the attorney-client file given to me on November 7, 2011.

3

19.     Exhibit T to my Statement of Facts is a true and accurate copy of the Cook County Sheriff Property receipt dated November 10, 2011 related to my arrest on that day.

20.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Annabel K. Melongo

# EXHIBIT B

BR. 98 _____                                    Exhibit A
(Court Branch)              (Court Date)

FELONY                                              CCCR N662-125M-6/28/02 (23440565)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of Illinois
Plaintiff                          COMPLAINT FOR PRELIMINARY EXAMINATION

v.                                 NO. 10-1-110476-01

ANNABEL K. MELONGO
Defendant

PAMELA TAYLOR
(Complainant's Name Printed or Typed)                    complainant, now appears before

The Circuit Court of Cook County and states that

ANNABEL K. MELONGO        9600 C. HAMILTON Ct. DESPLAINES IL 60016 has, on or about
(Defendant)               (Address)

DECEMBER 15, 2009          at 2650 S. CALIFORNIA CHICAGO, IL 60608
(Date)                        (Place of offense)

committed the offense of EAVESDROPPING                                        in that he/she

USED A DEVICE TO RECORD A CONVERSATION WITH PAMELA TAYLOR OF THE

COOK COUNTY COURT REPORTERS OFFICE WITHOUT HER CONSENT AND DIVULGED

SUCH INFORMATION

in violation of 720        ILCS        5        /14-2 (a)+(c)
(Chapter)                       (Act)             (Section)

```
┌──┬──┬──┬──┬──┬──┬──┐
│  │  │  │  │  │  │  │
└──┴──┴──┴──┴──┴──┴──┘
```
                                            _____
                                               (Complainant's Signature)
CHARGE CODE

STATE OF ILLINOIS }            ENTERED       _____
COOK COUNTY      } ss.                      (Complainant's Address)    (Telephone No.)

                             APR 13 2010     _____
                                             (Complainant's Name Printed or Typed)
being first duly sworn, _____ on oath, deposes and says the he/she read the foregoing
complaint by him/her subscribed and that the same is true.  CLERK OF CIRCUIT COURT
                                             _____
                                               (Complainant's Signature)

Subscribed and sworn to before me _____ , _____

                                             _____
                                               (Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there
is probable cause for filing same.  Leave is given to file said complaint.

Summons Issued,     Judge _____
    or                                                        Judge's No.
Warrant Issued,     Bail set at, _____
    or
Bail set at _____ Judge _____
                                                              Judge's No.

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ALL FIELDS MARKED IN **BOLD** ARE MANDATORY  **STATES ATTORNEY**

| Transaction Control Number |
| --- |

**Document Control Number**  Ref. DCN

017845559

**Arresting Agency ORI - NCIC**

IL | 0 | 1 | 6 | 9 | Q | 0 | 0

LS10070017845559

**Subjects Last Name**

MELONGO

**First Name**

ANNABEL

Middle Name / Suffix

K

**Date of Birth**

■ / ■ / 1972

Place of Birth

XX

State Identification Number

IL

Chicago IR#

FBI #

**Sex** F  **Race** B  **Height** 5 0 5  **Weight** 1 2 0  **Hair** BRO  **Eye** BRO  **Skin** DRK

Social Security Number

Drivers License Number

DL State

Photo Available  Y  N

Palm Prints  Y  N

FOID#

Basis For Caution:

Alias Last Name

Alias First Name

Alias Middle Name/Suffix

Alias Date of Birth

Scars, Marks, Tattoos

Occupation  UNKNOWN

Employer

Employer Address

Residence of Person Fingerprinted

9200 S HAMILTON DES PLAINES, IL 60016

**Agency Case Number**

10-509350

Indictment Case Number

**Date of Arrest**

04 / 13 / 2010

Officer Badge #

5043

City of Pros.

016

Adult By Court Order  Yes

Arrestee Armed With (Code Table on Back)

X 1 | 11 | 12 | 13 | 14 | 15 | 16 | 17

Choose Maximum of two

Auto Weapon  Y  N

Released w/o charging  Yes

Bond Date  /  /

Receipt Number

Bond Amount

Cash Amount

Bond Type (Check box)  No Bond  Driv. Lic  Recognizance  DUI  Cash  Other

**Date Fingerprinted**

04 / 13 / 2010

States Attorney ORI - NCIC

IL  A

Post Sentence Fingerprints  Yes

| Count | Statute Citation/AOIC Code | C O D E | C L A S S | Offense Description | Warrant County | Case Number | Filing Decision |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | **Check Filing Decision** |
| 001 | 720 ILCS 5.0/14-2-A-1 | O | 4 | | | | Filed  Not Filed |
| 001 | | | | | | | Modified  Added |
| 001 | Date of Offense 04 / 13 / 2010 | | | Domestic Violence (Please Check)  Yes  No | Arrest Type (Back) | | Decision Date  /  / |
| | | | | | | | **Check Filing Decision** |
| 002 | | | | | | | Filed  Not Filed |
| 002 | | | | | | | Modified  Added |
| 002 | Date of Offense  /  / | | | Domestic Violence (Please Check)  Yes  No | Arrest Type (Back) | | Decision Date  /  / |
| | | | | | | | **Check Filing Decision** |
| 003 | | | | | | | Filed  Not Filed |
| 003 | | | | | | | Modified  Added |
| 003 | Date of Offense  /  / | | | Domestic Violence (Please Check)  Yes  No | Arrest Type (Back) | | Decision Date |

melongo

Page Number 1 of 1

IL493-0692

Copy #2 States Attorney Copy

ISP 6-402 (3/04)

# E X H I B I T   C

PHONE (312) 603-6444

# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS

RICHARD J. DALEY CENTER
50 W. WASHINGTON - ROOM 704
CHICAGO, IL 60602
**THOMAS J. DART**
SHERIFF

September 27, 2012

Ms. Annabel N. Melongo
P.O. Box 5658
Chicago, IL 60680

**Delivery via E-mail: melongo_annabel@yahoo.com**

    RE:    **FOIA- (Records Regarding Eavesdropping Charge)**

Dear Ms. Melongo:

Thank you for contacting the Cook County Sheriff's Office (CCSO) pursuant to the Illinois Freedom of Information Act (FOIA), 5 ILCS 140/1 *et seq.* (2010).

On September 20, 2012 the CCSO received your FOIA request regarding the above-captioned matter.

Enclosed, please find a copy of the results generated by the Cook County Sheriff's Office (CCSO), based on the information provided. Please note that private information has been redacted according with FOIA.

If you have any further questions or concerns related to this request, please feel free to contact me.

Kind Regards,

Blagodat Kondeva
FOIA Officer

Enclosures


Printed on Recycled Paper

# OFFENSE/INCIDENT REPORT
## COOK COUNTY SHERIFF'S OFFICE

**1. Case Report Number**

**10-509350**

| 2. Offense/Incident | 3. Classification | 4. UCR Code | 5. Location Code | 6. Beat of Occurrence |
|---|---|---|---|---|
| Threatening Public Official | Intimidation | 3969 | 0999 | CCB |

| 7. Address/Location of Occurrence: (Township) | 8. Type of Place of Occurrence | 9. Date of Occurrence | 10. Time of Occurrence | 11. Unit Assigned |
|---|---|---|---|---|
| 2650 South California, Chicago IL 60608 | CCB, Court Facility | 13 APR 2010 | 1230hrs | 1122 |

| 12. Victim Name (Last, First, Middle) (Firm or Business Name) | 13. Sex | 14. Race | 15. DOB | 16. Home Phone | 17. Business Phone | 18. Pager or Cell TX |
|---|---|---|---|---|---|---|
| UNKNOWN | | | | | | |

| 19. Victim Address | 20. Address of Employment | 21. Sobriety of Victim |
|---|---|---|
| UNKNOWN | | HBD ☐Yes ☐No |

| 22. Victim Injured | 23. Treated At: | 24. Treated By: | 25. Medical Examiner Notified | Time Notified | 26. |
|---|---|---|---|---|---|
| ☐Yes ☐No | | ☐Released | ☐DNA | | ☐UNFOUNDED |

27. Person(s) Involved | Incident Codes: | V – Victim | W – Witness | G – Guardian | MP – Missing Person | C – Complainant | PN – Person Notified
S – Suspect | J – Juvenile | SP – Spouse | MJ – Missing Juvenile | P – Parent | O – Other (Specify)

| Code | Name (Last/First/Middle) | Sex | Race | DOB | Address | Phone Numbers (Include A/C) |
|---|---|---|---|---|---|---|
| S | Melongo, Annabel K. | F | B | ████ 1972 | 9200 Hamilton Court, Apartment C Des Plaines, Illinois 60016 | Home: Business/Pg: |
| | | | | | | Home: Business/Pg: |
| | | | | | | Home: Business/Pg: |

**28. Suspect or Missing Person Description**

| Code | Age | Wt. | Ht. | Build | Hair Color | Style | Eyes | Complexion | Nickname or Alias/Clothing/Distinguishing Marks, Tattoos, Piercings, Place Employed, Other Phone Number, Associates, Places Known to Frequent, or Other Pertinent Information |
|---|---|---|---|---|---|---|---|---|---|
| S | 37 | 120 | 505 | MED | BLK | DREAD | BRO | DARK | IR#1822117 |

**29. Vehicle Information** DNA   Message Number: DNA   ☐ISPERN ☐Type 3

| Code | Color | Year | Make | Model | Body Style | License No. | State | Year | Vehicle ID Number | Towed | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNA | | | | | | | | | | | |
| DNA | | | | | | | | | | | |

| Code | Distinguishing Damage/Characteristics | Insured By: | Code | Distinguishing Damage/Characteristics | Insured By: |
|---|---|---|---|---|---|
| | | | | | |

30. Weapon(s) ☐ Used ☐ Displayed ☐ Club or Bludgeon Instrument
☐ Handgun ☐ Rifle ☐ Shotgun ☐ Knife/Other Cutting Instrument

**31. Other means of Attack (or Possible Tool)**

32. Property Taken by Offender ☐Yes ☐No (Describe in Narrative)
33. Property Recovered ☐Yes ☐No (Describe in Narrative) Inventory Number(s)
34. Evidence Taken By R/O ☐Yes ☐No Inventory Number(s)

| 35. Arrestee(s) Name | Sex | Race | DOB | Charges | (Section) | (Description) | AB Number |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**36. Narrative**

On 13 APR 2010 at 1230hrs Sergeant James Dillon #1068 was notified by the Cook County State's Attorney's Office regarding subject Annabel MELONGO IR#1822117 inappropriate communication on her website, www.illinoiscorruption.net. The inappropriate communication indicated, "Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending she's psychologically unbalanced. The surprise will be known on APRIL 14th, 2010." Please refer to supplemental reports to follow under CR10-509350.

*Case Report Number* 10-509350

| 37. Name/Star No. of Investigator Notified | Time Notified | 38. Name/Star No. of Investigator on Scene | Time Arrived | 39. Name/Star of Supervisor on Scene | Time Arrived |
|---|---|---|---|---|---|
| Sgt. James Dillon #1068 | 1230hrs | Sgt. James Dillon #1068 Inv. Antonio Rubino #5043 | 1230hrs | Sgt. James Dillon #1068 | 1230hrs |

| 40. Reporting Officer Name/Star No. (Print) | 41. Assigned By: | 42. Date & Time Report Assigned | 43. Date and Time Report Approved |
|---|---|---|---|
| Investigator A. Rubino #5043 | ☐CC ☒Supv. ☐On View ☐Citizen | 13 APR 2010 1230hrs | 13 APR 2010 1700hrs |

| 44. Reporting Officer's Signature | 45. Date & Time Arrived | 46. Date & Time Completed | 47. Supervisor Approving (Signature/Star No.) |
|---|---|---|---|
| ___ 5043 | 13 APR 2010 1230hrs | 13 APR 2010 1700hrs | Sergeant J. Dillon #1068 |

COOK COUNTY SHERIFF'S OFFICE

# SUPPLEMENTARY REPORT

| 1. AREA/BEAT | 2. PAC # | 3. CASE REPORT # |
|---|---|---|
| 0999 | 2002J | 10-509350 |

| 4. ORIGINAL OFFENSE & CLASSIFICATION | 5. RECLASSIFIED TO | 6. IS FURTHER OFFICE ACTION NECESSARY |
|---|---|---|
| Threatening a Public Official | NA | YES ☐  NO ☒ |

| 7. VICTIM OR FIRM NAME | 8. ADDRESS | 9. TELEPHONE |
|---|---|---|
| Unknown | 3026 South California Chicago, Illinois 60608 | 773.869■■ |

| 10. LOCATION OF INCIDENT | 11. DATE AND TIME OF ORIGINAL OCCURANCE | 12. DATE AND TIME INCIDENT REPORTED | 13. STATUS |
|---|---|---|---|
| Criminal Courts Facility 2650 S. California, Chicago Illinois 60608 | 13 APR 2010 1230hrs | 13 APR 2010 1230hrs | CLEARED ☐ PENDING ☐ UNFOUNDED ☐ FILED ☒ |

14. IF CASE CLEARED, HOW CLEARED

ARREST & PROSECUTION ☐   EXCEPTIONAL ☒ EXPLAIN

## THIS IS A CRIMINAL INTELLIGENCE UNIT INVESTIGATION

DATE & TIME ASSIGNED:     13 APR 2010     1230hrs

IN CUSTODY:     MELONGO, ANNABEL K.   IR#1822117
2650 South California, Chicago Illinois 60608
Female/Blaack   DOB: ■■■■ 1972

WARRANT:     Warrant #10-1-110476

CHARGES:     Pending Investigation
Threatening a Public Official

TAKEN TO:     Loyola Hostipal
2160 South First Avenue
Maywood, Illinois 60153

LOCATION:     Criminal Courts Facility
2650 South California, Chicago Illinois 60608

MANNER:     Subject Annabel MELONGO IR#1822117 was detained
for investigation by the Cook County Sheriff's
Department Criminal Intelligence Unit CCSD-CIU for
inappropriate communication. CCSD-CIU was notified
by the Cook County State's Attorney's Office of an
active arrest warrant for MELONGO.

PROPERTY TAKEN:     One (1) cruzer micro 2.0gb flash drive (SW106571)
One (1) nokia cellular telephone (SW106571)
Non Evidence Property Inventory #03432-10

20. CASE REPORT # 10-509350

**CONTINUED═══➡**

| 15. REPORTING OFFICER(S) TYPE OR PRINT | STAR # | | STAR # | 16. DATE & TIME OF REPORT |
|---|---|---|---|---|
| Antonio Rubino | 5043 | | | 15 APR 2010     1100hrs |

| 17. REPORTING OFFICER(S) SIGNATURE | STAR # | | STAR # | 18. SUPERVISOR APPROVING SIGNATURE |
|---|---|---|---|---|
| | 5043 | | | #7068 |

COOK COUNTY SHERIFF'S OFFICE

**CONTINUATION SHEET**

| 2. CASE REPORT # |
|---|
| **10-509350** |

| 2. PAGE NUMBER | 3. OFFENSE | 4. CLASSIFICATION | 5. SUBURBAN COMPLAINT NO. |
|---|---|---|---|
| 2 of 3 | Threatening | Public Official | DNA |

## THIS IS A CRIMINAL INTELLIGENCE UNIT INVESTIGATION

PERSONNEL ASSIGNED:

Investigator A. Rubino #5043
Investigator R. Lesiak #5000
Cook County Sheriff's Criminal Intelligence Unit
3026 South California, Chicago, Illinois 60608-bldg. #5
773.869.███
Cook County State's Attorney's Office
Financial Crimes Unit
Investigator O'Hare
312.603.███

### INVESTIGATION and ARREST was CONDUCTED on 13 APR 2010

At 1230hrs Sergeant James Dillon #1068 was notified by the Cook County State's Attorney's Office regarding subject Annabel MELONGO IR#1822117 inappropriate communication on her website, www.illinoiscorruption.net. The inappropriate communication indicated, "Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending she's psychologically unbalanced. The surprise will be known on APRIL 14th, 2010".

At approximately 1245hrs MELONGO was detained on the 10th floor of the psychological evaluation unit, located at the Criminal Courts Facility, 2650 South California, Chicago Illinois 60608. At approximately 1300hrs MELONGO refused to make a statement to the Criminal Intelligence Unit investigators regarding said comment she posted on her webpage. As a result of this investigation, the Cook County State's Attorney's Office (CCSAO) Financial Crimes Unit notified the Criminal Intelligence Unit that MELONGO had an active arrest warrant for eavesdropping. R/I and Investigator Lesiak #5000 processed MELONGO on the arrest warrant for eavesdropping. A Warrant Service Report was complete under CR10-509371. United States Deputy Marshals McPherson and Wolenza from the Northern Illinois Judicial Threat Assessment Task Force attempted to interview MELONGO in reference to a post on MELONGO's website regarding Judge Leftko.

At approximately 1600hrs CCSAO Investigator O'Hare arrived at the CIU Office and stated that she had a search warrant for MELONGO's home, computer and cellular telephone. As a result of the search warrant #SW106571 one cruzer micro 2.0gb flash drive and one nokia cellular telephone was turned over to Investigator O'Hare. Said property was with MELONGO at the time of the investigation.

At approximately 1700hrs MELONGO requested medical treatment. Investigators Pagani #5042 and McCaffery #499 transported MELONGO to Loyola Hospital located at 2160 South First Avenue, Chicago Illinois 60153. MELONGO was diagnosed by Loyola Hospital with a headache and was transported to the Maywood lockup without further incident.

| 17. REPORTING OFFICER / SIGNATURE | STAR # |
|---|---|
| A. Rubino | 5043 |

| COOK COUNTY SHERIFF'S OFFICE | | | 2. CASE REPORT # |
|---|---|---|---|
| **CONTINUATION SHEET** | | | **10-509350** |

| 2. PAGE NUMBER | 3. OFFENSE | 4. CLASSIFICATION | 5. SUBURBAN COMPLAINT NO. |
|---|---|---|---|
| 3 of 3 | Threatening | Public Official | DNA |

### THIS IS A CRIMINAL INTELLIGENCE UNIT INVESTIGATION

At approximately 1900hrs CIU went to 9600 Apt. C Hamilton Court, Des Plaines Illinois 60016 to execute search warrant #SW106571 and determined that said address didn't exist. CIU investigators went to MELONGO's address per Secretary of State records of 9200 Hamilton Court, Apt. C Des Plaines Illinois 60016. Sgt. Dillon contacted the landlord of said property, Tony at 708.███████. Tony stated that she hasn't lived at said address since last year. CIU informed investigator O'Hare of said facts and concluded the investigation at this time.

### CASE CLEARED AND CLOSED BY ARREST

| 17. REPORTING OFFICER / SIGNATURE | | STAR # |
|---|---|---|
| A. Rubino | | 5043 |

# WARRANT SERVICE REPORT
COOK COUNTY SHERIFF'S POLICE DEPARTMENT

**CLASSIFICATION:**
- ☐ LODGE
- ☑ SERVICE
- ☐ RECALL
- ☐ OTHER:
- ☐ UNABLE TO LOCATE
- ☐ EXTRADITION

| DATE WARRANT ISSUED | DATE/TIME OF SERVICE | LOCATION OF SERVICE |
|---|---|---|
| 13 APR 2010 | 13 APR 2010/1300hrs | 3026 South California, Chicago IL 60608 |

| NAME (LAST) | (FIRST) | (MIDDLE) | TYPE OF WARRANT: |
|---|---|---|---|
| MELONGO | ANNABEL | K | ☐ INDICT ☐ VOP ☑ DISTRICT ☐ OUT OF STATE ☐ OUT OF COUNTY |

| WARRANT NUMBER(S). | WARRANT CHARGES: |
|---|---|
| 10-1-110476 | Eavesdropping 720ILCS5/14-2(a)&(c) |

| ISSUING AUTHORITY (MUNICIPALITY) & DISTRICT | JAIL # | IR # | FBI # | SID # |
|---|---|---|---|---|
| Cook County, Illinois | UNKNOWN | 1822117 | 835778HC6 | IL56034810 |

| RESIDENCE ADDRESS | RESIDENCE PHONE | MARITAL STATUS: |
|---|---|---|
| 9200 Hamilton Court Apt. C, Des Plaines IL 60016 | UNKNOWN | ☐ SINGLE ☐ MARRIED |

| PLACE OF BIRTH | AKA | SOCIAL SECURITY # | DRIVERS LICENSE # & STATE OF ISSUE |
|---|---|---|---|
| UNKNOWN | UNKNOWN | ▮▮▮4516 | M45201172827 |

| SEX | RACE | AGE | DOB | HT. | WT. | HAIR | EYES | PLACE OF EMPLOYMENT | OCCUPATION |
|---|---|---|---|---|---|---|---|---|---|
| F | B | 34 | 08 / 10 / 72 | 505 | 120 | BLK | BRO | UNKNOWN | UNKNOWN |

| AMOUNT OF BOND/RECEIPT # | COURT DATE | LOCATION OF COURT |
|---|---|---|
| $30,000.00 (D) | 14 APR 2010 | 2650 S. California, Chicago IL 60608 |

| MARKS OR DEFORMITIES | WHO NOTIFIED OF DETENTION (LIST AGENCY & CONTACT) | PHONE # WITH AREA CODE |
|---|---|---|
| UNKNOWN | | |

| LODGE SECTION ONLY | DATE/TIME LODGED | LOCATION LODGED | NAME SUSPECT USED |
|---|---|---|---|
| PERSON WARRANT LODGED WITH | | SIGNATURE OF PERSON RECEIVING WARRANT | |

| RECALL SECTION ONLY | DATE OF QUASH | AUTHORITY | PERSON AUTHORIZING |
|---|---|---|---|
| REINSTATEMENT DATE | ACKNOWLEDGED BY | CLERKS OFFICE | PROBATION PAGE NUMBER |

**NARRATIVE:**

On 13 APR 2010 at approximately 1230hrs Sgt. Dillon #1068 was notified by the Cook County State's Attorney's Office regarding subject Annabel MELONGO IR#1822117 inappropriate communication on her website, www.illinoiscorruption.net. Subject was transported to the Cook County Sheriff's Criminal Intelligence Unit for said investigation under CR10-509350. At approximately 1300hrs notification was made to the Criminal Intelligence Unit regarding subject Annabel MELONGO that an active arrest warrant was issued for eavesdropping. Refer to supplemental reports to follow under CR10-509350.

CASE REPORT # 10-509371

CB # 17845559

| 1st REPORTING OFFICER & STAR (PRINT & SIGN) | 2nd REPORTING OFFICER & STAR (PRINT & SIGN) | SUPERVISOR'S SIGNATURE |
|---|---|---|
| A. Rubino #5043 | | #7068 |

WHITE COPY: CCSPD RECORDS / YELLOW COPY: PROBATION (IF VOP) / PINK COPY: CCSPD FUGITIVE WARRANTS / GOLDENROD COPY: COURT COPY

CCSPD FORM 05-0079

| COOK COUNTY SHERIFF'S POLICE GENERAL PROGRESS REPORT INVESTIGATIONS SECTION | Date of Original Case Report | | | Date of This Report | | | C.R. # |
|---|---|---|---|---|---|---|---|
| | Day | Month | Year | Day | Month | Year | |

OFFENSE CLASSIFICATION - LAST PREVIOUS REPORT - VICTIM'S NAME AS SHOWN ON CASE REPORT

This form is designed for recording hand or typewritten notes and memoranda which are made during the conduct of investigations, including but not limited to: witness and suspect interview notes, on-scene canvas notes, and any handwritten personal notes made by investigators during the field investigation of violent crimes which are used to prepare official Department case reports.

As a result of the investigation w/ Ankelle, C.I.U. was Notified of An Arrest Warrant for Her for eavesdropping. CCSAO INV O'Hare came to the ciu office and stated she had a SW for Annabel K Melongo. Person Home & Computer.

As a result of the search warrant # SW106571 one Cruzer micro 2.0 GB thumb drive & one Nokia Adtt cell phone was turned over to INV O'Hare. Above Property was with Annabelle M @ the time of the investigation.

CIU went to 9600 C. Hamilton Desplain. IL to execute SW# SW106571. No such Address existed. C.I.U went to the address Listed on Annabelle. BO of 9200 C Hamilton Desplain. Per the owner Tony @ 708? ▮▮▮▮▮ NS Lives @ seven. CIU informed ASA of SW. and concluded investigation @ this time

| REPORTING OFFICER'S SIGNATURE # | RECEIVED BY SUPERVISOR/STAR # | DAY-MONTH-YEAR-TIME |
|---|---|---|

**PROPERTY INVENTORY**
**COOK COUNTY SHERIFF'S POLICE DEPARTMENT**

Inv. No. 03432-10

BAR CODE

FOR PROPERTY CONTROL USE ONLY

SHELF ___
DATE RECEIVED ___
BAG # ___
LOCKER # ___

LIST OTHER INVENTORY NOS. RELATED TO THIS RECOVERY

RECOVERING UNIT/BEAT: 2003 JC10

## OFFENSE / CLASSIFICATION

| DATE RECOVERED | | | C/R NO. | ARREST BOOKING NO. |
|---|---|---|---|---|
| DAY 13 | MONTH Apr | YEAR 10 | 10-509350- | 17845559 |

| ITEM NO. | QUANTITY | DESCRIPTION OF PROPERTY | CASH $ | CENTS |
|---|---|---|---|---|
| 1 | 1 | Bank of America Platinum Check Card Visa | | |
| 2 | 1 | ICE Visa Debit card | | |
| 3 | 1 | Western Union gold card | | |
| 4 | 1 | I-Pass Gift Card | | |
| 5 | 2 | Des Plaines Public Library Debit Card | | |
| 6 | 1 | Brown Wallet containing Miscellaneous cards and papers | | |
| 7 | 1 | passport | | |
| 8 | 1 | Check book | | |
| 9 | 1 | bag containing Miscellaneous papers | | |
| 10 | 2 | earrings gold in color | | |
| 11 | 1 | bracelet black and brown in color | | |
| 12 | | | | |
| | | TOTAL | | |

CHECK ANY BOXES APPLICABLE

| RECOVERED ☒ FROM | ❑ U.S.C. TO BE DEPOSITED | ❑ U.S.C. HELD IN ORIGINAL FORM DO NOT DEPOSIT | ❑ MEDICAL EXAMINER'S PROPERTY | ❑ GAMBLING SEIZURE | ❑ SUSPECT NARCOTICS | ❑ C.A.S. P.D. MONEY |
| SEIZED ❑ | | | | | | |

FOUND BY (OFFICER) Inv Pacaco #5012

RECOVERED: NKIOMBO ANNABEL K NYAM 9200 HAMILTON CT Des Plaines IL 6016
ADDRESS

OWNER: NKIOMBO ANNABEL K NYAM 9200 HAMILTON CT Des Plaines IL 6016
ADDRESS

| HOLD FOR OWNER ☒ | DATE OWNER NOTIFIED TO CLAIM WITHIN 30 DAYS ▲ | HOW ❑ IN PERSON NOW ❑ PHONE NOTIFIED ❑ MAIL | | | PHONE NO. |
| | MO. | DAY | YEAR | | |

INVESTIGATING OFFICER ___ STAR NO.

HOLD FOR INVESTIGATION OR EVIDENCE ❑ | | | | PHONE NO. | |

☒ EVIDENCE & RECOVERED PROPERTY UNIT
❑ POLICE MAIL
❑ RECOVERING UNIT PERSONNEL
❑ CRIME LAB
❑ MEDICAL EXAMINER
❑ OTHER
❑ UNIT

PROPERTY RECOVERED BY: Inv Pacaco
1ST OFFICER'S NAME (PRINT): Inv Pacaco
SIGNATURE ___ STAR NO. 5012

❑ TO BE DISPOSED OF BY CUSTODIAN AFTER 30 DAY RETENTION. (FOR US APPLICABLE IF PROPERTY IS NON EVIDENCE, NO KNOWN OWNER AND NO FOLLOW UP INVESTIGATION)

2ND OFFICER'S NAME (PRINT) ___
SIGNATURE ___ STAR NO. 5012

INITIAL DESTINATION OF PROPERTY
TRANSPORT Via. ___

APPROVING SUPERVISOR (PRINT): Sgt Tadiloi
SUPERVISOR SIGNATURE ___
STAR NO. 1062

THE INVESTIGATING OFFICER MUST ADVISE THE PROPERTY CONTROL UNIT, EVERY 90 DAYS, OF THE STATUS OF THE ABOVE PROPERTY.

## PROPERTY LOG

| Date | In | Out | Officer & Star | Reason |
|---|---|---|---|---|
| | | | | |

COPY 1 - KEEP WITH PROPERTY

(Rev. 12/9/00) CCCR 0656

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS

v.

Case No. 10-1-110476 01

**ANNABEL** (First)     **K** (M.I.)     **MELONGO** (Last)

☐ Violation of:
☐ Probation
☐ Supervision
☐ Conditional Discharge

☐ AMF
☑ Arrest
☐ BEW

### ARREST WARRANT

THE PEOPLE OF THE STATE OF ILLINOIS TO ALL PEACE OFFICERS IN THE STATE - GREETING:

We command you to arrest Defendant **ANNABEL** (First)     **K.** (M.I.)     **MELONGO** (Last)

for the offense(s) of **EAVESDROPPING**
(Description)

**720** ILCS **5** / **14-2(a) + c)**
(Statutory Citation)

stated in a charge(s) now pending before this court and that you bring him/her instanter before The Circuit Court of Cook County at

**BRANCH 98, 26th + CALIFORNIA** (Location)     (Room)     1:00 AM (call or PM)

or, if I am absent or unable to act, the nearest or most accessible court in Cook County or, if this warrant is executed in a county other than Cook, before the nearest or most accessible judge in the county where the arrest is made.

### GEOGRAPHIC LIMITATIONS

Unless otherwise indicated below the geographic limitations are those as specified in 725 ILCS 5/107-9(e).

Issued in Cook County **April 13** **2010**

(Geographic Limitations)

Bail Fixed at $ **30,000**

ENTERED
APR 13 2010

Prosecutor

DOROTHY BROWN
CLERK OF CIRCUIT COURT

Judge     **544** No.

Judge

WITNESS: DOROTHY BROWN, CLERK OF THE COURT and the Seal thereof, **April 13** **2010**

Dorothy Brown /for     By

Clerk of the Circuit Court     Deputy Clerk

Name **ANNABEL** (First)     **K.** (M.I.)     **MELONGO** (Last)     Alias

Residence **9200 C. HAMILTON Ct.** Street     **DESPLAINES** City or Town     **IL** State     **60016** Zip

| Sex | Race | Height | Weight | D.O.B. | Age | Complexion | Build | Driver's License No. |
|-----|------|--------|--------|--------|-----|------------|-------|----------------------|
| F | BLACK | 5'05" | 125 Lbs. | ▮▮ | 37 | BLACK | PETITE | M45201-728-27 |
| IR | | CB/DCN | | FBI | | SID | Social Security | Forfeited Bond No. |
| | | | 855778 HC 6 | | IL56034810 | | 4516 | |

Complainant's Name     Address

Star No.     Officer's Key

Reviewed By     Audited By

Prosecutor     Clerk

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**COURT COMPLAINT TRANSMITTAL LISTING**

COOK COUNTY SHERIFF'S POLICE

COURT BRANCH - CALL: **CBC1** 1

FROM (UNIT NO.): **CCSD/2002J**

DATE PREPARED: APR 13 2010

7. COURT DATE: APR 2010

SHEET: 1 of 1

| NO. | 1. Central Booking NO. | 2. DEFENDANT'S NAME (Last – First – M.I.) | 3. DATE OF ARREST | 4. REFERENCES Chapter – Article – Section | 5. | SEX | RACE | HEIGHT | WEIGHT | 6. BOND NO. | BIRTHDATE | 7. COURT DATE | 8. BOND AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | MELONGO, Annabel K. | 13 APR 10 | 720ILCS5/14-2 (ISSUANCE of WARRANT) | M | F | B | 508 | 120 lbs | 972 | Dark | 10-509350 med |
| 1 | 9. I.R. NO. 1822117 |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 10. CR NO. 10-509350 |  |  |  |  |  |  |  |  |  |  |  |  |

17845559

5043

PREPARED BY: Inv. A. Rubino #5043

APPROVED BY: Sgt. J. Dillon #1068

# EXHIBIT D

---

<u>(Court Branch)</u>      <u>(Court Date)</u>
**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
                                    **(3-81) CCMC-1-219 (1)**

---

**STATE OF ILLINOIS** )
                ) **SS.**
**COUNTY OF COOK** )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COMPLAINT FOR ARREST WARRANT

I, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County

State's Attorney's Office, complainant herein, now appear before the undersigned Judge of the

Circuit Court of Cook County and request the issuance of arrest warrant as follows:

Annabel K. MELONGO,
F/B, Age 37 (DOB:       1972)
5'05", 120 lbs.,
LKA: 9200 C. Hamilton Court, Des Plaines, IL 60016

I, Kate O'Hara, star # 423, hereby state that I am a sworn law enforcement officer employed by the

Cook County State's Attorney's Office as an Investigator in the Financial Crimes Investigations

Unit, and has been so employed for four years. For a brief time, your Complainant was employed

as an Investigator with the City of Chicago Inspector General's Office, during which she

investigated allegations against City Employees in the Department of Ethics, Consumer Services,

the Water Department, the Department of Revenue, the Chicago Police Department, and the

Chicago Fire Department. Prior to that time, your Complainant was employed as a Grant Writer

and Manager for the Cook County State's Attorney's Office for two years. I have assisted in the

execution of numerous arrest and search warrants and have been the affiant for many such

warrants.

In March 2010, I became involved in the investigation of Annabel Melongo for covertly

tape recording conversations between herself and the Court Reporters Office. In 2008, Ms.

Melongo was indicted on three counts of Computer Tampering in case 08CR-10502. During the

pendency of those charges, Ms. Melongo has maintained a website, www.illinoiscorruption.net,

1

---

<u>(Court Branch)</u>　　　　　<u>(Court Date)</u>
**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

(3-81) CCMC-1-219　(1)

---

**STATE OF ILLINOIS** 　)
　　　　　　　　　　　) SS.
**COUNTY OF COOK** 　　)

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COMPLAINT FOR ARREST WARRANT**

detailing the progress of the case. A further investigation of the site revealed that it was registered

to Thomas Fisher and Honorine Mbabe Essono, but paid for with Annabel Melongo's VISA credit

card. The site is organized chronologically and contains an entry for each court date. On or about

December 18, 2009, illinoiscorruption.net published a post accusing the Cook County Court

Reporter's Office of Treason. The post contains three audio recordings and accompanying

transcripts of conversations between Ms. Melongo and Pamela Taylor of the Court Reporters

Office.

　　　The website entry states that on December 10, 2009, Annabel Melongo called the Court

Reporter's Office and spoke to supervisor Pamela Taylor. Ms. Melongo tape recorded the

conversation, but did not tell the Ms. Taylor she was doing so nor did she obtain Ms. Taylor's

consent. During the conversation, a woman's voice with a distinctive accent identifies herself as

Annabel and speaks to another woman's voice who identifies herself as Pamela Taylor. During the

conversation Annabel asks how to get the transcripts and tape recordings for a previous court dates,

and Ms. Taylor gives her instructions.

　　　The website entry goes on to state that Ms. Melongo recorded her conversations on two

other occasions. The website states that on December 15th and 16th, Ms. Melongo called Ms.

Taylor and recorded the conversations. They appear at illinoiscorruption.net and are published

with accompanying transcripts. At no time during the taping does either party mention that the

conversation is being tape recorded, nor does either party ask for permission to tape.

2

STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF COOK       )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COMPLAINT FOR ARREST WARRANT

Ms. Taylor confirms that she is one of the voices on the tape and that she was unaware that she was being recorded. Ms. Taylor identified the voice on the recording as the of Annabel Melongo, based on her subsequent interactions with Ms. Melongo.

Wild West domains confirms that the site was registered on November 3, 2009, to an individual named Thomas Fisher, and paid for with Annabel Melongo's VISA card.  On March 11, 2010, the site was re-reregistered to Honorine Mbabe Essono, Annabel Melongo's mother, and paid for with Ms. Essono's VISA card.

Based upon the evidence as outlined herein, I believe that there is probable cause to believe that Annabel Melongo committed the felony offenses of eavesdropping in violation of both 720 ILCS 5/14-2(a) & (c).  Therefore, I respectfully request that this Honorable Court issue a warrant to arrest Annabel Melongo for the above offenses.

*Inv. Kate O'Hara #423*
_____
Investigator Kate O'Hara, Star No. 423, Complainant

Subscribed and sworn to

before me on  13 April 2010

at   2:49  AM /PM.

_____
Judge, Circuit Court of Cook County

3

# EXHIBIT E

```
 1    STATE OF ILLINOIS )
                        )  SS:
 2    COUNTY OF COOK    )

 3
              IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4                COUNTY DEPARTMENT-CRIMINAL DIVISION

 5    PEOPLE OF THE STATE OF ILLINOIS   )
                                        )
 6              -vs-                     )  No. 10 CR 8092 01
                                        )
 7    ANNABEL MELONGO                    )

 8

 9                              REPORT OF PROCEEDINGS had at the

10    hearing of the above-entitled cause before Steven J. Goebel, one

11    of the judges of said division, on the 19th day of June, A.D.,

12    2012.

13
              PRESENT:
14
              MS. ANITA ALVAREZ, Cook County State's Attorney by
15            MR. ROBERT PODLASEK, Assistant State's Attorney,

16                  on behalf of the People;

17            MS. ANNABEL MELONGO,

18                  pro se.

19

20

21

22    ELIZABETH A. REYES
      CERTIFIED SHORTHAND REPORTER
23    2650 SOUTH CALIFORNIA AVENUE
      CHICAGO, ILLINOIS 60608
24    ILLINOIS CSR LICENSE NO. 084-001910
```

QQQ-1

1          THE CLERK:  Annabel Melongo.

2          DEFENDANT MELONGO:  Good morning, Judge.

3          THE COURT:  Good morning, Miss Melongo.  Good morning, Mr.

4     Podlasek.

5          MR. PODLASEK:  Good morning, Judge.  Judge, for the record

6     Robert Podlasek, P O D L A S E K, on behalf of the State.

7          DEFENDANT MELONGO:  For the record Annabel Melongo, pro se.

8          THE COURT:  All right.  Case is up for ruling today after I

9     previously had given everyone the new cites of the Federal

10    District Appeals Court case and Miss Melongo did file a new brief

11    in support of her position.  Mr. Podlasek, are you ready to go

12    forward?

