# EXHIBIT N

# Schiller Park Police Department

| | | |
|---|---|---|
| 1. DATE/TIME OF REPORT: 30 Oct 06/1530 | 2. DATE/TIME OF ORIGINAL REPORT: 5 May 06/0947 | 3. CASE NUMBER 06-3219 |
| 4. ORIGINAL OFFENSE OR INCIDENT: Computer Tampering | 5. CLASSIFICATION: Felony | 6. OFFENSE CHANGED TO: Same |
| 7. VICTIMS NAME: Save-A-Life Foundation | 8. VICTIMS ADDRESS: 9950 Lawrence Av. #300 SP | 9. PHONE (HOME) 847-928-9683  (WORK) |
| 10. DEFENDANTS NAME: Melongo, Annabel K. | 11. DEFENDANTS ADDRESS: 1218 Long Valley Dr. | 12. PHONE (HOME) 630-220-4132 (WORK) Unk |
| 13. IF ARREST MADE  PHOTO ☐  PRINTS ☐ | COURT DATE/LOCATION | |
| 14. PROPERTY RECOVERED | 15. AMOUNT | 16. LEADS NUMBER |
| 17. CLEARED | 18. RADIO OPERATOR | 19. DATE AND TIME |
| 20. STATUS  CLEARED ☒  UNFOUNDED ☐  ADMIN CLEARED ☐  FAIL TO PROSECUTE ☐  FURTHER ACTION YES ☐ NO ☒ | | |

21. NARRATIVE — Record here all developments in the case subsequent to the submission of the last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. If offense classification is changed, explain why. Indicate clearly disposition of property recovered and show property inventory number if in police possession.

**Investigative Follow Up Report**

5 May 06- R/I was assigned the initial case report 06-3219 reporting an incident of Computer Tampering. R/I received copies of the emails that had been sent to and from Carol Spizzirri's email account. The headers on the emails showed that the offender had forwarded the suspected emails from Ms. Spizzirri's account to the Yahoo email account of melongo_annabel@yahoo.com. R/I then contacted Yahoo Subpoena Compliance Department and left them a message to contact R/I in reference to this investigation.

8 May 06- R/I received a message from Michelle at Yahoo Legal Department, who advised R/I to fax a preservation letter to Yahoo asking for a snapshot of the Yahoo account at the time the fax was received and to advised them that a subpoena will be forthcoming.

9 May 06- Det. Henn, #22, faxed the preservation letter to Yahoo asking Yahoo to preserve the account records of melongo_annabel@yahoo.com and take a snapshot of the account for the last thirty days and all days that follow until they receive the subpoena.

15 May 06- R/I spoke with Comcast Cable Services Legal department about how to obtain the necessary account information related to the IP address that was found in the header of the emails that were forwarded to the Yahoo account in question and was assigned to the offender's computer at the time of the intrusion to Save-A-Life's computer. R/I was advised that R/I would need to fax them a preservation letter also and then a subpoena to follow in order for Comcast to release any information to R/I.

16 May 06- R/I and Lt. Schulze, #30, met with Kyle French of the Illinois Attorney General's Office in reference to this investigation. Mr. French advised that he was available to assist with the investigation and had already sent preservation requests to Yahoo, Comcast, and Roosevelt University. Mr. French, after searching the Internet found that the suspect, Ms. Annabel Melongo, was currently a student at Roosevelt University and that she had an email account issued to her by the University. Mr. French felt that it may be necessary for R/I to send another preservation letter to Comcast. Therefore, R/I prepared the letter and faxed it to Comcast.

    R/I and Lt. Schulze went to the listed address for Ms. Melongo, 1218 East Long Valley Dr. Apt. #3A, in Palatine, IL. Ms. Melongo's name was on the mailbox but her vehicle was not in its assigned parking space.

