# Exhibit 20

```
 1  STATE OF ILLINOIS   )
                        )   SS:
 2  COUNTY OF C O O K   )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
    THE PEOPLE OF THE STATE        )
 5  OF ILLINOIS,                   )
                                   )
 6                 Plaintiff,      )
                                   )
 7      vs.                        )   No. 08 CR 10502-01
                                   )   No. 10 CR 08092-01
 8  ANNABEL MELONGO,               )   No. 10 1110476-01
                                   )
 9                 Defendant.      )

10          REPORT OF PROCEEDINGS had at the hearing of the

11  above-entitled cause, before the Honorable MARY MARGARET

12  BROSNAHAN, Judge of said court, on Tuesday, the 20th day

13  of April, 2010, at the hour of approximately 11:00 o'clock

14  a.m.

15      PRESENT:

16          HON. ANITA M. ALVAREZ,
            State's Attorney of Cook County,
17          BY:  MR. ROBERT M. PODLASEK,
            Assistant State's Attorney,
18              On behalf of the People;

19          HON. LISA M. MADIGAN,
            Attorney General, State of Illinois,
20          BY:  MR. KYLE FRENCH,
            Assistant Attorney General,
21              On behalf of the People;

22          MR. NICHOLAS J. ALBUKERK,
                On behalf of the Defendant.
23
    Laurel E. Laudien, RMR, RPR, CSR #084-001871
24  Official Court Reporter - Circuit Court of Cook County
    County Department - Criminal Division(773) 674-6065
```

B-1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER MELONGO_006601

```
 1          THE COURT:  Melongo.

 2                              (SHORT PAUSE.)

 3          THE COURT:  This is the Melongo matter.

 4              We have the parties back in court.

 5              May I have, Counsel, your names for the record.

 6          MR. ALBUKERK:  Nick Albukerk, A-L-B-U-K-E-R-K.

 7              My attorney code number should the Court need

 8   it is 37955.

 9              Judge, I just filed an appearance in this case.

10   I motioned it up the other day, was it last week?

11          MR. PODLASEK:  Yes.

12          MR. ALBUKERK:  And I filed an appearance on this

13   particular matter.

14              Since -- at that time, my client was out of

15   custody.  At that time, my client was earning a living.

16   My client is no longer.  My client is now because of a

17   new charge that just came, that just was -- she was just

18   arrested for I think it was on Tuesday.

19          MR. PODLASEK:  She was arrested on 4 - 14, your

20   Honor.

21          MR. ALBUKERK:  4 - 14.

22              When she was arrested on that day, she --

23          MR. PODLASEK:  The 13th, I'm sorry.

24          MR. ALBUKERK:  13th.
```

B-2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_006602

1      MR. PODLASEK:   4 - 14 she was in Bond Court.

2      MR. ALBUKERK:   In any case, she's obviously now in

3  custody.   There is a no bond hold currently holding her.

4         My client therefore has been rendered indigent.

5  Because of that, because I have some familiarity with the

6  case, at this point, I'm going to ask for appointment to

7  this case so that she can have counsel that is competent

8  and that is likely to finish this case off.

9         She would like me to remain as her Counsel,

10  but, of course, she does not have the funds at this point

11  or any means to pay for my services.

12      THE COURT:   Where was she working prior to this

13  arrest?

14      MR. ALBUKERK:   My understanding is that she was an

15  independent consultant, independent computer consultant

16  who was doing independent computer projects and paid in

17  that fashion, and plus she also had access to her parents

18  back in Cameroon, was it?

19         Back in Cameroon who was also able to send her

20  some money, she can no longer receive that money because

21  of her incarcerated status.

22      THE COURT:   Well, Counsel, at this juncture, I will

23  take your request under advisement, and I'm not going to

24  let you withdraw from the case at this juncture, but with

B-3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                           MELONGO_006603

1  respect to the appointment by the Court, I will take that

2  under advisement and give it some serious consideration.

3      MR. ALBUKERK:  Thank you, Judge.

4      THE COURT:  All right.  Now, I am in receipt of the

5  fitness.

6          Did we put the State's names on the record?

7      MR. PODLASEK:  Judge, for the record, Robert

8  Podlasek, P-O-D-L-A-S-E-K, on behalf of the State.

9      MR. FRENCH:  Assistant Attorney General Kyle French

10  K-Y-L-E, F-R-E-N-C-H.

11      THE COURT:  There's several matters to deal with.

12  The first one that was the BCX evaluation that I had

13  ordered with respect to the Defendant's fitness.  I am in

14  receipt of a report from Dr. Mathew Markos indicating

15  that he did examine Miss Melongo, and in his opinion, she

16  is presently mentally fit to stand trial.

17          The parties have a copy of that, I take it?

18      MR. ALBUKERK:  I don't.

19      MR. PODLASEK:  I have a copy of the letter, Judge.

20      MR. ALBUKERK:  If there's an extra copy, I'd

21  appreciate it.  If not, I'm sure the State -- oh, I am

22  now in receipt of a copy.

23          Thank you.

24      THE COURT:  All right.  I also want to make the

B-4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006604

1  parties aware of this.  As you are all aware, I can't

2  have any ex parte communications with anyone regarding

3  the case, obviously with the attorneys as well as anybody

4  else, so I'm going to tender to the State copies of what

5  I received in the mail.  I will ask that you make copies

6  for Mr. Albukerk, and a copy for yourself, and return the

7  original to the court file.

8          I have some correspondence from the Stop

9  Illinois Corruption Group run by Linda Shelton dated

10 March 25th of 2010.  It's a multi-page letter where she

11 basically gives several opinions about how this case

12 should run, how the court system should run in general,

13 and how this case should be run in particular.

14         There are in it some of these documents, she

15 refers to Miss Melongo's website where apparently she's

16 opining about the same thing.

17         So I'm going to tender all this to the State.

18 Again, please make two copies and return the original to

19 me.

20         And to the extent that you have any

21 communication or control over any other individual, I can

22 have no communications with anybody other than the

23 lawyers on this case regarding this case and how it

24 should be run.

B-5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006605

1          So, okay.  Now there is also the issue of
2   outstanding subpoenas.  Miss Melongo, prior to you being
3   on the case, had issued I believe I counted them
4   approximately 40 subpoenas, and one of the problems that
5   I had early on was the fact that the subpoenas were not
6   reined in in terms of a time frame, so subpoenas were
7   going out to companies asking for any documents from the
8   Save-A-Life Foundation and no time frame specified, so I
9   believe that some of those companies or groups had
10  contacted the State to lodge objections to subpoenas
11  based upon the breadth of them or relevance.  Other
12  groups have sent me volumes of material.

13          Also my concern was that Miss Melongo at times
14  was abusing the subpoena process, subpoenaing documents
15  that had nothing that I could see to do with the
16  relevance at all of the charges here.

17          So let me go through them and I will tender
18  since you are now attorney of record.

19     MR. ALBUKERK:  Thank you.

20     THE COURT:  This is as to the case that had already
21  been pending.

22          All right.  Here are some documents from what
23  appears to be the Berkeley Police Department.  There's
24  some communication from the Berkeley Police Department,

B-6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006606

1  also the Village of Schiller Park, Village of Glencoe, so

2  I will tender that to you.

3      MR. ALBUKERK:  Thank you.

4      THE COURT:  There's a subpoena returned from a

5  Guidance Software, and they are looking -- they are

6  tendering the in-case certified examiner detail for a

7  S-H-A-H-M-A, last name Monge, M-O-N-G-E, regarding her

8  particular certification, and that was in response to a

9  subpoena from -- to Guidance Software, so I will tender

10  that.

11      MR. ALBUKERK:  Thank you.

12      THE COURT:  North Montgomery Community School

13  Corporation from Crawfordsville, Indiana.  They say they

14  have no communications with Save-A-life.

15          And I'm going to direct Miss Melongo now that

16  there is an attorney on the case, you cannot issue any

17  subpoenas, period.  You do not have that authority.  I do

18  not want you issuing one subpoena, period.  And if you

19  do, I'm going to find you in contempt of Court.

20          There was a subpoena to Hilton Worldwide that

21  conducted a search.  There's nothing there.

22          And again, my opinion is the majority of these

23  subpoenas, the way that they were drafted are overly

24  broad and possibly not relevant, but if these people have

B-7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006607

1 complied, then in the majority of the cases I'm just
2 going to tender it over.

3       There is a subpoena to Allstate, and again,
4 here's an example. They are attaching some information
5 regarding a $3,150 grant payment by Allstate to
6 Save-A-Life from August of 2001. How is that possibly
7 relevant to the charges here?

8       Again, all that goes to show is why I had bona
9 fide doubt as to her fitness in the first place for
10 representing herself because she's got companies all
11 across the country doing flip-flops, digging through
12 records that go back years, and years, and years that
13 have no relevance whatsoever to the charges at hand which
14 is on a certain date and time, were these offenses
15 committed that are in front of me of unauthorized access
16 or destroying computer data, period.