13         MR. PODLASEK:  I am.

14         DEFENDANT MELONGO:  Actually I haven't filed --

15         MR. PODLASEK:  She didn't file any --

16         DEFENDANT MELONGO:  I mean those were just notes.  I prepared

17    my argument.

18         THE COURT:  Okay.

19         DEFENDANT MELONGO:  Okay.

20         THE COURT:  All right.  Go ahead briefly, Miss Melongo.  You

21    may argue.

22         DEFENDANT MELONGO:  How many minutes?

23         THE COURT:  I'll tell you when.  Go ahead.

24         DEFENDANT MELONGO:  Okay.  Because it's going to take like 15

1  minutes.

2      THE COURT:  How about five or ten?

3      DEFENDANT MELONGO:  Okay.  Yes.  Actually --

4      THE COURT:  Just hit your -- hit your main points please.

5      DEFENDANT MELONGO:  Okay.  Like you said Seventh Circuit

6  Federal Court of Appeal made its ruling in the case ACLU versus

7  Alvarez.

8      THE COURT:  All right.  For the record that's 211 U.S.

9  District Lexis 208 -- no.  That's the other one.  That's the wrong

10  cite.

11      MR. PODLASEK:  It's 2012 U.S. App. Lexis 9303.

12      THE COURT:  Yeah.  That was the one that was modified.  All

13  right.  The United States Court of Appeals per the Seventh Circuit

14  is Number 11-1286.

15      DEFENDANT MELONGO:  Yes.

16      THE COURT:  It's entitled American Civil Liberties Union of

17  Illinois, Plaintiff/Appellant, versus Anita Alvarez,

18  Defendant/Appellee.  Go ahead.  Proceed.

19      DEFENDANT MELONGO:  Okay.  At page like 23 they said that

20  "Audio and audiovisual recording are media of expression commonly

21  used for the preservation and dissemination of information and

22  idea and thus are included within the free speech and free press

23  guaranty of the First and 14th Amendment."  So that is one point

24  that's important, the First Amendment issue.

```
1              At Page 24 we have another point where it's stated, "The
2    eavesdropping statute operates at the front end of the speech
3    process by restricting the use of a common, indeed ubiquitous,
4    instrument of communication.  Restricting the use of an audio or
5    audiovisual recording device suppresses speech just as effectively
6    as restricting the dissemination of the resulting recording."
7              Then at Page 26 we have this:  "Audio and audiovisual
8    recording are communication technology and as such they enable
9    speech.  Criminalizing all non-consensual audio recording
10   necessarily limits the information that might be published or
11   broadcast whether to the general public or to a single family
12   member or friend and thus burden First Amendment right."
13             So at Page 28 we have this:  "Moreover, the First
14   Amendment goes beyond protection of the press and self-expression
15   of individual to prohibit government from limiting the stock of
16   information from which member of the public might draw."
17             And then at Page 39 we have this:  "Either way" -- Page
18   39.  You have it?
19        THE COURT:  Yes.  Go ahead, Miss Melongo.
20        DEFENDANT MELONGO:  "Either way it should be clear by now that
21   its effects on First Amendment interests is far from incidental.
22   To the contrary, the statute specifically targets a communication
23   technology; the use of an audio recorder, a medium of expression,
24   triggers criminal liabilities.  The law's legal sanction is
```

QQQ-4

1    directly leveled against the expressive element of an expressive

2    activity.  As such, the statute burdens First Amendment right

3    directly, not incidentally."

4         Last but not least, "The Illinois eavesdropping statute

5    obliterates the distinction between private and non-private by

6    criminalizing all non-consensual audio recording regardless of

7    whether the communication is private in any sense.  If protecting

8    privacy is the justification for this law, the law must be closely

9    tailored to serve that interest in order to avoid trampling on

10   speech and press right."

11        So, Judge, verbatim everything I say in my amended

12   motion to dismiss has been echoed in this ruling.  So at this

13   point I would ask you to dismiss the case because the Illinois

14   eavesdropping law is unconstitutional on its face on the First and

15   14th Amendment and as applied to the Defendant trampled on her

16   freedom of the press, speech, petition and due process right.

17        THE COURT:  Thank you, Miss Melongo.  Mr. Podlasek, you may

18   respond.

19        MR. PODLASEK:  Just briefly, Judge.  The court in this case

20   was very specific and they limited the question raised and the

21   question as the court stated, "The question is here whether the

22   First Amendment prevents Illinois prosecutors from enforcing the

23   eavesdropping statute against people who openly record police

24   officers performing their official duties in public."  And it goes

1    on to state that, "Openly making audiovisual recordings of police

2    officers performing their duties in public places and speaking at

3    a volume audible to bystanders."  That's the first issue that

4    needs to be looked at, Judge.  That's what the court addressed in

5    this ruling.

6        They did not address privacy issues.  What you have here

7    is the ACLU has three points that -- that were addressed by the

8    court.  They were openly recording police officers performing

9    their public duties in a public place where third parties were

10   present, in this case the general public whether they were walking

11   by incidentally or standing around listening.  They were speaking

12   loud enough for others in the public way to hear.

13       In Miss Melongo's case, she surreptitiously recorded a

14   private conversation, a conversation that but for that recording

15   would not have been audible to anybody else besides the speaker

16   and the listener.  That was a telephone conversation, three of

17   them.  That's what this case is about.

18   THE COURT:  All right.  Mr. Podlasek, though if the statute is

19   unconstitutional in part, how do -- how do you say a court of law

20   can hold it constitutional as to certain facts but not other

21   facts?

22   MR. PODLASEK:  Well, first of all, Judge, in this case the

23   court did not specifically find that the statute was

24   unconstitutional.  In this case -- their ruling was that -- I'm

1  just going to read specifically what the last paragraph of this

2  ruling is.

3      THE COURT:  Go ahead.

4      MR. PODLASEK:  "For those reasons we conclude that the ACLU

5  has a strong likelihood of success on the merits of its First

6  Amendment claim.  The Illinois eavesdropping statute restricts an

7  expressive medium used for the preservation and dissemination of

8  information and ideas.  On the factual premise of this case, the

9  statute," the premise of this case, Judge, not Miss Melongo's

10  case, "the statute does not serve the important governmental

11  interest of protecting conversational privacy.  Applying the

12  statute in the circumstances alleged here," again this case, "is

13  likely unconstitutional," but they never at any point state that

14  this statute is unconstitutional.

15      THE COURT:  No.  They say --

16      MR. PODLASEK:  Here --

17      THE COURT:  Hold on.  They say it's likely unconstitutional.

18      MR. PODLASEK:  Likely but --

19      THE COURT:  So that's a Federal District Appeals Court telling

20  essentially me that this statute is likely unconstitutional.

21      MR. PODLASEK:  No.  A very narrow portion of the statute,

22  Judge, not the entire statute if that's the case.  The Court went

23  on to say in their ruling what they -- they did.  They --

24  "Accordingly we reverse and remand with the following

1    instructions:  The District Court shall reopen the case and allow

2    the amended complaint, enter a preliminary injunction enjoining

3    the State's Attorney from applying the Illinois eavesdropping

4    statute against the ACLU and its employees or agents who openly

5    audio record the audible communications of law enforcement

6    officers or others whose communications are incidentally captured

7    when the officers are engaged in their official public duties in

8    public places and conduct such further proceedings as are

9    consistent with this opinion."

10              They're not stating that everybody now has the right to

11   go ahead and start recording private conversations and then

12   publishing them.

13        THE COURT:  Which gets back to my first question.  If the

14   statute is unconstitutional in part, how could it be enforced?

15   Does it sense facts specific?

16        MR. PODLASEK:  In this case, Judge --

17        THE COURT:  Does the judge have to then decide what facts --

18        MR. PODLASEK:  That's exactly --

19        THE COURT:  -- there are before --

20        MR. PODLASEK:  That's exactly what this Court has to do.

21        THE COURT:  -- hearing whether or not the statute is

22   unconstitutional or not?

23        MR. PODLASEK:  In point of fact the court I think addresses

24   that issue, Judge.

1                    (Pause in proceedings)

2        MR. PODLASEK:  The court does --

3        THE COURT:  First of all, let me just say the last paragraph

4    you read from is the remedy the court gave --

5        MR. PODLASEK:  That's correct.

6        THE COURT:  -- because they found the statute is likely

7    unconstitutional so the remedy they gave is specifically against

8    the statute as its written right now.

9        MR. PODLASEK:  It's specific --

10       THE COURT:  So that shows that their remedy is modifying the

11   statute and disregarding the statute and they issued and granted

12   that injunction and said the State could not enforce that section

13   of the statute.

14       MR. PODLASEK:  That section of the statute which applies to

15   police officers, Judge.  That's not the section of the statute

16   that we're dealing with in this case.  The court specifically

17   says --

18       DEFENDANT MELONGO:  Judge, may I?

19       THE COURT:  Not yet.  Go ahead.

20       MR. PODLASEK:  "That unlike the federal wiretapping statute

21   and the eavesdropping laws of most other states the gravamen of

22   the Illinois eavesdropping offense in this case is not the secret

23   interception or surreptitious recording of private communication."

24   That's -- that's not what they're addressing in this case.

1   They're addressing the public recording of police officers, public

2   employees who are doing their duty publicly in a public place

3   where others can see them and hear them.  That's not what we have

4   factually in this case.

5          The court did not find the statute unconstitutional.

6   They didn't overturn the statute.  The statute still exists.  And

7   the only thing that they've done, the only remedy they gave the

8   ACLU was for that specific limited section of the statute which

9   goes strictly to not recording audio -- audio -- audible

10  recordings of police officers.  That's what they did.  In this

11  case, they were very, very careful to structure this in a very

12  limited way.

13         We don't believe that this case applies to Miss

14  Melongo's case and her case should go forward and the next step

15  should be a trial in this case, a retrial.

16  THE COURT:  All right.  Miss Melongo.  Go ahead.

17  DEFENDANT MELONGO:  Judge, I think Mr. Podlasek is living like

18  in his own world, you know, because everything -- first, the

19  Defendant conversation with Mrs. Taylor was not a private

20  conversation.  It was about the transcript being forged by Mrs.

21  Laudien who is a Court Reporter, so there was nothing private in

22  that conversation.  The conversation was not about Mrs. Taylor

23  husband.  It was not about her family.  It was not about something

24  she does outside of her professional occupation.  So it was a

1    public conversation discussing about a public matter and Mrs.

2    Taylor was speaking at a volume audible to any unassisted ear.  It

3    was on the phone and she was in her office and she was speaking

4    loudly.  So there was not a private conversation.

5            And the second issue is actually -- believe me, Judge, I

6    was actually surprised by this ruling myself because what the --

7    the Seventh Circuit Court of the state did it went beyond of

8    the -- the issue that ACLU asked them to address.  ACLU come and

9    ask can we speak -- ACLU come with the issue of the willing

10   speaker.  ACLU come with the issue of police officer but the

11   Seventh Circuit Federal Court of Appeal actually went beyond that.

12   It didn't even address the issue of a willing speaker.  It went on

13   and addressed the -- the defect of the statute itself because it

14   say the statute -- what is wrong about the statute is that it

15   target a communication device regardless of whether the person

16   being recorded is a police officer or Pamela Taylor or anybody.

17   The -- the -- the Seventh Circuit Court of Appeal restricted its

18   judgment on the communication device itself.

19           Actually it went to the core of the matter.  So it

20   really doesn't matter in this case who is being recorded as long

21   as the conversation is not private.  So Mr. Podlasek bringing the

22   issue of police officer or whoever, it was not about that.  It was

23   the substance of the law.  The law should not target a

24   communication technology -- technology device.  Thank you, Judge.

1    THE COURT:  Okay.  On Page 47 of the United States District
2    Court of Appeals opinion, it does say, and I quote, "Of course,
3    the First Amendment does not prevent the Illinois General Assembly
4    from enacting greater protection for conversational privacy than
5    the common law tort remedy provides nor is the legislature limited
6    to using the Fourth Amendment reasonable expectation of privacy
7    doctrine as a benchmark, but by legislating this broadly by making
8    it a crime to audio record any conversation, even those that are
9    not in fact private, the State has severed the link between the
10   eavesdropping statute's means and its end.  Rather than attempting
11   to tailor the statutory prohibition to the important goal of
12   protecting personal privacy Illinois has banned nearly all audio
13   recording without consent of the parties including audio recording
14   that implicates no privacy interests at all."

15        The Court is relying on that language as well as the
16   Court does not believe that it can be severed out.  This case
17   obviously -- the appeals case from the Federal District Court
18   obviously dealt with recording police officers and not
19   specifically to the facts of this case; however, I do not believe
20   that the statute can be severed out like that.

21        And additionally this Court is adopting Judge Sacks'
22   opinion in the People of the State of Illinois versus Christopher
23   Drew.  Obviously not the facts 'cause the facts are different, but
24   I'm adopting Judge Stacks -- Judge Sacks', S A C K S, opinion in

1    10 CR 00046 in People of the State of Illinois versus Christopher

2    Drew.

3              And thus Miss Melongo's motion to declare the statute --

4    eavesdropping statute unconstitutional is granted.

5         DEFENDANT MELONGO:  Thank you, Judge.

6         MR. PODLASEK:  We're asking for a 30 day appeal date.

7         THE COURT:  Where are we with discovery on the other case

8    'cause we're going to now move this case to the forefront and get

9    the computer tampering case to trial.

10        MR. PODLASEK:  Judge, we're not going to be ready to go to

11   trial until sometime in November or October.  I have four major

12   trials that go right into September.

13        THE COURT:  No.  This case is going to have to go.

14        MR. PODLASEK:  Judge, there's no way I can get it ready.

15        DEFENDANT MELONGO:  Well, Judge, actually the case has a

16   pending motion to dismiss so Mr. Podlasek has to respond to that

17   motion to dismiss.

18        THE COURT:  All right.  Do you have a motion to dismiss on

19   that case?

20        DEFENDANT MELONGO:  Yes.  He has a pending motion to dismiss.

21                        (Pause in proceedings)

22        DEFENDANT MELONGO:  So I think Mr. Albukerk sent you the copy

23   of the motion.  I'm not going to rewrite the motion so you can

24   just answer that motion and then we argue it.

1    MR. PODLASEK:  How about July 19th, Judge?  We will not be

2    answering that motion at that time.  We're asking for that date to

3    determine whether or not we're taking this up on appeal.

4    THE COURT:  Oh, I understand.  I fully expect obviously the

5    State's Attorney's office would appeal this matter.

6    MR. PODLASEK:  July --

7    THE COURT:  But that's not going to delay the other case.

8    We're still going --

9    MR. PODLASEK:  I understand that, Judge.

10   THE COURT:  We're still going to move with very -- speed to

11   get this done 'cause this is on the old case call.  How many of

12   your other cases are on the old case call?

13   MR. PODLASEK:  Roberto Rivera, July 9th.

14   THE COURT:  That's a bench trial.

15   MR. PODLASEK:  35 witnesses.  I have a second trial that month

16   before Judge Joyce, People versus Rafino.  Carl Ogelsby is being

17   set before Judge Linn in the middle of August and I have a Lake

18   County case that's going ahead on the 13th in August.

19   THE COURT:  I know, Mr. Podlasek, these cases can be somewhat

20   complicated.

21   MR. PODLASEK:  Well, Judge, it's more than that.

22   THE COURT:  We still need to move this along.

23   MR. PODLASEK:  It's a matter of gathering all the witnesses

24   for this case too.

QQQ-14

1      THE COURT:  All right.  Well, start now and we're going to set

2   this obviously for Miss Melongo's motion to dismiss and we'll

3   hear -- we'll hear that on July 19th.  So it's going to be set

4   with for motion.

5      DEFENDANT MELONGO:  He hasn't answered the motion yet.

6      THE COURT:  I thought you said you had a motion on file.

7      DEFENDANT MELONGO:  The motion has been filed by the

8   Defendant.  Mr. Albukerk filed the motion so I don't want to

9   rewrite the motion so if he can just answer to the motion and then

10  we argue it.

11     THE COURT:  Right.  We're going to set it for argument.  You

12  filed it already or Mr. Albukerk filed it so we're setting it for

13  July 19th for argument.

14     DEFENDANT MELONGO:  For argument?

15     MR. PODLASEK:  For my response?  I haven't responded.

16     DEFENDANT MELONGO:  He hasn't responded.

17     THE COURT:  We can hear it.

18     MR. PODLASEK:  Pardon me?

19     THE COURT:  It's not that complicated.  What's your motion?

20     DEFENDANT MELONGO:  No, Judge.  He has to respond to it so

21  that I know how to make the argument.  I'm not going to argue out

22  of the blue.

23     THE COURT:  All right.  Both sides seem to want to -- to delay

24  this so we'll set it for State's response 'til July 19th.

QQQ-15

1       DEFENDANT MELONGO:  Okay.

2       MR. PODLASEK:  By agreement?

3       THE COURT:  By agreement.  There's a motion on file.

4       DEFENDANT MELONGO:  And, Judge, what about my I bond?  I want

5   my I bond reinstated because I was put on -- sent to jail and now

6   put on E.M. because I violated a condition of my I bond by

7   catching a new case but now that the case has been dismissed I

8   want the condition of my I bond reinstated.

9       THE COURT:  Mr. Podlasek.

10      MR. PODLASEK:  State, would object to that, your Honor.

11      DEFENDANT MELONGO:  On what basis?

12      THE COURT:  Well, you're not to address Mr. Podlasek, but

13  she's obviously asking me what basis.  Do you wish to address that

14  on July 19th as well?

15      MR. PODLASEK:  I'll address it then, Judge.

16      THE COURT:  All right.  If you have any response to that

17  motion, file that on July 19th.  Miss Melongo, we'll address all

18  those matters on July 19th.

19      DEFENDANT MELONGO:  So I still have to stay on E.M.?  So,

20  Judge, it really doesn't make sense.

21      THE COURT:  Well, she is on E.M.  All right.  I've just

22  declared the statute unconstitutional, in effect dismissing it.

23  State obviously has a right to appeal that.  They're going to make

24  that decision.  I fully expect them to appeal it.  Even if they

1    did appeal it, at this point I still could require you to remain
2    on E.M. during that period of time and that's what the State is
3    objecting to.  So they're asking that you stay on E.M. while
4    that's pending.  I don't see that there's a reason to do that.
5           DEFENDANT MELONGO:  Yes.
6           THE COURT:  Mr. Podlasek, I'm going to let you make your
7    argument now as to whether or not Miss Melongo --
8           DEFENDANT MELONGO:  Yes.
9           THE COURT:  -- should stay on E.M.
10          MR. PODLASEK:  Judge, we're just going to make a general
11   objection.
12          THE COURT:  Just a general objection?  All right.  I'm going
13   to strike E.M.  I bond will be reinstated.
14          DEFENDANT MELONGO:  Thank you, Judge.
15          THE COURT:  And Miss Melongo will be off E.M.
16          MR. PODLASEK:  Thank you.
17          THE COURT:  Thank you.
18          DEFENDANT MELONGO:  Judge, you don't have a ruling?  You
19   should give us a ruling that I can read about your ruling.
20          THE COURT:  No.  I did not issue a written ruling.  Mine is
21   oral only.
22               As I stated, I'm also adopting as it applies to the law
23   Christopher Drew and I'm basing it on the United States Appellate
24   District's opinion.  So that's my ruling.

1       DEFENDANT MELONGO:  Okay.

2       THE COURT:  Okay?

3       DEFENDANT MELONGO:  Thank you, Judge.  Should I have to call

4  E.M. or go to E.M.?

5       THE COURT:  Stuart, you have to prepare something for Miss

6  Melongo that she's off E.M.

7       THE CLERK:  Yes, I will do that.

8       THE COURT:  Thank you.

9       DEFENDANT MELONGO:  Thank you.

10                          (Which were all the proceedings had)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# E X H I B I T   F

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

ENTERED
JUDGE STEVEN J. GOEBEL-1954

JUL 26 2012

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 10 CR 8092 |
| | ) | |
| ANNABEL K. MELONGO, | ) | |
| | ) | Honorable Steven J. Goebel |
| Defendant. | ) | Judge Presiding |
| | ) | |

## ORDER

On June 19, 2012, this court granted defendant, Annabel K. Melongo's, motion to declare the Illinois Eavesdropping Statute (720 ILCS 5/14-2) unconstitutional. Defendant has now filed an emergency motion requesting that this court amend its June 19, 2012 order declaring the Illinois Eavesdropping Statute unconstitutional in order to comply with Supreme Court Rule 18.

## BACKGROUND

Defendant was charged with six counts of eavesdropping in violation of 720 ILCS 5/14-2(a)(1)(a)(3) (West 2008). Count I alleged that defendant "knowingly and intentionally used an eavesdropping device...for the purpose of recording a conversation...between [defendant] and Pamela Taylor...and without the consent of all parties such conversation." Counts II and III alleged the same acts against the same victim on two other occasions. Counts IV, V and VI alleged that defendant "used or divulged any information which she knew or reasonably should have known was obtained through the use of an eavesdropping device...an audio recording of a conversation between [defendant] and Pamela Taylor...knowing that such a recording was obtained without Pamela Taylor's consent."

## PROCEDURAL HISTORY

On December 13, 2010, Judge Brosnahan denied defendant's motion to declare the Illinois Eavesdropping Statute to be unconstitutional based on *People v. Bearsley*, 115 Ill. 2d 47 (1986).

On November 14, 2011, defendant filed an amended motion to declare the Illinois Eavesdropping Statute unconstitutional, arguing that the Statute is unconstitutional on its face and as applied to defendant and violates substantive free speech, freedom of the press, petition and due process guarantees.

On February 14, 2012, the State filed a response in opposition to defendant's motion to declare 720 ILCS 5/14 unconstitutional, arguing that the Eavesdropping Statute: (1) does not violate the first amendment; (2) does not violate due process; and (3) is constitutional as applied to defendant.

On June 19, 2012, this court granted defendant's motion to declare the Illinois Eavesdropping Statute (720 ILCS 5/14-2) unconstitutional.

On June 22, 2012, defendant filed an emergency motion requesting that this court amend its June 19, 2012 order declaring the Illinois Eavesdropping Statute unconstitutional in order to comply with Supreme Court Rule 18.

## ANALYSIS

All statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the challenger, who must clearly establish a constitutional violation. *People v. Greco*, 204 Ill. 2d 400 (2003).

The Illinois Eavesdropping Statue (the "Statute") provides:

"A person commits eavesdropping when he:

2

(1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing and recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication ***

(2) Uses or divulges *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device."

720 ILCS 5/14 *et seq.*

The Statute allows citizens to make silent video of police officers performing their duties in public. 720 ILCS 5/14 *et seq.* However, the Statute elevates this conduct to a class 1 felony when a person audio records all or any part of any conversation unless all parties to the conversation give their consent. 720 ILCS 5/14 *et seq.* The Statute applies to all oral communication regardless of whether the communication was intended to be private. 720 ILCS 5/14 *et seq.* A party's consent may be inferred from the surrounding circumstances indicating that the party knowingly agreed to the surveillance, but express disapproval defeats any inference of consent. 720 ILCS 5/14 *et seq.*

In the instant case, defendant argues that the Statute is unconstitutional on its face because it violates her First Amendment and due process rights. Defendant also argues that the Statute is unconstitutional as applied to her because Ms. Pamela Taylor was a willing speaker during the conversation and defendant had the right to receive the information and record its protected content if she so wished.

The State asks this court to interpret the court's ruling in *ACLU* as a limited ruling. Specifically, the State contends that the *ACLU* court only addressed the section of the Statute that

3

applies to audio recordings of police officers in a public place where others can see and hear them. The State argues that the facts in the instant case are distinguishable from those in *ACLU* and that the case should therefore move forward and go to trial.

As noted above, this court issued an oral opinion granting defendant's motion to declare the Illinois Eavesdropping Statute (720 ILCS 5/14-2) unconstitutional on June 19, 2012. In making this decision, this court relied on a recent decision by the United States Court of Appeals for the Seventh Circuit where the court held that the Statue was likely unconstitutional based on First Amendment considerations and the issues presented in that case. The court subsequently issued a preliminary injunction enjoining the State's Attorney from applying the Statute against the ACLU and its employees or agents. *ACLU v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012).

In *ACLU*, the court noted that the Statute is not closely tailored to the government's interest in protecting conversational privacy. Rather, "the gravamen of the Illinois eavesdropping offense is not the secret interception or surreptitious recording of a private communication. Instead, the statute sweeps much more broadly, banning *all* audio recording of *any* oral communication absent consent of the parties regardless of whether the communication is or was intended to be private." *Id.* at 595. The court went on to note that:

> "Of course, the First Amendment does not prevent the Illinois General Assembly from enacting greater protection for conversational privacy than the common-law tort remedy provides. Nor is the legislature limited to using the Fourth Amendment "reasonable expectation of privacy" doctrine as a benchmark. But by legislating this broadly – by making it a crime to audio record *any* conversation, even those that are *not* in fact private – the State has severed the link between the eavesdropping statute's means and its end. Rather than attempting to tailor the

4

statutory prohibition to the important goal of protecting personal privacy, Illinois

has banned nearly all audio recording without consent of the parties – including

audio recording that implicates *no* privacy interests at all."

*ACLU*, 679 F. 3d at 606. Although the *ACLU* court did not find make a specific finding that the

Statute was unconstitutional, the court concluded that the ACLU has a "strong likelihood of

success on the merits of its First Amendment claims." *Id.* at 608.

Additionally, this court relied on Associate Judge Stanley Sacks' recent opinion in

*People v. of the State of Illinois v. Christopher Drew*, case number 10 CR 00046 (March 2, 2012)

where the court ruled that the Illinois Eavesdropping Statute was unconstitutional on its face and

as applied to the defendant. *Drew*, at p. 12. In *Drew*, the court stated that, although the Statute

clearly sets forth the prohibited physical acts, the fault of the Statute is that it does not require an

accompanying culpable mental state or criminal purpose for a person to be convicted of a felony.

*Drew*, at p. 11.

Here, this court also finds that the Statute appears to be vague, restrictive and makes

innocent conduct subject to prosecution. At this stage, this court will not conduct any fact-

finding nor will this court filter the Statute and deem certain sections to be constitutional and

others to be unconstitutional.

Therefore, based on the foregoing discussion, this court finds that the Illinois

Eavesdropping Statute is unconstitutional on its face and as applied to defendant pursuant to

Illinois Supreme Court Rule 18. This court holds that the Illinois Eavesdropping Statute lacks a

culpable mental state, subjects wholly innocent conduct to prosecution, and violates substantive

due process under the Fourteenth Amendment to the United States Constitution (U.S. Const.

Amend. XIV) and Article I, Section 2 of the Illinois Constitution (Ill. Const. 1970, Art. I, Sec. 2).

5

This court further finds that the statute cannot be constructed in a manner that would preserve its validity, and judgment cannot rest upon an alternative ground. Notice under Illinois Supreme Court Rule 19 has been given.

## CONCLUSION

Based upon the foregoing discussion, this court grants defendant's motion to declare the Illinois Eavesdropping Statute (720 ILCS 5/14-2) unconstitutional.

**ENTERED:** _____

Hon. Steven J. Goebel
Circuit Court of Cook County
Criminal Division

**DATED:** _____7-26-12_____

6

# EXHIBIT G

STATE OF ILLINOIS   )
                    )  SS
COUNTY OF COOK      )

F I L E D

AUG 0 9 2012

DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS        )
     Plaintiff-Appellant,           )      Case No. 10CR-8092
                                       )
    vs.                                )
                                       )      Honorable
ANNABEL MELONGO,                       )      Steven J. Goebel,
     Defendant-Appellee.            )      Trial Judge
                                       )

NOTICE OF NOTICE OF APPEAL

TO:
ANNABEL MELONGO, *Pro Se*              LISA MADIGAN
P.O. BOX 5658                          Attorney General
Chicago, IL 60680                      State of Illinois
                                       100 West Randolph Street
                                       Suite 1200
                                       Chicago, Illinois 60601

**PLEASE TAKE NOTICE** that on ___8-9-12___, a Notice of Appeal in the above

captioned case was filed in the Office of the Clerk of the Circuit Court of Cook County.

                                        ANITA ALVAREZ
                                        State's Attorney of Cook County

                         BY _____
                               ROBERT PODLASEK
                               Assistant State's Attorney

STATE OF ILLINOIS   )
                         )  SS
COUNTY OF COOK   )

FILED

AUG 0 9 2012

DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | |
| Plaintiff-Appellant, | ) | Case No. 10CR-8092 |
| | ) | |
| vs. | ) | |
| | ) | Honorable |
| ANNABEL MELONGO, | ) | Steven J. Goebel, |
| Defendant-Appellee. | ) | Trial Judge |
| | ) | |

NOTICE OF APPEAL

An appeal is taken from the order or judgment described below:

1. Court to which appeal is taken: **Supreme Court of Illinois**
2. Name of Appellee's Attorney and address to which notices shall be sent:

    Name:   Annabel Melongo, *Pro Se*
    Address: P.O. Box 5658
              Chicago, IL 60680

    If Appellee is indigent and has no attorney; does he want one
    appointed? _____
3. Name and address of Appellant's attorney on appeal:

    Name:   Cook County State's Attorney
    Address: 309 Richard J. Daley Center
              Chicago, Illinois 60602
    Phone:   312-603-5496
4. Date of Judgment of Order: July 26, 2012
5. Appeal is taken from: Trial court's ruling that the Illinois Eavesdropping Statute, 720
    ILCS 5/14, is unconstitutional.

ROBERT PODLASEK
Assistant State's Attorney

Notice filed date:  8 -9 -12
Appeal check date:  8 -28 -12

# E X H I B I T   H

# Illinois Official Reports

## Supreme Court

---

### *People v. Melongo*, 2014 IL 114852

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANNABEL MELONGO, Appellee. |
| Docket No. | 114852 |
| Filed | March 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A defendant could not be criminally prosecuted for divulging the contents of conversations she recorded in violation of the eavesdropping statute where that statutory prohibition itself, in its overbreadth, was unconstitutional, in violation of the first amendment. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Steven J. Goebel, Judge, presiding. |
| Judgment | Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People.<br><br>Gabriel Bankier Plotkin, Daniel M. Feeney and Alexandra K. Block, of Miller Shakman & Beem LLP, of Chicago, for appellee.<br><br>Harvey Grossman and Adam Schwartz, of Roger Baldwin Foundation of ACLU, Inc., of Chicago, and Richard J. O'Brien and Sean Siekkinen, of Sidley Austin LLP, of Chicago, for *amicus curiae* American Civil Liberties Union of Illinois. |

Justices                CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant Annabel Melongo was charged with violations of section 14-2 of the Criminal Code of 1961 (720 ILCS 5/14-2 (West 2008)), which defines the offense of eavesdropping. The circuit court of Cook County found the statute unconstitutional. Thus, appeal lies directly to this court. Ill. S. Ct. R. 302 (eff. Oct. 4, 2011).

¶ 2      We allowed the American Civil Liberties Union of Illinois to file a brief *amicus curiae* pursuant to Supreme Court Rule 345. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 3      For the following reasons, we affirm the judgment of the circuit court.

¶ 4                             BACKGROUND

¶ 5      Defendant was charged with computer tampering in an unrelated case. The arraignment was set for June 18, 2008. The docket sheet, the judge's half sheet, and the court call sheet for that date indicate that defendant was not in court and that the arraignment did not take place.

¶ 6      Defendant later obtained an official court transcript of the June 18, 2008, proceeding, which stated that she was present and was arraigned on that date. Her efforts to have the court reporter change the transcript were unsuccessful. The court reporter referred defendant to her supervisor, Pamela Taylor, the Assistant Administrator of the Cook County Court Reporter's Office, Criminal Division. In their first telephone conversation, Taylor explained to defendant that any dispute over the accuracy of a transcript should be presented to the judge for resolution.

¶ 7      Defendant surreptitiously recorded three subsequent telephone conversations with Taylor and posted the recordings and transcripts of the conversations on her website. She was charged with three counts of eavesdropping (720 ILCS 5/14-2(a)(1) (West 2008)), and three counts of using or divulging information obtained through the use of an eavesdropping device (720 ILCS 5/14-2(a)(3) (West 2008)).

¶ 8      In a motion to dismiss, she stipulated that she recorded the conversations and posted them on her website, but claimed her conduct was permitted under an exception to the statute. Specifically, she claimed she was allowed to record a conversation "under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person *** and there is reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14-3(i) (West 2008).

¶ 9      The State argued that the exception did not apply in this case because the court reporter whom defendant accused of creating a forged transcript was not a party to the recorded conversations. Thus, the State asserted, defendant should not be allowed to claim that the

exception of section 14-3(i) applied to her recordings of Taylor. The trial court granted the State's motion *in limine* to preclude defendant from raising this defense at trial.

¶ 10        In her motion to reconsider, defendant argued that Taylor was a party to a criminal conspiracy and, thus, the statutory exception should be available to her at trial. The trial court denied her motion to reconsider.

¶ 11        Defendant then filed a motion to dismiss on the basis that the eavesdropping statute is unconstitutional under the due process clauses of both the Illinois and United States Constitutions because there is "no rational relationship between requiring two party consent and a legitimate state interest." Two days later, this motion was argued and denied.

¶ 12        The matter proceeded to trial. The jury was unable to reach a unanimous verdict, and the court declared a mistrial. The matter was assigned to a second judge.

¶ 13        Thereafter, defendant filed a *pro se* motion to declare the statute unconstitutional, raising first amendment and due process claims. The State filed a response arguing that the statute does not violate either the first amendment or due process and that it is constitutional as applied to defendant.

¶ 14        After a hearing on the motion, the court found the statute both facially unconstitutional and unconstitutional as applied to defendant. The court's subsequent written order stated that "the statute appears to be vague, restrictive and makes innocent conduct subject to prosecution." Further, the court observed, the statute "lacks a culpable mental state, subjects wholly innocent conduct to prosecution, and violates substantive due process" under both the United States and Illinois Constitutions. In reaching this decision, the circuit court relied in part on *American Civil Liberties Union v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (finding that plaintiff had a strong likelihood of success in its first amendment claim that the Illinois eavesdropping statute was unconstitutional as applied to its plan to record police officers performing their duties in public places).

¶ 15                              ANALYSIS

¶ 16        Section 14-2 of the Criminal Code provides that:

        "(a) A person commits eavesdropping when he:

           (1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended; or

           ***

           (3) Uses or divulges, except as authorized by this Article or by Article 108A or 108B of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." 720 ILCS 5/14-2 (West 2008).

¶ 17        As appellant, the State argues in its opening brief that the statute does not violate due process on its face because it does contain a culpable mental state requiring both knowledge

and intent. The State further argues that the statute is not unconstitutional as applied to defendant because she admits having recorded and divulged the contents of the conversations knowingly and intentionally. The State's opening brief does not address defendant's first amendment claim, stating that although the circuit court cited extensively to *Alvarez*, a first amendment case, the court "relied exclusively on the substantive due process clause" in reaching its conclusion.

¶ 18        Defendant frames four issues. She argues that section 14-2(a)(1), the "recording provision," is unconstitutional on both first amendment and due process grounds; similarly, she argues that section 14-2(a)(3), the "publishing provision," also violates the first amendment and due process. In the alternative, she argues that if the statute is not found unconstitutional on its face, it is nevertheless unconstitutional as applied to her recording of a public official who was acting in her official capacity when she engaged in the recorded conversation.

¶ 19        The State responds to the first amendment arguments in its reply brief, arguing that the statute is a content-neutral restriction on the time, place, and manner of the exercise of first amendment rights and that it is narrowly tailored. However, the State reiterates its position that no first amendment issue is at stake.

¶ 20        The constitutionality of a statute is a question of law that we review *de novo*. *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011). We presume that a statute is constitutional and, thus, the party challenging its constitutionality bears a burden of clearly establishing that the statute violates the constitution. *People v. Kitch*, 239 Ill. 2d 452, 466 (2011). In addition, if it is reasonably possible to construe the challenged statute in a manner that preserves its constitutionality, we have a duty to do so. *People v. Hollins*, 2012 IL 112754, ¶ 13.

¶ 21        As an initial matter, we reject the State's suggestion that the trial court's ruling in the present case was based entirely on due process. The defendant's motion raised a first amendment challenge. The trial court gave careful consideration and significant weight to the Seventh Circuit's opinion in *Alvarez*, a first amendment case. Finally, in its written order, the trial court specifically described the statute as "vague" and noted that it subjects innocent conduct to prosecution; in effect, the court found the statute to be overbroad. While vagueness and overbreadth may be considered in a due process challenge, they are also properly applied in the first amendment context. See, *e.g.*, *People v. Sharpe*, 216 Ill. 2d 481, 527 (2005) (if first amendment rights are not at stake in a vagueness challenge, "due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions" (internal quotation marks omitted)); *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 442 (2006) ("[W]hen a law threatens to inhibit the exercise of constitutionally protected rights such as those protected under the first amendment, the Constitution demands that a more stringent vagueness test be applied. In such a scenario, a statute is void for vagueness if it reaches a substantial amount of constitutionally protected conduct.").

¶ 22        Although the trial court did not specifically invoke the first amendment, it stated that it was relying on the Seventh Circuit's analysis in *Alvarez.* In addition, the court's findings of

vagueness and overbreadth are consistent with both first amendment and due process grounds. We find that the first amendment issue is sufficiently implicated by the circuit court's ruling to permit consideration of defendant's first amendment argument here.

¶ 23    The State also argues that defendant should be barred from raising a constitutional challenge to the statute because her constitutional claims are inconsistent with her defense at trial. At trial, she admitted that she made the recordings but argued she was permitted to do so by the statutory exception permitting an individual to record a conversation "under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person *** and there is reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14-3(i) (West 2008). The State asserts that because defendant admits that she made the recordings and that she was aware at the time that her conduct was a crime if not justified by the statutory exception, she cannot now claim that the statute is vague or overbroad.

¶ 24    Defendant raised a due process challenge before the mistrial, and she raised both due process and first amendment challenges after the mistrial. The State does not explain why a criminal defendant may not argue in the alternative that the statute under which she was charged is unconstitutional and, failing that, that an exception to the statute excused her conduct. In any event:

>  "Overbreadth is a judicially created doctrine which recognizes an exception to the established principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. Under the doctrine, a party being prosecuted for speech or expressive conduct may challenge the law on its face if it reaches protected expression, even when that person's own activities are not protected by the first amendment. The reason for this special rule in first amendment cases is apparent: an overbroad statute might serve to chill protected speech. A person contemplating protected activity might be deterred by the fear of prosecution. The doctrine reflects the conclusion that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." *Pooh Bah*, 224 Ill. 2d at 435-36.