17 May 06- R/I and Lt. Schulze met with Robert Barnes and Vincent Davis of Save-A-Life

| Name (signature) | Star 29 | Date/Time 30 Oct 06/1530 |
|---|---|---|

Schiller Park Police 2000    Case 06-3219    Page 1

PLAINTIFF'S DEPOSITION EXHIBIT MARTIN 3  5-8-8  mr

SCHILLERPARK0009

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER     MELONGO_005215

Foundation (SALF). Both men were able to give R/I more information about Save-A-Life and there computer system. Mr. Barnes informed R/I that the times noted on the server logs are local times and that the system has automatic daylight savings time adjustment. Mr. Barnes also gave R/I more information on the suspect, Ms. Melongo. Mr. Barnes stated that Ms. Melongo had no prior knowledge that she was being fired on 27 Apr 06. Once her employment was terminated, Ms. Melongo had no further access to the computers from within the building and that an employee named Christian changed all of the pass codes to each of the servers after she left the building. Mr. Barnes stated he had no knowledge of Ms. Melongo having any other email accounts other that the yahoo mail account, but stated that she does have a laptop that she uses from time to time. Mr. Barnes also stated that he knew the suspect was a student at Roosevelt University. Mr. Barnes also believed the intrusion to the computer system occurred somehow through the web via the company's email server but he was unsure as to how this may have occurred because the company disconnected the DSL lines from the servers after the suspect's employment was terminated. Mr. Barnes advised R/I that the computer system's auto backup program was scheduled to begin at 0325 hours and may have kicked the suspect out of the server at that time.

　　Mr. Davis stated that only four employees at SALF knew about the trial that SALF is currently involved in with Robert Half and that the suspect was not one of them that he knew of. Mr. Davis believed the suspect had been monitoring SALF management's email for some time. Mr. Davis also gave R/I the name of the person who they called to repair the server on 1 May 06, Critical Technology Solutions.

　　R/I returned to SPPD and called Critical Technology Solutions and spoke with Don Peters, the president of the company. Mr. Peters stated that on 1 May 06, he was contracted by SALF to attempt to perform data recovery procedures on SALF's two computer servers. Mr. Peters advised R/I that he was told by Ms. Spizzirri that multiple personnel attempted recovery on the drives prior to him being contacted. Mr. Peters advised her that any evidence discovery would be questionable due to there being no clear chain of custody. Mr. Spizzirri's decision was to move forward with the recovery efforts when it was learned that the previous backups were incomplete or missing. R/I asked if Mr. Peters would fax R/I the letter he sent to Ms. Spizzirri, advising her of his recovery findings. Mr. Peters also sent an email to R/I, documenting the conversation he had with Ms. Spizzirri and her employees about the recovery vs. evidence preservation.

　　R/I then contacted Roosevelt University. R/I spoke with the CIO of the University, who advised R/I that the suspect is a student there and that she does have an email account, amelongo@roosevelt.edu. He did state that he could not provide R/I with any other information about their email system.

　　R/I then contact Web HSP in Colorado, the web host for SALF's email server. R/I was advised to speak to Mike, the owner of the company. Mike informed R/I that the company should have the IP addresses of any computer accessing his company's servers and that he would send R/I the information collected for the dates of the intrusions.

18 May 06- R/I received the fax from Mr. Peters, which was a copy of the recovery overview that he sent to Ms. Spizzirri on 11 May 06. The overview showed the amount of files recovered from the Dell server and described the reasons for the inability to recover any files from the Sony server.

At 1700 hrs., R/I was contacted by Ms. Spizzirri who stated that she was informed about some unauthorized charges on the company's American Express account. Ms. Spizzirri advised R/I that SALF's bank account and credit card account information was contained on the server prior to the

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER　　MELONGO_005216

intrusion. R/I then sent a patrol officer to SALF to take the report from Ms. Spizzirri. Refer to report #06-3714.

19 May 06- R/I received a copy of the report made by Ms. Spizzirri on 18 May 06. R/I then contacted American Express Fraud Department. R/I spoke with Bob Curran who stated he would fax R/I a copy of the account activity for the dates of 13 May 06 to 18 May 06.

R/I then contacted EBay's Fraud Investigation Team about the charge to the SALF AmEx account. R/I was advised that Ms. Melongo did have an account with them but there have been no purchases over $14 made on the account.

    R/I then sent an email to Amazon.com's Fraud Department asking for information about the transaction that occurred on 18 May 06 involving SALF's AmEx account. R/I was later faxed a copy of the transaction record which showed all of the information the offender had to enter in order to complete the transaction, along with the list of items the offender attempted to purchase from Amazon.com.