17       But I will tender that Allstate response to
18 you.

19   MR. ALBUKERK: Thank you, Judge.

20   THE COURT: The State has a motion to quash
21 subpoenas filed February 22 of 2010. I'm going to put
22 that off to the side, so we'll deal with that when I get
23 through these subpoena returns.

24       There is a subpoena return from Citrix,

B-8

1 C-I-T-R-I-X, On-Line and tender that, some type of
2 forensic report.

3          Again I have a subpoena, but I don't have any
4 documents here.  I think these are subpoenas Miss Melongo
5 filed with me to the School District of Philadelphia in
6 Pennsylvania asking for any communications between
7 Save-A-Life and that school District.  Again, no time
8 frames on it at all.

9          Same thing to an individual Don Peters of
10 Downers Grove asking him to appear in front of me on
11 February 9th for testimony at 9:30.  Again, another
12 reason that I had bona fide doubts as to her fitness or
13 ability to represent herself.

14          You cannot command people to come to my
15 courtroom unless it's set down for a hearing.  So, again,
16 you have no authority to issue subpoenas.

17          There's a subpoena to the Illinois Department
18 of Commerce and Economic Opportunity.  She subpoenaed TCF
19 bank.  Again, these are just copies of subpoenas without
20 documents attached.

21          The Illinois School Board, Schiller Park Police
22 Department, to a person named Rita Mullens; America
23 Trauma Society, St. Joseph Hospital, again these are just
24 all subpoenas; Saquan Golar, S-A-Q-U-A-N, last name,

B-9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_006609

1  G-O-L-A-R, from the Phoenix Police Department in Phoenix,
2  Illinois; to a Vincent Davis from Elmhurst; Milwaukee
3  Public Schools in Wisconsin, again no time frame on the
4  subpoena.  She's just wants everything that Save-A-Life
5  ever sent them.
6          And Mr. Mike Winstead from Palatine; David
7  Stolerow (phonetic) from Round Lake, Illinois; Wachovia
8  Bank, Philadelphia; Miami Dade County Public Schools.
9          We've got a lot to go, so you're just going to
10 have sit tight.
11     MR. ALBUKERK:  No, no, I just wanted to
12 clarification.  Are these all from subpoenas or are just
13 filed documents?
14     THE DEFENDANT:  Those are just filed --
15     THE COURT:  Okay.  Miss Melongo, don't talk unless I
16 ask you a question.
17          What I'm going through now are simply subpoenas
18 she has filed with the Court, so I'm letting you know
19 what's on file, and there are subpoena returns that I'm
20 going to be getting to in a moment, more subpoena
21 returns.
22          So she subpoenaed Miami Dade County Public
23 Schools.  Again, none of these have any time frame to
24 show a relevant period of time.

B-10

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006610

1          She subpoenaed the Law Enforcement Response

2    Team Ebay Paypal Fraud Investigation Team in Utah;

3    Douglass Brown from Atlanta, Georgia; Miss Carbeth

4    Wilson, a paralegal from the City Board of Education,

5    Chicago; Comcast IP Services in New Jersey; Santa Barbara

6    County Education Office in Santa Barbara, California;

7    Dane Neal in Lombard; John Donlovy in Dorset, Vermont;

8    Carol Spizari in Grays Lake, Illinois, again commanding

9    her to testify in front of me which is in appropriate;

10   Illinois Department of Public Health, again commanding

11   them to appear in front of me, from Springfield,

12   Illinois; US Postal Service; Twitter; TCF Foundation; SBC

13   Foundation and AT&T, San Antonio, Texas; Sprint, Overland

14   Park, Kansas; Yahoo Legal.

15          All right.  I am returning or giving you a

16   subpoena return from Yahoo Legal with some documents.

17       MR. ALBUKERK:  Thank you, Judge.

18       THE COURT:  She has likewise subpoenaed, but I don't

19   have a return at this moment, the Motorola Foundation in

20   Schaumburg; the Hilton Hotels Corporation, Beverly Hills,

21   California; Comcast Foundation in Manchester, New

22   Hampshire; Allstate in Northbrook; Abbott Funds, Abbott

23   Park, Illinois; Royal American Bank, Bensenville,

24   Illinois; South Montgomery Community School Corporation,

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006611

1  New Marquette, Indiana; Guidance Software, Inc.,

2  Pasadena, California; Earth Link Regulatory Department in

3  Canada, some of these returns.

4         I do have a subpoena return from Hilton

5  WorldWide to you.

6      MR. ALBUKERK:  Thank you, Judge.

7      THE COURT:  Citrix On-Line has replied.

8      MR. ALBUKERK:  Thank you, Judge.

9      THE COURT:  US Postal Service has replied.

10        Apparently she was asking the Postal Service to

11 demand a Shahma Monge to come forward.  They said the

12 forwarding address expired in '08, they can't find her,

13 so that subpoena returned.

14        The American Trauma Society has responded

15 sending the annual report from 2003 regarding

16 Save-A-Life.  Again, 2003, what relevance does that have

17 to our case?  But I'll tender it.

18        There was a subpoena return from a David

19 Stolerow in Round Lake, Illinois that says return to

20 sender.  I will give you that.

21     MR. ALBUKERK:  Thank you.

22     THE COURT:  There's a letter from the National Guard

23 Bureau out of Arlington, Virginia addressed to Miss

24 Melongo.  Basically, they are going through the

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006612

1  legalities of what she would have to do and they cited

2  all kinds of Army regulations, et cetera.  Apparently

3  they are not complying.  I will tender that to you.

4           And there is a letter here that says Robin

5  Sukalo (phonetic) and it's a handwritten letter, and

6  again, it appears that Miss Melongo was directing people

7  to write up accounts of what occurred and send them

8  pursuant to subpoena which I told her before she can't

9  do.

10           You can't command someone to give a witness

11 statement and send it to you.

12           But in this case, I will tender it to you.  It

13 appears there was a statement witnessed by Miesha

14 Hamilton and Darryl Smith, so I will give that one to

15 you.

16           I've got a return from the Miami Dade County

17 Public Schools.  They say they don't have any results,

18 but there's your subpoena return.

19           And this is one that troubled me, and which I

20 am not going to tender unless, Counsel, you give me a

21 reason somehow that it's relevant, and this is where I

22 have a concern that Miss Melongo was simply using the

23 subpoena process for her own means to get information

24 wholly and completely unrelated to the case.  She

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_006613

1  subpoenaed information on herself, former student,

2  Annabel Melongo, and there was apparently some prior case

3  from the UMKC Police.  University Missouri Kansas City I

4  would imagine that's what that stands for, and there was

5  an incident she had there, so she was asking for police

6  reports about her own case.  A burglary was the

7  allegation.  Of course, I have no idea what happened,

8  that took place in 2002.

9        I cannot see any reason that that would be

10  relevant to this case at all.  It just seems she's trying

11  to get police reports about prior incidents involving her

12  through an illegal means, so I'm going to hold that off

13  to the side.

14        Certainly you can make an argument to me,

15  Mr. Albukerk, that they would be relevant, I would

16  consider tendering those, but at this point, I don't see

17  how they would be relevant.

18     MR. ALBUKERK:  My client has just whispered in my

19  ear and explained to me why they are relevant.  Evidently

20  that information was used to obtain a search warrant in

21  this case.

22     THE COURT:  An incident from 2002?

23     MR. ALBUKERK:  Correct.

24     THE COURT:  And when was that search warrant issued

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006614

 1 because she subpoenaed that information on March 8th of
 2 2010.  That's when it was file stamped.
 3      Was there a search warrant issued before
 4 March 8th of 2010?
 5     MR. ALBUKERK:  In this case?
 6      The detective in this case?
 7      The detective in this case, according to my
 8 client, used that particular information to secure and/or
 9 bolster his argument for a search warrant.
10     THE COURT:  Okay.  And I guess my question is did
11 this search warrant happen before she sent the subpoena
12 out?
13     MR. ALBUKERK:  Yes, because the basis of this case,
14 in other words --
15     THE COURT:  Not the new case, you're talking about
16 the case in front of me, the '08 case?
17     MR. ALBUKERK:  Yes.
18     THE COURT:  State, is that accurate?  Were there
19 search warrants out in 2008 regarding this case that used
20 information from the '02 burglary or alleged burglary?
21     MR. PODLASEK:  I would have to review the search
22 warrant, Judge.
23     THE COURT:  But there was a search warrant before
24 2008?