¶ 25    Thus, we find it appropriate to reach the merits of defendant's first amendment claim.

¶ 26    On the same day that oral arguments were heard in the present case, the court heard arguments in the case of *People v. Clark*, 2014 IL 115776. Although the cases were not consolidated, they involved similar issues, including a first amendment challenge to section 14-2(a)(1) of the eavesdropping statute, which defendant describes as the "recording provision." Our analysis in the present case is guided by our holding in *Clark*.

¶ 27    Defendant suggests that the statute is subject to intermediate scrutiny; the State does not specifically address the constitutional standard, but does assert that the statute is content-neutral, which invites intermediate scrutiny. *Holder v. Humanitarian Law Project*, 561 U.S. 1, ___, 130 S. Ct. 2705, 2723 (2010). A content-neutral regulation will be sustained under the first amendment if it advances important governmental interests unrelated to the suppression of free speech and does not substantially burden more speech than necessary to further those interests. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 520 U.S. 180, 189 (1997); *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968).

¶ 28  The State and defendant agree that the purpose of the eavesdropping statute is to protect conversational privacy. However, the statute as now written deems all conversations to be private and, thus, not subject to recording absent consent, even if the participants have no expectation of privacy. The State argues that the choice between a law that might be over-inclusive and one that might be under-inclusive is a policy matter for the legislature, not the courts.

¶ 29  When that policy criminalizes a wide range of innocent conduct, however, it cannot be sustained. The statute criminalizes the recording of conversations that cannot be deemed private: a loud argument on the street, a political debate on a college quad, yelling fans at an athletic event, or any conversation loud enough that the speakers should expect to be heard by others. None of these examples implicate privacy interests, yet the statute makes it a felony to audio record each one. Judged in terms of the legislative purpose of protecting conversational privacy, the statute's scope is simply too broad. *Clark*, 2014 IL 115776, ¶¶ 22-23.

¶ 30  Further, even when the recorded conversation is held in private, the statute does not distinguish between open and surreptitious recording. The statute prohibits any recording of a conversation absent the consent of all parties. Thus, rather than knowing that he or she can proceed legally by openly recording a conversation so that all parties are aware of the presence of an operating recording device, the individual must risk being charged with a violation of the statute and hope that the trier of fact will find implied consent. See *People v. Ceja*, 204 Ill. 2d 332, 349-50 (2003) (holding that consent under the eavesdropping statute may be express or implied; implied consent is consent in fact, inferred from the surrounding circumstances that indicate the individual knowingly agreed to the recording). *Clark*, 2014 IL 115776, ¶ 22.

¶ 31  We conclude as we did in *Clark*, 2014 IL 115776, that the recording provision of the eavesdropping statute (720 ILCS 5/14-2(a)(1) (West 2008)), burdens substantially more speech than is necessary to serve a legitimate state interest in protecting conversational privacy. Thus, it does not survive intermediate scrutiny. We hold that the recording provision is unconstitutional on its face because a substantial number of its applications violate the first amendment. See *United States v. Stevens*, 559 U.S. 460, 473 (2010) (a statute may be invalidated as overbroad if a substantial number of its applications are unconstitutional when judged in relation to the statute's legitimate sweep).

¶ 32  Defendant raises an additional claim that is not present in *Clark*. She argues that what she describes as the "publishing provision" of the statute (720 ILCS 5/14-2(a)(3) (West 2008)), is also unconstitutional. The plain language of this provision criminalizes the publication of any recording made on a cellphone or other such device, regardless of consent. This alone would seem to be sufficient to invalidate the provision.

¶ 33  The State defends the provision in its brief by noting that Illinois Pattern Jury Instructions on this offense "read in" a requirement that the recording being divulged have been obtained in violation of the recording provision of section 14-2(a)(1). See Illinois Pattern Jury Instructions, Criminal, 12.03X (4th ed. 2000). Further, the State argues that defendant is not prohibited from making public the content of the conversation she recorded, she is merely prohibited from "preserving the speech of the other person in the precise manner that she would prefer," *i.e.*, a recording.

¶ 34  At oral argument, however, the State conceded that if the recording provision is found unconstitutional, the publishing provision must also fail, in light of the Supreme Court's

decision in *Bartnicki v. Vopper*, 532 U.S. 514 (2001). In *Bartnicki*, the Court considered the constitutionality of state and federal statutes prohibiting the intentional disclosure of illegally intercepted communications that the disclosing party knew or should have known were illegally obtained. The Court observed that the "naked prohibition against disclosures" in the challenged statutes was "fairly characterized as a regulation of pure speech" by an innocent party. *Id.* at 526. The Court held that under the first amendment, the state may not bar the disclosure of information regarding a matter of public importance when the information was illegally intercepted by another party who provided it to the disclosing party. *Id.* at 535.

¶ 35    Because we have held that the statutory provision criminalizing defendant's recording of the three conversations is unconstitutional on its face, she is in the position of an innocent party who is subject to a "naked prohibition against disclosure." It matters not whether the contents of the recorded conversations were a matter of public interest because, unlike in *Bartnicki*, the recordings cannot be characterized as illegally obtained.

¶ 36    We hold that defendant cannot be constitutionally prosecuted for divulging the contents of the conversations she recorded, just as the media defendants in *Bartnicki* could not be prosecuted for disclosing recorded communications. We, therefore, find the publishing provision to be overbroad as well.

¶ 37                                              CONCLUSION

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 39    Circuit court judgment affirmed.

# EXHIBIT I

ANNABEL MELONGO , ) Case No. _06CR10502_
Defendant ) Charge _COMPUTER TAMPERING_

## CONSOLIDATED REFERRAL ORDER

It is hereby ordered by the Court that Forensic Clinical Services of the Circuit Court of Cook County, Illinois, examines the above named defendant, as to:

_✓_ a. Fitness to stand trial

_____ b. Fitness to stand trial with medication

_____ c. Sanity

_____ d. Ability to understand Miranda

_✓_ e. Other: _FITNESS TO REPRESENT HERSELF_

_____

Is defendant on bond? Yes _✓_ No _____ Alias _____

Address of Defendant:

___PO BOX 1537___ City _ADDISON_ State _IL_

Zip _60101_ Phone _630-220-4132_ Sex _F_ DOB ▮▮▮▮/1972

Name of Next of Kin: _____

Address: _____ City _____ State _____

Zip: _____ Phone _____ Relationship to Defendant _____

It is further ordered that Forensic Clinical Services make a report to the Court, including psychological/psychiatric summaries, on or before the next court date of:

_APRIL 14_ , 20_00_ , to;

_JUDGE BROSNAHAN_

_2650 S. CALIFORNIA, RM 303_

_CHGO, IL_

_COOK CTY STATES ATTORNEY'S OFFICE_

Attorney: _ASA ROBERT PODLASEK_

Address: _2650 S CALIFORNIA, RM 13B10_

City, State, Zip: _CHGO, IL 60608_

Telephone: _773-309-2725_

Attorney Code No: _____

ENTER:

DATED _3-3-10_

JUDGE _____ JUDGE'S NO. _____

WHITE - Court File    YELLOW - Forensic Clinical Services    PINK - Defendant Copy    GOLD - State Copy

# E X H I B I T   J



✉ e-mail me

## Chicago Courthouse

After the case was dismissed in Rolling Meadows, Annabel was indicted January 17th, 2007 in Chicago with two counts of computer tampering. The court transcript is available here. The first day in court, the state offered her a deal through her public defender. She turned the deal down. When she refused to take the deal, her public defender became disinterested and the case stalled. She decided to hire a private lawyer. In April 2008, this new lawyer told the judge, then Judge Scheier, that the second count of the indictment didn't warrant a felony under Illinois' law. Judge Schreier agreed and asked the state to re-indict. Thus the second indictment in May, 2008 and its transcript. Strangely though, instead

- Welcome
- How It All Started
- The Investigation
- The Charges
- Timeline With ABC Report
- Rolling Meadows Court
- Chicago Courthouse
- Federal Courthouse
- Where's Shahna G. Monge
- Who's Carol Spizzirri
- Lisa Madigan Should Go
- Final Thoughts
- Acknowledgment
- Related Links
- Search

00025
melongo

Chicago Courthouse

of correcting the indictment's count to reflect a felony, the state used the opportunity to revise all the statements, false and inconsistent, that were made in the first indictment. It added another count which was never part of the complaint and the very charge that caused the new indictment, well, it was kept **INTACT**. It seemed as though, the state used the re-indictment to correct its mistakes, seeing that Annabel now had a lawyer who could pose a challenge. The challenge came in the form of a motion for additional discovery . The state instead of responding to the motion, asked for yet another deal, which again was turned down. Then something strange happened. Annabel's lawyer lost his motivation. He became friendly with the state, to the point he will even joke with the state in front of her. He wouldn't answer phone calls anymore, so in an email, he was told Annabel was moving forward with another lawyer.

The third lawyer was then hired. In her search for another lawyer, she made sure that the next lawyer was young and had some computer knowledge

00026
melongo

which the former lawyer
didn't have. She found a
young one but it turned
out, he was inexperienced
and once he got his
money, his interest for the
case ended. He never
filed a single motion, let
alone bother to read the
case's facts. The whole
time was spent arguing.
He, arguing that he had
more important cases and
she, demanding that he
spent time on hers.
Noticing the lack of
interest on the part of this
new lawyer, the state
demanded another deal.
The lawyer urged the
defendant to take it, but
again, no deal was made.
The refusal resulted in
another fight and more
money was requested
from Annabel if she
wanted something done
toward her defense.
Strangely though, it's
through this lawyer that
Annabel got the idea to
represent herself, idea
thrown at her in a fight.
This lawyer later motioned
to be excused from the
case and in doing so, he
gave the defendant's
**ENTIRE** file to the state.
The same day, Annabel
informed the court of her
intent to represent herself.
The case was continued
to have the matter
discussed in the following
hearing.

**February 5th, 2009:**
Annabel confirmed her

00027
melongo

intent to represent herself. She asked Judge Lawrence E. Flood for a legal assistant in the form of a public defender. Judge Flood told her either she let a public defender represent her **OR** she represents herself without any legal assistance. Without any hesitation, she decided to go solo. After asking her questions as to her education's level and her knowledge of the law, Judge Flood handed her the file with a sarcastic remark: "You're making a big mistake..." She could hear laughters suppressed by the state and people in the court. Unlike regular people who might have been discouraged and intimidated by the scenery, the remark planted a deep seed of determination in Annabel's heart and she was eager the take the bull that was the Illinois Attorney General by the horns. To do that however, she needed to know the laws as they applied to her case. She registered to legal forums, searched the internet, visited law libraries and attended Judge Feccarota's sessions in Rolling Meadows, Room 109. Strangely though, it didn't take her long in her legal apprenticeship to discover cracks in the state's case. Her confidence went up

00028
melongo

and she was ready to go toe-to-toe against the state in a case she knew the facts to be misleading and fabricated. Overnight, she became a lawyer.

In her new capacity, her first move was to contact the newly elected Cook County State Attorney Anita Alvarez March 23rd, 2009. Since Dick Devine was the one who pushed her case to court, Annabel thought Anita Alvarez might have a more favorable position in her case. Anita Alvarez never responded back. Then she decided to meet the Illinois Inspector General , to have it investigate her case. She met with Diana L. Saltoun and Patricia A. McConnell on April 30th, 2009. Some weeks later, the Illinois Inspector General sent her this letter . Dishearted but not discouraged, her next move was to motion the state for evidences supporting the charges. She also moved to dismiss the indictment based on the fact that it was filed outside of the 60 days limit prescribed by Section 109-3.1 of the Illinois Code of Criminal Procedure Of 1963. The state has yet to respond to the motion on the evidence stating the motion to dismiss the indictment had precedence. When the state responded to her

00029
melongo

.

motion to dismiss, Judge Flood, who replaced the incapacited Judge Schreier, asked Annabel whether she wanted to respond or argue her motion. She chose to argue. The judge asked a second time if that's the option she wanted, she answered in the affirmative. The argument's date was set. The day of the argument, she came late and the state continued the case in her absence even though she called the judge's office to inform him of the late coming. The new argument's date was set for October 6th, 2009.

**October 6th, 2009**: To Annabel's surprise, Judge Flood denied her motion without bothering to hear her argument stating **'he had the right to do so...'** no further explanation was ever given. Utterly shocked, Annabel told him she wanted another judge. Judge Flood asked her to come the next morning to do the paperwork. The next morning Annabel came with a <u>motion petitioning the Chief Judge</u>, Paul Biebel, for substitution of **BOTH** judge and prosecutor given the fact that the Illinois Attorney General represented a conflict of interest in her case; first, for having <u>donated money</u> to SALF and second, for

00030
melongo

being in <u>business</u> with the
same organization.
Undermining Annabel's
<u>objection</u>, Judge Flood
sent her motion to judge
Kazmierski, who
supposedly was his
supervisor. Judge
Kazmierski didn't <u>take 3
minutes to review</u> the
more than 20-pages
motion and to deny it.
After that hard-breaking
meeting, the same day,
Annabel went to the clerk
office and filed a
'notification of motion' to
see the chief Judge, Paul
Biebel. Do you remember
Paul Biebel from early on?
The judge who presided
over the Grand Jury that
issued all the subpoenas?
and the same judge who
was also mentioned in the
above video by Carol
Spizzirri? and the judge
who also discovered a
conflict of interest in Anita
Alvarez prosecuting Jon
Burge?

**October 14th, 2009**:
When Annabel <u>met the
Chief Judge</u>, she asked
him to remove Judge
Flood from her case
based on what said in
the motion. Well, Chief
Judge told Annabel that
he presided over one of
the largest criminal county
in the U.S. and he didn't
have time to review
motions once they have
been denied by another
judge. Moreover, he knew
Judge Kazmierski to be a
good one. And what about

00031
melongo

the conflict of interest, Annabel insisted with tears in her eyes? The Chief judge, who was so keen in seeing the conflict of interest in Anita Alvarez prosecuting Jon Burge, failed to see that same conflict in Lisa Madigan prosecuting Annabel Melongo. The motion to substitute both judge and prosecutor was again dismissed and the case was sent back to judge Flood, Room 704.

**October 28th, 2009:** Against everyone's surprise Annabel filed her second motion to dismiss the indictment. This time based on perjuries made by detective Martin and exculpatory facts that were not mentioned by the state during the indictment. For the first time in this case, the state and the court are caught in Carol Spizzirri's web of lies. This time, Illinois Legal System will **CLEARLY** prove in which camp it is playing. If it decides to dismiss the indictment, then detective Martin is in big trouble and SALF is open for financial investigation. However, if for some strange reasons, the motion is denied, then the Illinois Legal System has tramped on the very laws it represents and public opinion will be the witness. Unlike the first motion, this one presents

00032
melongo

a **CLEAR** evidence that perjuries and non-disclosure of facts have been committed. So let's watch the state's and court's response in the next hearing, **November 12th, 2009**.

**November 12th, 2009:**
After 7 months in the loop, the state finally responded to the motion for additional discovery . This would have been a good news for the defense if that response had some substance to it. However, 3 years and 7 months in the case, after an arrest warrant and two indictments, the state still can't provide evidence sustaining the charges. This due to an **ONGOING** investigation, when everything from the Forensic report , Kyle French email and detective Martin investigative report testified that the investigation was closed in October of 2006. Moreover, for items that don't necesitate an investigation, the state is asking the defense to **EXPLAIN** how the information is going to be used. We're curious to see how the state is going to explain away the perjuries and exculpatory evidence on **December 8th, 2009**.

**December 8th, 2009:**
Since this case started,

00033
melongo

there has never been a better week for the defense.

- First Daniel Ferraro, the director of Investigations at the Illinois Attorney General Office, removed Shahna G. Monge as a Twitter's follower. Unbeknown to him, we had a copy of the <u>original followers.</u>
- At 9.30 AM, Annabel filed a <u>Notice Of Removal</u> at the Federal building located in Dearborn Str., Chicago.
- At around 10.00 AM, Judge Lawrence E. Flood recused himself from the case. The case is sent back to Judge Paul Biebel for judge reassignment. At the same hearing, the state also added another prosecutor in the case, a young lady named Julie Gunnigle. Annabel is now facing **THREE** prosecutors. What a waste of resources!!!

**December 9th, 2009:** The assigned judge was John J. Fleming. To Annabel's surprise, the judge's first remark was the fact that she did ask for a substitution of judge (SOJ) before. When she asked the question as to why the

00034
melongo

state's response to her
motion to dismiss was
filed and she a copy not
handed to her? Judge
Fleming started yelling at
her. Using her intuition
has a guide, she raised
her right to substitute him
right away. In Illinois, any
defendant has a **ONE** time
right to substitute a newly
assigned judge within 10
days, provided the judge
in question has not made
any major ruling on the
case. So the case was
sent back to Judge Paul
Biebel for re-assignment.
After the hearing, Annabel
went home and made
some Google searches on
Judge John J. Fleming.
She couldn't believe the
reputation surrounding
him. She then realized
that Judge Flood might
have been forced out of
the case and the Chief
Judge, fearing the
perjuries' motion, might
have assigned Judge
John J. Fleming to do the
'job'. But little did he know
that Annabel had a
surprise in the form of
'substituing a judge as a
right'. When Annabel
wanted to substitute
Judge Flood, she made a
motion to Paul Biebel who
denied it. However, when
the case wasn't going well
for the State and of course
for his own survival and
those if his allies, Judge
Flood was suddenly
excused and Judge John
J. Fleming assigned the
case. By the way, his

00035
melongo

choice wasn't random, but a hand-picked one. Undermining the Clerk Office's system in which the assignment of judges is done through an electronic system.

**December 10th, 2009:**
Armed with her motion to substitute the newly assigned Judge Fleming, Annabel filed a notification of motion and attached her motion to it. Thereafter, she went to Judge Fleming's courtroom. She's told that she had no hearing scheduled that day. She then went to the State Attorney Office to serve the lead prosecutor, Robert Podlasek, her newly filed notification of motion. She learned from him that a new judge has already been assigned and that an arrest warrant was on her. He asked her to follow him to the new judge's courtroom. Utterly shocked, while in the elevator, she asked the prosecutor the statute warranting a change of judge without a written motion from the defendant? The prosecutor sarcastically replied "that's the law". To which Annabel retorqued "that's not the law, that's corruption". Irritated, the prosecutor said to her "if you called me corrupt again, I will go to Judge Biebel". To aggravate him

00036
melongo

Chicago Courthouse

further she replied "let's go there right now, I really want to meet him". Prosecutor Podlasek shut his mouth only to reopen it before the new judge, Judge Mary M. Brosnahan. The new judge quashed the warrant and forced Prosecutor Podlasek to give Annabel his response to the motion to dismiss. Adding another blow to a prosecution team which has used every trick under the Sun to navigate its way through the Illinois Justice System. It was also revealed that day that Robert Podlasek is actually a **financial** prosecutor. What an irony!!! A financial prosecutor assigned to a computer tampering case, when his expertise should be used to prosecute Carol J. Spizzirri!!! And what about Mary M. Brosnahan? Nothing alarming about her on the internet. The only thing transpiring is that, she's a good Democrat and donates frequently.

Tired by the events of the day, Annabel took a bus to get to the train station. That's when she was first contacted by a dramatic creature; a creature that might well have existed in the Precambrian Era and who, by some strange natural factors, made it through the Modern Era. But

00037
melongo

before introducing you to this living, yet undiscovered and **'rare specimen'** known as Ms. Pamela Taylor, a little background would be helpful in understanding why she contacted Annabel:

- o To file her 'Notice Of Removal' to Federal Court, Annabel gathered all the information and statutes needed to start the removal.
- o She learned that a removal ought to be filed 30 days after arraignment or before the start of the trial. Knowing that she has never been arraigned in the superceding indictment, she called her friend and discussed this on the phone. Her friend asked her to go pronto to court and get the certified clerk and docket files and to order the 06/18/09 transcript. The

next day, she went to the courthouse and did exactly that. She got a <u>certified clerk file</u> , <u>a certified docket file</u> and ordered the transcript. The clerk and the docket files confirmed the fact that she was **NEVER** arraigned.

o She anxiously awaited the transcript and surely enough, on December 1st, 2009, she get <u>a call</u> from the court reporter informing her that the transcript was ready to be picked up. The transcript of that voicemail can also be viewed <u>here</u>.

o December 4th, 2009: Annabel rushed to the courthouse to pick up the <u>transcript</u>; to her surprise, the transcript contained an arraignment she wasn't aware of. At first, she believed, her former attorney

00039
melongo

arraigned her without her being present,opinion reflected in her 'Notice Of Removal', but she later realized, the arraignment was made up. The transcript was re-created to reflect an event that **NEVER** happened. The transcript was not only contradicting the other certified records, but it was in contradiction with itself.

o December 5th, 2009: Annabel called Ms. Laurel Laudien, the court reporter, and left a message telling her she believed the transcript to be a forgery. She also told Ms. Laudien that she will file a complaint against her and take her to court for having falsified the transcript.

o December 6th, 2009: Ms.

00040

melongo

Laurel Laudien returned the phone call and stated that Annabel was in court that day since she couldn't be arraigned without being present. When Annabel asked about the contradiction with the other court records, she hanged up not before Annabel re-affirmed her intent to file a complaint against her.

- o **Note:** Due to Annabel's accent, all her phone conversations with Ms. Pamela Taylor have corresponding transcripts. We recommend you read the transcript while listening to the conversations. The Illinois Eavesdropping Law provides an exemption at Sec. 14-3(i) which was the basis used by Annabel to tape the conversations. This exemption

00041
melongo

is further explained by Jim Ryan, the former Illinois Attorney General, in this document.

o Then came .... Ms. Pamela Taylor. On December 10th, 2009, while riding the bus, Annabel received a phone call from her. Without letting Annabel speaks, she re-hashed Ms. Laudien answers and forced Annabel to believe those facts to be the **TRUTH**. Annabel hanged up. Some minutes later, Ms. Pamela Taylor called back with precise instructions on how Annabel ought to handle the situation. The transcribed version of her voicemail can be viewed here.

o Having had one of her crucial transcript changed before, this

00042
melongo

time, Annabel decided to handle the situation differently. She went to her house, got a voice recorder and called back Ms. Pamela Taylor. Her plan was to play the naive and ignorant immigrant who didn't know about American Laws. In doing this, she played a reverse psychology on Ms. Taylor. She said to herself, if Ms. Taylor give her misleading answers, then Ms. Taylor had something to hide, otherwise, the fault might be on Ms. Laudien. We will **NOT** tell you our opinions of the conversation, make your own opinions. Here is the conversation and the accompanying transcript.

o Smelling blood

00043
melongo

in the water, Annabel wanted to get to the **SOUL** of Ms. Taylor. December 15th, 2009, Ms. Taylor next business day, Annabel called again. Unfortunately, that day either she didn't have time for a lenghty conversation **OR** she was afraid to be caught off guard. Nevertheless, they exchanged the following words and the phone conversation was postponed for the next day. The transcript of the conversation can be viewed here.

o December 16th, 2009: Here's the phone conversation and its transcript. Though we can't comment on the conversation, nevertheless, consciously falsifying court

00044
melongo

transcripts is not only a felony but it's the **HIGHEST TREASON** a court official can perform. The FBI actually investigates such situations. The last time it happened in Cook County, it was called Operation Greylord. The biggest story behind these falsified transcripts is that, the very persons that are supposed to uphold the Law, Lisa Madigan and Anita Alvarez, won't hesitate to transgress the same Law to win bogus cases that personally benefit them. A lack of an arraignment is ground to **TERMINATE** Annabel's case. There are only three persons in the entire world who had a vested interest in that transcript. Lisa

00045
melongo

Chicago Courthouse

Madigan, Anita Alvarez and Annabel Melongo. Since the transcript was changed against Annabel's interest, then the **ONLY** persons who might have ordered such a despicable act, using Ms. Taylor and Laudien as pawns, are Lisa Madigan **OR** Anita Alvarez. There's no word imaginable to describe such an abuse of power and the hypocrisy surrounding it. Because there's no such word, let's just lend a word created by one of our friends and let's call the present situation, a **Wowie-Kazowie**.

o A complaint will be filed at the FBI office and subpoenas will be issued to get the court reporter's notes and the

00046
melongo

audio of the hearing. Next court date is **January 12th, 2010**.

**January 12th, 2010:**
Annabel filed a motion to withdraw the motion to dismiss and filed an amended motion to dismiss. Pamela Taylor was also present in court in response to this subpoena. As it should have been expected, the response to the subpoena is not what was asked but merely Annabel's request for transcripts. She couldn't provide audio files, reporter's notes and email exchanges with the State Attorney or the Attorney General Office in regard to the 06/18/2009 transcript. It would have been native to expect otherwise. The good thing though, Ms. Pamela went on record about the audio files being inexistant and the court reporters' not accessible via subpoena. Unlike Ms. Pamela Taylor, another subpoena directed at Don Peters of Critical Technology was also responded. It's worth praising how a character like Don Peters can stand out in a case like this, where corruption and manipulation have become common practice. But first, do you remember the State response on the motion for additional

00047

melongo

discovery? In regard to Don Peters, the state said "The people's investigation is ongoing". To call this a lie will be an euphemism. The investigation, as far as Don Peters was concerned, was not only closed but it didn't backed-up whatever was said in the indictment. There have only been two people sofar in this case, Prosecuter Lynn Palac being the second individual, who have stood up for what they believed instead of giving into the razzle dazzle of Carol Spizzirri's powerful connections, like she so boastingly and manipulatively made people aware of. In a summary, Don Peters' response is every defense's dream. Unfortunately, we can't publish it at this time, but in it, transpires that both the Attorney General and the State Attorney, less than three weeks in the incident, were briefed on the case and were requesting evidence to be preserved. Furthermore, Don Peters states that the deletion wouldn't have been difficult to stage, something that has long time been suspected. It's marvellous to come across an individual like this who comes out of the woodwork of lies, manipulation, corruption and stands for **TRUTH**.

00048
melongo

Comes what might. Next Court Date **January 28th, 2010.**

**January 28th, 2010:** State <u>responded</u> to Defendant's Amended Motion To Dismiss. Judge Brosnahan gave the Defense some minutes to review the response before deciding on the argument's date. After reviewing the response, Defendant told the Judge that she couldn't argue the response simply because the information contained in it wasn't given to her when she filed her motion for additional discovery. She argued that the <u>state's response</u> in regard to that motion, mentioned a so-called pending investigation. She asked the judge to put a hold on the argument's date and force the state to provide additional discovery. The judge agreed. In the next court's date therefore, Annabel will file a Motion To Force Discovery or To Dismiss; hopefully in doing so, the information mentioned in the state's response will be available to her. Information being, among other things, the comcast bill, the forensic examination report on the IP Address and the so-called statement made by the Defendant. Worth noting, although a Status Hearing has been scheduled in Federal

00049
melongo

Court, it's not until the federal judge ordered the removal that the case will be closed in Cook County. Next Court Date **February 9th, 2010**

**February 9th, 2010:** Judge Brosnahan asked the state to comply as quick as possible with Defendant's Motion To Compel Discovery Or To Dismiss. Judge also reprimanded Defendant not to cross-talk her; Defendant apologized and agreed not to do so anymore. State was unable to provide the Comcast Bill, the IP Forensic Examination as well as the Defendant's Statement regarding using Comcast at the time of the incident as alleged in the state's response to her Amended Motion To Dismiss Indictment. The Judge in addition to forcing the state to produce the above information also asked Schiller Park Police's lawyer to bring Detective Martin **ALL** Internal Affairs Records for review and to tender to the Defendant all information relevant to her subpoena. Defendant will argue both her Motion To Compel Discovery and her Motion To Dismiss Indictment on **March 3rd, 2010.**

**March 3rd, 2010:** Carol Spizzirri, Rita Mullins,

00050
melongo

Douglas Browne, Illinois Department Of Public Health all moved to quash the subpoenas sent to them through a state's Motion To Quash Subpoenas. It's understanding why the state might move to quash a subpoena sent to Illinois Department of Public Health. What raises eyebrows however, is when the state moved to quash subpoenas sent to third parties that constituted Save-A-Life Foundation board. Judge Brosnahan reversed a ruling contradicting her decision forbidding Annabel to subpoena Schiller Park Police in regard to police reports. A ruling that Annabel objected to. Another surprising move is also when Judge Brosnahan **SUDDENLY** decided to postpone Annabel's arguments on both motion to compel discovery and motion to dismiss. She stated Annabel **MUST** undergo a psychological evaluation to determine if she was fit to stand trial and defend herself. A move to which Annabel responded stating that she has been more than 3 years in the case, has done a legal job that **NONE** of her former lawyers came close to without showing any sign of psychological derangement. Judge Brosnahan replied,

00051
melongo

somehow disturbed, that all was irrelevant. Judge Brosnahan stated that Annabel needed a psychological evaluation because she was unable to understand her. Did the state ever asked Carol Spizzirri to undergo a psychological evaluation? If it did, it would have found out that Carol Spizzirri, not only fabricated this case from end to end by providing false statements to Randy Roberts and Dick Devine; Dick Devine who by the way, happened to be Carol Spizzirri's close friend. Judge Brosnahan forcing Annabel to undergo a psychological evaluation en lieu of letting her argue her motions is yet another move from the state and the court to block a motion to dismiss based on seven counts of perjury by Detective Martin and Three counts of prosecutorial misconduct by Joseph Podlasek. Annabel has a big surprise in store for the court in its attempt to push her out of the case by pretending she's psychologically unbalanced. This surprise will be known on **April 14th, 2010.**

|Welcome| |How It All Started| |The Investigation| |The Charges| |Timeline With ABC Report| |Rolling Meadows Court |
|Chicago Courthouse| |Federal Courthouse| |Where's Shahna G. Monge| |Who's Carol Spizzirri| |Lisa Madigan Should Go|

00052
melongo

http://www.illinoiscorruption.net/chicago.html                              3/8/2010

Chicago Courthouse

|Final Thoughts| |Acknowledgment| |Related Links| |Search|

Powered By Illinois Corruption ©2009

00053
melongo

# EXHIBIT K

**FORENSIC CLINICAL SERVICES**
State of Illinois
Circuit Court of Cook County
Criminal Courts Administration Bldg.
2650 S. California Avenue, Room 1001
Chicago, IL 60608

**Timothy C. Evans**
Chief Judge

**Mathew S. Markos, M.D.**
Director

| Phone | 773-869-6100 |
| Fax | 773-869-2371 |
| TDD | 773-869-7605 |

April 20, 2010

The Honorable Mary M. Brosnahan
Judge of the Circuit Court of Cook County
Criminal Courts Building, Room 303
2600 S. California Avenue
Chicago, IL 60608



FILED
APR 2 0 20
Judge Brosnahan

RE:  People of the State of Illinois
vs.
**ANNABEL MELONGO**
Case No: 08 CR 10502
Due Date:  April 20, 2010

Dear Judge Brosnahan:

Pursuant to Your Honor's Order, the undersigned psychiatrist examined the above defendant on April 13, 2010.

Based on the above examination and review of pertinent records, it is my opinion with a reasonable degree of medical/psychiatric certainty that Ms. Annabel Melongo **IS PRESENTLY MENTALLY FIT TO STAND TRIAL.**  Currently, she does not manifest any symptoms or signs of a mental illness.  She is cognizant of the charge, understands the nature and purpose of the court proceedings, and shows the ability to cooperate with counsel in her defense.  Reportedly, she is not prescribed any psychotropic medication.

Ms. Melongo informed this examiner that she is no longer going pro se and retained a private attorney i.e. Mr. Nick Albukerk, who is representing her and will appear on her behalf on her next court date i.e. 4/20/10.

Please refer to my full Psychiatric summary for the basis of my opinion.

Thank you for giving me the opportunity to examine this defendant.  If you have any questions or need any clarification please do not hesitate to contact me.

Respectfully yours,

Mathew S. Markos, M.D.
Director

MSM: la

# EXHIBIT L

```
 1   STATE OF ILLINOIS   )
                         )  SS:
 2   COUNTY OF C O O K   )

 3
              IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4                COUNTY DEPARTMENT-CRIMINAL DIVISION

 5   THE PEOPLE OF THE        )
     STATE OF ILLINOIS,       )
 6                            )
                Plaintiff,    )
 7                            )
                   -vs-       )  No. 10 CR 08092 (01)
 8                            )
     ANNABEL MELONGO,         )
 9                            )
                Defendant.    )
10
```

11          REPORT OF PROCEEDINGS had at the Hearing of the

12   above-entitled cause before the Honorable STEVEN GOEBEL, on

13   June 24, 2011.

14                    PRESENT:

15                    HONORABLE ANITA ALVAREZ,
                      STATE'S ATTORNEY OF COOK COUNTY, by:
16                    MR. ROBERT PODLASEK,
                         Assistant State's Attorney,
17                       for the People;

18                    MR. NICOLAS ALBUKERK,
                         for the Defendant.
19

20

21

22   MARIE K. KOPPERS
     Official Court Reporter
23   2650 South California Avenue, Room 4C02
     Chicago, Illinois  60608
24   License No. 084-004087

1    THE CLERK:  Annabel Melongo, in custody.

2    THE COURT:  All right.  Would everyone identify

3 themselves.

4    MR. ALBUKERK:  Nick Albukerk, A-l-b-u-k-e-r-k.

5    MR. PODLASEK:  Robert Podlasek, P-o-d-l-a-s-e-k, for the

6 State.

7    THE COURT:  Good afternoon, Ms. Melongo.

8        All right.  Mr. Albukerk, I will let you start.

9    MR. ALBUKERK:  Thank you, Judge.  Well, Judge, we're

10 here again.  As you know, my client has very, very much

11 wanted to hire other counsel, counsel besides me, and we have

12 to keep getting these continuances to find out if in fact she

13 will be able to hire new counsel.  She has had certain

14 problems, because unfortunately, she's had some -- she tells

15 me -- I spoke to her briefly in the back -- she's had some

16 medical problems.  She needed to undergo some surgery.  And

17 unfortunately, her family -- her mother, specifically, lives

18 in France.  That's something I have been able to confirm,

19 because I have spoken to her there.  And she would like

20 desperately to speak with her mother so that she can hire

21 this other counsel, for the record.  And respectfully, my

22 client is asking for a continuance to call her mother to

23 arrange the funds to hire other counsel.

24    THE COURT:  All right.  I understand.  You also have a

1   motion to withdraw?

2       MR. ALBUKERK:  Correct.

3       THE COURT:  Do you wish to argue that today?

4       MR. ALBUKERK:  Judge, I stand on, you know, what is

5   written in there.  My client has already filed an ARDC

6   complaint against me.

7       THE COURT:  What is the status of the ARDC complaint?

8       MR. ALBUKERK:  I know it was filed and then I had to

9   file a response.  I did file that response over a month ago.

10  And I have not heard back from the ARDC in terms of whether

11  or not they've ruled one way or another.

12      THE DEFENDANT:  After his response, they sent me some

13  papers, and then I have to answer in about two weeks,

14  respond, and provide more documents, and then I did that

15  April 29th.  And then they told me if it's a valid complaint

16  then they are going to investigate.  So I guess they are

17  investigating.

18      THE COURT:  All right.  Well, they would let both

19  parties know if they're going to investigate, with my

20  experience with the ARDC, having dealt with them on a

21  professional level, so that's what they do.

22          Mr. Podlasek, do you have a response?  What's the

23  State's position?

24      MR. PODLASEK:  Judge, as far as the State's concerned,

1    Mr. Albukerk has explained to me the situation he was in

2    months ago.  I believe we had no objection to him withdrawing

3    months ago from this case.  It's just a matter of whether or

4    not the defendant is going to be represented or not.

5        THE DEFENDANT:  I'm going to be represented.

6        THE COURT:  All right.  Here's the situation.  The

7    appellate courts have held just the mere filing of an ARDC

8    complaint does not require withdrawal.  There's been nothing

9    represented to me here today or in the past court appearances

10   that would automatically require a withdrawal.  Otherwise,

11   defendants would simply go around every time they wanted a

12   new attorney and file an ARDC complaint, and the appellate

13   courts have recognized that possibility and have dismissed

14   that possibility and there has to be something more valid to

15   it.  That's why I asked you what the status of the ARDC

16   complaint is.

17        And Ms. Melongo, I'm also very concerned about

18   your status.  Obviously, you have been in custody now for

19   quite sometime and it's important for you to get this matter

20   to trial, because you're sitting in custody, and I don't know

21   ultimately how the case will turn out.  But if you were found

22   guilty, you may be sitting in custody longer than had you

23   gone to trial and the jury found whatever they are going to

24   find.  So it's important for you to get this matter to trial

1 as well. Do you understand what I'm saying?

2    THE DEFENDANT: Judge, please I really need time, and

3 actually, I have to see everything that's going on with the

4 first case. Albukerk never represented me, unless I know

5 exactly what the ARDC is going to say, because there were

6 some things that were done, like motions were filed. I never

7 knew about them. There were things that were done behind my

8 back. I never knew about them. I want to know all of those

9 things. It has nothing do with the appellate court. The

10 relationship between us is really damaged. And unless

11 Albukerk told me that he didn't want to represent me, I don't

12 want him to represent me any more, so I don't know -- you

13 cannot put us together, because the relationship right now is

14 really damaged, unless maybe what you can do, maybe you can

15 give a stamp to kind of walk on that condition, but I really

16 want to see exactly what -- all the motions, everything in my

17 last file. Maybe then I can reconsider hiring him back, but

18 right now --

19    THE COURT: Okay. What do you want to see from your

20 first case?

21    THE DEFENDANT: There were things like -- there were

22 motions filed, there were things that Albukerk did and then

23 never informed me about those motions. There were a lot of

24 motions that were filed and I never knew about them.

1    THE COURT:  A motion that was filed.  Do you know what

2   kind of motion you are concerned with?

3    THE DEFENDANT:  I left -- maybe if I can go back, I left

4   the certificate of disposition in my cell, but I can go date

5   by date.  There were things that were done behind my back.  I

6   never knew that he did those things.  Sometimes he even

7   waived my appearance on something and I was not even aware of

8   my appearance being waived.

9    THE COURT:  All right.  That's usually typical for a

10  court date.  I mean, your appearance cannot be waived for an

11  actual substantive hearing where testimony is heard.  The

12  judge would not accept that or even allow that to go forward.