    R/I then attempted to contact all of the merchants listed on the AmEx account activity statement that R/I received from Mr. Curran. R/I was able to reach a customer service representative at Eastbay Inc. The representative, Amanda, advised R/I that she had no record of any transactions involving SALF's account number dating back to 2003. R/I then called and spoke to Tasha at Old Navy's customer research department. Tasha was able to provide R/I with the ship to name and address of Toni Smith, 700 Cynthia Ln., Glendale Heights, IL, and a phone number of 630-369-5489. The bill to name was Carol Spizzirri with a phone number of 847-829-2968. Tasha stated that the offender purchased 13 items that were expedited via Fed Ex and according to Old Navy's records; the package was left at the door for pickup and not signed for. Tasha further stated that four of the items purchased were gift cards that for some unknown reason, were never activated by the shipper and will never be able to be activated. Tasha stated that if R/I needed more information about the transaction, R/I would have to fax a subpoena to the charge back department of Old Navy.

    R/I then contacted United Airlines, but got no answer at their fraud department. R/I then attempted to contact Triple Crown Publishing, Gift Certificates Center, E-Fashion Consultants, Bakers Footwear, and Carson Pirie Scott in reference to the fraudulent transactions. R/I was only able to leave messages with these merchants.

R/I then contacted Ms. Spizzirri and asked if she knew a Toni Smith in Glendale Heights, which she did not, and whether or not she recognized any of the phone numbers that were associated with the fraudulent transactions.

22 May 06- R/I spoke with Susan Bostick of Bakers Shoes about the fraudulent transaction that had occurred online on 17 May 06 at 18:38:05 PDT on their website. Ms. Bostick stated she would fax R/I a copy of the order detail form showing the items purchased along with billing and shipping information. Ms. Bostick also advised R/I that the shipment had not yet been shipped to the customer because her fraud department flagged the order as possibly being fraudulent. R/I then asked for her not to ship the items so that R/I could contact Fed Ex in an attempt to set up a controlled delivery. Ms. Bostick stated that she would have to speak to her superiors before she could authorize the use of the merchandise for the delivery.

    R/I then called Consumerinfo.com's customer service department and spoke with a representative named Rose. Rose advised R/I that the $1 charge on the SALF AmEx account was a

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    MELONGO_005217

preauthorization charge and the $5 charge was for a credit score for a particular individual. Rose claimed she could not give R/I any further information but she could give it to the customer (i.e. SALF), without a subpoena. R/I then left a message for Ms. Spizzirri requesting that she contact Consumer Info asking for any and all information that was disseminated to the offender.

R/I again left messages with the other merchants requesting they contact R/I in reference to the fraudulent charges involving SALF's AmEx account. R/I, using various databases, was able to research the address of 700 Cynthia Ln. in Glendale Heights, along with the phone numbers given to Amazon and Bakers Shoes as contact numbers and the name Toni Smith. R/I found no connection to SALF at that time.

23 May 06- R/I received an email from Mr. French that contained the Grand Jury Subpoena request for Comcast and Yahoo.com. R/I then converted the files onto the proper forms and printed them out so that R/I could fax them to the state's attorney's office to be processed for court on 25 May 06.

25 May 06- R/I spoke with Brian Henry, an investigator for Experian Credit Bureau. Mr. Henry stated he was contacting R/I on behalf of Ms. Spizzirri, who had contacted Experian in reference to the charge to Consumer Info, which is owned by Experian. Mr. Henry explained the charges to R/I and the reasons for the two different amounts. Mr. Henry also gave R/I the name of the person whose credit score was purchased. Mr. Henry gave R/I the name of Saquan Gholar and advised R/I that the subject lives in Illinois. Mr. Henry could not give R/I any further information without a subpoena. Mr. Henry explained that with a subpoena, R/I could obtain more demographic information about Mr. Gholar such as email address, physical address, his mother's maiden name and his actual date of birth. R/I did a search through SOS and was able to obtain a photo of Mr. Gholar.

31 May 06- R/I received the response to R/I's request for the Grand Jury subpoenas. R/I then faxed the subpoena to Comcast cable services requesting information on the assigned Internet account of two of their IP addresses for the dates of the intrusion and the purchase from Amazon.com. A second subpoena was sent to Comcast requesting any account information for Ms. Melongo and her address of 1218 East Long Valley Dr., Apt. #3A, in Palatine, IL.

R/I also went in front of Judge Tobin who signed a request for a search warrant to be served on Yahoo.com requesting subscriber information and email account contents. R/I then faxed the search warrant to Yahoo legal compliance.