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006615

1     MR. PODLASEK:  I believe there was a search
2  warrant --
3     THE COURT:  All right.  Then, Counsel, I will tender
4  to you, not to your client.
5     MR. ALBUKERK:  Certainly, Judge.
6     THE COURT:  Obviously you can't tender any of this
7  information to Miss Melongo.  She doesn't have any
8  ability to have the police reports, since you're well
9  aware at this juncture because she's not representing
10  herself.
11     MR. ALBUKERK:  Judge, may I show them to her so that
12  I can review them with her?
13     THE COURT:  You can review things with her but I
14  don't want her in custody of those.
15     MR. ALBUKERK:  No copies, correct.
16     THE COURT:  All right.  There is a subpoena from
17  SBC.  There's been a return here with an annual report
18  from '06 and '07.
19          I've got a return to sender on the Philadelphia
20  School District.  I will give that back to you.
21     MR. ALBUKERK:  Thank you.
22     THE COURT:  And Exelon Corporation has returned a
23  subpoena, so I will give that to you as well.
24     MR. ALBUKERK:  Thank you, Judge.

B-16

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1      THE COURT:  There's more, Illinois Department of
2  Commerce and Economic Opportunity, they have tendered
3  approximately a phone book of information in response to
4  the subpoena, so I will just tender that to you.

5      MR. ALBUKERK:  Thank you, Judge.

6      THE COURT:  And now we've got -- that's all the
7  documents that I have received.

8          Now the motion to quash subpoenas filed by the
9  State on 2 - 22 of '10, are you ready to argue that,
10  State?

11      MR. PODLASEK:  We are not, Judge.

12      THE COURT:  You are not ready to argue that?

13      MR. PODLASEK:  No.  We would ask that this be
14  continued by agreement to May 20th.

15      THE COURT:  All right.  Does that date work for you?

16      MR. ALBUKERK:  It does, Judge.

17      THE COURT:  I'm going to hold it over by agreement 5
18  - 20 of '10, and that will be for State argument.

19      MR. PODLASEK:  Judge, on the new case which I don't
20  believe Counsel has filed an appearance, that's going to
21  be returned to Branch 98 on May 5th for the indictment.

22          I believe it will probably come to your Honor's
23  courtroom that morning.

24      THE COURT:  Well, generally speaking, the paperwork

B-17

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006617

1 is three weeks from the -- if you are going to indict,

2 three weeks.

3      MR. PODLASEK:  Right.  And that's the three-week

4 date.

5      THE COURT:  You think that would be May 5th?

6      MR. PODLASEK:  I checked on my pilot, and it is May

7 5th.

8      THE COURT:  Are you available on May 5th?

9      MR. ALBUKERK:  If I can take a look.

10      MR. PODLASEK:  We can just step up and continue it

11 to May 20th, Judge.

12      THE COURT:  What about you, Mr. Albukerk?

13      MR. ALBUKERK:  Judge, unfortunately it looks like

14 May 5th I may be on a trial at the Daley Center.  I don't

15 know yet.

16          Judge, since we don't have control over this,

17 we are going to ask, you know, only thing I can say, I'm

18 sorry, I won't be able to be here.

19          Like I say, I don't know if the trial gets

20 continued to that day, if there's no trial, then

21 obviously I will be here.

22      THE COURT:  Would you like me to set it for May

23 5th with the thought that you'll be here if you can, and

24 then agree on a date with the State if you can't, so take

B-18

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006618

1  their contact information?

2      MR. ALBUKERK:  Sure.  We have already been in touch
3  with each other.

4      THE COURT:  So May 5, I will hold it over by
5  agreement May 5 of '10.  I will hold it over for possible
6  State arguments on the motion to quash subpoenas and new
7  case to arrive, and I will note that Defense Attorney may
8  be on trial, may not be able to make it.

9      MR. ALBUKERK:  All right.

10     THE COURT:  Okay.

11     MR. ALBUKERK:  The only other thing I think that
12 really needs to be addressed today now is that my client
13 as I understand it is being held on a no bond hold on a
14 violation of bail bond.  Correct, I have not filed my
15 appearance on the violation of bail bond.

16         However, it is now in front of the Court, and I
17 think it appropriate that a bond hearing be had since a
18 no bond hold is only appropriate where my client has
19 shown that she's some sort of danger to the community and
20 she's never been accused of a violent offense.

21     THE COURT:  Well, Counsel, if you want to file your
22 appearance for the purposes with the understanding that
23 depending on how your other motion goes, in other words,
24 I may hold you to your appearance on the case you have

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006619

1   already filed on the '08 regardless of what occurs.

2           With respect to the violation of bail bond, if

3   you want to file your appearance for the bond hearing, I

4   will allow you to do that with the understanding I might

5   not hold you to -- I won't hold you to representing her

6   on this case for the duration.

7       MR. ALBUKERK:  Judge, I would do that.

8       THE COURT:  Okay.

9       MR. ALBUKERK:  I can file that appearance and we can

10  have that hearing today now, so we can get that out of

11  the way.

12      THE COURT:  Are you going to be ready for a bond

13  hearing today, State?  On the violation, are you ready?

14      MR. PODLASEK:  We are ready, Judge.

15      THE COURT:  Okay.  Leave to file your appearance

16  will be granted as to the violation of bail bond.

17          All right.  State, go ahead.

18      MR. PODLASEK:  Judge, as you know, the State's filed

19  a violation of bail bond based on the fact that during

20  the pendency of this case, Miss Melongo has been in

21  contact with Pamela Taylor.  Pamela Taylor is part of the

22  Administration of the Cook County Court Reporters Office.

23          During several phone calls, Miss Melongo

24  recorded those conversations without notifying

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006620

1  Miss Taylor that her conversations were being recorded.

2  She then posted those conversations along with transcript

3  on a website that she runs called, I believe, Illinois

4  Corruption.net.

5          Miss Taylor contacted our office after she was

6  made aware of that her phone conversations had been

7  recorded surreptitiously.  This is while she was working

8  in her capacity as administrator, she was contacted at

9  the Cook County offices which are located in this

10 building.

11         She then asked us if we would take -- she would

12 like to file a complaint.  We allowed her to do so, and

13 that's what necessitated the arrest of Miss Melongo on or

14 about April 13th of 2010.

15         Miss Melongo has on that same website outlined

16 the present case, the '08 case, and I wanted to point

17 this out to your Honor previously, and now seems like a

18 good time, that she's taken the discovery that we gave

19 her, including supplemental police reports, and posted

20 those on that website.  So right now, what we are looking

21 at are police reports that potentially have identifiers

22 for various witnesses and/or officers now on the

23 Internet.

24         So, Judge, we consider her -- we do consider

B-21

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006621

1 her actually a danger.

2          She also is on a detainer from ICE at this
3 point too.

4     THE COURT:  So a bond is really -- she's being held
5 on a no bail ICE detainer right now?

6     MR. PODLASEK:  Right now, she's on a no bail ICE
7 detainer.

8     MR. ALBUKERK:  That's not -- Judge, very quickly, as
9 far as --

10    MR. PODLASEK:  I have a copy.

11    MR. ALBUKERK:  Please, I'm just taking a look at it
12 here.

13          Judge, only thing that a no bond ICE detainer
14 means, and it says it right on here, is that she will be
15 detained for 48 hours to see if they actually want to
16 hold her.

17    MR. PODLASEK:  Correct.

18    MR. ALBUKERK:  My client tells me, and obviously I
19 have to represent this to the Court, that she has no
20 immigration problems, that she's here completely legally,
21 and that after that 48 hours, she'll be released, so
22 there really won't be a problem.

23          Therefore, that document as much as it will
24 hold her 48 hours, it may wind up being a nullity.  We

B-22

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006622

1  just don't know.

2        As far as the charges against her --

3     MR. PODLASEK:  I wasn't quite finished.

4     MR. ALBUKERK:  I'm sorry.

5     MR. PODLASEK:  I just wanted to give Counsel a copy.

6        When she was arrested, Miss Melongo was in

7  possession of a passport.  The passport was a Haitian

8  passport.

9        Miss Melongo represented in Bond Court that her

10 consulate was in Cameroon.  At no time has Miss Melongo

11 ever indicated to us or to any law enforcement officials

12 that she's a native of Haiti, so we're asking the federal

13 government at this time to investigate that, ICE.

14       I think that she represents a potential for

15 fleeing of the country prior to the adjudication of her

16 case in this matter.  We would ask that until such time

17 as Miss Melongo adjudicates the case, that she be kept on

18 a no bond as far as the violation of bail bond.

19    THE COURT:  All right.  Counsel?

20    MR. ALBUKERK:  Judge, if she had wanted to flee this

21 country, she would have fled it long ago.  She had many,

22 many opportunities.

23       As far as her having dual citizenship, there's

24 nothing illegal about dual citizenship.  My client has

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006623

1 lived all over the world.  She's lived in Germany for
2 many years.

3         She has dual citizenship with Haiti and
4 Cameroon.  There is nothing illegal about that.  There's
5 nothing wrong about that.  Many United States citizens
6 and many people around the world have dual citizenship.

7         As far as the only question this Court should
8 be focused on obviously is the statute and what the
9 statute says.  She is not a flight risk because she's
10 already proven not to be a flight risk.

11         She's not a danger because she's never been
12 charged with dangerous acts, any violent acts, anything
13 at all.