13  But it's not unusual, it happens all the time, where an

14  attorney will ask for a continuance and waive their client's

15  appearance for various reasons, but nothing substantive

16  happens during those court appearances, and I certainly would

17  not let that happen, either.  You will be present for all

18  substantive matters that any kind of ruling or any kind of

19  argument is being made, because I won't tolerate that.  I

20  will not permit it as a judge on your case, I can assure you

21  that.

22    All right.  This is what we will do --

23    THE DEFENDANT:  For instance --

24    THE COURT:  All right.  Go ahead.

1    THE DEFENDANT:  For instance, post trial, there was a

2    remanded file on my bond review, and that bond has been

3    denied, and I never knew that there was a bond review after

4    the trial.  During that time, I was preparing to re-file that

5    bond reduction and everything, but then I saw the certificate

6    and then I saw the bond review and then a remanded file and

7    everything and I was extremely confused, and I don't know

8    what was the mandate for, what my bond -- the motion to

9    review my bond was denied when I never even knew that such a

10   motion was filed.  I never knew.  So I need to see all --

11   THE COURT:  I will rule on Mr. Albukerk's motion to

12   withdraw and your motion to have him dismissed in two weeks.

13   All right?

14   THE DEFENDANT:  Yes.

15   THE COURT:  You don't have an attorney ready and waiting

16   to come in on this case.

17   THE DEFENDANT:  No, I have an attorney waiting.

18   THE COURT:  Who is that?

19   THE DEFENDANT:  Mr. Willis.

20   THE COURT:  Robert Willis?

21   THE DEFENDANT:  Yes.  The only thing is, I have to talk

22   to my family.  And like I said, I can still give Albukerk a

23   chance, but I really need to know exactly what he did.

24   Unless I see what he did, I can never -- I cannot go to him.

1   He did a lot of things behind my back.

2       THE COURT:  All right.  I am going to continue it for

3   two weeks and then rule on this matter.

4       MR. ALBUKERK:  Judge, in any event, first of all, number

5   one, let's get a date.  Number two, with the permission of

6   the Court, can I prepare an order ordering the Cook County

7   Sheriff to grant my client a long distance overseas phone

8   call to her family?

9       THE COURT:  Yes, I will sign an order for that,

10  absolutely.

11      THE DEFENDANT:  Thank you, Judge.

12      THE COURT:  You're welcome.

13          All right.  July 11th?

14      MR. ALBUKERK:  Yes.

15      THE COURT:  It will be at 1:00 o'clock.

16      MR. ALBUKERK:  All right.  I will be able to fit it in.

17      THE DEFENDANT:  Can you also order Albukerk to show me

18  my entire file?  I want to see everything.

19      THE COURT:  Well, he can go over it.  There are certain

20  things, you know, he cannot show you.  He cannot show you

21  police reports and things like that, but he can go over those

22  with you.

23      THE DEFENDANT:  Okay.

24      MR. ALBUKERK:  Judge, I have already addressed all of

1   her concerns.  I have already explained them quite fully.  I

2   have already been a visitor in the jail several times.  That

3   is exactly what I told the ARDC as well, or something to that

4   effect.  What she wants is, she wants transcripts and copies

5   of absolutely everything and every file.  She wants

6   mathematical reproductions of the events in the case, and I

7   cannot do that.  I cannot give her --

8       THE COURT:  What do you mean "mathematical

9   reproductions"?

10      MR. ALBUKERK:  She basically wants a word by word

11  reproduction of everything that has occurred in her case over

12  the last year and a half.

13      THE DEFENDANT:  That's not true, that's not true.

14      MR. ALBUKERK:  I have already gone over with her every

15  single motion.  I have already explained to her what went on.

16  And she simply doesn't accept it.  That's the problem.

17      THE DEFENDANT:  Judge, that's not true.  I asked him to

18  bring my entire file to jail and I want to review every

19  motion filed that I was not aware of.  I never asked him to

20  make me a copy --

21      THE COURT:  I'm sure Mr. Albukerk will go over the

22  motions that were filed.

23      THE DEFENDANT:  Just bring any my entire file and let me

24  go through my file.

```
 1        MR. ALBUKERK:  Judge, I'm not going to do that.

 2        THE COURT:  He cannot do that.  He can go over things

 3   with you, but he cannot just hand over his file to you.

 4   That's not permissible.

 5        THE DEFENDANT:  I don't need to see his copy -- I just

 6   want to see -- I am entitled to know the kind of motion he

 7   has filed.

 8        THE COURT:  Right.  He can go over the motions with you.

 9        MR. ALBUKERK:  I have already been over all of that with

10   you.

11        THE DEFENDANT:  No, you have not, you have not.

12        MR. ALBUKERK:  I have.

13        THE DEFENDANT:  See, that's the issue.

14        THE COURT:  All right.  I can see the two of you do have

15   some issues.  I will rule on this July 11th then.

16                    (Whereupon, the above-entitled matter was

17                     continued to July 11, 2011.)

18

19

20

21

22

23

24
```

```
 1    STATE OF ILLINOIS   )
                          ) SS:
 2    COUNTY OF C O O K   )

 3            IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                   COUNTY DEPARTMENT-CRIMINAL DIVISION
 4

 5            I, MARIE K. KOPPERS, an Official Court Reporter

 6    of the Circuit Court of Cook County, County

 7    Department-Criminal Division, do hereby certify that I

 8    reported in shorthand the proceedings had in the

 9    above-entitled cause and that the foregoing is a true and

10    correct transcript of the proceedings heard before the

11    HONORABLE STEVEN GOEBEL, Judge of said court.

12

13

14                    _____
                      MARIE K. KOPPERS
15                    License No. 084-004087

16

17

18

19

20

21

22

23

24
```

# E X H I B I T   M

```
 1    STATE OF ILLINOIS )
                        )  SS:
 2    COUNTY OF COOK    )

 3
                 IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4                  COUNTY DEPARTMENT-CRIMINAL DIVISION

 5    PEOPLE OF THE STATE OF ILLINOIS    )
                                         )
 6                   -vs-                )  No. 10 CR 8092 01
                                         )
 7    ANNABEL MELONGO                    )

 8

 9                             REPORT OF PROCEEDINGS had at the

10    hearing of the above-entitled cause before Steven J. Goebel, one

11    of the judges of said division, on the 20th day of September,

12    A.D., 2011.

13
                 PRESENT:
14
                 MS. ANITA ALVAREZ, Cook County State's Attorney by
15               MR. ROBERT PODLASEK, Assistant State's Attorney,

16                      on behalf of the People;

17               MS. ANNABEL MELONGO,

18                      pro se;

19               MR. NICOLAS ALBUKERK,

20                      also present.

21

22    ELIZABETH A. REYES
      CERTIFIED SHORTHAND REPORTER
23    2650 SOUTH CALIFORNIA AVENUE
      CHICAGO, ILLINOIS 60608
24    ILLINOIS CSR LICENSE NO. 084-001910
```

KK-1

1    THE CLERK:  Annabel Melongo, in custody.

2    MR. ALBUKERK:  Nick Albukerk, A L B U K E R K, former lawyer

3    of Annabel Melongo.

4    MR. PODLASEK:  Robert Podlasek, P O D L A S E K, for the

5    State.

6    THE COURT:  All right.  They're bringing out Miss Melongo.

7    The discovery, were you able to go through that before it is

8    tendered?

9    MR. ALBUKERK:  Yes.  I think -- well, I'll wait -- I'll wait

10   until she's here and then I'll start talking about it I guess.  I

11   think this is all of it.

12   THE COURT:  Okay.

13                    (Pause in proceedings)

14   THE COURT:  Okay.  Miss Melongo is before the Court.  Good

15   morning, Miss Melongo.

16   DEFENDANT MELONGO:  Good morning.

17   THE COURT:  Mr. Podlasek.

18   MR. PODLASEK:  Robert Podlasek, P O D L A S E K.

19   THE COURT:  Mr. Albukerk.

20   MR. ALBUKERK:  Nick Albukerk for the record, former lawyer of

21   Miss Melongo.

22        Judge, pursuant to the Court's request I have brought

23   what I believe to be all of the discovery materials.  Also I

24   basically brought my entire file to court.  And obviously it's my

1    understanding that Ms. Melongo is going to represent herself.  It

2    has been raised by the State that there's a duty to redact some of

3    this material.  A lot of this material is material that I

4    subpoenaed.  It's also -- it's mixed together because it's not

5    just the -- it's not just the eavesdropping case.  It's also

6    the -- the computer tampering case as well.  I don't know, your

7    Honor, if you want to go through these materials with me or if you

8    want me to go through them -- me to go through them with her.  I

9    don't know how you exactly want to do this.  Oh, and then the

10   bottom box is essentially all documents.  The top box is all

11   basically clothes.

12       THE COURT:  All right.  State, what's your position?

13       MR. PODLASEK:  Judge, our position is that we need to review

14   it.  We need to redact any witnesses' telephone numbers and/or

15   addresses.  It's my understanding that if Miss Melongo wants

16   somebody to be in court, she's going to have to ask the Court to

17   issue a subpoena.

18       THE COURT:  Miss Melongo, your position?

19       DEFENDANT MELONGO:  Actually the last time I was in court the

20   State, they talk about a Supreme Court rule that actually give

21   them the permission to go to my file and get it.  I went to the

22   law library, went to the Supreme Court rule.  Supreme Court Rule

23   412, 13, 14, 15.  There's nothing there that say once a defendant

24   go pro se the discovery information has to be changed.  In fact,

KK-3

1    two years ago I became pro se.  There was not a single page that

2    was changed.

3         THE COURT:  Redacted you mean?

4         DEFENDANT MELONGO:  Yes.  There was nothing that -- actually

5    everything was given to me, all the subpoena, everything.  So why

6    is it two years later then suddenly the State remember, oh, we

7    have to change information.  Where was that knowledge and wisdom

8    two years ago?  Why was -- wasn't it my changed two years ago when

9    I also became pro se?  So I actually fine that extremely

10   suspicious for the State to actually want to get my file and

11   change some information.

12        And, Judge, if you'll notice, if they take my files is

13   such a prejudice to me because in this file are communication

14   between Albukerk and myself that are confidential.  There are

15   things that the State should not see and for the State to come in

16   to request my files actually going to be a great prejudice

17   actually for me and completely.  I don't want the State to get to

18   my file.  Albukerk know what the State want.  Albukerk has to show

19   you the information.  And if the State want it, the State can have

20   it and maybe Albukerk see it, you know.  Albukerk know exactly

21   what kind of information the State want so Albukerk can make two

22   copies, one he keeps and the other one that he gives it to me.

23        I'm not -- I'm not in this case pro se for long and we

24   are actually going in circle.  I received this letter last week

KK-4

1    from my mother and you can see it's French.  And what the letter

2    say, she say I have the money.  To whom you want me to send the

3    money for your defense?  And I have been trying, calling every day

4    here to court asking to have access to phone communication and so

5    that I can give her the information to send the money.  I don't

6    know if you have a French translator there but everything -- you

7    can make a copy for this.  She actually give me dates where I can

8    call her to give her that information.  So eventually a lawyer is

9    going to get access to my file and the State in no way should get

10   to my file.

11       THE COURT:  All right.  So what you're telling me essentially

12   is that your mother is going to hire an attorney for you.  Is that

13   what you're telling me?

14       DEFENDANT MELONGO:  Yes.  And --

15       THE COURT:  I believe you've been telling --

16       DEFENDANT MELONGO:  I need --

17       THE COURT:  Hold on.  I know you've been telling me for quite

18   a while you're going to have an attorney.  And your mom wrote you

19   a letter so you have not spoken to her on the phone at all or have

20   you had any communication through your friend who is always in

21   court, helped you write the last motion -- not helped you write it

22   but delivered it to the Court I should say.

23       DEFENDANT MELONGO:  Yes.  I can just tell -- she doesn't have

24   access -- she doesn't have an international phone -- phone line.

KK-5

1  I can just tell her say this to my mom through somebody else.

2  That's the only way I can tell her, but if I have to respond to

3  this letter, it's going to take another month for me to actually

4  have the response and -- and know if she send the money or how

5  because once you send the money to the Western Union there has to

6  be some money order, tracking number and so that you have to send

7  back for the person to actually cash the money.  And the issue has

8  been give me a local phone and I have an international phone card

9  so give me a phone with a local access so that I can just call my

10  mom and give her that information.  If I call my mom today, by the

11  end of the week I have the money.  And I have been asking this

12  every time I been in court.  The State say, oh, they have some

13  security issue.

14      THE COURT:  Hold on one second.  You said you called your mom

15  once before from the jail?

16      DEFENDANT MELONGO:  Yes.

17      THE COURT:  There was -- there was a translator there?

18      MR. PODLASEK:  Yes.  They had a -- they have a French

19  translator.  And I --

20      THE COURT:  Mr. Albukerk, were you part of that?

21      MR. ALBUKERK:  We -- if I -- if memory serves correctly, this

22  was a while ago.  We got an order for the -- for my client to make

23  a phone call to France and -- and I know that it was my

24  understanding, I wasn't there at the time, but it was my

KK-6

1   understanding that she, in fact, did make phone calls to France.

2   And I have been in communication obviously with my client's mother

3   as well and she -- the mother had told me that she, you know, had

4   received these phone calls.  So it's -- this is going back many,

5   many months obviously, probably over a year now.

6       DEFENDANT MELONGO:  No, that's not true.

7       MR. ALBUKERK:  Well, it was going back many months.

8       DEFENDANT MELONGO:  Actually my -- my -- my social worker call

9   you.

10      THE COURT:  All right.  You're not going to fight with your

11  attorney right now.

12      DEFENDANT MELONGO:  Okay.

13      THE COURT:  Or your former attorney.

14      DEFENDANT MELONGO:  Let me -- let me clarify this.  Before my

15  surgery the social worker called me to request my mother phone

16  number and Nick gave her the phone number and then I make two call

17  from France at the jail and there was a French translator there.

18  So after the surgery when I -- in the presence of the translator

19  say we can do this once per month.  So after the surgery when I

20  requested to make the monthly phone call, then the social worker

21  start jerking me around.  She gave me appointment and then she --

22  she would not hold the appointment and that's why I came here so

23  that it's formally an order so that I can -- I can make those

24  phone calls.

KK-7

1    THE COURT:  All right.  So you understand, if I sign an order

2    to allow you to make a phone call to France to facilitate moving

3    this case along and hopefully you getting an attorney, you

4    understand it's going to be someone else listening to your phone

5    call.

6    DEFENDANT MELONGO:  I know.

7    THE COURT:  Do you understand that?

8    DEFENDANT MELONGO:  That's why there was a France translator

9    there.  She actually listened to my conversation.  She told me you

10   cannot talk about drugs and all those -- those -- those -- she

11   actually tell me exactly the thing I can say and thing I cannot.

12   THE COURT:  All right.  Mr. Albukerk, I'm going to ask you to

13   do one last thing even though you're not counsel anymore.  If you

14   prepare an order to what I just said, I'm going to allow Miss

15   Melongo to have a phone call to France.

16   MR. ALBUKERK:  Right.

17   THE COURT:  However, the jail obviously will have a translator

18   and will be allowed to listen to the phone call for security

19   reasons.

20   MR. ALBUKERK:  Very well.

21   THE COURT:  Okay?

22   MR. ALBUKERK:  Yes.  I'll draft that.

23   THE COURT:  And as far as discovery, I assume there is matters

24   within your discovery file, Mr. Albukerk --

1      MR. ALBUKERK:  Yes.

2      THE COURT:  -- that are attorney-client privilege.

3      MR. ALBUKERK:  Judge, I believe -- Judge, I believe there are

4   things in the file that are probably attorney-client privilege and

5   that other things that I subpoenaed that, you know, an attorney

6   wouldn't normally turn over.  I just -- I mean there's a lot of

7   stuff in the file obviously.

8      DEFENDANT MELONGO:  But you never told me.

9      THE COURT:  Hold on, Miss Melongo.

10      DEFENDANT MELONGO:  Okay.

11      THE COURT:  Hold on.  I want to hold this over for a short

12   date.  I want you to tell me what those items are.  The State will

13   not be entitled to those items that are attorney-client

14   privilege --

15      MR. ALBUKERK:  Okay.

16      THE COURT:  -- or that are not discoverable items.  I want to

17   know what those are and we're going to set this down.  Tell me

18   what those items are.  Otherwise the items that are not listed

19   we're going -- I'm going to have you go over those with the State

20   and those items will be redacted.  Miss Melongo, just because the

21   State may or may not have two years ago asked for those items to

22   be redacted does not mean that they can't ask for that now because

23   that's what the law is.  And --

24      DEFENDANT MELONGO:  Judge --

1    THE COURT:  -- it's not a waiver issue.

2    DEFENDANT MELONGO:  Judge, can I have the statute or the case

3    law please?

4    THE COURT:  That's what the case law is, Miss Melongo.

5    DEFENDANT MELONGO:  What case?

6    THE COURT:  You're representing yourself now.  It's up to you

7    to find your own case law and find your own statutes.  Okay?  I'm

8    not here to give you case law and statutes.

9    DEFENDANT MELONGO:  No.  Because --

10    THE COURT:  You're representing yourself.  And don't interrupt

11    me.

12    DEFENDANT MELONGO:  Okay.

13    THE COURT:  That's going to be my ruling.  You find it.

14    DEFENDANT MELONGO:  Judge, may I please?

15    THE COURT:  Go ahead.

16    DEFENDANT MELONGO:  Because the last time we were here, the

17    State said there was a Supreme Court rule that allow him to do

18    that and I went to the law library.  There's -- I haven't seen

19    that Supreme Court rule.  If the State can tell me the Supreme

20    Court rule that will allow the State to go to my file and redact

21    information.

22    THE COURT:  Okay.  I'm not going to allow him to go through

23    your whole file.

24    MR. PODLASEK:  I think Judge Joyce was here the last time and

KK-10

1   he may have cited a rule and I merely said I believe so. I didn't

2   cite any rules. I think Judge Joyce did cite a rule to Miss

3   Melongo. I don't know if that was the correct rule. I didn't

4   look it up.

5        THE COURT: Okay. In either case --

6        DEFENDANT MELONGO: Okay.

7        THE COURT: -- it is what the law is and I am going to allow

8   that. They will not get any confidential attorney-client

9   information or materials. That is privileged. You're absolutely

10   correct. State is not entitled to that and they will not get

11   that. However, the regular and normal discovery that does include

12   names, addresses will be redacted.

13        DEFENDANT MELONGO: Okay.

14        THE COURT: But this whole process could be circumvented if

15   you had an attorney here. So the first thing we're going to do is

16   have that order signed.

17        DEFENDANT MELONGO: Yes.

18        THE COURT: And hold this over for a date and hopefully you

19   can tell me when you can have an attorney here.

20        DEFENDANT MELONGO: Yes.

21        THE COURT: And that's going to save Mr. Albukerk and Mr.

22   Podlasek a lot of hours going through the discovery.

23        MR. PODLASEK: Judge, just for the Court's notice you may get

24   someone from the sheriff's office filing something.

1    THE COURT:  That's fine.  Then they can file it.  But if it

2  was allowed before, they can certainly allow it again and we need

3  to get this case moving along.

4    MR. PODLASEK:  Judge, I'm just --

5    THE COURT:  That they will be allowed so there's no security

6  issues to have an interpreter present.

7    DEFENDANT MELONGO:  Judge, when it's time, can you ask sheriff

8  give a time, a time line because you sign an order and then they

9  execute an order like a month later.  If you can give a time line,

10  if they can put this week so I can call my mom.

11    THE COURT:  Right.  I want it within a week so, Mr. Albukerk,

12  put in -- today being obviously the 20th.  I want her to be called

13  by the 27th.

14    DEFENDANT MELONGO:  Okay.

15    THE COURT:  One week.

16    DEFENDANT MELONGO:  And last but not least -- and, Judge,

17  Albukerk never told me that he ever subpoena something and he

18  actually showed me two subpoena and then I asked him so what

19  happens to the subpoena.  He say, oh, they have been quashed and

20  that's why I'm kind of surprised now.  He came now.  I have those

21  subpoena and the information needs to be changed.  I never knew

22  that Albukerk ever subpoena something and those subpoena were

23  actually returned to him.  He never gave me that information so

24  I'm kind of surprised now that he has for which I had no idea that

KK-12

 1    he had documents for which I knew nothing about.

 2        THE COURT:  Okay.  Well, we'll deal with that as we proceed

 3    here.  Mr. Albukerk has two boxes it looks like.

 4        MR. ALBUKERK:  Yes, Judge.  The top box is all clothes and

 5    shoes.  The second box below is all documents that either have

 6    been tendered to me by the State that I have copied and put

 7    together for my trial notebooks.  And then there's a lot of

 8    material like I said that I subpoenaed all of which, by the way,

 9    Judge, I did, in fact, tell my client about in great detail.

10        THE COURT:  Okay.  Mr. Albukerk, I understand.  Let's go to

11    the first week of October.  What's a good date for you, Mr.

12    Albukerk?

13        MR. ALBUKERK:  What's a good date for us to come back?

14        THE COURT:  Right.

15        MR. ALBUKERK:  Soon I imagine.

16        THE COURT:  First week of October.

17        DEFENDANT MELONGO:  Maybe the 5th, the first Wednesday?

18        THE COURT:  How's the 5th?

19        MR. ALBUKERK:  5th will work out fine.

20        MR. PODLASEK:  That's fine.

21        THE COURT:  All right.  By agreement October 5th.

22        MR. ALBUKERK:  Judge, what was that extension again?

23        MR. PODLASEK:  3359.

24        MR. ALBUKERK:  3359?

KK-13

1     THE COURT:  The court extension?

2     MR. ALBUKERK:  Yes.

3     THE COURT:  3359.

4     MR. ALBUKERK:  Judge, just to clarify you would like me to --

5 you want me to come up with a -- for the lack of a better term an

6 index of everything I've got?

7     THE COURT.  No.  You don't have to come up with an index of

8 everything you have.  I just want you to tell me what is

9 confidential.  Obviously you don't have to tell the State.  And

10 show -- show me what that could be or just tell me what it could

11 be.  You don't have to show me.

12     MR. ALBUKERK:  Okay.

13     THE COURT:  And I will make a ruling.  If it's attorney-client

14 privilege, it will not be tendered obviously to the State.

15     MR. ALBUKERK:  I could -- how about if I put it into three

16 piles, one being definite, you know, discovery that was tendered

17 to me by the State, one being just I don't know and then the other

18 being definite, you know, attorney-client privilege because

19 there's a lot of stuff that I subpoenaed that it bears on the

20 investigation.  It bears on -- it bears on how one might try

21 either one of the cases.

22     THE COURT:  Was that information tendered to the State in

23 discovery?

24     MR. ALBUKERK:  No, it wasn't.  I mean it was -- because I --

KK-14

1    it was subpoenaed -- for instance, I subpoenaed materials in the

2    computer tampering case while we were still, you know, on the

3    eavesdropping case.

4        MR. PODLASEK:  Judge, the reason I'm going -- the motion that

5    we have is for all discovery in both cases so if there's material

6    that is going to be presented in the computer tampering case, at

7    some point we would like access to that since they make reference

8    to that in the eavesdropping case.

9        DEFENDANT MELONGO:  It has to be done through motion, not

10   going through my file.

11       MR. PODLASEK:  We have filed a motion, Judge.

12       THE COURT:  Right.  Both sides have an on duty -- ongoing duty

13   to disclose all discovery matters.  So if you want to divide it up

14   in three piles, I will look at it and I will decide.

15       DEFENDANT MELONGO:  Judge, may I?

16       THE COURT:  You may.

17       DEFENDANT MELONGO:  Instead of him dividing can he just wait

18   because once I receive my money the lawyer is there waiting for --

19   it's just a matter of a week.

20       THE COURT:  Okay.

21       DEFENDANT MELONGO:  Instead of him going through my stuff.

22       THE COURT:  We'll see where we're at then.  First week of

23   October, October 5th.  Nothing will be tendered before that date.

24       MR. PODLASEK:  The motion that was filed by Miss Melongo.

KK-15

1      THE COURT:  I'm sorry.

2      MR. PODLASEK:  There's a motion pending.

3      THE COURT:  That will be held as well.

4      MR. PODLASEK:  Okay.

5      THE COURT:  I'm just waiting for Mr. Albukerk to finish the

6  order and it will be continued to October 5th.

7      DEFENDANT MELONGO:  Can I have --

8      MR. ALBUKERK:  Miss Melongo, can you tell me what your ID

9  number is?  Miss Melongo, can I get your ID number please?

10     THE CLERK:  2011-0414060.

11     DEFENDANT MELONGO:  Not 2011.  2010.

12     MR. ALBUKERK:  2010.  You say it again.  Couldn't be 11 but

13  that's okay.  What was the other?

14     THE CLERK:  0414060.

15     DEFENDANT MELONGO:  This is my ID, Judge.  It says 2010.

16     THE COURT:  Okay.  2010.

17                         (Pause in proceedings)

18     DEFENDANT MELONGO:  Judge --

19     THE COURT:  Mr. Albukerk, show a copy as well to Miss Melongo.

20     MR. ALBUKERK:  Certainly.

21     THE COURT:  Okay.  I'll be in chambers.

22     MR. PODLASEK:  Just bring it back there?

23     THE COURT:  Yes.

24                         (Which were all the proceedings had)


                         KK-16

```
 1    STATE OF ILLINOIS )
                        )  SS:
 2    COUNTY OF COOK    )

 3              I, ELIZABETH A. REYES, Official Shorthand Reporter of

 4    the Circuit Court of Cook County, County Department-Criminal

 5    Division, do hereby certify that I reported in shorthand the

 6    evidence had in the above-entitled cause and that the foregoing is

 7    a true and correct transcript of all the evidence heard.

 8

 9

10                              _____
                                Official Shorthand Reporter
11                              License No. 084-001910
                                Circuit Court of Cook County
12                              County Department
                                Criminal Division
13

14    Dated this  19    day of November, 2012.

15

16

17

18

19

20

21

22

23

24
```

KK-17

# EXHIBIT N

1

2      STATE OF ILLINOIS      )
                              ) SS:
3      COUNTY OF COOK         )

4          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT-CRIMINAL DIVISION
5

6      THE PEOPLE OF THE      )
       STATE OF ILLINOIS,     )
7                             )
             Plaintiff,       )
8                             )   CHARGE: CRIMINAL
             vs.              )   CASE NO:  10 CR 08092-01
9                             )
       ANNABEL MELONGO,       )
10                            )
             Defendant.       )
11                            )

12

13               BE IT REMEMBERED, that on the 5th day
       of OCTOBER, 2011, A.D. this cause came on to be heard
14     before the HONORABLE STEVEN GOEBEL, Judge of said court,
       herein, the defendant having entered a plea of not
15     guilty.

16          A P P E A R A N C E S:
            HON:  ANITA ALVAREZ,
17          State's Attorney of Cook County by;
            MR. ROBERT PODLASEK,
18          Asst. State's Attorney,
                On behalf of the People of Illinois;
19                * * * * * * * * * * *

20

            MS. ANNABEL MELONGO,
21              Appearing Pro Se.
                  * * * * * * * * * * *
22

23     JAMIE MITCHELL
       OFFICIAL COURT REPORTER
24     CIRCUIT COURT OF COOK COUNTY

                         LL-1

1

2

3                              I N D E X

4

5            HON:    STEVEN GOEBEL

6            DATE:    10/5/11

7            CHARGE:    CRIMINAL

8            PAGES:    LL-1 THROUGH LL-26

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    CONTINUED TO................................10/13/11

                              LL-2

1    THE CLERK:  Annabel Melongo.

2    MR. ALBUKERK:  For the record, Nick Albukerk,

3  former counsel for Annabel Melongo.

4    MR. PODLASEK:  Robert Podlasek on behalf of the

5  State.

6    THE COURT:  Good morning, Ms. Melongo, how are

7  you?

8    DEFENDANT MELONGO: Fine.

9    THE COURT:  Did you make your phone call?

10    DEFENDANT MELONGO:  I didn't -- they haven't

11  let me make a phone call.  I ask that --

12    THE COURT:  I didn't hear you.

13    DEFENDANT MELONGO:  They didn't let me make a

14  call.  They didn't let me make a phone call.  I wrote you

15  a later.  By next week, I'm going to respond.  But, your

16  order for the phone call has not been complied with.

17    So, I will ask, at this time, to

18  file a co-counsel and maybe you could fine --

19    THE COURT:  As I kind of explained to you

20  before, I really don't have jurisdiction over the jail as

21  far as forcing them to do things like phone calls and

22  library privileges and things like that.  All I could do

23  is make an order.  But, it's ultimately up to them

24  whether or not they're going to, pursuant to their

LL-3

1    administrative policy and safety requirements at the

2    jail, comply with those orders.

3                    I'm not going to hold the Cook

4    County Jail in contempt of court.  Let's proceed with

5    discovery.  Mr. Albukerk, where are we at?

6            MR. ALBUKERK:  Judge, pursuant to your order, I

7    brought to the Court, two large sized boxes.  The first

8    box is all the clothes, shoes, several outfits that

9    Ms. Melongo used in her last trial and presumably needs

10   to use in any further jury trials.  The bottom box is all

11   the documents that I've had in both her cases, both her

12   eavesdropping cases, as well as the other case, the

13   computer tampering case.

14                   I've gone through the entire box.

15   I believe -- I hope that I got out every single document

16   which could be arguably privileged.  I believe the

17   documents are definitely privileged.  They would be like

18   letters between her and I.

19           THE COURT:  Those are privileged?

20           MR. ALBUKERK:  Exactly.  There's some other

21   communications which arguably could be privileged.  It's

22   about an inch thick worth of document.  With the Court's

23   permission, I would open it up.  If the Court wants to

24   review those documents, it could.

                              LL-4

1          The rest of the box, I believe is

2   all the things that we either subpoenaed as part of my

3   investigation, or that is discovery that was tendered to

4   us, most of which has already been tendered.  Some of the

5   subpoenaed materials regarding the computer tampering

6   case has not been tendered to the State.  That's because

7   the State elected on the eavesdropping case.

8          THE COURT:  But, in your opinion, they are

9   discoverable?

10          MR. ALBUKERK:  Oh, yes, absolutely.

11          THE COURT:  All right.  I do not want to look

12   at any private communications between you and

13   Ms. Melongo.  I'm not going to look at those.  Do not

14   tender those to me.  You could either keep them or give

15   them to Ms. Melongo.

16          MR. ALBUKERK:  There are e-mails and stuff.

17          THE COURT:  Did you make copies for your files

18   so that you have copies if you need them?

19          DEFENDANT MELONGO:  Yes, I want to request that

20   too.

21          MR. ALBUKERK:  I did not.

22          THE COURT:  Do you wish copies?  You should

23   have copies, I would think.  That's up to you.

24          MR. ALBUKERK:  Well, Judge, I believe that

LL-5

1    everything in here -- because she's representing herself,

2    I did not believe that was necessary.

3          DEFENDANT MELONGO:  But, Judge, it's necessary

4    because the question is not if I'm going to get counsel,

5    it's when I'm going to get counsel.  I don't want to

6    re-subpoena all those documents.  Mr. Albukerk, you made

7    a copy so that is given to me.  When I get the counsel,

8    then the original files are given to my lawyer.  I don't

9    want to -- Judge, see all this?  I'm not going to redo

10   everything.  Copies has to be made.

11         THE COURT:  There will be a copy made for you.

12   I'm not talking about a copy of the documents, I'm

13   talking about -- the State is going to redact and make

14   copies of the documents.  I'm talking right now the

15   smaller file Mr. Albukerk is holding in his hand, which

16   is attorney/client privilege, which talks about the

17   contracts and other communications between you and him.

18   That's really all I'm dealing with right now.

19               As far as the boxes are concerned,

20   those will be tendered to the State to redact, because

21   they're discoverable.  There's nothing private in those

22   documents that are attorney/client privilege.  The State

23   will redact those.

24         DEFENDANT MELONGO:  Judge, can -- I want to

LL-6

1    object about the State getting this file, because I

2    haven't even seen this file.  I'm not even sure that

3    Albukerk, what he's saying -- everything is not

4    confidential.  I really have to see and decide what is

5    not confidential.  To give my file to the State, will be

6    really unfair process done to the defendant.  You have

7    really prejudiced the defendant.

8         THE COURT:  The attorney/client privilege these

9    are reports, documents.

10        DEFENDANT MELONGO:  Why I can't --

11        THE COURT:  It's all discoverable material.

12        DEFENDANT MELONGO:  Why can't I just -- why

13   can't we just sit at the table and then one by one and

14   see those documents -- actually see what they are.  I

15   don't need to see the names.  I don't need to see the

16   addresses.  I don't even have that memory to remember

17   addresses and names of all those documents.  I have to

18   see what is in this file before it's been tendered to the

19   State.

20        THE COURT:  Okay.

21             Well, that's exactly what the law

22   does not allow, because there's certain information

23   within the files that you're not allowed to see --

24        DEFENDANT MELONGO:  Judge --

LL-7

1    THE COURT:  -- like names -- not names, but

2    addresses and things like that.

3    DEFENDANT MELONGO:  Judge, with all due

4    respect, last time after watching the State law --

5    reading the case law -- I've been to the Supreme Court

6    Rules that says once defendant becomes pro se, her file

7    has to be dedacted [sic.]  I've never seen that statute.

8    I've never seen that case law.  I asked you that the last

9    time.

10    THE COURT:  Well, I asked you not to represent

11    yourself because you don't know the law.  All right.

12    DEFENDANT MELONGO:  Okay.

13    THE COURT:  It's not up to me to tell you what

14    the law is as far as giving you case law rules and things

15    like that.  You chose to represent yourself.

16    DEFENDANT MELONGO:  I haven't been helped so

17    far in actually getting a lawyer.  It's been months.

18    I've been asking for phone calls.  The first time it was

19    no, the Court cannot do it because of security issues.

20    I've never seen the -- seen those security issues.

21    The second time -- and all that

22    was made to make a phone call.  Nobody cares about the

23    orders.  I come here with no -- with no lawyer, and my

24    file had to be tendered to the State because I have no

LL-8

1    lawyer whereas nobody actually helped me to get a lawyer.

2              It's not if -- like I just say,

3    it's not if I'm going to get a lawyer, it's when I'm

4    going to get a lawyer.  Mr. Albukerk keep my file until I

5    get a lawyer if that's the case.  My file should not be

6    tendered to the State.

7              THE COURT:  That's why we're going back to the

8    same thing originally.  I mean, I saw your friend.  She's

9    sitting in court giving you the high 5 when you finally

10   discharged Mr. Albukerk.  That was your method of getting

11   rid of Mr. Albukerk and doing what you wanted to do on

12   this case.  You're doing it just so you could buy your

13   time to get a lawyer.

14             DEFENDANT MELONGO:  I'm not buying time.

15             THE COURT:  I'm going to proceed with this

16   case.  If you want to represent yourself, you have to

17   represent yourself.  This case is going to go to trial.

18   I'm not going to wait months like it's been since you've

19   been telling me it's going to be a lawyer.  You told me

20   that for months now.  There's no attorney.  I don't even

21   foresee an attorney on the horizon for that matter.

22             I'm not going to keep delaying

23   this case.  If you chose to represent yourself now,

24   you're going to represent yourself.

                              LL-9

1    DEFENDANT MELONGO:  Okay.

2              But, right now, my file -- and I

3    will object on the record.  I would really object to it.

4    It will be an unfair prejudice to the defendant to have a

5    file tendered to the defendant before the defendant even

6    see what is in the file.  This is a lawyer I fired.  I

7    don't trust him.  Tell me what is confidential and not in

8    my file.  I have to see what is in my file to decide if

9    it's confidential or not.

10             THE COURT:  That's not up to you to decide.

11             DEFENDANT MELONGO:  Okay.

12             THE COURT:  Your objection is noted for the

13   record.  Objection is overruled and the boxes portion

14   will be tendered to the State.  What Mr. Albukerk has in

15   his hand, that's all the confidential information.

16             MR. ALBUKERK:  I believe it is.  As you know,

17   it's a fairly big file.  I believe I went through it.  I

18   diligently hope I didn't make any mistakes.  I did the

19   best I could.

20             THE COURT:  Hopefully you didn't.  State, you

21   go through it, see if there is anything.  If you run

22   across anything, I'm instructing you not to review it at

23   all.  Stop immediately and set it aside.

24             MR. PODLASEK:  I will.

**LL-10**

1      THE COURT:  Do you understand?

2      MR. PODLASEK:  Yes.  Judge, there's one box in

3  there, you don't expect us to take the clothes?  You

4  don't expect us to take that, do you?

5      THE COURT:  No.  What does the clothes have to

6  do --

7      MR. ALBUKERK:  They're her clothes.  I mean, I

8  could, with the Court's permission, there's -- there's

9  someone here in court for Ms. Melongo, I could give her

10  the clothes.

11      DEFENDANT MELONGO:  Yes.

12      MR. ALBUKERK:  But, those clothes would have to

13  be brought back here obviously for any trial.  It's going

14  to be a jury.

15      DEFENDANT MELONGO:  I don't even have a trial

16  date now.

17      THE COURT:  We don't have a trial date yet.

18      MR. ALBUKERK:  The clothes --

19      THE COURT:  The name of your friend in the

20  audience is who?

21      DEFENDANT MELONGO:  Myeshia Hamilton.

22      THE COURT:  Okay.

23          Can you give those clothes to her.

24  That's what you wish, Ms. Melongo?

LL-11

1          DEFENDANT MELONGO:  Yes.

2          THE COURT:  Okay.

3                Mr. Albukerk, you could give those

4  clothes to Ms. Hamilton shortly.  All the documents will

5  go to the State for redaction and tender to Ms. Melongo.

6          DEFENDANT MELONGO:  Like I say, can I have a

7  copy of the original, because like I say, it's not if I'm

8  going to get a lawyer, it's when I'm going to get a

9  lawyer.  I don't want to re-subpoena all those documents,

10  Judge.  You really have to be fair on this one.  You have

11  to make an original copy, seal it and give it to the next

12  lawyer and redact the information to me so that when the

13  next lawyer come, we don't need to go through the same

14  process of subpoenaing the documents.

15          THE COURT:  Okay.

16                That's a fair request.  Make

17  copies.

18          MR. PODLASEK:  Of the entire box?

19          THE COURT:  Of that box.

20          MR. PODLASEK:  Judge, that's -- that's fine,

21  Judge.  But, I can tell you right now, there's a 30 day

22  to 6 week backlog with the copy department.  So, that's

23  how long it's going to take before I could get to redact

24  it.

<div align="center">LL-12</div>

1        DEFENDANT MELONGO:  Everything, those documents

2   don't even need to be redacted.  That's why we -- we

3   really have to see what is redactable and what is not.