5 Jun 06- R/I received a response from the subpoenas sent to Comcast. Comcast claimed that their records for the IP address of 24.15.202.102 for the dates and times requested by R/I were incomplete or contained an error associated with the cable modem or other device. Therefore, they could not give R/I any information as to which of their customers had that IP address at the times of the intrusions into SALF's servers. In response to the subpoena for account information for Ms. Melongo at 1218 East Long Valley Dr., Apt. #3A, in Palatine, IL, Comcast stated they have no information responsive to R/I's request. In response to the subpoena asking for account information for IP address of 71.57.72.196 on 17 May 06 at 20:11:42 PDT, Comcast gave R/I the name on the account as Andrea Smith, with and address of 229 S. 14th Ave. Apt. #1, Maywood, IL 60153, a telephone number of 708-369-2968. Along with email addresses of ttspears4@comcast.net and wookie91@comcast.net, and a Comcast account number of 8798200010470727.

7 Jun 06- R/I contacted Comcast IP Services about them not having any information for Ms. Melongo or the listed address for her. R/I was advised that Comcast needed two separate subpoenas in order for them to search just the name and/or just the address. R/I then prepared those subpoenas

as requested and faxed them to the State's Attorney's Office so that they could go in front of the Grand Jury on 8 Jun 06.

R/I, along with Det. Koch #11, went to 229 S. 14th Ave. in Maywood, IL and rang the bell but got no answer. R/I wrote down several license plates of vehicles parked in front of the building. R/I later ran those plates but none came back to Andrea Smith. R/I did a check of Andrea Smith through various databases and found a photo of an F/B that had an address of 134 S. 12th St. in Maywood, IL. The phone number given by Comcast came back to a cell phone owned by a Betty Spears.

R/I was contacted by Mr. Barnes from SALF. Mr. Barnes stated that the company found an unauthorized automated clearing house (ACH) debit on the company's Chase Bank account monthly statement. The ACH debit was to Comcast in the amount of $200.00 on 22 May 06. Mr. Barnes then faxed R/I a copy of the bank statement showing the debit in question along with the form sent to him by Chase showing the disputed charge. R/I contacted Chase Bank's Fraud Department in order to obtain more information about the transaction. R/I spoke to Terry Working who advised R/I that she could not tell for sure whether it was a check by phone transaction or if the offender actually made the payment in person at the Comcast Bill Payment Center. Ms. Working did state that the bank was in the process of refunding the money to SALF's account.

R/I then contacted Comcast Customer Service. The representative that R/I spoke with claim that she too could not give an indication how the bill was paid but did state the account that the payment was applied to was in the name of Andrea Chase at 229 S. 14th Ave. in Maywood, IL.

9 Jun 06- R/I went back to Ms. Melongo's address in Palatine but again got no answer at the door and there was no vehicle in her assigned parking space.

14 Jun 06- R/I and Det. Koch went to 229 S. 14th Ave. in Maywood, IL but again got no answer at the door.

15 Jun 06- R/I and Det. Koch went to the address of 700 Cynthia Ln., in Glendale Heights. R/I wrote down several license plates of the vehicles in the driveway at that location and parked in front of the home.

20 Jun 06- R/I again went to Ms. Melongo's apartment building in an attempt to speak with her, but again got no answer.

23 Jun 06- R/I did a check of the license plates obtained from the address in Glendale Heights. One of the plates registered to a Reachelle Spears at that address. Ms. Spears has an extensive criminal background.

R/I also contacted the State's Attorney's office in reference to the last subpoena request that were faxed to them on 7 Jun 06. R/I was advised that they never received those documents and therefore R/I had to resend them.

R/I received the response from the Yahoo search warrant. Yahoo's login tracker captured the IP address for Ms. Melongo's Yahoo account login at 21:46:03 GMT on 27 Apr 06 as being 24.15.202.102. Each time Ms. Melongo's yahoo account was logged into from that time to 2 May 06 at 16:47:23 GMT, it had that specific IP address.

Yahoo's account management tool showed all the information pertaining to Ms. Melongo's account along with its creation date, 7 May 2000, and the dates and times that her password was

occurred on 4 May 06 at 22:46:04 PST and the IP address assigned at that time was 24.15.202.102. Also included in the response (on CD-R) was the contents of the account's briefcase and a snapshot of the email accounts contents at the time the preservation letter was received.