14         As far as the statute in question is concerned,
15 if we were in any other state except for Maryland, as I
16 understand it, this wouldn't even be illegal.

17         Now considering that we're only talking about
18 reporting someone, even if we take these allegations by
19 the way to be true, which we don't know them to be true,
20 we also know this statute, for instance, provides an
21 exception if you believe that there is criminal activity
22 afoot, you are allowed to record somebody.

23         Judge, I don't know what the facts of this case
24 are, I don't think the Court knows, and therefore, we

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006624

1 should simply look to whether or not this is a dangerous
2 allegation against someone. We don't know that she has
3 done anything wrong, and there is not even a hint of any
4 dangerousness here.

5 If my client had made some sort of a threat
6 against someone, I could kind of understand it, but my
7 client is not a danger to anyone.

8 She's just been returned fit, and because she's
9 been returned fit, and she's never been a danger to
10 anyone, she's never been a threat to anyone, a no bond
11 hold is completely inappropriate and violates every part
12 of the United States Constitution as well as the State
13 statutes. Therefore, we would ask for a reasonable bond
14 to be set for a person who's always shown up to court.

15 There is no harm here. With all due respect,
16 we'd ask for a reasonable bond.

17 THE COURT: All right. Thank you.

18 I'm taking into account all the facts put forth
19 by the State as well as the Defense. I'm going to reduce
20 the bail from a no bail to $500,000-D, hold it over by
21 agreement 5 - 5 of '10 for possible State argument and
22 for an update on the ICE detainer.

23 MR. ALBUKERK: Could we have a case number on the
24 VOBB?

B-25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER MELONGO_006625

```
 1      THE COURT:  Should have, yes.

 2          It was filed -- showing it was filed under

 3 08 CR 10502 which is the case in front of me.

 4      MR. ALBUKERK:  Is that the way that's supposed to be

 5 done?

 6      THE COURT:  Generally in Bond Court, they give it a

 7 different number, but this looks like I think it was

 8 signed by Judge Linn on 4 - 14, so it wasn't actually in

 9 a court.

10          Did you get a different number when it was

11 in --

12      MR. PODLASEK:  They didn't give us a different

13 number.  They kept the same '08 number when we took it to

14 the Clerk on the bond hearing.

15      MR. ALBUKERK:  Then, Judge, there's already my

16 appearance on file for that, so --

17      THE COURT:  What's the bond on the '08 case in front

18 of me?

19      MR. ALBUKERK:  How much?

20      THE DEFENDANT:  10,000.

21      MR. ALBUKERK:  10,000.  10,000-I?

22          10,000-I, Judge.

23      THE COURT:  Okay.  So then the order will be fine.

24 We don't have to add anything to it.
```

B-26

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER　　　　　　　　　　MELONGO_006626

1          I'm going to reduce the bond.  I will keep it

2  under this case number 10502.  It was no bail, it's now

3  500-D.

4      MR. PODLASEK:  She also has a $30,000-D bond on the

5  new case.

6      THE COURT:  Okay.  Which is not in front of me so

7  I'm not worried about that at this moment.

8      MR. ALBUKERK:  And it's been set, so --

9      THE COURT:  Okay.

10     MR. PODLASEK:  Judge, could I get a copy of that

11 detainer back.

12     THE COURT:  Hold on a second now.

13         All right.  There is something that was filed

14 on March 3rd of 2010.  The Defendant's name is Annabel

15 Melongo.  It was filed by Linda Shelton, a next friend.

16     MR. ALBUKERK:  Yes, Judge.  I was made aware of

17 that.

18         I haven't seen it.

19     THE COURT:  All right.  That's given the number of

20 10 Habeas 00007.

21         And then there's another habeas petition filed

22 by the same person for Miss Melongo, an emergency writ of

23 habeas, and this has another website that's detailed.

24     UNKNOWN PERSON:  Did you call my name?

B-27

1      THE SHERIFF:  Ma'am, step out.

2      THE COURT:  Unless you're a lawyer, unless you're a

3  lawyer, have a seat in the gallery.

4      UNKNOWN PERSON:  I'm the friend on the habeas.

5      THE SHERIFF:  Have a seat, ma'am.

6          They haven't called your name.  Have a seat.

7      THE COURT:  I'm not going to hear these cases

8  unless -- let me ask you is Linda Shelton, according to

9  the documents sent to me, she is not a lawyer?

10     MR. ALBUKERK:  She's not a lawyer.

11     THE COURT:  She's representing herself as a doctor,

12  so to your knowledge, she's not a lawyer in Illinois?

13     MR. ALBUKERK:  She's not a lawyer in Illinois.

14         She is not representing herself as a doctor, a

15  medical doctor anymore.  She is no longer -- she's no

16  longer practicing.

17         She was a medical doctor.

18     THE COURT:  Okay.  All right.  Well, other than pro

19  se filings from a Defendant that's charged, like Miss

20  Melongo, if she filed a pro se filing and wanted to be

21  represented pro se, I would hear that.

22     UNKNOWN PERSON:  Your Honor, under the law I have a

23  right --

24     THE COURT:  Take her out of the courtroom.  Get her

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER     MELONGO_006628

 1  out.

 2           Get her out of this courtroom.  Now.

 3       UNKNOWN PERSON:  You're committing treason, ma'am.

 4           You're violating the statute.

 5       THE COURT:  I am not entertaining those motions by

 6  that individual, so they will be off call.

 7           So I will see you back here on 5 - 5.

 8       THE SHERIFF:  Step in the back.

 9       MR. ALBUKERK:  Thank you, Judge.

10       MR. PODLASEK:  Could I have a copy of the detainer

11  and I will return it to you.

12       THE COURT:  Why don't you make one copy for each

13  side.

14       MR. ALBUKERK:  Oh, Judge, one last favor I would ask

15  of the Court.  Can we hold her here in the back for just

16  45 minutes or so I can talk to her about all this?

17       THE COURT:  Sure.

18       MR. ALBUKERK:  Thanks, Judge.

19       MR. PODLASEK:  Thank you, Judge.

20           (WHEREUPON, THE COURT HEARD OTHER MATTERS;

21            THEREAFTER, THE FOLLOWING PROCEEDINGS WERE

22            HAD IN THE AFOREMENTIONED MATTER, TO-WIT:)

23

24

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_006629

```
 1  STATE OF ILLINOIS  )
                       )  SS:
 2  COUNTY OF C O O K  )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
    THE PEOPLE OF THE STATE       )
 5  OF ILLINOIS,                  )
                                  )
 6                 Plaintiff,     )
                                  )
 7      vs.                       )   No. 08 CR 10502-01
                                  )   No. 10 CR 08092-01
 8  ANNABEL MELONGO,              )   No. 10 1110476-01
                                  )
 9                 Defendant.     )

10

11

12          REPORT OF PROCEEDINGS had at the hearing of the

13  above-entitled cause, before the Honorable MARY MARGARET

14  BROSNAHAN, Judge of said court, on Tuesday, the 20th day

15  of April, 2010, at the hour of approximately 3:45 o'clock

16  p.m.

17
    Laurel E. Laudien, RMR, RPR, CSR #084-001871
18  Official Court Reporter - Circuit Court of Cook County
    County Department - Criminal Division(773) 674-6065
19

20

21

22

23

24
```

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_006630

1      THE COURT: Oh, I'm sorry. There is one matter I

2  wanted to address with the Court Reporter that had to do

3  with an earlier case, not the case on trial.

4          With respect to the Miss Melongo case, I am not

5  certain how much the reporter got on the record with

6  respect to Linda Shelton who was out in the gallery, and

7  I want to put my observations on the record.

8          During the course of handling the Melongo

9  continuance, which took at least 30 minutes or so,

10  towards the end of that continuance, my Clerk handed me

11  for the first time two files that had case numbers on

12  them of habeas petitions, 10 CR, and I looked through

13  them, and they were authored by Linda Shelton.

14          Now that is the same individual whose name was

15  on the earlier documents that I tendered to Mr. Podlasek

16  and Mr. Albukerk with respect to communications I had

17  about the case where Miss Shelton had authored several

18  documents to me, included blogs, et cetera, and was

19  giving me her opinion as to how the rulings should go in

20  the Melongo case.  I indicated that that was

21  inappropriate, made the parties aware of it, and gave

22  them all those documents.

23          Later on during the continuance as I thought

24  the case was coming to a close and we were going to be

B-31

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006631

1  giving it a date, I was, as I said, handed two documents

2  about habeas petitions for Miss Melongo's case.  I was

3  obviously confused having never seen it before, because

4  she had an attorney, Mr. Albukerk, now on the case, and

5  as I read them, it indicated that they were prepared by

6  Linda Shelton which I said on the record.

7           At that moment, a woman in the gallery, Linda

8  Shelton, attempted to come into the courtroom saying,

9  "Did you call my name?  Did you call my name?"  And at

10 that time, I asked her if she wasn't an attorney, to have

11 a seat.