4        THE COURT:  Well, it's going to be the State's

5   job to go through them.  They're going to have to go

6   through them.

7        DEFENDANT MELONGO:  Then I would --

8        THE COURT:  If it's going to take the State

9   that long, then obviously you're going to need some time

10  since you're telling me you're going to get a lawyer.

11       DEFENDANT MELONGO:  Let Albukerk keep my file.

12       THE COURT:  You discharged him.  He's not going

13  to keep them.

14       DEFENDANT MELONGO:  Then my file should be

15  sealed.  I don't need anything in my file right now.  My

16  file is sealed if the next lawyer comes.

17       THE COURT:  No.  We're proceeding with the

18  case.  Your objection has been overruled.  All right.

19  We're here for a date.  Now, let's --

20       DEFENDANT MELONGO:  No, Judge, I have a motion.

21       THE COURT:  Okay.

22       DEFENDANT MELONGO:  I have a pending motion for

23  stand by counsel.  I want to argue it today.

24       THE COURT:  You may proceed, then.

**LL-13**

1    DEFENDANT MELONGO:  Judge, like Paragraph 1 of

2    my motion actually ask for a stand by counsel.  At this

3    time, I'm actually going to consider that as mute because

4    I've been thinking about it.  What happened with my last

5    presentation, I was hurt.  I needed to actually heal from

6    it.  The last thing I need now is to hire a lawyer, give

7    them a substantial amount of money, open doors to my

8    family, open secrets to them, open my emotional heart for

9    them, only to be back stabbed with lies, deception,

10   double-mindedness and greed.  I need time to heal from

11   it.                        The second reason right now I

12   need a stand by counsel also which takes me to Paragraph

13   2 of my motion, which ask for house arrest.

14                   Last but not least, three weeks

15   ago, a judge made an opinion that the Illinois appeal law

16   was unconstitutional.  At this present time, I filed my

17   own motion to dismiss having reviewed all those cases.

18   The motion is already handwritten.  I need time to

19   perfect it, to do reserve, to type it and to file it.

20                   Judge, I'm going to present my

21   motion to dismiss the Illinois appeal law in this court.

22   If you have the courage to grant it, you're going to make

23   the news the next date.

24                   The second reason why I need house

LL-14

1    arrest is on October 14th, which is like nine days from

2    now, I would have spent in jail a year and a half.  I

3    been charged with a Class 4 felony, six counts run

4    concurrently.  So, by October 14th, even in the best case

5    scenario for the State, if I'm getting found guilty for

6    the two cases, the first one, I'm going to get probation.

7    The second one, I'm going to -- I'm going to serve my

8    time.  In the present case, it's time with my time.  I've

9    already served my time.

10                    The third reason why I also need

11   house arrest, the State can testify to it.  When I got

12   arrested, I was in the process of renewing my immigration

13   document.  Then, that process you need like in person

14   interviews and things have to be taken so that they make

15   a background check on you to see if you have a

16   background.

17                    My current incarceration actually

18   impedes on my immigration status.  So, I need to renew

19   that immigration -- my immigration document.  I cannot do

20   it being in jail.

21                    Last, but not least, the fourth

22   reason why I need house arrest is the Cook County Jail.

23   The female division is over crowded.  It's not

24   something -- it's not something I saw on t.v. it's

LL-15

1    actually something I'm witnessing.  On a weekly basis,

2    I'm taken to Kankakee which now is profiting from the

3    overflow of the Cook County Jail.  So, here I am being

4    charged with two counts.  The first count computer

5    tampering, which has obtained a motion to dismiss, seven

6    counts of perjury by the State's witness, prosecutorial

7    misconduct and second charge is which the law has now --

8    the law has found unconstitutional.

9              Here I am, Judge.  I'm not a

10   criminal.  For a year and a half, I have spent resources

11   that should be spent on real criminals.  I'm now asking

12   you to grant me house arrest.

13             To close my argument today, Judge

14   for everything under the sun, there's a time to mourn and

15   there's a time to adjust.  There's a time to cry and a

16   time to smile.  Judge, my time of crying and mourning is

17   long over due at the Cook County Jail.  Today, I'm asking

18   you to give me house arrest so that I could follow my

19   defense, and in the alternative, you could either give

20   the lawyer my bond so that I could bond out or you could

21   even give me I-bond.  Thank you.

22             THE COURT:  All right.  If I were to give you

23   house arrest, where would you stay?

24             DEFENDANT MELONGO:  I would stay with my

LL-16

1    friend.

2            THE COURT:  The friend who's in court?

3            DEFENDANT MELONGO:  Yes.

4            THE COURT:  You have to give me more

5    information.  How many people live there?  Is it a single

6    family residence, is it an apartment, what is it?

7            MR. PODLASEK:  Can we argue before you do that?

8            THE COURT:  Absolutely.  I have a couple of

9    questions of Ms. Melongo.

10           MR. ALBUKERK:  Judge, west a 105th Street in

11   Oak Lawn.  It's a condo, second floor.  Ms. Hamilton says

12   she's living there alone.  I actually know the property.

13           THE COURT:  Okay.  You've been there,

14   obviously?

15           MR. ALBUKERK:  I have, actually.  It's

16   actually -- it's owned by a former client of mine, Linda

17   Sheldon.

18           DEFENDANT MELONGO:  With all due respect,

19   Albukerk, stop it.

20           THE COURT:  She doesn't wish you to say

21   anything else, at this point.  State, you could respond.

22   Thank you.

23           MR. PODLASEK:  Judge, just in response

24   Ms. Melongo makes mention of the fact that she's been in

                          **LL-17**

1    Cook County longer than she could have been sentenced for

2    in this case.  Her decision to remain in -- her decision

3    to remain in Cook County is her own.  All of the

4    continuances have been by agreement or motion defendant.

5    She has elected not to go to trial.  This case could have

6    been retried before Judge Brosnahan within a week or two

7    after the jury trial was hung.  I don't think that

8    argument should be considered by the Court.

9              But, if the Court is considering

10   house arrest, we would ask that it be -- she have

11   limitations placed on her with access to the internet,

12   given the damage she's done with the internet and the

13   computer before.

14             We understand that she is going to

15   need a computer to write her motions, but to get on the

16   internet and begin again doing what she did in the first

17   case and what we allege she did in the second case --

18   well, for us to bring a third case down the line if we're

19   made aware of it, so we ask that somehow you create -- if

20   you're going to give her house arrest, that she have no

21   access to the internet.

22             THE COURT:  I understand your position.

23             DEFENDANT MELONGO:  Judge, actually, as far as

24   the litigation goes, each party chooses the tactic that

LL-18

1   actually benefit him or her.  If I made some -- I'm not

2   going to make an -- it's not -- if the Illinois law is

3   ever going to find -- I'm not going to rush to trial

4   before waiting for a higher court to decide in months --

5   actually it's not even going to be a matter of months.

6   Either the appeal or the federal Circuit Court or

7   Illinois Supreme Court is going to make a decision on

8   that.  So, I'm not going to -- it would be so foolish on

9   my part to rush to a trial before reaching a decision on

10  each of those higher courts.

11              The second thing the State talks

12  about is limitations; my access to the internet.  Judge,

13  go to the internet now, just type Annabel Melongo.

14  There's so much things talked about me on the internet.

15  I'm not the one -- I've been in jail for a year and a

16  half.  All that happened when I was in jail.

17              First the State cannot even -- I

18  don't even think that the State can limit what I can

19  get -- what I can do.  I don't know why the State -- it's

20  kind of a first amendment right.  It's my right to be --

21  I need to re-document my case.  Those document

22  informations are on the internet.  Those documents and

23  information are in the law library.  It's actually the

24  State coming here and saying you have to see the -- give

**LL-19**

1     the defendant her first amendment right, right to receive

2     information.

3          THE COURT:  All right.  Ms. Melongo, let me

4     tell you.  If I were to give you -- reduce your bond or

5     give you house arrest or give you electronic monitoring,

6     with special conditions of bond, I'm going to consider --

7     that's something I can do in my lawful authority.  I

8     could limit the contact with the internet, with people

9     and with other things as a condition of your bond.  If I

10    were to do that, you would have to agree to do that.

11         DEFENDANT MELONGO:  Okay.

12         THE COURT:  Otherwise, I would not do it.

13         DEFENDANT MELONGO:  Okay.

14         THE COURT:  And I'll tell you right now, I'll

15    limit or order that you have no contact with the

16    internet.

17         DEFENDANT MELONGO:  No, Judge.

18         THE COURT:  Think about this.

19         DEFENDANT MELONGO:  Judge, you could not do

20    that, with all due respect, because even the information

21    specifically the order that I showed you like with Judge,

22    what's his name, Franklin from Crawford, Illinois, those

23    informations that are relevant to my case on the

24    internet.

LL-20

1    There's no way I could get access

2 to that information.  This opinion was taken from the

3 internet.  So, limiting my access -- it was printed from

4 the internet.  There's no other way being on house arrest

5 that I could have gotten -- I could have access to this

6 document.  So, limiting my access to the internet

7 actually impedes --

8    THE COURT:  Did you get it from Lexus.

9    DEFENDANT MELONGO:  No, this is not from Lexus,

10 this was posted on -- they have a Crawford judge.

11 Everything on the federal court I would need to rely on.

12 Looking at those cases are limiting my access to the

13 internet right now, also impede on my defense because of

14 the federal appeal that I'm awaiting.

15    Federal district court, all that

16 information I need that's on the website.  How I'm going

17 to do it if I don't have access to those documents.  They

18 are extremely relevant to my case and defense.

19    THE COURT:  All right.  What I'm going to do,

20 I'm going to rule on your case and the motion you made on

21 the 13th, which is next Thursday.  Does that give you

22 enough time to file your motion you have been holding up.

23    DEFENDANT MELONGO:  I could not file it.  I

24 still need some time.

LL-21

1          THE COURT:  Can you file it by the 13th?

2          DEFENDANT MELONGO:  How long I'm going to type

3     it -- I still need --

4          THE COURT:  You could file it handwritten.

5          DEFENDANT MELONGO:  I don't want to do that.

6     I'm a perfectionist, Judge.  I really need to do things

7     to perfection.  I cannot do that.  I could not file

8     unless if you get somebody to do it for me.  I could file

9     it, but the person has to be picked.  I really need some

10     research that I still need to make?  I actually have

11     those cases.

12          I still need to read to have

13     perfection to this motion.  So, I need to do that, and

14     then once I'm done with this research, I'm going to

15     perfect this motion to dismiss typed and filed.

16          MR. PODLASEK:  Judge, her friend, Ms. Hamilton

17     is in court.  Maybe she can type it if that's the way

18     Ms. Melongo wants it filed and give me a copy, the Court

19     a copy, and we will be done with it.

20          THE COURT:  Well, that's the way she filed her

21     last motion.

22          DEFENDANT MELONGO:  I first need to research.

23     My motion to dismiss is ready to go, but I need to

24     perfect my research before I can --

**LL-22**

1    MR. PODLASEK:  Judge, there's cases --

2    DEFENDANT MELONGO:  Judge, let me say --

3    THE COURT:  Hold on.

4    MR. PODLASEK:  I'm just suggesting if there's

5    some way we can move this along.

6    DEFENDANT MELONGO:  Judge, the State pressured

7    me how I have to move my case and stuff.  If the State is

8    trying to charge me on something, the State also have to

9    let me -- give me time to prepare my defense.  So, the

10   State cannot rush me on something --

11   THE COURT:  All right.  If you don't want to do

12   that, I'll rule on your motion on the October 13th.

13   DEFENDANT MELONGO:  And I really need to make

14   some research on my motion to dismiss.  My motion to

15   dismiss is already ready to go, typed, filed and I'm

16   going to present it.

17   THE COURT:  All right.  October 13th. By

18   agreement.

19   MR. PODLASEK:  By agreement.

20   DEFENDANT MELONGO:  Thank you, Judge.

21   THE COURT:  Is that by agreement, Ms. Melongo?

22   DEFENDANT MELONGO:  Yes.

23   MR. PODLASEK:  As to all cases?

24   THE COURT:  Correct.

**LL-23**

1        DEFENDANT MELONGO:  Judge, actually, I'm going

2  to -- maybe I don't know if I need to make a proper

3  motion for this.  I'm indigent.  I need the money to

4  actually order transcripts of my last trial.  The

5  State -- the Cook County or the State of Cook County

6  would need to provide funds so that I could --

7        THE COURT:  Mr. Albukerk, did you order that in

8  preparation for trial?

9        MR. ALBUKERK:  No, Judge.  I never got that

10  far.  I was informed that my services were no longer

11  needed a few days after the trial.  So, I never ordered

12  the transcripts.

13        THE COURT:  Okay.  Prepare an order.  I'll sign

14  it.

15        DEFENDANT MELONGO:  Huh.

16        THE COURT:  I'll give you free transcripts for

17  the 13th, not right now.  Have it ready for the 13th.

18        DEFENDANT MELONGO:  Can I have an order form,

19  please.

20        THE COURT:  You could just write it on regular

21  paper.

22        DEFENDANT MELONGO:  Okay.

23        MR. ALBUKERK:  My presence will no longer be

24  necessary.

LL-24

1          DEFENDANT MELONGO:  Yes.

2          THE COURT:  Thank you for your services.

3  You're discharged.

4          MR. PODLASEK:  I would like to be discharged

5  also.

6          THE COURT:  You have to stay.

7                    (Which were all the proceedings

8                    had on this day.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LL-25

# EXHIBIT O

STATE OF ILLINOIS    )
                       )   SS:
COUNTY OF COOK    )

## IN THE CIRCUIT COURT OF COOK COUNTY
## CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS   )
                                  )
                 vs.           )    *08CR -10502*
                                  )   No. *10CR-080902*
                                  )
                                  )
_ANNABEL K. MELONGO_       )

## ELECTRONIC MONITORING ORDER

### IT IS HEREBY ORDERED THAT:

1.   Defendant shall be placed on the Cook County Sheriff's Electronic Monitoring Program.

2.   Defendant shall appear in Court on all scheduled Court dates.

3.   Defendant shall report to the Sheriff's Electronic Monitoring Unit as ordered.

4.   Defendant shall remain within the confines of his residence 24 hours per day unless prior permission for movement is granted by the Court or the Sheriff's Electronic Monitoring Unit.

5.   Any violation of orders of the Court or the rules and regulations of the Sheriff's Electronic Monitoring Program may result in the return of the defendant to the Cook County Jail.

6.   Defendant shall pay $ _-0- (fee waived)_ per day for the use of the electronic monitoring equipment.

7.   Defendant to allowed to travel to the Cook County Law Library (5 Hours including travel) on Mondays 10am - 3pm.

8.   Defendant may only use the internet for purposes of research only and email usage.

Date Entered: _____

ENTERED

JUDGE STEVEN J. GOEBEL - 1954

OCT 13 2011

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK _____

Judge _____      Judge's Number _____

# EXHIBIT P

Sheriff's Women's Justice Programs
### STATUS REPORT OF TREATMENT PROGRESSION

| **To:** Honorable Judge Goebel | **Client Name:** Annabel Melongo | **CCDOC Number:** 2010-0414060 |
|---|---|---|
| **Court Date:** 11/10/2011 | **Custody Date:** 04/14/2010 | **D.O.B:** ▮/1972 |

| **Current Program:** ☒Sheriff Female Furlough Program ☐Residential Program - Division 17 ☐Mom's Program ☐B.A.M.S. | |
|---|---|
| **Admission Date To Program:** 10/20/2011 | **Discharge Date:** Pending |
| **Number of Days In Treatment:** 22 days | |

| **Urine Screen:** # Positive- 0 #Negative- | **Date of last urine screen:** 10/20/2011 ☐pos. ☒neg. |
|---|---|
| **If positive what drug:** | |
| **Primary Diagnosis:** | **Secondary Diagnosis:** |

**Recommendations:**

The Cook County Sheriff's Women's Justice Program (SWJP) provides women with a gender responsive integrated model of treatment that empowers them to use healthy coping skills for on-going recovery. The women are empowered to break the cycle of addiction through group and individual treatment services that are trauma informed and focus on substance abuse and mental health needs as well as criminal thinking.

Ms. Melongo was admitted to the Sheriff Female Furlough Program on 10/20/11 and has completed 22 days in our program. She has been an active participant and appears to be responding well to treatment offered to her. Currently, she is participating in the following groups: Stress Management, Maladaptive Thinking, Community Re-Entry, Self-Esteem, Prostitution Anonymous, Coping Skills, Women's Health, Domestic Violence, 12-Steps, Life Skills, Women and Relationships, Yoga, and Expressive Therapy. Ms. Melongo stated she is currently looking for employment opportunities.

The clinical team recommends that upon discharge, Ms. Melongo continue to participate in outpatient treatment in the community, as well as seek out additional community support. She will continue to be eligible for aftercare services at our Empowerment Center.

Exhibit 3

*Additional questions-please contact Tange Porter Court Liaison:*
*Phone: (773) 674-2719 Fax: (773) 674-5252*

| Counselor Signature, Credentials: | Date Prepared: |
|---|---|
| M~~~ BWlls. | 11 9 11 |
| Supervisor Signature, Credentials: | Date Prepared: |
| ~~~ Bauer LCSW | 1-9-11 |

7-21-11-revised

# EXHIBIT Q

## PERMISSION FOR MOVEMENT
## 1-877-326-9198

| DATE COMPLETED: 11/2/11 | | (Submit 72 hours before movement is needed) |
|---|---|---|

PARTICIPANT'S NAME: Annabel Melongo    CURRENT PHASE: 1    DOC # 2010-0414060

PARTICIPANT'S HOME ADDRESS: 4020 W. 105th, Oak Lawn, IL 60453

DATE OF MOVEMENT: 11/7/11    TIME OF APPOINTMENT: 9:00

TYPE OF MOVEMENT: O Emergency    X Appointment    (Check one)

LENGTH OF MOVEMENT:    FROM: 9:00    TO: 7:00

*NOTIFY SWJP IMMEDIATELY IF APPOINTMENT CHANGES OR RUNS PAST SCHEDULED TIME!!!!!*
*ALSO, BRING VERIFICATION/PAPERWORK AS PROOF OF MOVEMENT!!!!!!!!!!*

ADDITIONAL SPECIAL INSTRUCTIONS FOR PARTICIPANTS:

Law library - Court mandate

REASON FOR MOVEMENT: Researching and working on own case

ADDRESS/LOCATION OF MOVEMENT: Law library at the Daley Center

PERSON TO CONTACT:

PHONE NUMBER FOR VERIFICATION OF MOVEMENT:

***IF YOU HAVE ANY QUESTIONS CALL SWJP AT 877-326-9198    (FAX : 773-674-3962)***

I  Annabel Melongo  authorize the Sheriff's Women's Justice Program to verify the above appointment(s) and to follow up with the provider. This consent is given for as long as I am in the program. Staff may discuss any information necessary for me to be successful in the treatment process.

| PARTICIPANT'S SIGNATURE: Melongo | DATE: 11-02-2011 |
|---|---|
| STAFF SIGNATURE VERIFYING MOVEMENT: Lea Pagels | DATE: 11-2-11 |
| SUPERVISOR SIGNATURE: | DATE: |
| STAFF SIGNATURE ENTERING MOVEMENT IN SYSTEM: | DATE: |

cc: (1) Movement Book    (2) Participant

APPROVED ___X___    DENIED _____

REASON FOR DENIAL

Exhibit 1

# EXHIBIT R

COPY file
gike to
Amabel Molongo

Exhibit S

# E X H I B I T   S

1   STATE OF ILLINOIS )
                   ) SS.
2   COUNTY OF C O O K )

3          IN THE CIRCUIT COURT OF COOK COUNTY
           COUNTY DEPARTMENT - CRIMINAL DIVISION
4

5   THE PEOPLE OF THE   )
    STATE OF ILLINOIS   )
6                   )
        VS           )   Indictment No.  10 08092
7                   )
                   )   Charge:  Eavesdropping Without
8                   )          Consent
    ANNABEL MELONGO     )
9

10            REPORT OF PROCEEDINGS

11       BE IT REMEMBERED that on the 10th day of November

12   A.D., 2011, this cause came on for hearing before the

13   Honorable STEVEN J. GOEBEL, Judge of said court.

14       APPEARANCES:

15           HON. ANITA M. ALVAREZ,
            State's Attorney of Cook County, by:
16          MR. ROBERT PODLASEK,
            Assistant State's Attorney,
17            appeared on behalf of the People;

18          MS. ANNABEL MELONGO,
            appeared pro se.
19

20

21

22

23   Brenda D. Hayes, CSR, 084-001226
    Official Court Reporter
24   2650 S. California Ave.
    Chicago, Illinois  60608

                   PP-1

```
 1              THE CLERK:  Annabel Melongo.

 2              MR. PODLASEK:  Judge, for the record

 3    Robert Podlasek, spelled P-o-d-l-a-s-e-k, on behalf of

 4    the State.

 5              MS. MELONGO:  Annabel Melongo, pro se.

 6              THE COURT:  She's pro se, she's representing

 7    herself.

 8              MR. PODLASEK:  Judge, this morning we filed a

 9    Motion To Revoke Bond And Electronic Monitoring.  I'm

10    handing a copy to Miss Melongo.

11              THE COURT:  All right.  I'm going to give

12    Miss Melongo an opportunity to review that, as well as

13    myself.  We'll pass the case defendant.

14              THE DEFENDANT:  Okay.  Judge, I also have

15    actually filed my motion to dismiss the case so we have

16    an issue, we don't have like a heavy-duty stapler in the

17    entire building so I will need -- if you can give me an

18    emergency so that I can staple this thing.  Nowhere in

19    the law library --

20              THE COURT:  We can find one.  If you want to

21    file it, that's fine.  I see you have do have a metal

22    clip on it.

23              THE DEFENDANT:  You want it stapled.  I want to

24    staple it.
```

PP-2

1       THE COURT:  Well, I'm telling you you can file

2   it that way.  Okay?  So if you want to file it you can

3   hand it up to me right now.  Do you wish to file it?

4       THE DEFENDANT:  I would like --

5       THE COURT:  You're not going to file it.  Pass

6   it for the motion to revoke your electronic monitoring.

7   Have a seat and review it.

8       THE DEFENDANT:  Okay.

9                       (Other cases were called

10                      and heard.)

11      THE CLERK:  Annabel Melongo.

12      THE COURT:  All right.  Both sides are present.

13      THE DEFENDANT:  Okay, Judge, like I say I

14  received this motion actually less than an hour ago so I

15  would need time to respond to it because everything

16  stated is kind of false.  I have the documents and I need

17  to answer to the motion and attach those documents.

18          Yesterday I actually received this letter

19  from the EM program, it was addressed to me.  It say I'm

20  in good standing, there's no violation.  So they say I

21  violated the EM program and I need the document to attach

22  to this.  This is the letter, they asked me to give it to

23  you.

24      THE COURT:  Well, they're saying you violated

PP-3

1  not because of anything specific to the monitor, they're

2  saying you took a file from your former attorney.

3      THE DEFENDANT:  Judge, I cannot argue the

4  motion now.  I really need to -- because I need to order

5  the hearing because Mr. Albukerk is accusing me of

6  stealing a file that belonged to me so I have to order

7  the transcript of the court hearing and attach it to my

8  motion replying to this motion.  I really need two weeks

9  to reply to this motion.

10      THE COURT:  All right.  Well, the issues seem

11  to me to be something can you address now.  They are

12  simple issues and you can address them and we're going to

13  have a hearing today.

14      THE DEFENDANT:  Okay.  You said the question is

15  not unauthorized movement, right?

16      THE COURT:  Well, what's alleged in the

17  petition is that you took a file from Mr. Albukerk's

18  office and it was outside of my order is what's alleged.

19      THE DEFENDANT:  I have an e-mail exchange with

20  Mr. Albukerk on the file and the I have also a document

21  allowing me to go to Albukerk's place from the EM, I have

22  that document too.  And I don't -- This one took me by

23  surprise.  I don't have those documents with me and

24  that's why I need to reply to the motion and attach those

PP-4

1    documents with me.

2                THE COURT:  All right.  Mr. Podlasek.

3                MR. PODLASEK:  I talked to Officer Clark at

4    Women's Monitoring this morning, about a half hour ago.

5    She indicated after looking at Miss Melongo's file that

6    she does not have any orders in there allowing her to

7    travel anywhere except your order of October 13th.

8                THE DEFENDANT:  That's not true, Judge.  That's

9    not true.  This is a document I received yesterday saying

10   that I'm in good standing.  If they had an unauthorized

11   thing that I do it would have been there.  It was signed

12   yesterday around 2:00 o'clock and the incident that's

13   addressing happened Monday.

14               MR. PODLASEK:  Between 3:30 and 4:30 I'm told,

15   Judge, at 1450 West Randolph, which as you know is not

16   the Daley Center, not the law library.

17               THE DEFENDANT:  And that's why I say I have the

18   document allowing me to go to Nick Albukerk's place, I

19   have that document.  The order, the EM order, say I have

20   to follow your condition and I also have to follow their

21   condition so if they granted movement I have to, those

22   are movements they grant to me, that's what the EM order

23   say.

24               THE COURT:  And you have -- What is it, an

                          PP-5

1    e-mail or what do you have?

2            THE DEFENDANT:  To refute this e-mail, Albukerk

3    is accusing me of taking a file, stealing a file from him

4    and I have the e-mail exchange where he actually lured me

5    go to his office because I told him, come, let's meet at

6    the Daley Center.  He said he didn't have time, I have to

7    go to his office and I have that e-mail and I also have

8    the document, the EM letting me -- giving me permission

9    to go to Albukerk's place and I also have proof to show

10   that the file that he's actually accusing me of stealing,

11   you cannot accuse somebody of stealing something that

12   belong to them and I didn't even steal it.  Actually the

13   file has a note saying copy file, give to Annabel

14   Melongo.  I have that note and it's in my house.  I'm

15   going to attach everything to the exhibit.

16           THE COURT:  Is Mr. Albukerk here today?

17           MR. PODLASEK:  He's not.

18           THE COURT:  I'll tender that document to the

19   State as well so the State can make a copy of it and

20   tender the original back to Miss Melongo.

21           THE DEFENDANT:  So I will need two weeks

22   because I'm going to go --

23           THE COURT:  No.  I'm going to give you until

24   Monday.

PP-6

1      THE DEFENDANT:  Until Monday?

2      THE COURT:  Yes.

3      THE DEFENDANT:  I need to order the transcript

4  because Albukerk says the file belongs to him and we can

5  only have evidence what happened during the court hearing

6  that the file belonged to me and has to be given to me so

7  I need to order that transcript.

8      THE COURT:  The transcript has nothing to do

9  with the hearing.

10     THE DEFENDANT:  Okay.  That's fine.

11     THE COURT:  November 14th, Monday.

12     THE DEFENDANT:  Okay.  Come Monday?

13     THE COURT:  This Monday.  By agreement,

14  November 14th.  We're going to have a hearing on that

15  date.  Bring all your documents.

16     THE DEFENDANT:  Okay.  I'll do that.

17     THE COURT:  Here's your original report.

18     THE DEFENDANT:  Thank you, Judge.

19

20                      (The above-entitled matter

21                       was continued to

22                       November 14, 2011.)

23

24

PP-7

```
 1    STATE OF ILLINOIS )
                        )    SS:
 2    COUNTY OF C O O K )

 3

 4              IN THE CIRCUIT COURT OF COOK COUNTY
                  COUNTY DEPARTMENT-CRIMINAL DIVISION
 5

 6              I, BRENDA D. HAYES, Official Court Reporter for

 7    the Circuit Court of Cook County, Cook Judicial Circuit

 8    of Illinois, do hereby certify that I reported

 9    stenographically the proceedings had on the hearing in

10    the above entitled cause; that I thereafter transcribed

11    said hearing into typewriting, which I hereby certify to

12    be a true and accurate transcript of the proceedings had

13    before the Honorable STEVEN J. GOEBEL, Judge of said

14    court.

15

16

17

18

19                        OFFICIAL COURT REPORTER

20

21

22

23

24
```

PP-8

# EXHIBIT T

## COOK COUNTY SHERIFF'S OFFICE
### Received Property Receipt

| | |
|---|---|
| Date: | 11/10/2011 |
| Time: | 5:07 PM |
| Page: | 1 of 1 |

Name: MELONGO ANNABEL     Inmate #:   610415     Booking #: 20100414060

Assigned Cell   RCDC TRANSFER     Receipt Number:   568143

| Inmate Money | 1's | 2's | 5's | 10's | 20's | 50's | 100's | Other Total | Total |
|---|---|---|---|---|---|---|---|---|---|
| Cash Bills Count: | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 |

| | |
|---|---|
| Cash Coins Total: | $0.00 |
| Cash Total: | $0.00 |
| Cash Left In Property: | $0.00 |
| Cash To Commissary: | $0.00 |
| Check To Commissary: | $0.00 |
| Check Number: | |

| Quantity: | Description: | Color: | Location: |
|---|---|---|---|
| 1 | SEALED PROPERTY BAG | Clear | RCDC |

Notes

| | |
|---|---|
| Property Received Date: | 11/10/2011 |
| Property Received Time: | 5:07 PM |
| Property Officer Badge: | RFalcon |
| Property Transfer Agency: | |
| Property Transfer Officer Badge: | |

Officer: ........................................     Officer: ........................................

I do hereby acknowledge that the property record contained on this form(s) is accurate.

Inmate (Booking): ........................................     Date: 11/10/11

Property left at the Cook County Jail for longer than 90 days after your release/transfer will be destroyed.

# EXHIBIT U

1    IN THE CIRCUIT COURT OF THE COOK JUDICIAL CIRCUIT

2           COOK COUNTY, ILLINOIS

3

4    THE PEOPLE OF THE     )
     STATE OF ILLINOIS     )
5                      )
           vs.       )  NO. 10 CR 0809201
6                    )
     ANNABEL MELONGO,      )
7

8

9        REPORT OF PROCEEDINGS of the hearing

10   before HON. STEVEN GOEBEL on the 14th day of

11   November 2011.

12

13    APPEARANCES:

14        HON. ANITA ALVAREZ,
             State's Attorney of Cook County, by
15           MR. ROBERT PODLASEK
             Assistant State's Attorney,
16           appeared for the People;

17

18        MS. ANNABEL MELONGO, defendant,
             appeared pro se.
19

20   DIONE R. RAGIN
     2650 S. California Ave., 4C02
21   Chicago IL  60608
     Official Court Reporter
22   C.S.R. #084-004066

23

24

1          THE COURT:  Annabel Melongo

2          THE COURT:  All right. Good afternoon, Ms.

3     Melongo

4          THE DEFENDANT:  Good afternoon, judge.

5          THE COURT:  Mr. Podlasek, your name for

6     the record.

7          MR. PODLASEK:  For the record Robert

8     Podlasek, P-o-d-l-a-s-e-k, on behalf of the state.

9          THE COURT:  All right.

10         The case is here on the state's motion to

11    revoke bond and electronic monitoring.

12         Ms. Melongo, you were taken into custody

13    since the last court date.

14         MS. MELONGO:  Yes.

15         Actually can I address it while I argue my

16    motion because Mr. Podlasek did something unethical

17    after the hearing.

18         And when I go through to my argument I am

19    going to talk about it.

20         THE COURT:  All right.

21         Are both sides ready to proceed on the

22    motion?

23         MR. PODLASEK:  Which motion?

24         THE COURT:  The motion to revoke bond and

1    electronic monitoring.

2              MS. MELONGO:  Judge, my friend has all my

3    exhibits and I need those for my argument.

4              THE COURT:  All right.

5              MS. MELONGO:  And we also need some ten

6    minutes so I can put everything together.

7              THE COURT:  Ms. Hamilton, you can step up.

8              Please hand it to State's Attorney.

9              Please, hand to the sheriff so he can make

10   sure.

11             THE DEPUTY:  These metal clips need to be

12   taken out.

13             MS. MELONGO:  Can those -- those are my

14   motion to dismiss.

15             I filed my motion.

16             THE COURT:  I did see you had filed your

17   motion to declare the statute unconstitutional and

18   to dismiss.

19             MS. MELONGO:  For the record, judge, I am

20   giving a copy to Mr. Podlasek.

21             MR. PODLASEK:  Acknowledge receipt, judge.

22             MS. MELONGO:  Do you need a copy?  I think

23   a copy is in the file.

24             THE COURT:  Apparently you filed it

```
 1      already or Ms. Hamilton filed it on your behalf.

 2              MS. MELONGO:  It was filed today.

 3              THE COURT:  Apparently the sheriff is

 4      going to take those metal clamps out of the

 5      documents and then he will hand those to you.

 6              MS. MELONGO:  This one you can hand that

 7      back those.

 8              I just need ten minutes to prepared my

 9      argument and I will be back.

10              THE COURT:  You need ten minutes.

11              All right.

12              We'll pass for ten minutes.

13              MS. MELONGO:  I need a pen too please.

14              THE COURT:  Do you have a pen back there

15      for her.

16              THE DEPUTY:  I will see if I can find a

17      pen.

18              THE COURT:  We'll find a pen for you.

19                  (The matter was passed and recalled.)

20              THE CLERK:  Annabel Melongo.

21              THE COURT:  All right.

22              Ms. Melongo is back before the court

23      again.

24              Before we begin this motion, I have read
```

1     through obviously the allegations on file.

2             Ms. Melongo I am going to ask you

3     basically a question and I am not assuming you have

4     the file because I haven't heard the evidence.

5             But if you have the file and you agree to

6     return it, I will let you back out again on EHM.

7             MS. MELONGO:  Okay.

8             THE COURT:  All right.

9             MS. MELONGO:  Yes.

10            THE COURT:  Do you understand?

11            MS. MELONGO:  Yes.

12            THE COURT:  Will you return the file then?

13            MS. MELONGO:  Yes.

14            THE COURT:  All right.

15            MR. PODLASEK:  State has no objection.

16            THE COURT:  All right.

17            The 17th.

18            MS. MELONGO:  You wouldn't argue the

19    motion.

20            THE COURT:  There is no need to argue the

21    motion.

22            I am going to let you back out if you

23    bring the file.

24            So the motion has become moot.

1          MS. MELONGO:  Yes, but then I have two

2    issues to address.

3          THE COURT:  Go ahead.

4          MS. MELONGO:  First Mr. Albukerk is

5    claiming the file is his.

6          I am claiming the file is mine because Mr.

7    Albukerk was fully paid his $10,000 legal fee.

8          THE COURT:  This is what we are going to

9    do.

10          You are going to file bring the file in on

11    the 17th.

12          You can make an argument at that time.

13          State will have Mr. Albukerk here.

14          I am going to ask the state to notify Mr.

15    Albukerk to be here on the 17th.

16          And I will determine what if anything you

17    get from that file.

18          MS. MELONGO:  Thank you.

19          THE COURT:  Okay.

20          All right.

21          What's your second issue?

22          MS. MELONGO:  The second issue you is what

23    Mr. Podlasek did on last Thursday.

24          THE COURT:  Well, what he did or didn't

QQ-6

1    do, I am not going to hear at this time because the

2    issue at this point is moot if you are going to

3    bring back the file.

4         Okay.

5         Then you have to address it another way.

6    Okay.

7         MS. MELONGO:  Can somebody fax the new

8    order to the EM so that everything speed up.

9         Now that I have been actually they never

10   received EM orders.

11        The division just called them and that's

12   why everything is so slow.

13        But if somebody fax them the EM order

14   today, tomorrow, or day after so that I don't need

15   to wait like a week or so like we did the last

16   time.

17        THE COURT:  All right.

18        I am going to ask you --

19        Do we have the blank order form.

20        MS. MELONGO:  I have the fax number here.

21        THE COURT:  All right.

22        You are going to have to prepare your own

23   order form and show it to the State's Attorney.

24        MS. MELONGO:  I have the old order.

1          THE COURT:  And then it will have to be

2     sent over placing you back on electronic home

3     monitoring.

4          You can have an order placing yourself

5     back on electronic home monitoring.

6          MS. MELONGO:  This is an old order.

7          THE COURT:  That's the original order.

8          Well, I need an order now stating that I

9     am placing you back on electronic home monitoring

10    representing yourself so you have to write the

11    order.

12         MS. MELONGO:  Can I have this original.

13         THE COURT:  That will be attached.

14         That original order will be attached.

15         Put in your order that the original order

16    is attached and those are the conditions that are

17    still in place.

18         Okay.

19         MS. MELONGO:  Okay.

20         THE COURT:  Please let Ms. Melongo have a

21    pen and an order form so she can draft an order.

22         17th.

23         November 17th by agreement.

24         Replaced on EM.

1          It's reinstated.

2              (Which were all the proceedings

3              had in the above entitled cause.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    IN THE CIRCUIT COURT OF THE COOK JUDICIAL CIRCUIT

2             COOK COUNTY, ILLINOIS

3

4

5

6        I, DIONE R. RAGIN, Official Court Reporter of

7    the Circuit Court of Cook County, do hereby certify

8    that I reported the proceedings had in the

9    above-entitled cause, that I thereafter caused the

10    foregoing to be transcribed into typewriting, which

11    I hereby certify to be a true and accurate

12    transcript of the proceedings had on this date.

13

14

15

16

17    DIONE R. RAGIN,
       Official Court Reporter
       #084-004066

18

19

20

21

22

23

24

# EXHIBIT V

STATE OF ILLINOIS     )
                      ) ss.
COUNTY OF COOK     )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT, CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS  ) | |
|                            ) | 08CR-1050201 |
|          VS            ) | 10CR-809201 |
|                            ) | |
| ANNABEL MELONGO              ) | |

### ELECTRONIC MONITORING ORDER

1. Defendant shall be placed on the Cook County Sheriff's Electronic Monitoring Program.

2. Defendant shall be on **Non-Reporting Status and shall not leave her home except on Mondays between 10:00 a.m. and 3:00 p.m. for the sole purpose of travelling to and from the Cook County Law Library located in the Daley Center.**

3. Defendant shall appear in Court on all scheduled Court Dates.

4. Defendant shall report to the Sheriff's Electronic Monitoring Unit as ordered.

5. Defendant shall remain within the confines of her residence 24 hours per day unless prior permission for movement is granted by the Court or the Sheriff's Electronic Monitoring Unit.

6. Any violations of the Sheriff's Electronic Monitoring Program may result in the return of the defendant to the Cook County Jail.