One of the files recovered from the Yahoo briefcase was Ms. Melongo's resume, showing her work history up to September of 2005. Another file recovered was a letter that appeared to be written as a response to an investigation into some X-rated emails being sent to a Professor Oguz. The investigation was being performed by a Zauyah Waite. The letter was signed by Annabel, and in it she wrote that she blames Ms. Waite for being bias and personality conflicts for her being accused of sending the emails to the Professor.

R/I contacted Roosevelt University to verify whether or not they had a Professor Oguz on staff. R/I was informed that they did not have a Professor by that name. R/I then contacted the University of Missouri-Kansas City, where Ms. Melongo's resume stated she attended from January 2000 to March 2002. R/I spoke with Sgt. Leach at the U of M-KC Campus Police Department. Sgt. Leach advised R/I that the university did have a Professor Oguz and he was somewhat familiar with the investigation R/I had spoke to him about. Sgt. Leach stated that he would fax R/I a copy of the reports for the incident and also have the professor contact R/I for further information.

At approximately 1930 hours, R/I was contacted by Professor Oguz. Professor Oguz remember the incident and claimed that the reason Ms. Melongo was not charged with a crime was because the Campus Police could determine for sure that she had sent the emails because both she and her roommate at the time were both signed in to the University's email server at the exact time that the emails were sent anonymously to the professor.

28 Jun 06- R/I faxed Yahoo's response to the search warrant to Mr. French. Later that day, R/I spoke to Mr. French who stated that he reviewed the information that R/I had sent him with his boss. After reviewing the information, both he and his boss believed that with this new information, there was enough evidence against Ms. Melongo for a search warrant for her home could be issued. Mr. French stated he would send R/I the request for the search warrant by 30 Jun 06 so that R/I could get it signed by a judge on 5 Jul 06. If the warrant was signed, Mr. French would arrange for R/I to be accompanied by Immigration Customs Enforcement and personnel from the Attorney General's Office Computer Forensics Team when serving the warrant on 6 or 7 Jul 06.

5 Jul 06- R/I received the subpoenas signed by the Grand Jury on 29 Jun 06. R/I then faxed them to Comcast requesting account information for the ACH debit transaction.

R/I also had not received the search warrant from Mr. French, so R/I contacted him and left him a message to contact R/I.

10 Jul 06- R/I called Mr. French in reference to the search warrant for Ms. Melongo's apartment. Mr. French stated that his boss reviewed his initial draft and stated that it needed more information in it. R/I then emailed Mr. French a copy of this report for him to refer to for the required information. Mr. French stated that he would attempt to get R/I the search warrant by 14 Jul 06.

12 Jul 06- R/I received a call from Sharma Austin at Comcast Cable. Ms. Austin stated that there records showed the date of the ACH debit was on 21 May 06 and not 22 May as stated in the subpoena she received. R/I explained to her that the Chase Bank statement showed the ACH debit posted to the account on 22 May and that was the reason 22 May was written on the subpoena. Ms.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    MELONGO_005220

Austin stated she would have to check with her superiors to verify whether or not R/I had to send them a new subpoena for the correct date or if she could just make the correction on the initial one and then send R/I the response to that initial subpoena.

R/I then contacted the state's attorney's office and left a message for ASA Northcutt advising him of the issue with the subpoena for Comcast and R/I's conversation with Ms. Austin.

13 Jul 06- R/I received Comcast's response to the subpoena dated 29 Jun 06. Comcast's records showed that the account that the ACH Debit was applied to belongs to Andrea Smith with the same Comcast account number of 8798200010470727.

18 Jul 06- R/I received a voice mail message and an email message from Mr. French. The email message contained two files, the complaint for the search warrant for Ms. Melongo's apartment and the search warrant for the apartment. R/I spoke with Mr. French who arraigned for Illinois Attorney General Computer Forensic Personnel to accompany R/I when serving the search warrant. R/I tentatively set the date for serving the warrant at the apartment for 20 Jul 06.

19 Jul 06- R/I went to Rolling Meadows courthouse to have the search warrant entered and signed by a judge. ASA Jim Pontrelli reviewed the warrant documents and approved them. R/I then went before Judge Etchingham, who also reviewed the complaint and search warrant. After doing so, Judge Etchingham signed the search warrant allowing R/I to search Ms. Melongo's apartment and seize any evidence relating to this crime along with her computer and any other computer equipment.