12          And at that point, Miss Shelton in the gallery

13 began disrupting the entire gallery, the entire

14 courtroom, fighting, trying to get into the courtroom,

15 and screaming that I was committing treason, and other

16 things, so at that point, I ordered that she be taken out

17 of my courtroom.

18          Subsequently I learned that she had been up in

19 the Clerk's office today while this case was going on

20 filing emergency habeas petitions, et cetera, which is

21 what was delivered to me in the midst of my court call,

22 so I just wanted to supplement the record on the Melongo

23 case.

24          And I obviously questioned Mr. Albukerk about

B-32

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_006632

1  Miss Shelton.  He was aware of her.  He indicated she was
2  not an attorney, and I indicated I would not be hearing
3  those petitions which upon review had no merit
4  whatsoever.  They simply challenged the probable cause
5  for the original arrest and they were not the basis of
6  what any habeas could be, not to mention the fact that
7  Miss Melongo can certainly advocate for herself having
8  been pro se and been found fit for trial.
9          All right.  We will be in recess until
10 tomorrow.
11          Thank you.
12              (WHEREUPON, THE PROCEEDINGS WERE
13              ADJOURNED TO BE RECONVENED ON MAY 5,
14              2010, AT 9:30 O'CLOCK A.M.)
15
16
17
18
19
20
21
22
23
24

B-33

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                        MELONGO_006633

1    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT - CRIMINAL DIVISION

2

3

4        I, Laurel E. Laudien, an Official Court Reporter

5   for the Circuit Court of Cook County, County Department -

6   Criminal Division, do hereby certify that I reported in

7   shorthand the proceedings had at the hearing in the

8   above-entitled cause; that I thereafter caused the

9   foregoing to be transcribed into typewriting, which I

10  hereby certify to be a true and accurate transcript of the

11  proceedings had before the Honorable MARY MARGARET

12  BROSNAHAN, Judge of said court.

13

14

15

16                                    Official Court Reporter

17                                    RMR, RPR, CSR #084-001871

18

19

20

21

22

23  Dated this 2nd day

24  of July, 2013.

B-34

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_006634

# Exhibit 21

STATE OF ILLINOIS
IN THE FIRST DISTRICT APPELLATE COURT

| | | |
|---|---|---|
| People of the State of Illinois , Prosecutor /Appellee | ) ) ) | No. 10 - 2064 |
| v. | ) ) | |
| Annabel K. Melongo Defendant/Appellant | ) ) ) ) ) | From the Circuit Court of Cook County, Criminal Division Case Nos. 08 CR 10502, 10 CR 0809201 The Honorable Brosnahan |

## AMENDED VERIFIED MOTION FOR REVIEW IN THE APPELLATE COURT OF ALL BONDS

NOW COMES, Annabel K. Melongo, by and through her counsel, J. Nicolas Albukerk, and respectfully moves this Honorable Court to reduce her excessive bond pursuant to the State of Illinois Const. Article I Section 9 and the Eighth Amendment to the United States Constitution. In support of this motion, the Defendant states:

1. On November 15, 2006, the Defendant was charged with Computer Tampering.

2. Upon being made aware of the charges she surrendered herself to a judge in the Rolling Meadows Courthouse.

3. She was later released on an I-Bond because she has no criminal background and the offense for which she was charged was nonviolent in nature.

4. On January 17, 2007, she was indicted in Chicago, IL on the same charges and her Rolling Meadows I-Bond was transferred.

5. In May of 2008, a new indictment for the same charge, computer tampering, superseded the January 2007 case and the I-Bond was transferred a new.

i

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

6. On April 13, 2010, Annabel Melongo was arrested for the new offense of Eavesdropping.

7. On April 14, 2010, at bond court, the same prosecutor who was handling the computer tampering charges, requested and received a $30,000.00 D Bond on the new charge of Eavesdropping.

8. On April 15, 2010, the same prosecutors then asked Judge Brosnahan to issue a new bond for the computer tampering charges alleging violation of the outstanding I-Bond.

9. On April 20, 2010, with the Defendant's attorney present, Judge Brosnahan set the computer tampering bond at $500,000 D.

10. On May 5, 2010, the Defendant's lawyer motioned the Court to reduce the excessive bond. Judge Brosnahan lowered the bond to a $300,000 D.

11. To be out on bond, Annabel Melongo needs $33,000.00.

12. Prior to being arrested in May of 2006 Ms. Melongo was a computer networking expert who worked as a sub-contractor for Robert Half and Associates, a computer technology firm, she earned just over $1,000/week. Since that time Ms. Melongo, despite having a computer science degree, has repeatedly been denied steady long term employment because of the pending criminal charges against her. She is currently indigent. Ms. Melongo is a citizen of Cameroon who entered this country on an education Visa. She has lived in the United States for the past ten years. Her family is scattered around the world. Ms. Melongo's mother is in France. No person in her family is a person of wealth or means. Ms. Melongo's Mother was able to provide a small deposit for the

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

services of her attorney; however, that attorney is currently seeking appointment

by the Court, because the deposit is not enough to compensate Mr. Albukerk or

any other attorney.

a. Ms. Melongo's complete work and education history for the past ten

years (all dates are approximate): She attended the University of

Missouri, Kansas City in 2001 and 2002 where she studied computer

science and software engineering. She worked for UPS as a packager

from 2003- 2005 while she sought her degree in computer science and

established herself in the Chicago area. From 2003 through 2006 she

went to, and completed the course work for her computer science degree

at, Roosevelt University, Chicago IL. From 2006 until her arrest in April

of 2010 Ms. Melongo worked as an independent contractor: In 2006 Ms.

Melongo worked for Trondent Computer consulting for 5 months;

Walgreens, software engineer one month in 2007 (terminated because of

pending charges); Compu Systems, software engineer for six months in

2007; Google, software engineer 2009 for 2 months, (again, terminated

because of pending charges); Adecco, Evanston IL, software engineer, 2

weeks in 2009; Robert Half and Associates, computer consultants: 2005

– 2006.

b. Ms. Melongo's history of residency for the past ten years: (all dates are

approximate) from 2000 to 2003 Ms. Melongo lived on Harrison St. in

Kansas City, KS; from January 2003 – 2004 she lived on Amber Circle

located in Naperville IL; from January '04 to Jan '07 she resided at 1218

3

MELONGO_014306

Long Valley Dr. Palatine IL; from January of '07 to June of 2009 she

lived at 9200 Hamilton Court Apt C. Des Plaines IL until she could no

longer afford the rent; she lived at 105 N. Grant Rd., Addison, IL at her

friend's house from June 2009 – April 2010 when she was arrested.

13. The Eighth Amendment to the United States Constitution as well as Article I

Section 9 of the Illinois Constitution protects the accused against excessive bond.

*Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1 (1951).

14. Based on the above it is appropriate to reduce the Defendant's bail for the

following reasons:

   a. Annabel Melongo has consistently demonstrated her willingness to face

   the criminal charges against her in that:

      i.    She surrendered herself to authorities in Rolling Meadows.

      ii.   She has diligently attended every Court date for the past four

            years while defending herself from charges of Computer

            Tampering.

   b. The pending criminal charges against her, Computer Tampering and

   Eavesdropping, are nonviolent in nature.

      i.    In fact the new charge of Eavesdropping, which gave rise to

            the Court setting new bonds requiring the Defendant to procure

            $33,000 for her freedom, is not only nonviolent, it is also

            without pecuniary loss. Illinois is one of only four States that

            makes the alleged conduct a felony. Most States in this

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Country do not make the conduct of recording a conversation

without both parties' consent illegal at all.

c. Her alleged recordings do not constitute a crime under the Eavesdropping

Exemption 720 ILCS 5/14.3(i). She allegedly recorded a phone

conversations between herself and Cook County's Court Reporter

Assistant Manager, Pamela Taylor, when, in good faith, she believed that

her court transcripts had been tampered with. Ms. Melongo later reported

what she thought to be an alleged crime to FBI agent Dona Depooter, as

well as sending an e-mail to the FBI general mailbox.

d. Besides these two cases Ms. Melongo has no other criminal background.


WHEREFORE, For the foregoing reasons, Annabel K. Melongo, who has

been in Cook County Jail for three months, begs this Honorable Court to reduce

her $300,000.00 D bond and 30,000 D bond to I-Bonds, or in the alternative, to no

more than a total of $3,000 to be paid to secure her release and appearance in

Court.


Respectfully Submitted,


J. Nicolas Albukerk

Albukerk and Associates
111 E. Wacker Dr. Suite 555
Chicago IL 60601
773 847 2600
Atty # 37955

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_014308

Under penalties as provided by law pursuant to 735 ILCS 5/109-1 I, Annabel Melongo, certify that the statements set forth herein are true and correct.