7. Defendant shall pay $-0-(fee waived) per day for the use of the electronic monitoring equipment.

8. This order specifically applies to both of Defendant's active cases **10CR-809201 and 08CR-1050201.**

Date Entered: November 21, 2011

_____

Judge         Judge's Number

STEVEN J. GOEBEL    1954

ENTERED
JUDGE _GOEBEL_

NOV 21 2011

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

1

# E X H I B I T   W

1   STATE OF ILLINOIS

2   COUNTY OF C O O K

3

        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
4           COUNTY DEPARTMENT - CRIMINAL DIVISION

5   THE PEOPLE OF THE STATE            )
    OF ILLINOIS                        )
6                                      )
                    Plaintiff,         )
7                                      )
            vs.                        )    No. 10 CR 08092
8                                      )
    ANNABEL MELONGO,                   )
9                                      )
            Defendant.                 )
10

11          REPORT OF THE PROCEEDINGS had at the
    hearing in the above entitled cause before the
12  HONORABLE STEVEN GOEBEL,Judge of said Court,on
    the  30th day of November, 2011.
13
    PRESENT:
14
        HONORABLE ANITA M. ALVAREZ ,
15      STATE'S ATTORNEY OF COOK COUNTY, by:
        UNIDENTIFIED
16      ASSISTANT STATE'S ATTORNEY
            appeared on behalf of the People;
17

18      ABISHI C. CUNNINGHAM, JR.
        PUBLIC DEFENDER of Cook County, by:
19      UNIDENTIFIED
        ASSISTANT PUBLIC DEFENDER,
20          appeared on behalf of the Defendant.

21

22

23  MICHELLE M. PIZZOFERRATO
    OFFICIAL COURT REPORTER
24  License No. 084-001963


                            UU-1

1          THE CLERK:  Annabel Melongo.

2          THE COURT:  I don't know if the State updated

3    the information.  I am not sure the State knows

4    which room to go to.

5               Annabel Melongo's case was here today.

6    Ms. Melongo just got back out of custody from a

7    violation.  I said if she brought the file back in

8    today we would not proceed on the violation. Do you

9    have the file?

10         THE CLERK:  Yes.

11         THE COURT:  I will not look at it I will keep it

12   sealed. And I will have Mr. Albukirk notified.  Also

13   for the record something was forwarded to me from

14   the Sheriff's Department that is part of Ms.

15   Melongo's personal file and I will give that to her.

16   And it was taken when she was violated on the .

17         THE DEFENDANT:  If you can make a copy and give

18   it back to me.

19         THE COURT:  I will have Mr. Albukirk here and we

20   will deal with it.

21         THE DEFENDANT:  I have a couple of motions.  I

22   made an amended motion to dismiss because we -- I

23   filed it the first time I was in jail so some parts

24   were duplicated and it was some typed, everything

UU-2

1    nice and clean.

2        THE COURT:  Have you filed it yet?

3        THE DEFENDANT:  Yes.

4        THE CLERK:  She just filed it and put it in my

5    bin.

6        THE DEFENDANT: There is nobody here to pick up

7    the file.

8        THE COURT:  You can leave it with the Clerk.

9        THE DEFENDANT:  The motion to dismiss the charge

10   for the record.

11       THE COURT:  And did you file that upstairs as

12   well?

13       THE DEFENDANT:  And I have a motion memorandum

14   why I got arrested.

15       THE COURT:  In the future when you have

16   something file it in front of me in the court room.

17   Give those to the Clerk and those will be State's

18   copies.

19       THE DEFENDANT:  There is a motion to request

20   this one I asked to be heard this coming Wednesday.

21       THE COURT:  So you want to go on this coming

22   Wednesday?

23       THE DEFENDANT:  I want to come here and ask for

24   the hearing.

UU-3

1          THE COURT:  We will hold it over until Wednesday

2    and that will be December 7th by agreement.

3          THE DEFENDANT:  Yes.

4          STATE'S ATTORNEY:  Yes.

5          THE DEFENDANT:  And Judge, thank you for putting

6    me on EM.

7                (WHICH WERE ALL THE PROCEEDINGS HAD IN

8                  THE ABOVE ENTITLED CAUSE.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS )
                        ) SS.
 2    COUNTY OF C O O K )

 3         IN THE CIRCUIT COURT OF COOK COUNTY,
      COUNTY DEPARTMENT - CRIMINAL DIVISION
 4

 5              I, Michelle M. Pizzoferrato, Official Court

 6    Reporter of the Circuit Court of Cook County,

 7    Criminal Division- Third Municipal District, do

 8    hereby certify that I transcribed the foregoing

 9    Report of Proceedings from the notes of G.Clark,

10     a Certified Shorthand Reporter, and that the

11    foregoing is a true and correct transcript of said

12    Report of Proceedings as appears from the stenotype

13    notes had before the Honorable Steven Goebel,

14    Judge of said court.

15

16                      Michelle M. Pizzoferrato

17

18    Dated this 6th day of November, 2012.

19

20

21

22

23

24
```

UU-5

# EXHIBIT X

1   STATE OF ILLINOIS )
                      )  SS:
2   COUNTY OF C O O K )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION

4

5   THE PEOPLE OF THE STATE    )
    OF ILLINOIS                )
6                              )
        vs.                    )  No.  10-CR-08092-01
7                              )
    ANNABEL MELONGO            )
8

9

10            REPORT OF PROCEEDINGS had at the

11   hearing in the above-entitled cause before

12   the HONORABLE STEVEN J. GOEBEL, Judge of said court,

13   on the 7th day of December 2011.

14        PRESENT:

15        HONORABLE ANITA M. ALVAREZ,
          STATE'S ATTORNEY OF COOK COUNTY, by:
16        MR. ROBERT PODLASEK,
          ASSISTANT STATE'S ATTORNEY,
17            appeared on behalf of the People;

18        The Defendant Annabel Melongo appeared pro se.

19

20

21   Annette M. Golab
     Official Court Reporter
22   License No. 084-001693

23

24

                        W-1

1    THE CLERK:  Annabel Melongo, Sheet 1, Judge Goebel's

2    call.

3    MR. PODLASEK:  Good morning, Judge.  For the record

4    Robert Podlasek, P-o-d-l-a-s-e-k, on behalf of the State.

5    THE DEFENDANT:  Defendant Annabel Melongo, pro se.

6    THE COURT:  Last time up, Mr. Podlasek, I don't

7    believe you made it to court.

8    MR. PODLASEK:  I was in court.  I was waiting for a

9    call back.  We never located you.

10   THE COURT:  I don't think they put it on the

11   information line.  Miss Melongo filed some motions last

12   time.  Do you want to relate what you filed?

13   THE DEFENDANT:  Last time I filed an amended motion

14   to dismiss, a motion to sever charges and a motion to

15   request movement.

16   THE COURT:  What is your motion to request movement?

17   MR. PODLASEK:  I don't have a motion for movement.

18   Do you have extra copies?

19   THE DEFENDANT:  I gave it to her.

20   MR. PODLASEK:  Judge, I haven't seen the motion.

21   THE COURT:  You can look at the Court's copy.  We

22   can pass this.

23   MR. PODLASEK:  Judge, I have two files here from

24   Mr. Albukerk's files that I will turn over to

W-2

1    Miss Melongo.  I am still going through the rest of them.

2         THE DEFENDANT:  Okay.

3         THE COURT:  From who?

4         MR. PODLASEK:  From Mr. Albukerk's file.  You asked

5    me to go through the file and redact.

6         THE COURT:  Okay, the discovery, because I had

7    Mr. Albukerk's file that was the subject of the prior

8    motion, so to speak, to terminate her electronic home

9    monitoring.  I have that, but I don't see Mr. Albukerk

10   here.

11        MR. PODLASEK:  This is Mr. Albukerk's.

12        THE COURT:  You are tendering discovery today?

13        MR. PODLASEK:  I am tendering back Mr. Albukerk's

14   file in part.

15        THE COURT:  With it redacted?

16        MR. PODLASEK:  No, there is nothing redacted on

17   these.  Nothing needs to be redacted.

18        THE DEFENDANT:  Judge, I want to make a small

19   observation.  Actually, it was October 13th when

20   Mr. Podlasek requested to have the file and then he

21   requested for five weeks.  Today is December 7th, and it

22   is almost seven weeks.  Actually, Mr. Podlasek should be

23   done with all of the redaction.  So I don't know why it

24   takes so long, and I need my file now.  It really takes

W-3

1    really long.  I don't think everything that is in the

2    file, I don't think everything need to be redacted

3    because I went through the subpoenas maybe like six

4    subpoenas, and I don't know why it should take so long to

5    recact all those.  I need the CD for the website, the

6    discovery, the motion filed by Mr. Albukerk.  I have none

7    of those stuff, and these things don't need redaction.

8         THE COURT:  What about those items?

9         MR. PODLASEK:  I haven't gone through the rest of

10   the file.  We had it copied by our copy center.  I

11   believe I represented to the Court I was told it would

12   take approximately six weeks to copy everything.  We have

13   one individual copying for the entire office at this

14   point.

15        THE COURT:  What about the CDs?

16        MR. PODLASEK:  I haven't looked at the CDs yet.  I

17   don't know what is on them.

18        THE DEFENDANT:  Judge --

19        THE COURT:  I thought those were items you tendered

20   in discovery?

21        MR. PODLASEK:  I don't know if they are or not, to

22   be honest.  They don't look like my writing.  They may

23   have been my predecessor.  She is no longer in the

24   office.

W-4

1    THE COURT:  Just tender those back.  I am sure there

2    is nothing that is private.

3    MR. PODLASEK:  They probably aren't.  Before I

4    tender it I would like to verify it and if there is

5    anything I would bring it to the Court's attention.

6    THE COURT:  I understand the delay with your copying

7    department.  However, the CDs I want tendered back to

8    her.

9    MR. PODLASEK:  Fine.

10   THE COURT:  I will pass this case so you can look

11   through the files for motions.  Apparently, Miss Melongo

12   did not actually file them with the Court.  She went up

13   and filed them in the Clerk's Office on the Fifth Floor.

14   Miss Melongo, did you leave copies for the State?

15   THE DEFENDANT:  I did leave copies.

16   THE CLERK:  They are in the file, Judge.

17   THE COURT:  Give those copies to the State's

18   Attorney and we will pass this case and recall it.  You

19   can have a seat, Miss Melongo.

20   THE DEFENDANT:  I will make an observation.  Also,

21   the motion filed by Mr. Albukerk, we don't need any kind

22   of redaction, the motion filed by Mr. Albukerk on my

23   behalf.  I don't know why Mr. Podlasek needs to redact

24   those motions.  I also need all those motions.

W-5

1    THE COURT:  You will get those.  They are part of

2 the criminal discovery in the case, and you will get all

3 of those.

4                    (Whereupon, the case was passed.)

5                         * * * * *

6    THE CLERK:  Annabel Melongo, Sheet 1.

7    MR. PODLASEK:  I had a chance to review the motions.

8 The motion to sever, I don't think the charges were

9 joined.  They are two separate cases.  I am not quite

10 sure I understand the motion to sever the charges.

11   THE COURT:  What Mr. Podlasek is saying they are not

12 seeking to join these charges.  These cases will be tried

13 individually.  You already had a trial where the jury was

14 hung and the charges were not joined.  And there is no

15 motion in front of me to join the charges.

16      So the motion to sever is moot at this point,

17 the State having no intention of joining these charges or

18 asking to join them.

19   THE DEFENDANT:  Can I explain my motion for the

20 charges why I did that motion, because this is for the

21 computer tampering and this is for the eavesdropping.

22 They are actually running concurrent.  They are the same

23 trial.  It is like every time I come here two days.

24   THE COURT:  They are both up, but the elected case

W-6

1    is the eavesdropping case.  The State elected on that

2    case.  But every time you appear both cases are up.

3    Therefore, they are getting dates at the same time.

4         THE DEFENDANT:  Okay.

5         THE COURT:  You are showing me a computer printout

6    of the Clerk's computer system.  Both cases are up.  That

7    doesn't mean they are joined, but they have to be up.

8    They can't just fall by the wayside.  So both cases are

9    up.  We are dealing with both cases every time the case

10   is up.  However, the elected case is the eavesdropping

11   case.

12        THE DEFENDANT:  One final observation.  There are

13   also some entries in the documents that are not correct.

14   This is like a motion filed by Mr. Albukerk.  Actually,

15   that date Judge Brosnahan also granted this motion.  If

16   you remember I was telling you every time that Albukerk

17   motion to withdraw was a long time granted.  This was in

18   none of those dockets.  Actually, you don't even see this

19   motion.  This motion is showed on June 16th, which is

20   completely not what actually happened.  Albukerk filed

21   this motion and it was granted by Judge Brosnahan, and

22   none of those documents have that.  So I don't know.

23        THE COURT:  What is it, a motion to withdraw?

24        THE DEFENDANT:  This is the motion, Judge, and those

W-7

1    are the court file.  None of that is in there.

2        THE COURT:  It is a matter of record.  It is in the

3    court file, and his motion to withdraw is both on record

4    and in the court file.  So what are you trying to say?

5        THE DEFENDANT:  I actually want to correct it.

6        THE COURT:  Mr. Albukerk is not in the case any

7    more.  So the motion to withdraw was never ruled on

8    officially because you opted to go pro se.  Once you went

9    pro se you are allowed to do that.  I properly admonished

10   you, and you are now pro se.  So the motion to withdraw

11   has no relevance.  Next?

12       MR. PODLASEK:  There is a memorandum entitled why

13   the defendant was temporarily incarcerated and released.

14   It is not seeking any kind of relief.  It is just nothing

15   but unsubstantiated facts rambling on through this,

16   including accusations against both Mr. Albukerk and

17   myself.

18       At this point I am going to be asking my office

19   to remove me from this case and assign another Assistant

20   State's Attorney based on what I consider some very

21   serious accusations in here.  And the only reason I can

22   see, for the record, that this was filed is so it can be

23   made part of a public record, period.  There is no other

24   basis for filing this.

W-8

1    THE DEFENDANT:  Judge, actually, that is a

2    memorandum, and that's exactly, I wanted it to be part of

3    the public record because Mr. Podlasek sent me two weeks

4    in jail for no reason whatsoever.  He never checked the

5    e-mail that was retrieved.  He never checked the

6    authorization.

7    THE COURT:  Stop.  We are not going to get into all

8    that.  I decided on my own that after reviewing the

9    State's petition that if you returned the file, which you

10   agreed to do, that I would then readmit you to electronic

11   home monitoring.  So those issues are no longer before

12   me.  I am not concerned with those issues.  I looked

13   simply at the State's petition, determined on my own if

14   you return the files to Mr. Albukerk, which you did

15   tender to me the last court date, and Mr. Albukerk is not

16   here so I have not returned it to Mr. Albukerk yet and I

17   have not looked at it, that I would let you out on

18   electronic home monitoring.  Those issues are not before

19   me, and we are not going to get into those issues at the

20   present time.  Next motion?

21   MR. PODLASEK:  Judge, I need time to send this down

22   to our Appellate Division.  They may want to respond to

23   the motion to declare the statute unconstitutional and to

24   dismiss.

W-9

1    THE COURT:  You are seeking some assistance from

2  your Appellate Division?

3    MR. PODLASEK:  I am.  I don't know what their

4  schedule is like down there.  So it may take a bit of

5  time.

6    THE DEFENDANT:  I am kind of confused.  What is he

7  seeking from the Appellate Division?  He has to respond

8  to it or the State's Attorneys.  I don't know what he has

9  to go to the Appellate Court.

10    THE COURT:  That's up to him, and I will allow him

11  to do that, Miss Melongo.  I will not let him take a long

12  long time either.

13    MR. PODLASEK:  We are not asking for a long time.

14  We are asking for a 30-day date.  In the meantime, I will

15  finish up redacting the file, and Miss Melongo can come

16  down to my office and it will be available for her to

17  pick up from the receptionist.

18    THE COURT:  And your final motion was what, a motion

19  to travel?

20    MR. PODLASEK:  I don't have that one.

21    THE DEFENDANT:  You can have this one.  A motion to

22  request movement like, Judge, like you only gave me one

23  movement that is on Monday to go to the law library.  I

24  have some other issues.  I have some medical issues.

W-10

1    Like I was incarcerated and they have like Cermak Health

2    Service like a hospital.  But once you are out of the

3    jail you have to go back to Stroger and be admitted so

4    that they can forward all your medical issues to Stroger.

5    So now when I got out I had some lab tests.  Remember

6    like I had a surgery.  I have to do follow-up and do

7    tests.  So I had some lab tests and CT scans I had to do.

8    So I cannot go to Cermak any more.  So I have to go to

9    Stroger and get admitted and go to all those

10   appointments.

11        Then there are also a lot of issues like one of

12   the reasons I get EM is to go on with my litigation

13   issue.  Also, things like simple like grocery shopping or

14   buying stuff.  I cannot to those things, and I am not

15   going to ask the lady with whom I am living to do those

16   things for me because she has her own life and she has

17   been graceful to come here when I was in jail.  Now that

18   I am out I want to relieve her with that stuff.  What I

19   am asking, Judge, is give me one day of movement per week

20   so I can put everything I have to do, I can just put it

21   on that day and then do my appointment and stuff so that

22   I won't come here every time to ask for a single movement

23   or something like that.  Because I really need movement

24   to do my own stuff.  Like I said, if you can just give me

W-11

1    like every Friday this is your movement date to go to

2    immigration, go to Stroger, to do your shopping, all that

3    kind of stuff.  That's the only thing I am asking.

4        THE COURT:  What is your position?

5        MR. PODLASEK:  The State would object.  The entire

6    point of her being on EM is basically she has to be under

7    house arrest.  You were nice enough to give her movement

8    to the Cook County Law Library so she can represent

9    herself.  The Sheriff's Office also has the authority to

10   allow her to make outside movements at her request if

11   there is a necessity such as medical needs.  She can make

12   the request directly to them.

13        Frankly, if there is another order there is

14   going to be a lot of confusion down at the Sheriff's

15   Office.

16       THE COURT:  If she needs medical or doctor treatment

17   I will allow that.  I will not give Miss Melongo every

18   Friday.  As I explained to you when I put you on

19   electronic home monitoring that I wasn't going to give

20   you additional time to go shopping.  That wasn't the

21   purpose of me putting you on electronic home monitoring.

22   Not to be rude, I don't care if you have time to shop or

23   not.  But Miss Hamilton, who was with you at the time I

24   put you on electronic home monitoring, basically agreed

W-12

1  she would do those things for you.  It doesn't matter to

2  me whether or not you want her to do it or not.  What I

3  will give you is time to do medical appointments.  So any

4  doctors' appointments, medical appointments and to a very

5  limited extent any immigration issues that you need to

6  deal with, I will allow you to do that as well.  So an

7  order would need to be prepared allowing you to go to

8  doctors' appointments and medical appointments that can

9  be verified by the Sheriff's Department as well as

10  immigration appointments that can be verified.

11      There are two ways.  They can either monitor it

12  or you can come in when you know you have these

13  appointments and have an order prepared and Mr. Podlasek

14  would review it and I would review it and then sign it.

15  Those are the only ways that would happen.  It can be

16  Sheriff monitored or done on a weekly basis or

17  semi-weekly basis where you come into court and I will

18  say yes or no.

19      THE DEFENDANT:  EM order, actually Mr. Podlasek

20  never gave me the new EM order.  He went behind my back.

21  I just heard that you have a new order.  So I don't know

22  what is the new order.

23      THE COURT:  So the record is clear, the order you

24  prepared was totally inappropriate and I had to tear it

W-13

1    up because you added things I told you not to add, and it

2    was put in the garbage can.  Quite frankly, the fact that

3    you are out is because I then requested Mr. Podlasek to

4    prepare an accurate order, which he then did for the

5    Court, because I wanted -- it was my order that you be

6    gotten out of jail and placed or readmitted onto

7    electronic home monitoring.  So Mr. Podlasek actually

8    complied with my order, and actually that's the reason

9    you are out because he prepared an accurate order.

10   Whereas your order was completely inaccurate and was torn

11   up.  Don't be blaming Mr. Podlasek for anything related

12   to that.  Next?

13       THE DEFENDANT:  Can I have a copy of the EM order,

14   please?

15       MR. PODLASEK:  I will see if I have a copy here.  I

16   know there is a copy in the court file.  If I can find a

17   copy somewhere, I will tender it.

18       THE COURT:  So we will give this case a 30-day date.

19   If you prepare an accurate order this time stating very

20   simply that Annabel Melongo will be allowed to go to

21   doctor and medical appointments verified by the Cook

22   County Sheriff's Police Electronic Home Monitoring

23   Division and immigration matters.  Prepare that order

24   very succinctly.  Don't add anything else.  I will sign

W-14

1    that order.

2        THE DEFENDANT:  You want me to bring it within 30

3    days or can I bring it next week because I need movement

4    now?

5        THE COURT:  You can do it now.  We will pass your

6    case and you prepare it now.

7        THE DEFENDANT:  Meanwhile, if you can give me a copy

8    of the EM order, that would be nice.  Can I have an

9    order?

10       THE COURT:  Pass the case.

11                      (Whereupon, the case was passed.)

12                      *  *  *  *  *

13       THE COURT:  Annabel Melongo.

14       THE DEFENDANT:  Judge, at this time I tender the

15   order.

16       MR. PODLASEK:  I will tender a copy of the

17   electronic home monitoring order dated November 21, 2011.

18   Also I tender a copy for the court file.

19       THE COURT:  What does this say, granted movement?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Have you reviewed this yet, State?

22       MR. PODLASEK:  No.

23       THE COURT:  The State has no objection?

24       MR. PODLASEK:  No objection.

W-15

1    THE COURT:  I will sign this.  Please stamp it and

2    make sure Miss Melongo and the State get a copy.  We are

3    going to continue this matter for approximately 30 days

4    for the State to complete their discovery.

5        MR. PODLASEK:  Judge, I would suggest the 9th or

6    11th of January.

7        THE COURT:  How does that work for you,

8    Miss Melongo?

9        THE DEFENDANT:  We cannot do the 9th because that's

10   when I go to the law library.

11       THE COURT:  The 9th or 11th?

12       MR. PODLASEK:  The 11th is fine, Judge.  By

13   agreement.

14       THE COURT:  January 11th by agreement all matters as

15   it always has been.

16       THE DEFENDANT:  Judge, Mr. Podlasek is going to be

17   removed from the case because of the memorandum?

18       THE COURT:  No, he is not going to be removed from

19   the case.

20       MR. PODLASEK:  I am going to ask my boss.

21       THE DEFENDANT:  If I can file memorandum for him to

22   be removed from the case, I will file it.

23       THE COURT:  I understand, Miss Melongo.

24   January 11th by agreement.

W-16

1      THE DEFENDANT:  Judge, the CDs.

2      THE COURT:  They will be tendered January 11th.

3                      (Whereupon, the above-entitled cause

4                      was continued to January 11, 2012.)

WV-17

1    STATE OF ILLINOIS  )
                     )
2    COUNTY OF C O O K  )

3

4        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
           COUNTY DEPARTMENT - CRIMINAL DIVISION
5

6           I, Annette M. Golab, an Official Court

7    Reporter for the Circuit Court of Cook County, Criminal

8    Division, do hereby certify that I reported in shorthand

9    the proceedings had at the hearing of the above-entitled

10    cause; that I thereafter caused the foregoing to be

11    transcribed into typewriting, which I hereby certify to

12    be a true and accurate transcript of the proceedings

13    before the Honorable STEVEN J. GOEBEL, Judge of said

14    court.

15

16

17                                    
18        Official Court Reporter
        License No. 084-001693

19

20

21    Dated this 25th day

22    of November 2012.

23

24

W-18

# EXHIBIT Y

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF       )
ILLINOIS,                        )
                                 )
          Plaintiff,             )
                                 )
vs.                              )       No. 10 CR 8092
                                 )
ANNABEL MELONGO,                 )
                                 )
          Defendant.             )
------------------------------)

                TRANSCRIPT OF PROCEEDINGS had at the

hearing of the above-entitled cause before the

Honorable STEVEN J. GOEBEL, judge of said Court, on

the 11th day of January, 2012, at the hour of 11:00

a.m.

          PRESENT:

                    HON. ANITA M. ALVAREZ
                    State's Attorney of Cook County, by
                    MR. ROBERT PODLASEK
                         Appearing on behalf of the Plaintiff;

Paul W. O'Connor
Official Court Reporter
Circuit Court of Cook County
County Department

XX-1

<u>I N D E X</u>

Date:  January 11, 2012
Pages:  XX-1 to XX-12

Status of Motions                    3

<u>WITNESS</u>                    DX    CX  RDX    RCX   FD   FC
None

1          THE CLERK:  Annabel Melongo, sheet five.

2          MR. PODLASEK:  Robert Podlasek,

3  P-O-D-L-A-S-E-K, on behalf of the State.

4          MS. MELONGO:  Annabel Melongo.

5          THE COURT:  Good morning.

6          MR. PODLASEK:  At this time I have

7  substantial portion of the former attorney's file to

8  return to Miss Melongo.  I have reviewed it and taken

9  out the portions we are going to be redacting.  That

10  would be approximately two more of these brown files.

11  Shouldn't take more than another two weeks.  I have

12  one clerk working on it right now.

13          THE COURT:  Take the State another two weeks

14  to get that to you.

15          MS. MELONGO:  It's way too long.  Initially

16  he asked for five weeks.  Takes over more than two

17  months.

18          THE COURT:  Takes a long time, Miss Melongo.

19          MS. MELONGO:  It doesn't take that long to

20  redact a couple of subpoenas.  Not even more than like

21  ten subpoenas.

22          MR. PODLASEK:  That's not true.  Just so I

23  can respond, we found numerous pages that have credit

24  card numbers, Social Security numbers, addresses, and

1    telephone numbers of individuals that we are

2    redacting.

3             THE COURT:  I understand.  It's a tedious

4    and long process.  I don't find the State has been --

5    I find the State has been exercising due diligence in

6    trying to provide you with the discovery, Miss

7    Melongo.  So take approximately another two weeks

8    according to the State.

9             Do you have anything else?

10            MS. MELONGO:  Actually, can I file those

11   motions?  I have a motion.

12            THE COURT:  You have a motion to file?

13            MS. MELONGO:  Yes.

14            THE COURT:  What kind of motion you want to

15   file?

16            MS. MELONGO:  Actually I don't know, judge,

17   if you recall --

18            THE COURT:  I can't hear you.

19            MS. MELONGO:  If you recall the last time I

20   actually asked you for -- Albukerk's filed one of my

21   motions in civil court or -- so actually it's not only

22   one motion, it's actually three motions.  Those three

23   motions are key motions to my computer tampering case.

24   They were all filed on the same day in the civil

1    department.

2                Last time you asked me to write a

3    motion and -- I was thinking about it and I was saying

4    to myself it won't actually be a good idea to write

5    the motion because the statement, like pre-court

6    hearing, I remember court hearing Judge Brosnahan

7    asked Mr. Podlasek -- actually initially issued those

8    motions when I was pro se, so Judge Brosnahan asked

9    Mr. Albukerk to rewrite the motion and file them and

10   Albukerk says he's going to file them and then argue

11   them.

12               Somehow Albukerk did rewrite the motion

13   and file them, and all that is on the record, but as

14   of now I'm kind of confused if the motion were argued

15   or not because Albukerk told me the motion will not

16   argue.  But one of Albukerk's told me the motion would

17   argue, but it was dismissed with that evidentiary

18   hearing.  So I'm kind of confused of what happened to

19   those motions.

20               In any event, I told -- the best way to

21   solve this issue because I went on record, even my

22   present motion to dismiss I talk about this motion.

23   It will not be a good idea for me to actually file it

24   now.  What I ask and that's what I ask in my motions,

1    to just issue the order so that the motion get filed

2    on July 6th so the record get corrected, and July 6th

3    date is kept with Albukerk naming -- because it's

4    going to be consistent with everything that has been

5    written and everything that --

6              THE COURT:  Your former attorney Nick

7    Albukerk filed this on July 6th of last year?

8              MS. MELONGO:  Yes.

9              THE COURT:  State can object if they find

10   that not to be correct, but I'll allow you to file it

11   as of July 6th.  Previously stamped.  Obviously I was

12   not the judge on that day.

13             MS. MELONGO:  All those motions, you can

14   actually see this one, you can see like civil

15   department and stuff.  Those three motions are key to

16   my computer tampering case.

17             THE COURT:  Mr. Podlasek, if you have any

18   objections to this motion, raise it in two weeks.

19             MR. PODLASEK:  The elected case --

20             THE COURT:  As far as the filing I'm talking

21   about.

22             MS. MELONGO:  Just filing, nothing done with

23   it.  I prepared the order for you.

24             THE COURT:  There's no need for an order.

1    I'm allowing you to file it.

2              MS. MELONGO:  I have to go there and ask

3    them to change it so there have to be an order to do

4    that, right?

5              THE COURT:  No, there doesn't have to be an

6    order.  The order was just spoken.  It's allowed to be

7    filed as of July of last year.

8              MS. MELONGO:  Just go there and tell them

9    has to be filed July, correct?

10             THE COURT:  It's filed.  As of July last

11   year it's filed.  Having said so.

12                  What's a good date for you to come

13   back?

14             MS. MELONGO:  So you granted the motion.

15   Judge, I'm not done.  Actually I send you this FAX --

16   just for the record, what is your FAX number and phone

17   number?  Because I send you this FAX last week and I

18   was -- nobody knew what is your FAX number.  Or

19   telephone number.

20             THE COURT:  FAX number goes through the

21   chief judge.  You can call (773) 674-3160.  Offhand I

22   don't know what the FAX number is there, but the

23   secretary who answers that phone will be happy to tell

24   you what the FAX number is.

1      MS. MELONGO:  Did you receive this FAX?

2      THE COURT:  I did not.

3      MS. MELONGO:  This is what we talked the

4  last time about giving some transcript order.  So I

5  also send a copy to Mr. Podlasek.

6      MR. PODLASEK:  I received one, judge.  And I

7  have no objection to copies of those transcripts.

8      THE COURT:  To copies?  Are they already

9  printed?

10     MS. MELONGO:  To order transcript from

11  Mrs. --

12     THE COURT:  Let me review this.  We will

13  deal with this in two weeks as well.  Quite a lot of

14  transcripts.

15     MS. MELONGO:  Last but not least, I was

16  supposed to receive the response to my motion to

17  dismiss today.  Judge, you actually told them today is

18  last day.  And I don't see any response to my motion

19  to dismiss.

20     MR. PODLASEK:  It's with our appellate

21  division.  Alan Spellberg informed me it's going to

22  take a while.  They are a little behind, but they do

23  want to respond to it.  Given the nature of the -- 30

24  to 60 days.

1          THE COURT:  We've been dealing with this for

2     about almost 30 days now.

3          MS. MELONGO:  Two months.

4          MR. PODLASEK:  I understand, but there's a

5     limited amount of individuals there working on it.

6          THE COURT:  Find out what the status of it

7     is.

8          MS. MELONGO:  It doesn't make sense.  I'm

9     just a pro se, everybody can see I'm a pro se and

10    filed that motion when I was in jail.  And it didn't

11    take me a month.

12          So Mr. Podlasek is a 30-year plus

13    lawyer and he gave it to what kind of division,

14    experienced lawyer, it should not take them two months

15    to respond to a pro se motion.  This is ridiculous.

16          THE COURT:  I will give Mr. Podlasek till

17    the next date to let me know what the progress and

18    status is of his office filing your -- the response to

19    your motion to dismiss.  So we will hold this matter

20    over for two weeks.  See what the progress is of that.

21    I will also deal with your transcript issue on that

22    day.  As well as I assume in two weeks you will get

23    the rest of discovery.

24          MS. MELONGO:  The transcript has to be given

**XX-9**

1      to --

2              THE COURT:  I have not granted the motion.

3      I'm going to review them.  I see a lot of this is --

4      looks like just like we are doing now.  The court

5      hearings, you were here, you know what they are.  Even

6      though State does not have an objection, the State has

7      limited funds.  I'm not going to grant irrelevant

8      transcripts.  You're not going to have transcripts on

9      every court hearing we have.  You have quite a few

10     transcripts there.  About half of them are in front of

11     me and I can tell you right now since they were in

12     front me, they are not necessary for your defense.

13             MS. MELONGO:  Most of them relevant, judge.

14             THE COURT:  Most of those are not going to

15     be granted, what's in front of me.  I told you before

16     I'm only going to grant things where prior trial or

17     prior motions were heard.  I'm not going to grant

18     court transcripts and all the banter that goes back

19     and forth like today.  That's not going to happen.  If

20     you want to order those, you pay for those yourself.

21     I will review your motion for transcripts and some

22     will be granted and probably -- and some are going to

23     be denied.  Two weeks.

24             MS. MELONGO:  The 24th.

1          THE COURT:  24th is good for you?

2          MR. PODLASEK:  Can we go to the 23rd.

3          THE COURT:  How's the 23rd?

4          MS. MELONGO:  That's fine.

5          THE COURT:  By agreement then, January 23rd.

6          MS. MELONGO:  Can he respond to the motion?

7 It cannot take 2 to 3 months.

8          THE COURT:  He will come in and let me know

9 what his progress is.  By agreement, January 23rd.

10

11

12

13          (Whereupon, proceedings were

14          adjourned in this case)

15

16

17

18

19

20

21

22

23

24

1    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
       COUNTY DEPARTMENT-CRIMINAL DIVISION

2

3                         I, PAUL W. O'CONNOR, an Official

4    Court Reporter for the Circuit Court of Cook County,

5    County Department/Criminal Division, do hereby certify

6    that I reported in shorthand the proceedings had at

7    the hearing in the above-entitled cause; that I

8    hereafter caused the foregoing to be transcribed into

9    typewriting, which I hereby certify to be a true and

10   accurate transcript of the proceedings had before the

11   Honorable STEVEN GOEBEL, Judge of said court.

12

13

14   _____
                    Official Court Reporter

15

16   Lic. No. 084-002955

17

18   Dated this _____ day

19   of _____, 2012.

20

21

22

23

24

# E X H I B I T   Z

```
 1      STATE OF ILLINOIS )
                          )  SS:
 2      COUNTY OF C O O K )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
        THE PEOPLE OF THE      )
 5      STATE OF ILLINOIS,     )
                               )
 6                   Plaintiff, )
                               )  No. 10 CR 08092-01
 7           vs.               )
                               )  Charge:
 8      ANNABEL MELONGO,       )
                               )
 9                   Defendant. )

10

11                  REPORT OF PROCEEDINGS of the

12      hearing had before the HONORABLE TIMOTHY J.

13      JOYCE, on the 23rd day of January 2012, in

14      Chicago, Illinois.

15
                    APPEARANCES:
16
                        HON. ANITA M. ALVAREZ, State's
17                      Attorney of Cook County, by
                        MR. ROBERT PODLASEK,
18                      Assistant State's Attorney,
                        on behalf of the People;
19
                        MS. ANNABEL MELONGO, pro se.
20

21

22      Sandra Battaglia
        Official Court Reporter
23      Criminal Division
        C.S.R. #084-003168
24
```

1            THE COURT:  Melongo.

2                    Who is the State's Attorney on

3       your case?

4            THE DEFENDANT:  Mr. Podlasek.

5            THE COURT:  Somebody give him a call and

6       see if he is coming down.

7                    Thank you.

8

9                    ( WHEREUPON the case was passed

10                        and later recalled. )

11

12           THE COURT:  Annabel Melongo.

13           MR. PODLASEK:  Good morning.

14           THE COURT:  Good morning, Mr. Podlasek.

15                    Hello, again, Miss Melongo.

16           THE DEFENDANT:  Good morning, Judge.

17                    Annabel Melongo, pro se.

18           MR. PODLASEK:  Robert Podlasek,

19       P-O-D-L-A-S-E-K, on behalf of the State.

20           THE COURT:  I am handling Judge Goebel's

21       call.  He is on a trial.

22                    What are we doing on this matter?

23           MR. PODLASEK:  Judge, I have some documents

24       to tender to Miss Melongo.  These are part of

YY-2

1    the documents we have been redacting from her

2    attorney's files that we will tender to her.

3                We have a few more to go through,

4    but then we will be finished.

5        THE COURT:  Do you anticipate that will be

6    done by the next date?

7        MR. PODLASEK:  I do, Judge.

8        THE COURT:  What date are you asking for,

9    State?

10               I will ask Miss Melongo in a

11   moment whether that works for her or not.

12       MR. PODLASEK:  Can we go to the second week

13   in February towards the end of the week?  Maybe

14   the 9th or the 10th.

15       THE COURT:  First off, are you agreeing to

16   continue the matter, Miss Melongo --

17       THE DEFENDANT:  No, your Honor.

18       THE COURT:  (CONTINUING) -- to get these

19   materials?

20       THE DEFENDANT:  Judge, actually, I have a

21   pending motion to dismiss.  And during the last

22   year, Judge Goebel gave the State prosecutor

23   until today to get the State on the motion to

24   dismiss.  So the State prosecutor is coming

1    today.  He has no response to my motion to

2    dismiss.

3                If you can just put this call to

4    the next time Judge Goebel is going to be

5    available because at some time Mr. Podlasek has

6    to answer to that motion to dismiss.

7         MR. PODLASEK:  Judge, if I may respond.

8         THE COURT:  Yes.

9         MR. PODLASEK:  There was a motion filed to

10   dismiss the indictment for eavesdropping.  There

11   is two separate cases.  Miss Melongo filed

12   recently several months ago a motion to have the

13   statute declared unconstitutional.

14               We transferred that motion given

15   the nature of that motion to the appellate

16   division, specifically to the supervisor of the

17   appellate divisional, Alan Spellberg, who has

18   assigned it out.  I have put a call in to him.

19   I have not heard back from him as to when it

20   will be finished.

21        THE DEFENDANT:  So if you can just continue

22   this week or next week --

23        MR. PODLASEK:  Judge, I am not available.

24        THE DEFENDANT:  I am got agreeable to two

1    week continuance.  He has asked for more than

2    three weeks.  That motion has been pending --

3    sorry, more than six months.

4         THE COURT:  How about next week?

5         MR. PODLASEK:  Judge, I am on trial.  I

6    start a jury on Monday with Judge Goebel.

7         THE DEFENDANT:  Judge, he can send somebody

8    just to handle this.

9         THE COURT:  Miss Melongo, hang on a second.

10              You are going to be able to be

11   heard.  I have given you an opportunity to be

12   heard.  I don't want any of us talking over any

13   others of us.  Fair enough?

14              Beg your pardon, Mr. Podlasek.

15        MR. PODLASEK:  Judge, I will be on jury

16   starting Monday.  We are picking.  There is at

17   least by my count 25 State witnesses we are

18   putting on.  And that's -- we are prepping those

19   now as we speak.  We are in the middle of that.

20        THE COURT:  You will be in front of Judge

21   Goebel, correct, on that matter?

22        MR. PODLASEK:  But I will also be prepping

23   the witnesses.

24        THE COURT:  I don't doubt it.  But you will

```
1      be physically in front of him; correct?