R/I then notified Shahna Monge of the computer crime task force for the Illinois Attorney General's Office (IAG), that the warrant had been signed by the judge. Ms. Monge then made arraignments with IAG personnel to meet R/I at Palatine P.D. at 0800 hours on 20 Jul in order to serve the warrant. R/I then contacted Cook County Sheriffs Office to notify them of the warrant service in order to have them participate in the warrant service if they so desired.

20 Jul 06- R/I, Det. Koch #11, Ms. Monge and her coworker Amber Haqqani, went to Ms. Melongo's address in Palatine in an attempt to serve the search warrant. After several minutes on scene, Ms. Melongo drove up to the building. R/I immediately identified himself and had Ms. Melongo exit her vehicle and allow R/I and the others access to her apartment. R/I had Ms. Melongo sit in the kitchen and read her copy of the search warrant as Det. Koch monitored her. R/I along with Ms. Monge and Ms. Haqqani, search the apartment for items mentioned in the warrant. After extensive searches of the entire apartment, all items of evidentiary value were seized (refer to Schiller Park Police Department evidence sheets for a list of items removed from the apartment).

At 1015 hours, R/I read Ms. Melongo her Miranda rights from the voluntary statement form and had her initial said form. Ms. Melongo agreed to speak to R/I at that time, without the presence of an attorney. Ms. Melongo stated the following in summary but not verbatim. Ms. Melongo stated that she went to SALF on Monday, April 27th 2006, to pick up her pay check. While there, she overheard that the company was having a computer problem and offered to help. Ms. Spizzirri then accused Ms. Melongo of causing the problem. Ms. Melongo denied the allegations and stated that she only offered to help because her replacement was not as qualified as Ms. Melongo was with computers. Ms. Melongo stated that while employed at SALF she held the job titles of system administrator, web designer, and programmer. Ms. Melongo also stated that because of her job duties she had access to all passwords for all SALF employees, access to the web server, and all of the company's passwords.

Name _____    Star 29    Date/Time 30 Oct 06/1530
Schiller Park Police 2000    Case # 06-3219    Page 7
SCHILLERPARK0015

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER     MELONGO_005221

Ms. Melongo also admitted to accessing the server to get her emails for up to two weeks, 27 Apr 06 to 14 May 06, after her exit interview on 27 Apr 06. Ms. Melongo claimed she was checking only her SALF email account and did not change any settings or system passwords. Ms. Melongo also admitted to viewing Ms. Spizzirri's emails in which Ms. Spizzirri blamed Ms. Melongo for the problems SALF was having with their computer systems. After she viewed those emails, Ms. Melongo then forwarded those emails to her yahoo email account melongo_annabel@yahoo.com. Ms. Melongo stated that no one else accesses her yahoo account but her.

On Monday, 1 May 06, Ms. Melongo spoke with Vince Davis from SALF, and again offered to fix the network problem. Ms. Melongo was informed that SALF was in the process of fixing the problem and that they no longer needed her services. On 3 May 06, Ms. Melongo stated she sent an email to Ms. Spizzirri in response to Ms. Spizzirri blaming Ms. Melongo for the system problems. Ms. Melongo stated that she had access to SALF's entire computer system and was responsible for everything computer related. Ms. Melongo stated that her replacement, Christian, was hired three weeks before she was fired. She believes that she was fired because Christian agreed to work for less money to do the same job as she but that he did not have the same networking skills as she did. When asked about her residency, she claimed that she has lived in Palatine for approximately 18 months and initially had Comcast as her Internet service provider until about four months ago when she switched to SBC Yahoo DSL as her current ISP. Prior to moving to Palatine, she lived in Willowbrook and Naperville.

When asked if she knew a Tanya Spears, Ms. Melongo stated that a Tanya Spears used to work for SALF at the front desk. Ms. Melongo also stated that she had spoken with Ms. Spears approximately two weeks ago in reference to a computer problem Ms. Spears had at her house. Ms. Melongo stated that she had yet to call Ms. Spears back about assisting her.