July 26 , 2010        <u>               </u><br>Annabel Melongo



FILED

JUL 26 2010

Judge Brosnahan-1811

6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER      MELONGO_014309

# Exhibit 22

1/11/11    CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER



Nick Albukerk <nick.albukerk@gmail.com>

# Reminder: we meet today at 3.30 pm
13 messages

**Melongo Annabel <melongo_annabel@yahoo.com>**                    Mon, Nov 7, 2011 at 6:39 AM
To: nick.albukerk@gmail.com

I don't have a cellphone, so there will be no way of changing this promptly in the event of a change of plans.

---

**Nick Albukerk <nick.albukerk@gmail.com>**                    Mon, Nov 7, 2011 at 9:33 AM
To: Melongo Annabel <melongo_annabel@yahoo.com>

And our internet is out - but I have you in the calendar

[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**                    Mon, Nov 7, 2011 at 8:18 PM
To: Melongo Annabel <melongo_annabel@yahoo.com>

Annabel, unfortunately, it seems you walked out of my office with my
file. I apologize that I had to take another call, but you can not
take my file. I will gladly copy whatever you like out of the file or
give you access to my copier but you had no right to take the file.
Please return it at once or I will have to tell the Court what you
did.

--
Please make note of our new mailing address:
J. Nicolas Albukerk
Albukerk & Associates
1450 W. Randolph
Chicago IL 60607
Phone: 773 847 2600
Fax: 773 847 0330
Our phone and fax have not changed

---

**Melongo Annabel <melongo_annabel@yahoo.com>**                    Mon, Nov 7, 2011 at 8:22 PM
To: Nick Albukerk <nick.albukerk@gmail.com>

Sorry but I didn't know it was YOUR file. It has a note saying "copy file give to Annabel Melongo".
You never indicated to me that I only had to copy the file!
So where's the file you were suppose to give me?

---

**From:** Nick Albukerk <nick.albukerk@gmail.com>
**To:** Melongo Annabel <melongo_annabel@yahoo.com>
**Sent:** Mon, November 7, 2011 8:18:06 PM
**Subject:** Re: Reminder: we meet today at 3.30 pm
[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**                    Mon, Nov 7, 2011 at 8:24 PM
To: Melongo Annabel <melongo_annabel@yahoo.com>

My plan was to let you copy whatever you wanted out of it. I assumed
when you walked out that you concluded that what was in the file was
of no use to you. Not a big deal, just come back before your next
court date and you can copy whatever you want.
[Quoted text hidden]

---

PLAINTIFF'S
DEPOSITION EXHIBIT

PODLASEK 13
5-2-78 mr

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000396

1/11/11     CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

**Melongo Annabel <melongo_annabel@yahoo.com>**     **Mon, Nov 7, 2011 at 8:30 PM**
To: Nick Albukerk <nick.albukerk@gmail.com>

My next court date is coming Thursday and I don't have any opening to come to you before that. I sincerely don't believe your story. By the way, why do you want to keep with you portion of my file? all my lawyers have always given anything they have on me. I guess if you're no longer my lawyer, you should have nothing on me except the bills.

---

From: Nick Albukerk <nick.albukerk@gmail.com>
To: Melongo Annabel <melongo_annabel@yahoo.com>
Sent: Mon, November 7, 2011 8:24:36 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**     **Mon, Nov 7, 2011 at 8:40 PM**
To: Melongo Annabel <melongo_annabel@yahoo.com>

call the ARDC we're supposed to keep copies of your file regardless of
what happens - if for no other reason so I can defend myself against
the 2nd ARDC complaint you file against me. Fine, have Linda or
Maisha or Davey return the file please - it need not be by Thursday.

On Mon, Nov 7, 2011 at 8:30 PM, Melongo Annabel
[Quoted text hidden]

---

**Melongo Annabel <melongo_annabel@yahoo.com>**     **Mon, Nov 7, 2011 at 9:05 PM**
To: Nick Albukerk <nick.albukerk@gmail.com>

Is this a set up or what?
You brought that file to court along with the documents that were handed to the state attorney. I fought to keep that file away from the state attorney telling the judge that the file should be given to me. The judge agrees and decided to give away everything to state except that file. You took that file BACK to your office.
When I got out, it was agreed that the file can only be handed to me. Today, I came to your office, I told you that I have a 7.00 pm curfew and that I needed to be out of your place by 5.00pm. Even with that information, you never bothered to copy the file beforehand. I left your office exactly at 5.00pm when you cut the conversation short and went to the phone. With the note on the file "Copy file give to Annabel Melongo", it was unambiguous that the file was copied and what was handed to me was mine.
Back to my place, I now receive an alarming email stating that I took what I wasn't suppose to and that you need the file back because it wasn't suppose to be given to me. My question: wasn't it the same you wanted to give to the state attorney? wasn't it the same file that I fought for not to be given to the state because of the confidentiality of the information ? At that time, didn't you know that you were to keep that file? Or, didn't you preserve a copy when you were planning to give it to the state prosecutor? It seems, you never thought about keeping a copy when you planned of handing my confidential file to the state, but now that you're suppose to hand it to me, keep the original becomes a crucial issue. In court, it was never stated that way. My first email "confidential file" was asking for the ENTIRE file. Not some hand picked documents and when I came today, you gave me the file, I had no second thought, with the note, that the file wasn't mine.
Sincerely Nick, there's no consistency here. I will address this issue on Thursday in court, please come to court. If the judge says I should give you back the file and copy certain documents you'll have it back. That's the only way to do it now. I really regret this inconvenience. I sincerely thought we might be friendly to each other after what happened, but the idea of you thinking I stole a file from you is mind boggling!!!

---

From: Nick Albukerk <nick.albukerk@gmail.com>
To: Melongo Annabel <melongo_annabel@yahoo.com>
Sent: Mon, November 7, 2011 8:40:44 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**     **Mon, Nov 7, 2011 at 9:13 PM**

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000397

1/11/11       CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER

To: Melongo Annabel <melongo_annabel@yahoo.com>

you clearly took originals - I had an important call to take - see
whatever conspiracies you want but there are none. We did not know
what parts of the confidential file if any you would have wanted. You
asked me nothing you just walked out. I never wanted to turn over
the file to the State. I resisted doing that - buy the transcripts if
you don't believe me. I'm booked on Thursday and will not come to
Court I will be there Wednesday and if you don't tell me you're going
to return the file (you can make whatever copies you want) I will tell
the Judge you took my file without my permission. He will do whatever
he wants with you. Good luck.

On Mon, Nov 7, 2011 at 9:05 PM, Melongo Annabel
[Quoted text hidden]

---

**Melongo Annabel <melongo_annabel@yahoo.com>**       **Mon, Nov 7, 2011 at 9:27 PM**
To: Nick Albukerk <nick.albukerk@gmail.com>

Sorry I don't have movement on Wednesday. You say you resisted doing that but yet again you brought that file to court
along with the other documents to be handed to....... the state. Why didn't you make a copy then? Since if I didn't fought for
that file, it would have certainly be handed to the state and you will be without a copy!
I will raise this issue on Thursday and I will let you know the judge's decision. I'm extremely disappointed though.

---

**From: Nick Albukerk <nick.albukerk@gmail.com>**
**To: Melongo Annabel <melongo_annabel@yahoo.com>**
**Sent: Mon, November 7, 2011 9:13:03 PM**
[Quoted text hidden]
[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**       **Mon, Nov 7, 2011 at 9:56 PM**
To: Melongo Annabel <melongo_annabel@yahoo.com>

Annabel I only gave the file to the State because the Court commanded
me to do it. Sorry I was not going to copy over a thousand pages just
for fun. Annabel the real problem for you - and I only say this
because I am always concerned about my client's current or ex- is
this; do you really want to go to Court saying that there have been
more problems with you obeying the rule of law? Do you really want
the Court to think that you are just a trouble maker? You are out of
custody and b/c of friends you have a warm place to stay and help
fighting your case. Do you really want to jeopardize that? See the
big picture. All I am asking is that you return the file when you can
- if thats Monday of next week so be it. You can make copies then; if
you don't show then I will inform the Court.

On Mon, Nov 7, 2011 at 9:27 PM, Melongo Annabel
[Quoted text hidden]

---

**Melongo Annabel <melongo_annabel@yahoo.com>**       **Tue, Nov 8, 2011 at 6:45 AM**
To: Nick Albukerk <nick.albukerk@gmail.com>

Dear Nick,
Sorry but I will bring this up on Thursday. If you want to think it's being a troublemaker, then so be it.
Since you gave me an advice, here's my advice to you. Do you really know the type of people you make it in life? The people
who lived their lives out of principles and convictions. At times it might be difficult even humiliating, but a deep faith in a
Higher Power always brings one through.
I've been with you for some quite a time and your life's motto seems to be the end justifies the means. Your have no religious
convictions and you set yourself professionally to be successful comes what it takes. I sincerely think that if you have
taken my case with the belief that a wrong was done and you were paid to correct it and did your job accordingly, today

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000398

1/11/11   CONFIDENTIAL ~ SUBJECT TO PROTECTIVE ORDER

you'll be a different lawyer.