2              MR. PODLASEK:  Yes.

3              THE COURT:  We will hold it over until next

4      week.

5              THE DEFENDANT:  Thank you, Judge.

6              THE COURT:  By agreement of the parties --

7      give me a date next week.

8                    Do you agree to that continuance

9      next week, Miss Melongo?

10             THE DEFENDANT:  ( Nodding head. )

11             THE COURT:  You have to say yes or no.

12             THE DEFENDANT:  Yes, Judge.

13             MR. PODLASEK:  February 3rd, Judge.

14             THE COURT:  By agreement, 2-3-12.  I will

15     make it 1:00 o'clock, Room 101.  Who knows where

16     the jury will be.

17             MR. PODLASEK:  Can we make it at 10:00

18     o'clock in the morning?

19             THE DEFENDANT:  10:00 o'clock.

20             THE COURT:  10:00 o'clock, 3A15 or wherever

21     Judge Goebel is.

22

23

24
```

YY-6

```
1                          ( WHEREUPON the above-entitled

2                            cause was continued to

3                            2-3-12. )

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1

2     STATE OF ILLINOIS )
                        ) SS.
3     COUNTY OF C O O K )

4

5

6                I, SANDRA BATTAGLIA, Official

7     Shorthand Reporter of the Circuit Court of Cook

8     County, County Department, Criminal Division, do

9     hereby certify that I reported in shorthand the

10    proceedings had at the hearing of the

11    above-entitled cause, and that the foregoing is

12    a true and correct transcript of the proceedings

13    had.

14

15

16

17    _____
      Official Shorthand Reporter
18    C.S.R. #084-003168
      Circuit Court of Cook County
19    County Department
      Criminal Division
20
      Dated this _____ day of
21    _____, 2012

22

23

24

                          YY-8

# EXHIBIT AA

STATE OF ILLINOIS   )
                    ) SS:
COUNTY OF C O O K   )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

THE PEOPLE OF THE STATE   )
OF ILLINOIS,              )
                          )
        Plaintiff,        )
    vs.                   )   No. 10 CR 08092-01
                          )
ANNABEL K. MELONGO,       )
                          )
        Defendant.        )

REPORT OF PROCEEDINGS had in the

hearing of the above-entitled cause, before the Honorable

STEVEN J. GOEBEL, Judge of said Court, on Friday, the 3rd

day of February, A.D., 2012.

PRESENT:

HON. ANITA M. ALVAREZ,
State's Attorney of Cook County, by
MR. ROBERT PODLASEK,
Assistant State's Attorney,
    appeared on behalf of the People;

MS. ANNABEL MELONGO,
    appeared pro se.

Siobhra Redmond
Official Court Reporter
2650 South California, Room 4-C02
Chicago, Illinois 60608
CSR #084-004552

ZZ-1

1

$\underline{I} \ \underline{N} \ \underline{D} \ \underline{E} \ \underline{X}$

2

3      PEOPLE vs. ANNABEL MELONGO
       NO:  10 CR 08092-01
       DATE:  02-03-2012
4      JUDGE:  Honorable Steven J. Goebel
       REPORTER:  Siobhra Redmond
5      PAGES:  ZZ-1 through ZZ-22
       PROCEEDINGS:  Discovery Status

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    THE CLERK:  On Judge Goebel's call Annabel Melongo,

2    sheets 1 and 2.

3    MR. PODLASEK:  Judge, for the record Robert Podlasek

4    on behalf of the State.

5    MS. MELONGO:  Judge, for the record Annabel Melongo,

6    pro se.

7    THE COURT:  Good morning, Ms. Melongo.

8    MR. PODLASEK:  Judge, at this time we're tendering

9    the remainder of Mr. Albukerk's file to Ms. Melongo.

10   THE COURT:  Okay.  Very good.  We're referring to

11   the redacted part?

12   MR. PODLASEK:  I am, Judge.

13   THE COURT:  Okay.  That completes ...

14   MR. PODLASEK:  That completes that file.

15   THE COURT:  All right.  How about discovery?

16   MR. PODLASEK:  Discovery has been completed in this

17   case.

18   THE COURT:  It's all done.

19   MR. PODLASEK:  Yes.

20   MS. MELONGO:  Judge, we have the million-dollar

21   question, where's the answer to the motion to dismiss?

22   THE COURT:  I'm sorry.  I didn't hear you.

23   MS. MELONGO:  I said we have the million-dollars

24   question.

1    THE COURT:  Your motion to dismiss?

2    MS. MELONGO:  Yes, where the answer is.

3    THE COURT:  Mr. Podlasek, when will the State be

4    able to file a response to Ms. Melongo's motion to

5    dismiss?

6    MR. PODLASEK:  Judge, we'll file it on the 14th.

7    That's about ten days from now.  We can set it down for

8    argument after that.

9    THE COURT:  Okay.  You can file it on February 14th.

10   I'm going to give the State to February 14th to file it.

11        On the 14th, Ms. Melongo, we will set it down

12   for argument on the motion.

13   MS. MELONGO:  Yes, Judge.  For the record I want to

14   know what division of the appellate is handling my

15   motion?  Is it a civil or is it a criminal appeal?

16   THE COURT:  All right.  Well, actually, you're not

17   entitled to know that.  I mean, the State operates how

18   the State operates.  They don't have to tell me.  They

19   don't have to tell you.  I just want it filed.

20   Mr. Podlasek is the state's attorney on this case and he

21   is responsible for filing the motion or bringing it to

22   the Court's attention and arguing it, so I don't know if

23   someone else is going to come in or not.  But I'm holding

24   right now since no one else is here Mr. Podlasek to

1     filing this motion on February 14th.

2          MS. MELONGO:  Okay.  Judge, I have some copy of -- I

3     have some issue I want to go through.

4          THE COURT:  All right.

5          MS. MELONGO:  Okay.  The first issue is -- actually

6     it was my understanding when the State got my file that

7     it was supposed to redact information, social security

8     number, credit card, but it turned out the State did

9     everything but redact that information.

10          Judge, if you recall, I objected to the fact

11     that my case being handed over to the state prosecutor is

12     because I have known Mr. Podlasek for more than five

13     years now.  Actually, the first time I met him was

14     January 17th, 2007.

15          THE COURT:  I think you guys are getting an

16     adversarial friendship.  Go ahead.

17          MS. MELONGO:  So when he requested my file, I knew

18     exactly the purpose behind him requesting the file and I

19     objected to it, so he has been returning that file over

20     to me.  And it turned out what he was supposed to be

21     redacting in the file is not -- he didn't do that, but

22     the information he had no business redacting and that was

23     necessary to my defense was what was redacted.

24          And I'm not talking out of the blue.  Judge,

1    I'm just going to give you some -- I didn't bring

2    everything, but this is a subpoena from Go Daddy.  The

3    subpoena has all the credit card information.

4         MR. PODLASEK:  Judge, I missed that one.  I should

5    have redacted that.

6         MS. MELONGO:  It's not that -- A mistake is a

7    mistake.  And I'm actually going to use this information

8    to file a second motion to dismiss if the pending is not

9    granted.  So this is the Go Daddy information and it has

10   actually valid credit card numbers, some of them current

11   and stuff.  That is the kind of information Mr. Podlasek

12   was supposed to redact.  That information is black and

13   white there visible to --

14        MR. PODLASEK:  Judge, I'd actually request those

15   documents back so I can redact them.

16        MS. MELONGO:  -- to the defendant.

17        MR. PODLASEK:  This is the exact reason that a

18   pro se defendant shouldn't have access to anything that

19   an attorney subpoenaed.

20        MS. MELONGO:  But, Judge, you gave him that

21   information over my objection so that he would redact the

22   information and he didn't do that.  He got that

23   information, like, more than five months now and it has

24   never been redacted.

1    THE COURT:  I understand, but how does that hurt you

2    or prejudice you?

3    MS. MELONGO:  No, I'm coming -- I'm coming.  That's

4    what I'm coming.

5    THE COURT:  Okay.  Go ahead.

6    MS. MELONGO:  That's the information he was to --

7    supposed to redact.  He didn't redact it.  But strangely

8    though, Judge, the information he has no business

9    redacting, those are just, like, entry from the

10   defendant, one of -- one of the persons subpoenaed, this

11   is like -- this is a consulting company entry and they

12   were just making some comment.  They are some comment

13   here that are really necessary for the defense.  I have

14   the redacted investigation and I don't know if somebody

15   made a mistake and also gave me the unredacted version.

16   So if you read that last -- this last portion of the

17   unredacted version, you will see the paragraph state the

18   company that is accusing me in the computer tampering

19   case of deleting password and stuff has also accused

20   somebody of doing exactly the same.  And if you see this

21   is the information.  That is exactly the information I

22   need for my defense that was redacted by the State.

23   THE COURT:  Are you saying -- Since I'm not familiar

24   with the exact facts of the case or the parties, I'll be

1    honest with you, this is -- not have much meaning to me.

2    Are you referring to the part that says --

3         MS. MELONGO:  It is meaning.  I have to explain it

4    to you.

5         THE COURT:  -- I'm in the off-site training session.

6    We are actively trying to obtain a signature from a

7    client.  We need a signed time sheet from the client.

8         MS. MELONGO:  And I can explain you why it's meaning

9    to me and why it's meaning to my defense.

10        THE COURT:  All right.  Go ahead.

11        MS. MELONGO:  Because the last paragraph is the

12   company -- that's was the consultant who went before I

13   got hired, that's the individual that was hired in my

14   position.  He was before me.  So the company in the

15   computer tampering case accused me of deleting password

16   and for deleting filing stuff.  And it turned out that

17   company accused this guy for doing exactly the same

18   thing.  So -- And it will be necessary to my defense,

19   like, just to prove credibility then, see, this is a

20   person.  The person who comes before me was accused of

21   doing exactly the same thing that I'm being accused of.

22   Actually, it will be a credibility on my accuser, just to

23   challenge the credibility of the accuser.  So for the

24   State to redact that information from me from not -- so

1    that I cannot see that information is really -- is a big

2    prejudice to my case and it's kind of a miscarriage of

3    justice for the State to have done that.  And that is not

4    only -- it's just a sample of things they are -- those

5    are not pages that have been redacted.  This is just a

6    sample I took.  But there are pages and pages like that

7    that have been redacted.

8         THE COURT:  Actually, to me this looks like two

9    separate sheets though.

10        MS. MELONGO:  No, it's the same sheet.

11        THE COURT:  Can you tell me if these are two -- the

12   same sheets.

13        MS. MELONGO:  If you see the same comment, those are

14   the same.  And the problem is the State has no business

15   redacting this information.  It was just credit card

16   number and social security.  Why is it going --

17        MR. PODLASEK:  And addresses, Judge, telephone

18   numbers.

19        MS. MELONGO:  How is it going to redact --

20        MR. PODLASEK:  Social security numbers.  I've

21   attempted --

22        THE COURT:  To me they look like two separate

23   sheets.  On the one it says job, what is it job title on

24   the first.

1     MS. MELONGO:  It may be different, but the comments

2     are the same, the comments are the same.

3         THE COURT:  They look like two separate documents to

4     me.

5         MS. MELONGO:  Read this one starting there and then

6     read the same.  Those are exactly the same because

7     sometime it can be somebody else who comment or

8     something.  That's why you see.  But it's exactly the

9     same.

10        MR. PODLASEK:  This one says page 2 of 4 on the

11    bottom and this one says page 11 of 35 on the bottom.

12        THE COURT:  Yeah, they're two separate ones.

13        MS. MELONGO:  But it's not -- that's why I'm

14    saying --

15        MR. PODLASEK:  If I can just ask a question here.

16        THE COURT:  Sure.  Go ahead.

17        MR. PODLASEK:  What exactly are you looking for out

18    of this information?  What's missing?  What have we

19    redacted?

20        THE COURT:  Well, it's separate pages, so

21    there's --

22        MR. PODLASEK:  I don't understand it.  I can't read

23    it.

24        THE COURT:  -- obviously --

1          MS. MELONGO:  Judge --

2          THE COURT:  -- something is redacted.

3               Hold on.

4               You don't know what's redacted because you

5     don't have the original.  But what Ms. Melongo was saying

6     those two were the same, they're not, so she cannot say

7     those two are the exact same page and that important item

8     was redacted because obviously it was tendered, so --

9     because they're separate pages.

10          MR. PODLASEK:  Can I say something else?

11          MS. MELONGO:  Judge, can I say something before he

12    say.  Actually it's not even an issue now if the pages

13    are the same or not.  The State redacted information it

14    had no business redacting.  It was social security number

15    and --

16          THE COURT:  No, they're absolutely --

17          MS. MELONGO:  -- credit card number.  Why the State

18    went and redact that information.  You cannot redact

19    something just for the sake of redacting and the very

20    thing it was supposed to redact, they never redacted it.

21          MR. PODLASEK:  Judge, I said I made a mistake on one

22    of them.

23          MS. MELONGO:  It's not a mistake.

24          THE COURT:  Well, you don't know if that is or not.

1  I assume it was since Mr. Podlasek, you know, and the

2  State's Attorney's Office went through volumes and

3  volumes of records, it's understandable how some could

4  slip through.  But I gave them permission to do that and

5  I'm not going to reverse myself, so ...

6      MS. MELONGO:  But you didn't give them permission to

7  redact everything they thought was necessary for their

8  own case.

9      THE COURT:  No, he's under an obligation to tender

10  any Brady material and there's no indication he has not

11  complied with that.  So he's allowed to redact credit

12  cards obviously, social security numbers and addresses,

13  home addresses.

14      MR. PODLASEK:  Telephone numbers I redacted also.

15      THE COURT:  Telephone numbers.

16      MS. MELONGO:  For the record the State didn't redact

17  information it was supposed to redact because I am going

18  to use that for second motion to dismiss and that one is

19  going to be dismissing both my cases because it's a

20  miscarriage of justice what the State did to redact my

21  file for its own purpose.

22      MR. PODLASEK:  Judge, I'll return these to

23  Ms. Melongo on the next court date redacted properly.

24      THE COURT:  Okay.

1        MR. PODLASEK:  Judge, I would also just for the

2   record say you did order us also to copy Mr. Albukerk's

3   complete file unredacted and maintain that copy so that

4   the Court if there were questions whether or not we

5   should have redacted something, the Court has something

6   to reference back to.  We do have those in our offices.

7        MS. MELONGO:  Judge, the damage has already been

8   done.

9        THE COURT:  All right.

10       MS. MELONGO:  Okay.  The second point I want to --

11  Judge, when I got arrested, the State came in front of

12  Judge Brosnahan and asked that my passport be handed over

13  to him.  So as of today I don't know where is -- my

14  passport is and I have -- and I told you I have an

15  immigration hold where I have to correct my immigration

16  standing.  So I asked the people at the jail where is my

17  passport.  They don't know where my passport is.

18            Coming Thursday I have an appointment with the

19  immigration and I need my passport.  If not a passport,

20  at least a copy of it.  So I'm asking the State, who has

21  my passport?

22       MR. PODLASEK:  Judge, I don't believe the State took

23  her passport.

24       THE COURT:  It usually goes with the clerk.  Let me

1    see if it's in here.

2         MS. MELONGO:  Can I have this copy.

3         MR. PODLASEK:  No.

4         MS. MELONGO:  I already have the copies, so there is

5    even no business you keeping it because I already have

6    the copy.

7         MR. PODLASEK:  I'll make a redacted copy.

8         MS. MELONGO:  I have, like, a stack like that with

9    credit cards, so ...

10         MR. PODLASEK:  You should bring them back over to

11   me.

12         MS. MELONGO:  I'm not turning it over.  I'm going

13   to --

14         THE COURT:  Hold on.  No dialogue.

15              All right.  The clerks might have it in a

16   separate sealed envelope or something.  I do not see it

17   in the file, but they are rather thick and I am not going

18   to sit here and go through it piece by piece.  We will

19   have to locate the passport to see where that's at.

20         MS. MELONGO:  Judge, actually it was in April the

21   first time I appear in front of Judge Brosnahan from

22   jail.  Mr. Podlasek asked Judge Brosnahan to have my

23   passport surrendered because it was in my property.  So

24   my passport is somewhere and somebody has to at least a

1    copy give to me so that I can correct my immigration

2    standing.

3        THE COURT:  All right.  I don't think the State has

4    any objections to you being tendered a copy of the

5    passport.

6        MR. PODLASEK:  No, but I don't have it in my

7    possession.

8        THE COURT:  I understand.

9        MS. MELONGO:  So who have it?

10       THE COURT:  All right.  The clerk has informed me it

11   should be upstairs in their office, so he's going to

12   check.

13       MS. MELONGO:  The next one is actually, Judge, I

14   want to make a motion to appoint expert.

15       THE COURT:  All right.

16       MS. MELONGO:  So the current charges against me like

17   eavesdropping and the eavesdropping is actually recorded

18   the conversation with Ms. Pamela Taylor who is the

19   manager of the Cook County reporter office.  So the

20   information is really technical.

21           So for the jury to understand it, I will need

22   three expert.  I will need a computer expert.  I will

23   need a court reporter expert and I will need a general

24   record expert explaining what is a court sheet, what is a

1    judge's note and all those kinds of things, so ...

2         THE COURT:  All right.  You wish to file that today?

3         MS. MELONGO:  If you can file it for me and

4    then ...

5         THE COURT:  All right.  Stuart, can you stamp this

6    please.

7              There's a copy back for Ms. Melongo, and the

8    State.

9         MS. MELONGO:  Okay.  The next point is, Judge, you

10   were supposed to order some transcript and then I see you

11   are going to talk about it today.

12        THE COURT:  All right.  You want to order numerous

13   transcripts.  I think I told you the last time you and I

14   were together that I didn't see any other than perhaps

15   the 12-13-10 argue motion to dismiss, I think that's

16   actually a continuance because I think there was no

17   argument on a motion to dismiss, so I think actually it

18   was just a continuance.  Most of these I am not going to

19   order.

20        MS. MELONGO:  Judge, why not?

21        THE COURT:  Because you are indigent doesn't mean

22   you get transcripts from every continuance or every time

23   the case is up.

24        MS. MELONGO:  Yes.  Judge, my argument was not only

I'm indigent, I cannot work and I need those transcripts for my own defense. So I don't know why I cannot get any. And besides hours in jail when most of those court hearings took place, my former lawyer never left me any kind of summary or anything for me to actually track what happened when I was in jail. So I don't know why I cannot -- I can understand even, say, okay from the time when you were released, I don't go to -- I am not going to order those transcripts, I can understand because from the time I got released, I start doing my own summary.

But, Judge, it will be really unfair given that I cannot work, given that I was in jail, given that my former lawyer never left me a summary of those court hearings, it would really be unfair not to -- not to order those transcripts for me because I have no clue what happened in any other date when I was in jail.

THE COURT: All right. Ms. Melongo, I understand your argument. For example, though, Nick's the lawyer on 4-11-11. Reconsider Nick on 6-24. Ask for PD 7-11-11. They have nothing to do with your representation of yourself right now. You don't need a transcript for those.

I told you I would give you the trial transcript and hopefully that's been done for you already

1   where the jury was hung.  I will give you any motions

2   that were argued or heard, but I'm not going to give you

3   anything else because they're not necessary for your

4   defense.

5      MS. MELONGO:  How do you know, Judge?  You are not

6   the one defending me.  I'm the one defending myself and I

7   know what is necessary for my defense and what is not.

8      THE COURT:  It's denied.

9      MS. MELONGO:  Okay.  Okay.  Judge, last but not

10   least, I receive an unlikely e-mail from somebody who was

11   Mr. Podlasek's friend and ally and that was

12   Mr. Albukerk.

13      THE COURT:  Did you say friend and ally?

14      MS. MELONGO:  Mr. Podlasek's friend and ally when

15   they -- actually they made a -- they teamed together to

16   send me back in jail.

17      THE COURT:  Well, I don't know about that, but go

18   ahead.

19      MS. MELONGO:  Anyway --

20      MR. PODLASEK:  Just for the record, I'm going to

21   object to that.

22      MS. MELONGO:  I receive an e-mail from him and then

23   he actually sent me the letters of date on the

24   eavesdropping law.

1     THE COURT:  Who did, Mr. Albukerk?

2     MS. MELONGO:  Yes.  Which means there is something

3     going on in his conscience or something.  So he -- The

4     eavesdropping law, the current standing is that the ISBA,

5     which is the Illinois State Bar Association, make it top

6     priority starting next Tuesday --

7     THE COURT:  Yes, did he send you the Law Bulletin

8     article?

9     MS. MELONGO:  Yes -- over all the Illinois

10    eavesdropping statute because it argue it's an assault to

11    the 1st Amendment right.

12       So Mr. Podlasek seems to be the only person in

13    Illinois who still think he has a case against me because

14    all over article out there say I should not be persecuted

15    for eavesdropping.

16       Even the Illinois State Bar Association say

17    it's an assault to my 1st Amendment right.

18     THE COURT:  Actually, I read this article.  What

19    they are talking about is amending the eavesdropping

20    statute.

21     MS. MELONGO:  Yes.

22     THE COURT:  Not striking it down but amending it.

23     MS. MELONGO:  Yes, but you cannot amend if you don't

24    change what is ...

1          MR. PODLASEK:  They're also talking in that article,

2     Judge, just for the record there's nothing that would

3     actually affect Ms. Melongo's case or the prosecution of

4     it.

5          MS. MELONGO:  Oh, there is.

6          THE COURT:  Well, we'll argue that another time.

7          MS. MELONGO:  There is.

8          THE COURT:  Anything else?  I've got some attorneys

9     waiting.

10         MS. MELONGO:  The --

11         THE COURT:  Ms. Melongo, we're not going to argue it

12    now.

13         MS. MELONGO:  -- article states not only --

14         THE COURT:  Ms. Melongo, Ms. Melongo, we're not

15    going to argue now.  Move onto your next point.

16         MS. MELONGO:  Judge, I think I'm done for today.

17         THE COURT:  Okay.  By agreement.

18         MS. MELONGO:  So what about my motion for expert?

19         THE COURT:  We'll hear that on February 14th as

20    well.

21         MS. MELONGO:  So the State has to read my motion,

22    the response to the motion to dismiss on February --

23         THE COURT:  That will be filed February 14th.  It

24    will be by agreement to that date.

```
1          MS. MELONGO:  Thank you, Judge.

2          THE COURT:  All right.  See you then.

3          MS. MELONGO:  Bye.

4                      (The above-entitled cause was

5                       continued to February 14th, 2012,

6                       at 9:30 a.m.)
```

```
 1   STATE OF ILLINOIS )
                       ) SS:
 2   COUNTY OF C O O K )

 3

 4        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 5

 6             I, Siobhra Redmond, Official Court Reporter of

 7   the Circuit Court of Cook County, County Department -

 8   Criminal Division, do hereby certify that I reported in

 9   shorthand the proceedings had on the hearing in the

10   aforementioned cause; that I thereafter caused the

11   foregoing to be transcribed into typewriting, which I

12   hereby certify to be a true and accurate transcript of

13   the Report of Proceedings had before the Honorable

14   STEVEN J. GOEBEL, Judge of said court.

15

16

17                        _____
                          Siobhra Redmond
18                        Official Shorthand Reporter
                          License No. 084-004552
19                        Circuit Court of Cook County

20

21   Dated this 21st day
     of November, 2012.
22

23

24
```

ZZ-22

# E X H I B I T   BB

```
 1    STATE OF ILLINOIS   )
                          )   SS:
 2    COUNTY OF C O O K   )

 3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                  COUNTY DEPARTMENT, CRIMINAL DIVISION
 4
      THE PEOPLE OF THE              )
 5    STATE OF ILLINOIS,             )
                                     )
 6              Plaintiff,           )
                                     )
 7    vs.                            )   No. 10 CR 08092
                                     )   No. 08 CR 10502
 8                                   )
      ANNABEL MELONGO,               )
 9                                   )
                Defendant.           )
10

11         REPORT OF PROCEEDINGS had in the

12    above-entitled cause before the Honorable STEVEN J.

13    GOEBEL, Judge of said court, Criminal Division, on the

14    14th day of February, A.D. 2012.

15
      PRESENT:          HON. ANITA M. ALVAREZ,
16                      State's Attorney of Cook County, by
                        MR. ROBERT PODLASEK
17                      Assistant State's Attorney,
                        MR. DANIEL CRONE 7-11
18                      on behalf of the People;

19                      MS. ANNABEL MELONGO,
                        Pro se.
20
      Evalyn M. Sullivan, CSR
21    Official Court Reporter
      License No. 084-002737
22

23

24
```

1       THE CLERK:  Annabel Melongo, sheets 20 and 21.

2       THE COURT:  Good morning, Ms. Melongo.

3       THE DEFENDANT:  Good morning, Judge.  Sorry the

4    line was so long.

5       THE COURT:  That's okay.  I understand.

6       MR. PODLASEK:  Judge, for the record, Robert

7    Podlasek, on behalf of the State.

8       THE DEFENDANT:  For the record, Annabel Melongo,

9    pro se.

10      MR. CRONE:  Also, for the State, 7-11 clerk,

11   Daniel Crone, C-r-o-n-e.

12      MR. PODLASEK:  Judge, you asked the State to file

13   a response to Defendant's Motion to Declare

14   Eavesdropping Statute Unconstitutional.  I am tendering

15   a copy of our response to the court.  I am tendering a

16   copy to Ms. Melongo.  I am also tendering a copy of the

17   cases cited in our response to the court as a courtesy.

18      THE COURT:  Thank you very much.

19      THE DEFENDANT:  Thank you, Judge.  This is a

20   Valentine gift.

21      THE COURT:  Valentine gift for you.  I know you

22   and Mr. Podlasek have a very unique relationship.  So

23   it is very appropriate on Valentine's Day.  Can we set

24   this down then for hearing?

1          MR. PODLASEK:  Yes, your Honor.

2          THE DEFENDANT:  Judge, I want to make some

3     statement on the record.

4          THE COURT:  Go ahead.

5          THE DEFENDANT:  Actually, you remember during the

6     last year when the State gave me the response, my

7     entire file back.  And you also remember that

8     Mr. Podlasek also sent me to jail for two weeks for

9     having received my file from Mr. Podlasek.  So I have

10    information from those two files.  So when I receive my

11    entire file from Mr. Podlasek, I discover that there

12    were some document, entire document that were removed

13    from that file.  That was part of my communication with

14    Mr. Podlasek still in that file.  That were my lawyer's

15    note in that file, and the Social Security card, Social

16    Security number and credit card information.  He was

17    supposed to redact it.  Plainly anybody can see those

18    and --

19         THE COURT:  You mean the information from last

20    court date?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Mr. Podlasek, do you have that?  You

23    were going to redact that and get that back to her?

24         MR. PODLASEK:  I haven't done it yet.

1      THE DEFENDANT:  Judge, that's where I am coming

2  from.  I know he came here the last time, and then he

3  said, oh, he was so sorry, and then he apologized for

4  it, but the damage is now irreversible.  The damage has

5  already been done.

6      Judge, if the State charge me, let's say,

7  with murder or with aggravated battery, and then I come

8  in front of you and tell you, "Oh, Judge, oh, that was

9  just a mistake," and then I apologize for it, the State

10  will not accept that type of defense.  And the State

11  live by certain rules.  The State also have to die by

12  certain rules.  He has to walk the talk.  Nobody is

13  above that law.

14      So this is a pending Motion to Dismiss.  And

15  if this motion is denied, I am going to punish the

16  State prosecutor for what he did because, Judge, if you

17  think this case is bad, if you think the eavesdropping

18  case is bad, wait until you get to the computer

19  tampering case.  The case had seven kinds of perjury

20  from the State prosecutor.  He has no witness.  He has

21  no evidence.  He have five year pending motion for

22  discovery.  So the State, using a false pretense from

23  redacting credit card information and Social Security

24  number, he took my file to perfect his own case.  And I

1    am going to see that he gets punished for that.

2         THE COURT:  All right.  Well, so the record is

3    clear, Ms. Melongo, the State received the file back

4    from your attorney at the Court's order so that the

5    file could be redacted.  And, yes, it is true that it

6    appears that some documents, I don't think a great

7    volume of documents, were not redacted, because you

8    brought that to my attention last time up.  But

9    Mr. Podlasek is acting pursuant to my order, as far as

10   discovery goes on this case, that the file be tendered

11   to him so that it could be redacted.

12        Now he didn't see any confidential

13   information because I had specifically asked

14   Mr. Albukerk, who represented you prior, to make sure

15   that any confidential attorney-client information was

16   not included in the file he gave to Mr. Podlasek.  And,

17   as a matter of fact, he did that.

18        THE DEFENDANT:  Judge, unfortunately that

19   information was there.  Unfortunately what -- the last

20   time was just a sample.  There are stacks and stacks of

21   documents that were redacted, some of them entire

22   pages.  There were document, complete subpoena response

23   from Mr. Albukerk that were removed from my case.  And

24   I didn't bring that information today because it is

1    going to be part of the evidence in my Motion to

2    Dismiss.  Because if I bring it today, then the State

3    will use it and then do whatever it want with it.  I am

4    going to put that evidence in my Motion to Dismiss.

5         THE COURT:  Well, let's deal with one thing at a

6    time.  So right now you have filed a Motion to Dismiss

7    the charges as being unconstitutional?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Let's set this down for hearing on

10   your motion.  And then depending on whatever that

11   ruling is, obviously you can file more motions, if you

12   wish.

13        THE DEFENDANT:  Okay.

14        THE COURT:  All right.  Let's go to, since I do

15   want to read this very thoroughly, how is the week of

16   the 13th or 19th of March?

17        THE DEFENDANT:  The 13th is fine for me.

18        MR. PODLASEK:  Judge, I start a trial before Judge

19   Joyce on March 12th.  It should only last about two

20   days.

21        THE COURT:  Let's go the 15th then.

22        THE DEFENDANT:  Okay.  The 15th is a Thursday.

23        THE COURT:  That's a Thursday.

24        THE DEFENDANT:  Okay.

1    THE COURT: All right. We are going to make this

2    then by agreement March 15th.

3    MR. PODLASEK: Yes, your Honor.

4    THE COURT: With for argument on the motion.

5    THE DEFENDANT: And, Judge, sorry if I have to

6    bother you with this issue but I still have an

7    unresolved issue of my passport.

8    THE COURT: The clerk is still looking for your

9    passport.

10    THE DEFENDANT: Yes. Ms. Peggy Anderson, she

11    actually look for my passport here. She also called

12    downtown at the Daley Center. Nobody has my passport.

13    So if Podlasek took it upon himself to charge me,

14    prosecute me, and then he also made sure that all name

15    and information was redacted so there is nobody I can

16    actually call to know where is my passport. So if

17    Mr. Podlasek can call up and call the officer,

18    arresting officer or whoever it was, because I don't

19    have that information.

20    THE COURT: Are there photocopies of your

21    passport?

22    THE DEFENDANT: It is my entire passport. I want

23    the photocopies because I need those.

24    THE COURT: Do we have photocopies?

1      MR. PODLASEK:  I couldn't find any photocopies in
2   the file.
3      THE DEFENDANT:  It is the entire passport.
4      MR. PODLASEK:  There is no reason to copy a
5   passport.  Normally when it is surrendered, it is
6   surrendered to the clerk.
7      THE COURT:  Right.  I mean, when passports are
8   surrendered, and obviously I was not the judge when
9   that occurred, the clerk is supposed to keep the
10  passport in a confidential file.
11     THE DEFENDANT:  Yes.  And Mr. Podlasek came here,
12  on record, asked the judge to have my passport
13  surrendered.  So I didn't even know what happened to my
14  passport.  I knew I had a passport.  And Mr. Podlasek
15  knows that when I was arrested, that passport was in my
16  property.  So where is my passport?  Nobody knows.
17     MR. PODLASEK:  Judge, what I will do is I will
18  call the original arresting officer in the original
19  case out of the suburb where it is located.  I think it
20  is Villa Park.  And I will see if they took any
21  personal material.  But I can't believe --
22     THE COURT:  Ms. Melongo, did you ever surrender
23  your passport in court?  Did you ever surrender your
24  passport in court?

1    THE DEFENDANT:  No.  Mr. Albukerk objected to it,

2    and I asked him to object to it.  He objected.

3    THE COURT:  And was it taken from you when you

4    were arrested?

5    THE DEFENDANT:  Yes.

6    THE COURT:  It is with the police department then.

7    All right.  Mr. Podlasek, check with the police

8    department.

9    MR. PODLASEK:  I will, Judge.  But just, for the

10   record, Mr. Albukerk came on the case well after the

11   passport would have been surrendered.  So I am not

12   quite sure how he could have objected to it.  She has

13   had -- Ms. Melongo has had several attorneys prior to

14   Mr. Albukerk, including the Public Defender's Office.

15   THE DEFENDANT:  Judge, when I was arrested,

16   Mr. Albukerk was my lawyer.  It doesn't matter if I had

17   millions of lawyers before that.  Mr. Albukerk was my

18   lawyer, and he objected.  Mr. Podlasek came, asked

19   Judge Brosnahan, he want my passport surrendered.

20   Mr. Albukerk objected to it.  And then we never heard

21   about a passport.  So when I got out of jail, I asked

22   the property, "Where is my passport?"  Nobody knows

23   where is my passport.

24   THE COURT:  All right.  They are still going to

1    check.  Obviously the police department has not been

2    checked with yet.  And that's going to occur.  And the

3    clerk is going to continue to look as well, so.

4         MR. PODLASEK:  Judge, I would also suggest that we

5    go back to the original case with Judge Schreier

6    because I think that would have been the time that we

7    would have asked for the passport to be surrendered.

8         THE DEFENDANT:  No, Judge.  I was arrested

9    April 14, 2010.  Judge Schreier was back there in 2007.

10   It is when I got arrested in 2010.

11        THE COURT:  That's when they took your passport?

12        THE DEFENDANT:  Yes.  And that's why I wanted all

13   those transcripts.  Judge, you see now, if you had all

14   those transcripts, I will have shown you the line where

15   Mr. Podlasek came in and asked for my passport to be

16   surrendered.  So my passport was in the State's

17   possession in April 14 -- no, April 13, that's when I

18   got arrested, 2010.

19        THE COURT:  Hold on.  Stewart, I am going to ask

20   you to search the half sheet and look for passport

21   being surrendered, and I will order the transcript for

22   that to see what the judge said and where the passport

23   is.  It is going to be by agreement March 15th with for

24   motions.

1          MR. PODLASEK:  Both cases?

2          THE COURT:  Both cases.

3          THE DEFENDANT:  Thank you, Judge.  Happy

4      Valentine's.

5          THE COURT:  Happy Valentine's Day to you, Ms.

6      Melongo.

7                              (Which were all the proceedings

8                               had in the aforementioned cause

9                               this date.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

AAA-11

```
 1    STATE OF ILLINOIS  )
                         )  SS:
 2    COUNTY OF C O O K  )

 3

 4

 5              I, EVALYN M. SULLIVAN, Official Shorthand

 6    Reporter of the Circuit Court of Cook County, Criminal

 7    Division, do hereby certify that I reported in

 8    shorthand the proceedings had in the above-entitled

 9    cause, and that the foregoing is a true and correct

10    transcript of the proceedings had.

11              IN WITNESS WHEREOF, I do hereunto set my hand

12    this 4th day of December, 2012.

13

14

15

16    _____

17    Official Shorthand Reporter
      Circuit Court of Cook County
      Criminal Division
18    License No. 084-002737

19

20

21

22

23

24
```

# EXHIBIT CC

```
 1   STATE OF ILLINOIS      )
                            )  SS:
 2   COUNTY OF C O O K      )

 3      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
     THE PEOPLE OF THE STATE  )
 5   OF ILLINOIS,             )
                              )
 6             Plaintiff,     )
                              )  No.  10 CR 08092-01
 7      vs.                   )
                              )  Charge:  UNAUTHD ACCESS
 8   ANNABEL MELONGO,         )
                              )
 9             Defendant.     )

10             REPORT OF PROCEEDINGS had at the hearing

11   in the above-entitled cause before the HONORABLE

12   STEVEN J. GOEBEL, Judge of said court, on the 4th

13   day of JUNE, 2012.

14      PRESENT:

15          HONORABLE ANITA M. ALVAREZ,
            State's Attorney of Cook County, by:
16          MR. ROBERT PODLASEK,
            Assistant State's Attorney,
17
                appeared on behalf of the People;
18
            MS. ANNABEL MELONGO,
19
                appeared pro se.
20

21

22   DORLISA BRYANT
     OFFICIAL COURT REPORTER
23   CIRCUIT COURT OF COOK COUNTY
     CRIMINAL DIVISION
24   CSR #084-003048
```

```
1          THE CLERK:  Annabel Melongo.

2          MR. PODLASEK:  Good morning, Judge.

3          MS. MELONGO:  Good morning, Judge.

4          THE COURT:  Good morning, Ms. Melongo.

5          MS. MELONGO:  Annabel Melongo.

6          MR. PODLASEK:  Judge, for the record Robert

7     Podlasek, P-O-D-L-A-S-E-K, on behalf of the State.

8          THE COURT:  All right.  We held this case over

9     from last week.  I was engaged in a jury trial and

10    it's for Ms. Melongo's subpoenas.

11         MR. PODLASEK:  Right, Judge.

12         THE COURT:  She has tendered copies of

13    subpoenas to the State, various things she wishes

14    to subpoena so I told her that she must go through

15    the Court.  And Mr. Podlasek, you're in receipt of

16    those?

17         MR. PODLASEK:  I am, Judge, and I've reviewed

18    them.  Some I have no objections to at all.  One

19    thing I would point out is I think all the

20    subpoenaed materials must be returned to you, not

21    to Ms. Melongo.

22         THE COURT:  Correct.

23         MR. PODLASEK:  Regardless of whether they're

24    bank records or otherwise.  So if you want to just
```

1  go through them we can do this pretty quickly.

2      THE COURT:  All right.  How many do you have

3  objections to?

4      MS. MELONGO:  Actually, Your Honor, this is

5  for Shahna Monqe (inaudible).  She's the one that

6  made the forensic computer tape.