When asked about SALF and their company purchases, Ms. Melongo stated that company procedure was that all purchases are made through requisitions to Ms. Spizzirri and no one else. Ms. Melongo stated that SALF's servers contained business forms, pictures, etc., and that they were all divided up by department. Even though she was the system administrator, she claimed that she could not access anything in the accounting or executive file tree. Ms. Melongo stated that she was the one who designed the file security system for SALF from input and authorization of Ms. Spizzirri. Ms. Melongo also stated that she never had any access to SALF bank accounts or credit card numbers. That information was only accessible by those employees in the accounting department. Ms. Melongo stated that the only employees who had that information were Dane, Ms. Spizzirri, and Bruce Nawara, of Nawara Financial Advisors (708-448-7100). Ms. Melongo showed R/I a business card from Mr. Nawara and claimed that she was told by Ms. Spizzirri to give him a password to access the accounting files on the SALF servers and that he was allowed to remotely access the servers for the accounting files. Ms. Melongo claimed that when she found that he had been remotely accessing the servers on 25 Apr 06, she immediately notified Ms. Spizzirri.

When asked if she knew a Saquan Gholar, Ms. Melongo stated that Mr. Gholar was an employee at SALF in the education department. Ms. Melongo stated that he was only an acquaintance and that she had no contact with him since she had been fired.

After R/I concluded the interview, R/I advised Ms. Melongo that she was not under arrest at that time and that R/I would be in contact with her after all of the evidence had been processed. All of the evidence that had been seized was brought back to SPPD where it was inventoried and placed in the evidence locker for safe keeping.

21 Jul 06- R/I along with Det. Koch #11, collected the electronic/computer evidence and brought it to 188 E. Randolph, Chicago, IL, The Regional Computer Forensics Lab, to be processed by a certified computer evidence recovery technician. R/I's met with Ms. Monge and Ms. Haqqani there

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    MELONGO_005222

and released the items to Ms. Monge, so that she could process the items for any evidence relating to this incident. R/I had her sign the Schiller Park Property Inventory Control Sheet showing the chain of custody of the evidence.

28 Sep 06- R/I was contacted by Ms. Monge, who advised that the forensic analysis on the items submitted was complete and the report and the items were ready to by returned to R/I. R/I and Det. Koch went to the RCFL in Chicago and recovered the items from Ms. Monge. R/T's then brought the evidence back to SPPD where it was returned to the evidence locker for safe keeping.

R/I then made a copy of Ms. Monge's cover letter and forensic report summary from the CD she provided R/I. The summary showed that Ms. Melongo did access the SALF server remotely, had a Comcast IP address of 24.15.202.102 on 28 Apr 06, having access to Ms. Spizzirri's email account and password, emails on her Roosevelt University email account with references to individuals at SALF, a word document containing the name Saquan Gholar, IP addresses associated with SALF Scantron System, images from the SALF website, database items from the SALF server.

13 Oct 06- R/I spoke with Mr. French from the Illinois AG's Office. Mr. French advised that he has coordinated a meeting between himself, ASA Biestek, and R/I, so that ASA Biestek could review all of the evidence and to determine if there is enough evidence to charge Ms. Melongo with a felony in this case.

30 Oct 06- R/I, along with Mr. French and Ms. Monge, met with ASA Biestek in reference to this case. After reviewing all of the events related to this case, ASA Biestek approved two counts of Computer Tampering against Ms. Melongo. ASA Biestek also stated that he would continue to look into other charges that could be filed in this case (i.e. eavesdropping). R/I prepared complaints against Ms. Melongo, which were reviewed for accuracy by ASA Biestek. ASA Biestek advised R/I to attempt to make contact with Ms. Melongo some time today. If R/I is unable to make contact with her, ASA Biestek asked to be notified and he would make arraingments to have an arrest warrant sworn out against Ms. Melongo on 31 Oct 06.
R/I and Det. Koch then went to Ms. Melongo's apartment but were unable to make contact with her there. R/T's did however speak to her landlord, Chin, Bing C., who stated that Ms. Melongo had recently informed him that she was moving out at the end of the month and that she was currently three months behind on her rent. Mr. Chin also stated that he knew that Ms. Melongo had a part-time job at a place called Children's World in Barrington. R/T's attempted to locate Children's World, but were unsuccessful. R/I then contacted ASA Biestek and informed him of R/T's results. ASA Biestek advised R/I to bring Ms. Spizzirri to court on 31 Oct 06 in order for Ms. Spizzirri to sign the complaints and have an arrest warrant issued for Ms. Melongo. R/I then contacted Ms. Spizzirri and made arraingments with her to go before a judge on 31 Oct 06 to sign the complaints.

Case closed

Name [signature]    Star 29    Date/Time 30 Oct 06/1530

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    MELONGO_005223