Consciously, you decided not to do anything. Giving me a defense worth that of a public defender. You wanted quick money, never thinking beyond what winning my case would do to you financially and professionally.

Yesterday, I came to your office with a suggestion but when I saw your old self, I decided not to go there and left without telling you anything. From now on, I would rather want not to contact you anymore because doing so brings back old emotions I try to forget. I guess we'll never see eye to eye in anything. The day I'll hear that you humbled yourself and surrendered your life to God, maybe I would want to come back. Right now, your vanity makes you blind and because of this blindness your mind is set to empty values. The day you realize that you've been chasing after the wind, remember this email.....

Wish you all the best.

Annabel.

---

**From:** Nick Albukerk <nick.albukerk@gmail.com>
**To:** Melongo Annabel <melongo_annabel@yahoo.com>
**Sent:** Mon, November 7, 2011 9:56:43 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Nick Albukerk <nick.albukerk@gmail.com>**                                      Tue, Nov 8, 2011 at 8:32 AM
To: Melongo Annabel <melongo_annabel@yahoo.com>

I will remember this e-mail as a confirmation of all that you are - good luck

[Quoted text hidden]

---

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000399

# Exhibit 23



1  STATE OF ILLINOIS )
                   ) SS.
2  COUNTY OF C O O K )

3        IN THE CIRCUIT COURT OF COOK COUNTY
          COUNTY DEPARTMENT - CRIMINAL DIVISION
4

5  THE PEOPLE OF THE  )
    STATE OF ILLINOIS  )
6                 )
                 )
7      VS           )  Indictment No.  10 08092
                 )
8                 )  Charge:  Eavesdropping Without
    ANNABEL MELONGO    )             Consent
9

10             REPORT OF PROCEEDINGS

11      BE IT REMEMBERED that on the 10th day of November

12  A.D., 2011, this cause came on for hearing before the

13  Honorable STEVEN J. GOEBEL, Judge of said court.

14      APPEARANCES:

15           HON. ANITA M. ALVAREZ,
           State's Attorney of Cook County, by:
16          MR. ROBERT PODLASEK,
           Assistant State's Attorney,
17            appeared on behalf of the People;

18          MS. ANNABEL MELONGO,
           appeared pro se.
19

20

21

22

23  Brenda D. Hayes, CSR, 084-001226
    Official Court Reporter
24  2650 S. California Ave.
    Chicago, Illinois  60608

                    PP-1

**PLAINTIFF'S DEPOSITION EXHIBIT**

19

PODLASEK
5-2-18 MR

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER        MELONGO_021796

1    THE CLERK:  Annabel Melongo.

2    MR. PODLASEK:  Judge, for the record

3  Robert Podlasek, spelled P-o-d-l-a-s-e-k, on behalf of

4  the State.

5    MS. MELONGO:  Annabel Melongo, pro se.

6    THE COURT:  She's pro se, she's representing

7  herself.

8    MR. PODLASEK:  Judge, this morning we filed a

9  Motion To Revoke Bond And Electronic Monitoring.  I'm

10  handing a copy to Miss Melongo.

11    THE COURT:  All right.  I'm going to give

12  Miss Melongo an opportunity to review that, as well as

13  myself.  We'll pass the case defendant.

14    THE DEFENDANT:  Okay.  Judge, I also have

15  actually filed my motion to dismiss the case so we have

16  an issue, we don't have like a heavy-duty stapler in the

17  entire building so I will need -- if you can give me an

18  emergency so that I can staple this thing.  Nowhere in

19  the law library --

20    THE COURT:  We can find one.  If you want to

21  file it, that's fine.  I see you have do have a metal

22  clip on it.

23    THE DEFENDANT:  You want it stapled.  I want to

24  staple it.

PP-2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_021797

1      THE COURT:  Well, I'm telling you you can file

2   it that way.  Okay?  So if you want to file it you can

3   hand it up to me right now.  Do you wish to file it?

4      THE DEFENDANT:  I would like --

5      THE COURT:  You're not going to file it.  Pass

6   it for the motion to revoke your electronic monitoring.

7   Have a seat and review it.

8      THE DEFENDANT:  Okay.

9                      (Other cases were called

10                     and heard.)

11     THE CLERK:  Annabel Melongo.

12     THE COURT:  All right.  Both sides are present.

13     THE DEFENDANT:  Okay, Judge, like I say I

14  received this motion actually less than an hour ago so I

15  would need time to respond to it because everything

16  stated is kind of false.  I have the documents and I need

17  to answer to the motion and attach those documents.

18         Yesterday I actually received this letter

19  from the EM program, it was addressed to me.  It say I'm

20  in good standing, there's no violation.  So they say I

21  violated the EM program and I need the document to attach

22  to this.  This is the letter, they asked me to give it to

23  you.

24     THE COURT:  Well, they're saying you violated

PP-3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021798



```
 1   not because of anything specific to the monitor, they're
 2   saying you took a file from your former attorney.
 3           THE DEFENDANT:  Judge, I cannot argue the
 4   motion now.  I really need to -- because I need to order
 5   the hearing because Mr. Albukerk is accusing me of
 6   stealing a file that belonged to me so I have to order
 7   the transcript of the court hearing and attach it to my
 8   motion replying to this motion.  I really need two weeks
 9   to reply to this motion.
10           THE COURT:  All right.  Well, the issues seem
11   to me to be something can you address now.  They are
12   simple issues and you can address them and we're going to
13   have a hearing today.
14           THE DEFENDANT:  Okay.  You said the question is
15   not unauthorized movement, right?
16           THE COURT:  Well, what's alleged in the
17   petition is that you took a file from Mr. Albukerk's
18   office and it was outside of my order is what's alleged.
19           THE DEFENDANT:  I have an e-mail exchange with
20   Mr. Albukerk on the file and the I have also a document
21   allowing me to go to Albukerk's place from the EM, I have
22   that document too.  And I don't -- This one took me by
23   surprise.  I don't have those documents with me and
24   that's why I need to reply to the motion and attach those
```

PP-4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021799

1   documents with me.

2           THE COURT:  All right.  Mr. Podlasek.

3           MR. PODLASEK:  I talked to Officer Clark at

4   Women's Monitoring this morning, about a half hour ago.

5   She indicated after looking at Miss Melongo's file that

6   she does not have any orders in there allowing her to

7   travel anywhere except your order of October 13th.

8           THE DEFENDANT:  That's not true, Judge.  That's

9   not true.  This is a document I received yesterday saying

10  that I'm in good standing.  If they had an unauthorized

11  thing that I do it would have been there.  It was signed

12  yesterday around 2:00 o'clock and the incident that's

13  addressing happened Monday.

14          MR. PODLASEK:  Between 3:30 and 4:30 I'm told,

15  Judge, at 1450 West Randolph, which as you know is not

16  the Daley Center, not the law library.

17          THE DEFENDANT:  And that's why I say I have the

18  document allowing me to go to Nick Albukerk's place, I

19  have that document.  The order, the EM order, say I have

20  to follow your condition and I also have to follow their

21  condition so if they granted movement I have to, those

22  are movements they grant to me, that's what the EM order

23  say.

24          THE COURT:  And you have -- What is it, an

PP-5



1    e-mail or what do you have?

2         THE DEFENDANT:  To refute this e-mail, Albukerk

3    is accusing me of taking a file, stealing a file from him

4    and I have the e-mail exchange where he actually lured me

5    go to his office because I told him, come, let's meet at

6    the Daley Center.  He said he didn't have time, I have to

7    go to his office and I have that e-mail and I also have

8    the document, the EM letting me -- giving me permission

9    to go to Albukerk's place and I also have proof to show

10   that the file that he's actually accusing me of stealing,

11   you cannot accuse somebody of stealing something that

12   belong to them and I didn't even steal it.  Actually the

13   file has a note saying copy file, give to Annabel

14   Melongo.  I have that note and it's in my house.  I'm

15   going to attach everything to the exhibit.

16        THE COURT:  Is Mr. Albukerk here today?

17        MR. PODLASEK:  He's not.

18        THE COURT:  I'll tender that document to the

19   State as well so the State can make a copy of it and

20   tender the original back to Miss Melongo.

21        THE DEFENDANT:  So I will need two weeks

22   because I'm going to go --

23        THE COURT:  No.  I'm going to give you until

24   Monday.

PP-6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021801

1    THE DEFENDANT:  Until Monday?

2    THE COURT:  Yes.

3    THE DEFENDANT:  I need to order the transcript

4  because Albukerk says the file belongs to him and we can

5  only have evidence what happened during the court hearing

6  that the file belonged to me and has to be given to me so

7  I need to order that transcript.

8    THE COURT:  The transcript has nothing to do

9  with the hearing.

10    THE DEFENDANT:  Okay.  That's fine.

11    THE COURT:  November 14th, Monday.

12    THE DEFENDANT:  Okay.  Come Monday?

13    THE COURT:  This Monday.  By agreement,

14  November 14th.  We're going to have a hearing on that

15  date.  Bring all your documents.