7      MR. PODLASEK:  She used to work for the

8  Attorney General's Office.

9      THE COURT:  Who did?

10     MR. PODLASEK:  Shana Monqe.

11     THE COURT:  Can you spell that?

12     MR. PODLASEK:  Monqe; Shahna, S-H-A-H-N-A.

13     THE COURT:  All right.  Your objection to that?

14     MR. PODLASEK:  I just received this.

15     MS. MELONGO:  Judge, I don't even think he can

16  object to it because she's the one who made the

17  report accusing me of accessing the computer, and

18  since she's made that report she vanished, nobody

19  knows where she is.  The State needs to get me her

20  whereabouts.  And that's why I tried to find out if

21  she has a website, so I contacted the website to

22  give me the information but the State is the

23  neglecting to tell me where she is.

24     MR. PODLASEK:  Judge, she used to work for the

PPP-3

1      Cyber Crime Unit for the Attorney General's Office.

2      They did the analysis open this case initially.

3      Anybody from the Cyber Crimes Unit can testify on

4      behalf of the --

5           MS. MELONGO:  Forensic examination performed by

6      her.  She did a forensic examination, she vanished.

7      The Illinois Attorney General isn't agreeing to

8      tell me her whereabouts, the State is unwilling to

9      tell me her whereabouts.  If it wasn't for her

10     computer tampering the case would have never

11     existed.

12          THE COURT:  Mr. Podlasek, do you know where

13     she's at?

14          MR. PODLASEK:  I don't, Judge.

15          THE COURT:  All right.  What I've been tendered

16     is a copy of the report.  Is this her report?

17          MS. MELONGO:  Yes.  I mean, it's part of it.

18     She made like two CD's and then she made a big

19     report.  All of them was just junk and there was

20     no evidence that I actually committed a crime, and

21     once she made that she disappeared, she vanished.

22          THE COURT:  Let me see the subpoena.

23     Ms. Melongo has every right to question her

24     considering she did a forensic report in this

1    matter regardless of of whether or not you intent

2    to call her, Mr. Podlasek.

3         MR. PODLASEK:  Judge, I didn't say we were

4    objecting to this.

5         THE COURT:  Okay.

6         MR. PODLASEK:  I think she has a web site and a

7    business address which is fine.  Asking for

8    residential address I'm not sure.

9         MS. MELONGO:  I mean, it's not that I am --

10   actually I want how she can be contacted so that I

11   can ask her for the actual report.  It's not that I

12   want --

13        THE COURT:  Can you get her here by calling the

14   Attorney General's Office?  I'm sure they must know

15   where she's at.

16        MR. PODLASEK:  I know she's out of state.

17        MS. MELONGO:  Judge --

18        THE COURT:  She's out of state.

19        MS. MELONGO:  Judge, I've already called.

20   Either they are not willing to give me the

21   information or they don't know where she is.

22        MR. PODLASEK:  If you give me that I'll be

23   happy to call the Attorney General's Office to see

24   if we can contact her.  Maybe we can set up some

1    kind of phone conference.

2        THE COURT:  All right.  It seems a little

3    expansive.  I'm going to allow you to find this

4    witness but subpoena the phone records, you don't

5    even know what they are.

6        MS. MELONGO:  Actually I want anything.

7        THE COURT:  Let me see if we can accomplish

8    this without getting all this personal information;

9    otherwise as I stated, Ms. Melongo, you have an

10   actual right to subpoena her in and talk to her

11   considering she made the forensic report in this

12   case.

13       MR. PODLASEK:  For the record the State has

14   no objection to be her contacting this witness.

15       THE COURT:  Or what I'll allow you to do is

16   subpoena the Attorney General's Office to supply

17   her last-known address.

18       MS. MELONGO:  She doesn't work there.  It

19   has been like six years.  She does not work there

20   anymore.  She actually -- I called the Attorney

21   General's Office, they said they don't know where

22   she is.  I've been after her for years.   After she

23   made the report she disappeared.

24       THE COURT:  All right.  I'm going to let

1    Mr. Podlasek try to track her down.  If not I will

2    allow a form of that subpoena to go out for sure so

3    that you can find her.

4        MR. PODLASEk:  Judge, once again, the form of

5    the subpoena should be returned to the court.

6        THE COURT:  All subpoenas have to be returned

7    to the court and not to you, Ms. Melongo.

8        MS. MELONGO:  Yes, everything.  I'm going to

9    have al of the subpoenas returned.  And Judge, last

10   but not least, actually during our last court

11   hearing you gave us the assignment to read the

12   ruling in the Seventh Circuit Court.

13       THE COURT:  I'm not at that yet, so let's just

14   hold off on that for right now.  And I want to deal

15   with the subpoenas matter first.  So what other

16   subpoenas do you have any objection to?

17       MR. PODLASEK:  Carol Spizzirri.  I'm objecting

18   to Paragraphs 8, 9, 10, 11 and 12.

19       THE COURT:  You're okay with all the other

20   paragraphs.  You're objecting to 8, 9, 10, 11 and

21   12.

22       MR. PODLASEK:  10, 11 and 12.

23       MS. MELONGO:  Okay.  Judge, I'm going to tell

24   you why I actually need the information.  This is

1    the transcript the Grand Jury transcript.

2        THE COURT:  Hold on.  First of all, I'm totally

3    unfamiliar with this case.  Can you give me a

4    little background of what's alleged here briefly,

5    Mr. Podlasek.

6        MR. PODLASEK:  Judge, briefly Ms. Melongo's

7    been charged with computer tampering.  She used to

8    work for Carol Spizzirri for Save A Life Foundation

9    which is a not-for-profit foundation.  When she was

10   terminated for her job she entered the computer

11   system from a location, remotely interfered with

12   the files, destroyed some files and made them

13   inaccessible.  She also is charged with tampering

14   with the e-mail of Carol Spizzirri.  These are all

15   Class 4 felonies.

16       THE COURT:  All right.

17       MS. MELONGO:  Judge, can I tell me my version

18   of the -- that's his version.

19       THE COURT:  Well, I just want to know what's

20   alleged.

21       MS. MELONGO:  Oh, okay.

22       THE COURT:  I'm not accepting that it's true by

23   any means, Ms. Molongo.  I just need to know a

24   brief history so I can make an appropriate ruling.

PPP-8

1   You know, you shouldn't say anything as far as the

2   State can hold that against you, okay.

3        MS. MELONGO:  Okay.

4        THE COURT:  I just needed to know what's

5   alleged.  All right.  So 8 reads, "Bills and

6   invoice which related to the hiring of experts for

7   the computer incident that occurred April 28, 2006

8   tl May 12, 2006.

9        MR. PODLASEK:  Judge, in that case there's

10  none.

11       THE COURT:  Was there experts hired?

12       MR. PODLASEK:  There were experts that were

13  brought in but there's no purpose to having bills

14  and everything -- we have no objection to reports.

15  Everything that we have they're no longer entitled

16  to it.

17       MS. MELONGO:  Judge, there is a purpose.

18       THE COURT:  Hold on, hold on.  Had who paid the

19  bills?  Ms. Spizzirri?

20       MR. PODLASEK:  Yes.

21       THE COURT:  All right.  As to Number 8.

22       MS. MELONGO:  Okay.

23       THE COURT:  We're going to take them one at a

24  time.

PPP-9

```
 1          MS. MELONGO:  Actually Spizzirri's version of

 2     the story is because of the incident she actually

 3     paid up to you 200,000 to expert and actually the

 4     company went down because of this incident and

 5     because of what happened.  Actually you can read

 6     this part of the first paragraph.  That's the

 7     report she sent to the Illinois Attorney General.

 8     In fact, none of it actually ever happened, so if

 9     I can prove that what she is saying never happened

10     I also have good basis to win my case in front of a

11     jury.

12          THE COURT:  All right.  And these experts are

13     going to be testifying at trial?

14          MS. MELONGO:  Exactly.

15          THE COURT:  Those will allowed.  All right,

16     let's go to Number 9.  "Copies of checks given to

17     Annabel Melongo for services at Save A Life

18     Foundation."  Are you the talking about your

19     personal paychecks then?

20          MS. MELONGO:  Yes.

21          THE COURT:  All right.  And your objection is

22     what?

23          MR. PODLASEK:  Judge, she's received the

24     checks.
```

1          MS. MELONGO:  No.

2          THE COURT:  But she cashed them so she doesn't

3     have them anymore.

4          MR. PODLASEK:  I don't know if Ms. Spizzirri

5     still has any access to them.

6          THE COURT:  If she has them they will be

7     allowed.  "All documents showing proof of the

8     financial loss of one million due to the computer

9     incident as stated in the May 2008 Grand Jury."

10    All right.  The alleged loss here is?

11         MS. MELONGO:  One million dollars.

12         MR. PODLASEK:  A million dollars in donations,

13    Judge.  What was lost was the donor's list.

14         MS. MELONGO:  No, Judge.  That's not true.  I'm

15    going to show you the indictment.  She said she

16    lost one million dollars because of the incident.

17    Page 9; 9, 9.  "I mean, one million dollars doesn't

18    disappear out of the blue.  If you lost it you have

19    to track it to how it got lost.

20         THE COURT:  This isn't her testimony.

21         MS. MELONGO:  That is the --

22         MR. PODLASEK:  The detective.

23         MS. MELONGO:  -- the detective.

24         THE COURT: The detective.

1    MR. PODLASEK:  She wasn't charged with a one

2    million dollar theft, Judge.

3        MS. MELONGO:  I mean, if you tell the Grand

4    Jury that they lost one million dollars you'd

5    better have proof to show it.  I mean, one million

6    dollars is not like a hundred dollars.

7        THE COURT:  Are you seeking to put in what the

8    financial loss is in your case?

9        MS. MELONGO:  I hadn't thought about it at this

10   point.

11       THE COURT:  I don't know that it would be

12   relevant at this point.  I'm not going allow the

13   state to put in a financial loss because it's not

14   relevant to the charge and so I'm not going to

15   allow you to subpoena documents showing the

16   financial loss of a million.  This is extraneous

17   testimony by a detective in the Grand Jury.  It's

18   not part of the elements of proof as to what you're

19   charged with.

20       MS. MELONGO:  Judge, it is because I'm charged

21   with deleting financial documents.

22       THE COURT:  If it's not an amount in the

23   indictment.

24       MS. MELONGO:  I have the charge here.  I'm

1    charged with deleting the financial documents.

2        THE COURT:  But there's not an amount that the

3    State needs to prove.  It's irrelevant.  I'm not

4    going to allow it in any way.

5        MS. MELONGO:  Okay.

6        THE COURT:  So 10 will have to be stricken.

7        MS. MELONGO:  All right.  11, "All documents

8    including e-mails, personal files and checks for

9    former computer consultant Victor Rodriguez.

10       MS. MELONGO:  Judge, we can remove that one

11   because the movant has subpoenaed, provided

12   information, but the State went and redacted the

13   entire information.  So either the State give me

14   the unredacted information or I subpoena that

15   information.  It's up to the State.

16       THE COURT:  All right.  Do you have that

17   information?

18       MR. PODLASEK:  Judge, it was subpoenaed before

19   by her attorney, but there's no basis for

20   subpoenaing all these former employees, their

21   personal information, their personnel records.

22   This isn't a broad fishing expedition.

23       MS. MELONGO:  Judge, it is a basis because she

24   also accused these individuals to tamper with her

1    computer and then --

2        THE COURT:  Hold on.  What did Victor Rodriguez

3    do relative to this case?

4        MR. PODLASEK:  Nothing in this case, no.

5        THE COURT:  What did he do?

6        MS. MELONGO:  Judge, he was the computer --

7    actually the computer technician at his place, but

8    prior to that Ms. Spizzirri also accused exactly --

9    the thing she's accusing of me of, she also accused

10   him of doing the exact same thing.

11       THE COURT:  She accused Mr. Rodriguez of doing

12   the exact same thing?

13       MS. MELONGO:  Exactly.  And then when Podlasek

14   got that information he redacted because we got the

15   subpoena returned from (inaudible) Technology so he

16   went on and redacted that entire information.

17       THE COURT:  All right.  Well, I will allow you

18   to subpoena is there any accusations relative that

19   Victor Rodriguez committed computer tampering but

20   not all e-mails, personal files and checks.

21       MS. MELONGO:  Okay.

22       THE COURT:  But you can say any and all

23   documents relative to Victor Rodriguez in the

24   nature if he was accused of computer tampering and

1    shows specific dates.  That you can do.

2         MS. MELONGO:  Okay.

3         THE COURT:  12, "All documents including

4    e-mails, personal files and checks to former Save A

5    Life Foundation employee Christian Sacks, SA."

6    Who's that?

7         MR. MELONGO:  Christian Sacks is the one who

8    replaced me and Christian Sacks created like bogus

9    e-mails.

10        THE COURT:  I'm sorry.  Created what?

11        MS. MELONGO:  He kind of created a bogus --

12        THE COURT:  Bogus, okay.

13        MS. MELONGO:  He created a bogus e-mail

14   accusing me of accessing the server of Save a Life

15   Foundation.  So Christian Sacks is actually -- I

16   mean, he's relevant to this case, so I don't know

17   why Mr. Podlasek is objecting to that.

18        THE COURT:  Is Mr. Sacks going to testify?

19        MR. PODLASEK:  I hadn't planned on calling him.

20        MS. MELONGO:  If he doesn't I'm going to call

21   him.

22        THE COURT:  You're going to call him?

23        MS. MELONGO:  Yes.

24        THE COURT:  For what purpose?

1        MS. MELONGO:  To come and tell us why he

2   created a bogus e-mail accusing me of accessing the

3   Save a Life server.

4      THE COURT:  He sent an e-mail to somewhere

5   else?

6        MS. MELONGO:  Yes.  And the State had that E

7   mail, the evidence, the G mail, the G account.

8      THE COURT:  Do you have that E mail?

9      MR. PODLASEK:  We turned everything over.

10  Again information has been tendered to all of her

11  attorneys.

12     MS. MELONGO:  But --

13     THE COURT:  All right.  Hold on.  It's too

14  broad but I'm going to allow you to again to

15  subpoena any documents relative to this case --

16     MS. MELONGO:  Okay.

17     THE COURT:  -- as far whatever Christian Sacks

18  sent to anyone complaining that you created a

19  fictitious or bogus in your words computer scheme

20  or whatever exactly it was.

21     MS. MELONGO:  Okay.

22     THE COURT:  Okay.  But you can't just have any

23  and all E mails, personal files and checks.  That's

24  way too broad.

1    MS. MELONGO:  Okay.

2        THE COURT:  All right.  It has to be related

3    to the case, so I will allow you to do that but

4    you're going to have to change that language, okay?

5        MS. MELONGO:  Yes.

6        THE COURT:  All right.  The next one, State?

7    That concludes all that information.

8            Actually are there any attorneys that need

9    to be in another courtroom right now?  I can pass

10   this matter?  All right.  We're going to pass this

11   briefly, but I want to get some attorneys out of

12   here that need to get to other courtrooms, okay.

13       MS. MELONGO:  Okay.

14       THE COURT:  Have a seat, Ms. Melongo and

15   Mr. Podlasek, and we will re-call this matter

16   shortly.

17                    (Above-entitled case was passed and

18                     later re-called.)

19       THE CLERK:  Re-call Annabel Melongo.

20       THE COURT:  Okay.  Let's move on to the next

21   thing.

22       MR. PODLASEK:  Theresa Harris of the Attorney

23   General's Office Charitable Trust Division.  She's

24   asking for any investigation files regarding Save a

```
1    Life Foundation.  There's been no charges brought

2    against Save a Life Foundation.  They haven't been

3    indicted.  Spizzirri hasn't been indicted.

4         MS. MELONGO:  Judge.

5         MR. PODLASEK:  Judge, we might as well do Mike

6    Hood from the Attorney General's Office.  It's the

7    same subpoena just to the Criminal Division.

8         THE COURT:  What was Ms. Theresa Harris' role

9    in the investigation of the case?

10        MR. PODLASEK:  Huh?

11        MS. MELONGO:  Okay.

12        THE COURT:  Go ahead, Ms. Melongo.

13        MS. MELONGO:  Judge, actually those subpoenas

14   should actually have never been issued, but the

15   reason I issued --

16        THE COURT:  Hopefully you haven't issued them

17   yet.

18        MS. MELONGO:  Yes.  Mr. Albukerk issued the

19   exact same subpoena.

20        THE COURT:  Hold on, hold.  You have not sent

21   the subpoenas out.

22        MS. MELONGO:  No?

23        THE COURT:  Okay.

24        MS. MELONGO:  Anyway, Mr. Albukerk issued those
```

```
 1    subpoenas to Theresa and to Michael Hood and when

 2    the State got my file he actually went on he and

 3    removed that information from my file.  I can show

 4    you the subpoena.  And then there were actually --

 5    I have the other subpoena here and I'm going to

 6    send you the only thing I have.  The State removed

 7    everything and that's why I'm reissuing the

 8    subpoena.  I mean, the State should not have

 9    removed those.  I have the one from Theresa

10    somewhere.

11          THE COURT:  All right.  Ms. Melongo, are you

12    alleging in these subpoenas or do you have

13    information that Save a Life Foundation is being

14    investigated criminally by the Attorney General's

15    Office?

16          MS. MELONGO:  Of course, Judge.

17          THE COURT:  What do you have as a basis?

18          MS. MELONGO:  I showed you the proof.  Judge,

19    this is an exchange of correspondence between like

20    Senator Bill Bivens.  Bivens is a State senator

21    asking why the investigation has been pending for

22    two years.  And this is a response from Lisa

23    Madigan's office.

24          THE COURT:  All right.  Ms. Melongo has
```

1    tendered me documents from Senator Bivens to

2    Attorney General Lisa Madigan and there is a

3    response back from Chief Deputy Attorney General

4    confirming that there was an investigation on March

5    2, 2012 in saying it's ongoing, Safe a Life

6    Foundation and Ms. Spizzirri.  What's your

7    response?

8         MR. PODLASEK:  It's an ongoing investigation,

9    Judge.

10        MS. MELONGO:  It's ongoing then the

11   investigation can help my case.

12        MR. PODLASEK:  Judge --

13        MS. MELONGO:  I don't see why --

14        THE COURT:  Hold on.  One at a time.

15        MR. PODLASEK:  Ms. Melongo's not entitled to

16   law enforcement documents on ongoing

17   investigations, simple as that.  Of the Attorney

18   General wants to come in here and make those public

19   on their own, that's fine.

20        MS. MELONGO:  Judge, the investigation is

21   about my case too.  You can read the first

22   paragraph of this.  The investigation is about my

23   case.  It's not that it has to do with law

24   enforcement or something.  It is Spizzirri sending

1  some information to the Illinois Attorney General

2  but later she received from them --

3     THE COURT:  I'm going to allow Ms. Melongo to

4  subpoena any and all documents --

5     MS. MELONGO:  Thank you, Judge.

6     THE COURT:  -- as it relates to this case from

7  the Attorney General because she has just tendered

8  me a letter from an Assistant Attorney General

9  Barry Goldberg mentioning Ms. Melongo's name and it

10  indicates other people were trying to break into

11  the SALF network, the Save a Life Foundation I

12  assume.

13     MR. PODLASEK:  Yes.

14     THE COURT:  And it does, in fact, relate to

15  Ms. Melongo's case.  However, those records will

16  have to be viewed by me.

17     MS. MELONGO:  Okay.

18     THE COURT:  And I will determine what, if any,

19  records will be tendered.

20     MS. MELONGO:  Okay.

21     THE COURT:  So she may send that subpoena.

22  Ms. Melongo, you have to address it as it relates

23  to you as well, okay.

24     MS. MELONGO:  Okay.  Thank you.

```
 1          THE COURT:  What else?

 2          MR. PODLASEK:  Judge, there's numerous

 3     subpoenas sent out to various banks.  I'm going to

 4     address them.  They're all the same is.  TCF Bank

 5     is asking for all financial records of Save a Life

 6     Foundation from 2005 to 2009; J.P. Morgan Chase,

 7     the same subpoena; American Express, the same

 8     subpoena; 5th Third Bank is actually asking for

 9     bank records for companies called Carerra

10     Management Corporation/Windsor Management

11     Corporation.

12          MS. MELONGO:  Judge, I'm going to explain that

13     one.

14          THE COURT:  I'm sorry.  You're going to

15     withdraw that one did you say?

16          MS. MELONGO:  No, I'm going to explain that

17     one.

18          MR. PODLASEK:  As far as the bank records,

19     Judge, there's no relevance to Ms. Melongo's cases

20     her need for American Express records or the bank

21     records from Save a Life Foundation.

22          THE COURT:  All right.

23          MR. PODLASEK:  Particularly for the entire

24     time period that --
```

PPP-22

```
 1          THE COURT:  All the subpoenas are the same for

 2     all the banks in that they say the account

 3     information for Save a Life Foundation in the time

 4     frame 2005 to 2009.  The information should include

 5     but not limited to the account information, opening

 6     and closing documents, transactions and financial

 7     statements.  Why do you need that?

 8          MS. MELONGO:  Okay, Judge.  Carol Spizziri

 9     starting with the incident actually I caused the

10     downfall of her organization and then she lost

11     money and because of the incident she couldn't have

12     donations anymore, everything just went belly-up

13     because of me.  So in my reasoning if I can get the

14     bank records and show that it was business as

15     usual, that had they still got some donations that

16     nothing actually was missing in the day-to-day

17     business of the the organization, then I have a

18     point to win my case.

19          THE COURT:  All right.  I'm looking at the

20     indictment again and you're not charged with having

21     Safe a Life Foundation go under so to speak or go

22     defunct.  You're charged with accessing their

23     computer data server located int Schiller Park,

24     Illinois and permanently deleting, removing or
```

1     altering hundreds of computer files although it

2     does say critical to Save a Life Foundation, Inc.'s

3     operations; in the process permanently destroyed

4     the computer.

5          MS. MELONGO:  Judge, the indictment stated the

6     donation was stopped because of the incident in the

7     indictment.  I can show you the page where it said

8     they lost donation because of the incident.  Like

9     Page 3 of the indictment, Line 3.  So if I can have

10    the bank documents and show that a donation was

11    received going to the organization and then nothing

12    happened to the organization because of the

13    incident if the incident it was, then I have a

14    point for my case.

15         THE COURT:  How are you going put this in,

16    financial information or that Save a Life

17    Foundation went under as a result?

18         MR. PODLASEK:  Save a Life Foundation, I

19    believe the time frames for the computer tamperings

20    ended in 2006.

21         THE COURT:  It says on or about May 1, 2006.

22    I'm sorry.  From on or about May 28, 2006

23    continuing to on or about May 1, 2006.

24         MR. PODLASEK:  So it's that short time period

     1     that the computer tampering took place.

     2          MS. MELONGO:  But the damage actually -- like

     3     she said, the donations was stopped.  I mean, the

     4     reason I wanted 2005 is to compare -- you can only

     5     compare if you have data from the previous year, so

     6     if I can see that the organization was flourishing

     7     in 2005 and because of the incident things started

     8     declining from 2006 to its closing, then maybe the

     9     State would have a case it happened because of the

    10     incident, but I need the 2005 just to compare the

    11     donations and everything.

    12          THE COURT:  All right.  Well, Ms. Melongo, I'm

    13     not going to allow the State to get into the

    14     results if they can even show that you did these

    15     actual things or took these action that these

    16     actions were caused by you.  They're not going to

    17     get into whether or not Save a Life Foundation went

    18     defunct because of what the allegations are against

    19     you.  We're not going to get into all Save a Life

    20     Foundations's history of donations.  Are they still

    21     in existence?

    22          MR. PODLASEK:  No.

    23          MS. MELONGO:  They shut because of me.

    24          THE COURT:  All right.  I'm going to deny these

1    subpoenas.  That's not an issue at trial, okay.  So

2    these subpoenas are denied.

3         MR. PODLASEK:  Judge, there's a subpoena to

4    Anderson Hospital asking for all documentation of

5    donations to Save a Life Foundation from Anderson

6    Hospital I think again from the period of 2005 to

7    2009.

8         MS. MELONGO:  Okay.

9         THE COURT:  How is Anderson Hospital relevant

10   to this case?

11        MS. MELONGO:  Save a Life has kind of

12   satellite.  Like the headquarters was in Schiller

13   Park and then they have offices all over the state.

14   Anderson was one of those satellites.  So the

15   reason I want the documents because if something

16   really happened then they should have E mails that

17   prove that, oh, we cannot contact you because we

18   don't have the documents and all those kind of

19   things because in the indictment they say they

20   couldn't have access to their -- they say they lost

21   all the important documents and everything.  So all

22   that would reflect in the conversation in the E

23   mail or the documents they have from Save a Life

24   and that's why I need those documents.  Anderson

```
 1    was kind of the satellite of Safe a Life

 2    Foundation.

 3         THE COURT:  What do you mean they were a

 4    satellite?

 5         MS. MELONGO:  They had an office there.

 6    Actually Save a Life Foundation has an office.  It

 7    was not the entire hospital.

 8         THE COURT:  At the hospital?

 9         MS. MELONGO:  Yes.  They had an office at the

10    hospital and actually I only subpoena that office.

11    I don't subpoena medical stuff, I just subpoena the

12    E mail and the documents and everything.

13         THE COURT:  All right.  I'm going to allow you

14    to subpoena any records they may have as it relates

15    to you in this case for this time period.

16         MS. MELONGO:  Okay.

17         THE COURT:  So you're going to have to change

18    the wording.  Your wording says all communications

19    between Anderson Hospital and Safe a Life

20    Foundation from 2005 to the closing of the

21    foundation in 2009.  That's way overbroad and I'm

22    not going allow any and all communications.  Only

23    as it relates to you as it relates to this computer

24    tampering case that you're charged with but not any
```

1    and all communications between Save a Life and

2    Anderson Hospital and definitely not medical

3    records, if any.

4        MS. MELONGO:  No.

5        MR. PODLASEK:  Judge, there's four individuals

6    that have been subpoenaed:  Brian Salerno, Vincent

7    Davis, Dane Neal and Cary Viehweg, V-I-E-H-W-E-G.

8    All of them request the same information.  It's

9    Paragraph 2 that I'm objecting to.

10       THE COURT:  Okay.

11       MR. PODLASEK:  Again Ms. Melongo is asking for

12   all information regarding the history of Save a

13   Life Foundation from 2005 to 2009.

14       THE COURT:  First of all, who are these

15   individuals?

16       MS. MELONGO:  Okay.  Judge, like I said, those

17   subpoenas again should not have been re-subpoenaed

18   because Mr. Albekerk already sent those subpoenas

19   out and then they responded but once the State got

20   my --

21       THE COURT:  No one responded did you say?

22       MS. MELONGO:  They responded.  So when

23   Mr. Podlasek got my file, I have all the subpoenas

24   here, when Mr. Podlasek got my file he went on and

1   removed the documents and that's why I'm re-issuing

2   the subpoena.  And those were actually -- those

3   were all managers at Save a Life Foundation.  Some

4   of them are in the police reports, that is Schiller

5   Park police issued, so that's why I'm asking them

6   for any information they have in connection to the

7   incident.

8        THE COURT:  All right.  Mr. Podlasek.

9        MR. PODLASEK:  Judge, the incident took place

10  in a very narrow time frame.  That's the Stat's

11  focus in this case.  2006 is the only operative

12  time frame in this case.  It's not 2009, 2008,

13  2007.

14       THE COURT:  So you have no objection to the

15  subpoena, just to the broad nature?

16       MR. PODLASEK:  Broad nature of it again,

17  Judge.

18       THE COURT: Okay.

19       MS. MELONGO:  Judge, actually I don't know why

20  he's talking about the broad nature.  Those are the

21  subpoenas Albekerk issued.

22       THE COURT:  I know, but they are overbroad,

23  Ms. Melongo.  For the record, Paragraph 2 says "All

24  communications still in your possession regarding

1    Save a Life Foundation from 2005 to the closing of

2    the foundation in 2009.  Communications should

3    include but not limited to memos, E mails, letters

4    papers or digital faxes, conversations, notes and

5    that's it.

6         MS. MELONGO:  Judge.

7         THE COURT:  Go ahead.

8         MS. MELONGO:  Actually those subpoenas were the

9    exact same copy of the ones Mr. Albekerk issued.

10   And what I find surprising is when Mr. Albekerk

11   issued a subpoena Mr. Podlasek didn't object to

12   those subpoenas but now when I'm issuing the

13   subpoena he comes and objects to it.  Those are

14   exactly -- you can take this subpoena word for

15   word.  I made the exact same copy.

16        THE COURT:  All right.  We're not going to

17   compare apples and oranges because Mr. Podlasek may

18   not have known that.  But I am going to allow you

19   to subpoena these individuals but for records as

20   they relate to you, not any and all records

21   regarding Save a Life Foundation.

22        MS. MELONGO:  Okay

23        THE COURT:  Okay.  So as it relates to you, if

24   they have any information in their possession and

1    as it relates to this case.

2         MS. MELONGO:  Okay.

3         THE COURT:  Okay.  So you will be allowed to

4    subpoena those individuals but not in that fashion.

5    Mr. Albekerk's subpoena was overbroad as well.

6         MR. PODLASEK:  That's it, Judge.  The other

7    ones we have no objection to.

8         THE COURT:  All right.  The State has no

9    objection to the other subpoenas so you may send

10   out the other subpoenas.

11        MS. MELONGO:  Okay.

12        THE COURT:  All right.  The corrected ones, I

13   would like to see them before you send those out.

14   So what's a good date for that?

15        MS. MELONGO:  Actually, generally I need a lot

16   of time.  I'm going to need like maybe a month.

17        THE COURT:  All right.  You can send any of the

18   one s we've gone over in court and I've corrected.

19   I want to see those before you send them out.  Any

20   of the ones that Mr. Podlasek does not have an

21   objection to you can send out immediately.

22        MR. PODLASEK:  Judge, the only objection, I

23   should rephrase that, is that they have to be

24   corrected to make sure that the material is

1    returned to Your Honor.

2        THE COURT:  Right.  That's why I want to see

3    them.

4        MR. PODLASEK:  And drafted properly.

5        THE COURT:  All right.  Actually that's

6    probably a good idea.  For all subpoenas I am going

7    to revise this and I want to see all of them before

8    they go out, all right, just to make sure they're

9    in proper form.  What's a good date for that?  So

10   Ms. Melongo, do not send out any subpoenas until I

11   have looked at them all, okay.

12       ME. MELONGO:  Well, Judge, I think we're  not

13   done yet.  We still have the eavesdropping case and

14   then during our last assignment you asked us to

15   review an eavesdropping case.  We should have

16   another case going on.

17       THE COURT:  Correct.  State, are you still --

18   have you changed your election or are you still

19   going on the --

20       MR. PODLASEK:  Judge, we would still be going

21   on the eavesdropping case.  We haven't finished

22   reviewing the case that came down.

23       MS. MELONGO:  Judge, may I?  During our last

24   hearing you give us an assignment.  It was actually

1   an assignment, it's almost like a month ago.  You

2   gave us an assignment to review the 7th Circuit --

3   the 7th Circuit Court of Appeal ruling in the ACLU

4   v. Alvarez case, and everything that was said in

5   that ruling maintained the fact that my case should

6   be dismissed.  In fact, the State in responding to

7   my motion to dismiss --

8        THE COURT:  Hold on, Ms. Melongo.  I know

9   you're arguing it.  I'm going to give both sides an

10  opportunity to re-argue Ms. Melongo's motion to

11  declare the eavesdropping statute unconstitutional

12  in light of the case that I told both parties about

13  and asked them to re-read.

14       MS. MELONGO:  Judge, we're --

15       THE COURT:  We're not going to do that today.

16  We're going hold this over.  We're going to hold it

17  to the same date as your subpoenas and I'm going to

18  rule on that date.  But I'm going to allow both

19  side to prepare to argue the effect of that case on

20  this case.

21       MS. MELONGO:  Judge, I ironed everything out

22  and I to file it today.  Actually I have everything

23  printed out and everything.

24       THE COURT:  You May file it.

1       MS. MELONGO:  If you can file it.

2       THE COURT:  Stuart.

3       MS. MELONGO:  If you can make a copy and give

4   me another copy.

5       THE COURT:  Is that all one document?

6       MS. MELONGO:  Yes.

7       MS. MELONGO:  Just give us a week.

8       THE COURT:  You'll have all your subpoenas in

9   ready in a week?

10      MS. MELONGO:  (Nodding.)

11      THE COURT:  Okay.

12      MR. PODLASEK:  What about the 19th of June,

13  Judge?

14      MS. MELONGO:  The 19th is a week away.  What

15  about next week?

16      MR. PODLASEK:  Judge, I have a full schedule

17  next week.

18      THE COURT:  Actually I was tied up too,

19  Ms. Melongo.  I was looking at the 14th and the

20  19th would also work.

21      MS. MELONGO:  Judge, let's do it this week.  I

22  can have my subpoena ready even today.  If we can

23  come back tomorrow or --

24      THE COURT:  I understand.  I'm to give

1    Mr. Podlasek time.  This is going to be the last

2    time we argue it whatever date we set.

3         MR. PODLASEK:  Set it for the 19th or 20th.

4         THE COURT:  How is the 19th?

5         MS. MELONGO:  Judge, actually I should not

6    continue by agreement anymore I already asked for

7    time.  So it has to be continued by order of court.

8         THE COURT:  I understand, but you have a motion

9    to dismiss pending and the term won't run anyway

10   because whenever a defendant has a motion on file

11   the term is not running against the State, so it

12   really does not matter how it goes.

13        MS. MELONGO:  Okay.  Let's put it for the 19th

14   then.

15        THE COURT:  He said he's not available the

16   14th, so we're going to set this then by agreement

17   to June 19th.

18        MS. MELONGO:  Judge --

19        THE COURT:  And it will be for argument and

20   ruling on that date.  And please have your

21   subpoenas ready.

22        MS. MELONGO:  Thank you.

23        THE COURT:  And Ms. Melongo, if you can just

24   have a seat then.  Stuart, my clerk is making

1    copies.

2        MR. PODLASEK:  As well as for us too.

3        THE COURT:  And you too.

4        MS. MELONGO:  No, Judge.  He has to do his own

5    research.

6        THE COURT:  Whenever you file something in

7    court it's public.  Mr. Podlasek is entitled to a

8    copy just as you are if you file something.  That's

9    the way it works.

10       MS. MELONGO:  Thank you, Judge.

11                    (Which were all the proceedings had

12                    in the above-entitled cause.)

13

14

15

16

17

18

19

20

21

22

23

24

```
 1     STATE OF ILLINOIS      )
                              ) SS
 2     COUNTY OF C O O K      )

 3

 4              I, Dorlisa Bryant, an Official Court

 5     Reporter for the Circuit Court of Cook County,

 6     County Department-Criminal Division, do hereby

 7     certify that I reported in shorthand the evidence

 8     had at the above-entitled cause and that the

 9     foregoing is a  true and accurate transcript of the

10     evidence heard before the Honorable STEVEN J.

11     GOEBEL, Judge of said court.

12

13

14              _____

15              DORLISA BRYANT
                Official Court Reporter
16              #084-003048

17

18     Dated this 15th day

19     of NOVEMBER, 2012.

20

21

22

23

24
```

PPP-37

# E X H I B I T   DD

0300                                                          (Rev. 5/28/09) CCCR 0066 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS

v.                                              No. 08CR10502

Annabel K. Melongo

**F I L E D**
JUDGE STEVEN J. GOEBEL-1954

AUG 2 8 2012

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

~~SUBPOENA~~ - SUBPOENA DUCES TECUM

The People of the State of Illinois to all Peace Officers in the State - GREETING:

WE COMMAND THAT YOU SUMMON  Cook County Sheriff Police

1401 S. Maybrook Drive

Maywood, Illinois 60153

to appear to testify before the Honorable  Judge Steven J. Goebel

on August 28 , 2012  in Room 101 , Circuit Court, 26th Street and

California Avenue , Chicago, Illinois, at 9.00 am  m.

YOU ARE COMMANDED ALSO to bring the following:  SEE ATTACHED RIDER

***************** COPIES WILL SUFFICE IN LIEU OF APPEARANCE *****************************

in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISH-
MENT FOR CONTEMPT OF THIS COURT.

Atty. No.: 99500                              Issued by: _Dorothy Brown_
                                                              Signature
Name: Annabel K. Melongo

Atty. for: Pro Se                             ☐ Attorney
                                              ☑ Clerk of Court
Address: P.O BOX 5658

City/State/Zip: Chicago, IL 60680            Date: _July 27, 2012_

Telephone: 312-415-6632

NON-APPLICABLE - Strike out Title which does not apply - Subpoena or Subpoena Duces Tecum.

(OVER)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| State Of Illinois, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10CR0809201 / 08CR10502 |
| | ) | |
| v. | ) | Judge Steven J. Goebel |
| | ) | |
| Annabel K. Melongo | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## Subpoena Duces Tecum

**To:** Cook County Sheriff Police
Attn: Subpoena Processing
1401 S. Maybrook Drive
Maywood, Illinois 60153


*************     COPIES WILL SUFFICE IN LIEU OF APPEARANCE     **********************


**YOU ARE COMMANDED** also to bring the following documents:

1. All documents regarding the arrest of Annabel K. Melongo on April 13th, 2010 by Officer Rubino #5043 and James Dillon #1068. The documents should include, but not limited to, memos, emails, letters paper(s) or digital, faxes, conversations notes, police reports and supplemental reports.

2. An affidavit stating that the production is complete and in accordance with the requests herein.


*************     COPIES WILL SUFFICE IN LIEU OF APPEARANCE     **********************


**YOUR FAILURE TO RESPOND TO THIS SUBPOENA WILL SUBJECT YOU TO**
**PUNISHMENT FOR CONTEMPT OF THIS COURT**

(Rev. 5/28/09) CCCR 0066 B

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

MAYWOOD IL 60153

| | | | |
|---|---|---|---|
| Postage | $ | $0.45 | 0804 |
| Certified Fee | | $2.95 | 79 |
| Return Receipt Fee (Endorsement Required) | | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $3.40 | 07/27/2012 |

Sent To
Cook County Sheriff Police
Street, Apt. No.; or PO Box No. 1401 S. Maybrook Drive
City, State, ZIP+4 Maywood, IL 60153

PS Form 3800, August 2006          See Reverse for Instructions

7011 2970 0001 8648 3092

---

**SERVICE:**

I served this ~~Subpoena or~~ Subpoena Duces Tecum by ~~handing~~ mailing a copy to _____

_____ Cook County Sheriff Police ( see above receipt ) _____

_____.

On ___July 27th___, ___2012___ I paid the witness

$ _____

for witness and mileage fees.


Annabel Metoyes

**Signed and sworn to before me**

_____, _____

_____
          **Notary Public**