16    THE DEFENDANT:  Okay.  I'll do that.

17    THE COURT:  Here's your original report.

18    THE DEFENDANT:  Thank you, Judge.

19

20                    (The above-entitled matter

21                     was continued to

22                     November 14, 2011.)

23

24

                          PP-7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021802

```
 1   STATE OF ILLINOIS )
                       )       SS:
 2   COUNTY OF C O O K )

 3

 4              IN THE CIRCUIT COURT OF COOK COUNTY
                COUNTY DEPARTMENT-CRIMINAL DIVISION
 5

 6        I, BRENDA D. HAYES, Official Court Reporter for

 7   the Circuit Court of Cook County, Cook Judicial Circuit

 8   of Illinois, do hereby certify that I reported

 9   stenographically the proceedings had on the hearing in

10   the above entitled cause; that I thereafter transcribed

11   said hearing into typewriting, which I hereby certify to

12   be a true and accurate transcript of the proceedings had

13   before the Honorable STEVEN J. GOEBEL, Judge of said

14   court.

15

16

17

18

19

20                             OFFICIAL COURT REPORTER

21

22

23

24

                          PP-8
```

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021803

# Exhibit 24

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

STATE OF ILLINOIS  )
                  ) ss:
COUNTY OF COOK  )

FILED
JUDGE STEVEN J. GOEBEL-1954
NOV 10 2011
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS)
                       )
      vs.             )     No. 08CR-10502
                       )           10CR-080902
                       )
ANNABEL K. MELONGO       )
                       )

<u>MOTION TO REVOKE BOND AND ELECTRONIC MONITORING</u>

     Now come the People of the State of Illinois, ANITA ALVAREZ,
State's Attorney of Cook County, through her Assistant, Robert
Podlasek, and move that this Honorable Court revoke defendant's bond
and electronic monitoring, in support whereof the People state that:

1.    Defendant, Annabel K. Melongo is charged in case number
     08CR-10502 with three counts of computer tampering.

2.    While on bond in case number 08CR-10502 the defendant,
     Annabel K. Melongo committed the offense of eavesdropping.

3.    Defendant, Annabel K. Melongo's bond was increased by Judge
     Brosnahan on or about May 20, 2010 and she was taken into
     custody.

3.    On October 13, 2011 this Honorable Court issued an order
     for electronic monitoring and defendant was release from
     Cook County Jail. This order specifically allowed defendant
     to travel to the Cook County Law Library on Mondays between
     10 a.m. and 3 p.m.



PLAINTIFF'S
DEPOSITION EXHIBIT
PODLASEK 17
5-27-18   mR

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

4. On November 7, 2011 defendant, Annabel K. Melongo travelled
to the law offices of her former attorney, Nicolas Albukerk.
At that time defendant took a file without permission of
Mr. Albukerk. When contacted by Mr. Albukerk who requested
that she return the file defendant refused.

5. Defendant, Annabel K. Melongo has intentionally violated
this Court's order of October 13, 2011 by travelling to
a location outside the scope of the order and for committing
a theft by intentionally removing property from her former
attorney's office without permission.

Wherefore, the People pray that this Honorable Court revoke
defendant's bond and electronic monitoring.

Respectfully submitted,
ANITA ALVAREZ
State's Attorney of Cook County

By: _____
Assistant State's Attorney

# Exhibit 25



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Classification Transfer Form

DATE: _10, Nov. 2011_     TIME: _13:20_

INMATE'S NAME: _Melongo, Annabel_   ID # _20100414060_

TRANSFERRED FROM DIV: _17_    TRANSFERRED TO DIV: _RCDC_

RATIONAL FOR THIS ACTION (IF KNOWN): _subject in violation_
_of rules & Regulations w/ SWJP. (Subject took_
_file from State Attorney's office)_

COMMENTS: _____

_____

_____

EX-OPS NOTIFIED: OFFICER: _____ TIME: _____

ACTION AUTHORIZED BY: _____

OFFICER'S SIGNATURE: _Cotto_    STAR #: _2007_

SUPERVISOR'S SIGNATURE: _____    STAR #: _1175_

This document must be forwarded to Lt. S. Janus, RCDC Unit Commander

☐ Remain Indefinitely

☐ Remain Until: _____

☐ Be Separated From: _____

____APPROVED       _____NOT APPROVED

PLAINTIFF'S DEPOSITION EXHIBIT
PODLASEK 20
5-2-18 mr

SHERIFF 00206

# Exhibit 26

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# PERMISSION FOR MOVEMENT
## 1-877-326-9198

| | |
|---|---|
| DATE COMPLETED: 11/2/11 | (Submit 72 hours before movement is needed) |

PARTICIPANT'S NAME: Annabel Melongo   CURRENT PHASE: 1   DOC # 2010-0414060

PARTICIPANT'S HOME ADDRESS: 4020 W. 105th, Oak Lawn, IL 60453

DATE OF MOVEMENT: 11/7/11    TIME OF APPOINTMENT: 9:00

TYPE OF MOVEMENT: O Emergency.   X Appointment   (Check one)

LENGTH OF MOVEMENT:   FROM: 9:00   TO: 7:00

*NOTIFY SWJP IMMEDIATELY IF APPOINTMENT CHANGES OR RUNS PAST SCHEDULED TIME!!!!!*
*ALSO, BRING VERIFICATION/PAPERWORK AS PROOF OF MOVEMENT!!!!!!!!!!*

ADDITIONAL SPECIAL INSTRUCTIONS FOR PARTICIPANTS:

Law library - Court mandate

REASON FOR MOVEMENT: Researching and Working on own case

ADDRESS/LOCATION OF MOVEMENT: Law library at the Daley Center

PERSON TO CONTACT:

PHONE NUMBER FOR VERIFICATION OF MOVEMENT:

***IF YOU HAVE ANY QUESTIONS CALL SWJP AT 877-326-9198   (FAX : 773-674-3962)***

I Annabel Melongo authorize the Sheriff's Women's Justice Program to verify the above appointment(s) and to follow up with the provider. This consent is given for as long as I am in the program. Staff may discuss any information necessary for me to be successful in the treatment process.

| | |
|---|---|
| PARTICIPANT'S SIGNATURE: | DATE: 11-02-2011 |
| STAFF SIGNATURE VERIFYING MOVEMENT: Lea Pagels | DATE: 11-2-11 |
| SUPERVISOR SIGNATURE: | DATE: |
| STAFF SIGNATURE ENTERING MOVEMENT IN SYSTEM: | DATE: |

cc: (1) Movement Book    (2) Participant

APPROVED _____    DENIED _____

REASON FOR DENIAL

Exhibit

# Exhibit 27

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Sheriff's Women's Justice Programs
### STATUS REPORT OF TREATMENT PROGRESSION

| To: Honorable Judge Goebel | Client Name: Annabel Melongo | CCDOC Number: 2010-0414060 |
|---|---|---|
| Court Date: 11/10/2011 | Custody Date: 04/14/2010 | D.O.B: REDACTED |

| Current Program: ☒ Sheriff Female Furlough Program  ☐ Residential Program - Division 17 |
|---|
| ☐ Mom's Program   ☐ B.A.M.S. |
| Admission Date To Program: 10/20/2011 | Discharge Date: Pending |
| Number of Days In Treatment: 22 days | |

| Urine Screen: # Positive- 0    #Negative-    Date of last urine screen: 10/20/2011  ☐ pos.  ☒ neg. |
|---|
| If positive what drug: |
| Primary Diagnosis:                                    Secondary Diagnosis: |

**Recommendations:**

The Cook County Sheriff's Women's Justice Program (SWJP) provides women with a gender responsive integrated model of treatment that empowers them to use healthy coping skills for on-going recovery. The women are empowered to break the cycle of addiction through group and individual treatment services that are trauma informed and focus on substance abuse and mental health needs as well as criminal thinking.

Ms. Melongo was admitted to the Sheriff Female Furlough Program on 10/20/11 and has completed 22 days in our program. She has been an active participant and appears to be responding well to treatment offered to her. Currently, she is participating in the following groups: Stress Management, Maladaptive Thinking, Community Re-Entry, Self-Esteem, Prostitution Anonymous, Coping Skills, Women's Health, Domestic Violence, 12-Steps, Life Skills, Women and Relationships, Yoga, and Expressive Therapy. Ms. Melongo stated she is currently looking for employment opportunities.

The clinical team recommends that upon discharge, Ms. Melongo continue to participate in outpatient treatment in the community, as well as seek out additional community support. She will continue to be eligible for aftercare services at our Empowerment Center.

*Exhibit 5*

*Additional questions-please contact Tange Porter Court Liaison:*
*Phone: (773) 674-2719    Fax: (773) 674-5252*

| Counselor Signature, Credentials: | Date Prepared: 11 9 11 |
|---|---|
| Supervisor Signature, Credentials: LCSW | Date Prepared: 11-9-11 |

7-21-11-revised