# Exhibit 56

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

*carol*

**Subject:** FW: State Atty - Annabel case

**From:** carol [mailto:cspizzirri@salf.org]
**Sent:** Thursday, August 28, 2008 8:43 AM
**To:** 'DiCianni, Thomas'
**Cc:** 'Monroe, Susan'; dneal@salf.org
**Subject:** State Atty - Annabel case

Spoke with Illinois State Attorney Robert Podlasek Special Prosecutions Bureau on Cyber Crime who's the prosecutor against Annabel - She's fired 5 atty's already including public defenders - Judge is MAD and wants her prosecuted! Podlasek asked us fax all our invoices related to Annabel/Robert Half so he can increase her charges from class 2 to class 1 for more JAIL TIME and please the Judge who intends to use our case to create laws. Additionally Podlasek has been wk'g with Schiller Pk Police Det Bill Martin (Cyber Crime Unit Director) and David Haslett Bureau Chief, High Tech Crimes Bureau Illinois Office of the Attorney General on Annabel's case.

We just discovered, that Up till a few wks ago Annabel has had access into our server - (have evidence) - which Martin has been monitoring from his Dept computer. We had no clue here what was going on with our system until our IT vendor discovered it. Judge issued Martin a subpoena for AT&T to release all doc's related to our DSL/now Static line to our mainframe which Martin has forward to Podlasek to amend felony charges to 4counts. Possible, charges could be brought against Robert Half. We'll see.

*Podlasek said SALF's name is circulating within AG/State Atty and Judges' chambers how we've been abused and they all want to help - Podlasek fax the current Annabel case (I'll fx'd) and as soon as case is complete, they plan on issuing press release.*

Carol

Carol J. Spizzirri, Pres/Fndr
Save A Life Foundation
O'Hare Aerospace Ctr.
9950 W. Lawrence Ave. Ste #300
Schiller Park, Illinois 60176
847-928-9683
847-928-9684 fx
847-366-1124 cell
cspizzirri@salf.org
www@salf.org

This e-mail and its attachments may contain Save A Life Foundation, Inc. proprietary information, which is PRIVILEGED, CONFIDENTIAL, or subject to COPYRIGHT belonging to Save A Life Foundation, Inc.. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, or that any dissemination, distribution, retransmission, copying, or other action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email and any printout. All transmissions, either via email or telephone, may be recorded and/or monitored. To the extent that opinions are expressed in this message, they are not necessarily the opinions of the Save A Life Foundation, or any of its other affiliates, employees, directors, or officers. Thank you!

9/18/2008

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 002195

PLAINTIFF'S
DEPOSITION EXHIBIT
40
PODLASEK
5-2-18 AB

# Exhibit 57

**From:** Bill Martin [mailto:bmartin@villageofschillerpark.com]
**Sent:** Wednesday, February 10, 2010 12:28 PM
**To:** 'CS' <CS@Probelle.net>
**Subject:** RE: Spoke with Podlesak

Carol,

I won't be in the office until 1 PM on Friday. Unfortunately Thursday is no good. I'm tied up with other cases. Sorry.

Det. William Martin
Schiller Park Police Dept.
(847) 671-8539 Direct
(847)671-9465 Fax



This electronic message transmission contains information from the Schiller Park Police Department that may be proprietary, confidential and/or privileged. The information is intended only for the use of the individual(s) or entity named above. If you are not the intended recipient, be aware that any disclosure, copying or distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify the sender immediately by replying to the address listed in the "From:" field.

**From:** CS [mailto:CS@Probelle.net]
**Sent:** Tuesday, February 09, 2010 9:40 PM
**To:** 'Bill Martin'
**Subject:** Spoke with Podlesak

My Dearest Friend:
Always wonderful and reassuring talking with YOU! You'll always be my hero – Bob updated me on progress from his perspective – What's the name of that State Atty who's your hero? Bob's call was coming in on other line/I should have asked you again.

You know I'm writing a book about this – will leave a chapter just for you ;-) Going to better seller then that Peter Heimlich one – I won't forget to include Goudie's role ;-)

Is Friday morn about 11am good to stop by? - Unexpected mtg Fri at 2:30pm unless Thursday afternoon is better?

Give a kiss to baby – did you say you needed to take him to doc? Hope/pray all's well on your side....
Carol

C. Spizzirri



SPIZZIRRI000001091

Probelle Interlink
P.O. Box 672
Gurnee, Illinois 60031
CS@Probelle.net
847-984-2917 office
847-366-1124 cell

No virus found in this incoming message.
Checked by AVG – www.avg.com
Version: 9.0.733 / Virus Database: 271.1.1/2678 - Release Date: 02/09/10 13:35:00

# Exhibit 58

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** CS [CS@Probelle.net]
**Sent:** Thursday, June 17, 2010 11:20 PM
**To:** Gunnigle, Julie;Podlasek,
Robert;jonathan@jonathankatz.org;wistockir@naperville.il.us;matthew.bettenhausen@ohs.ca.gov;Martin', 'Bill
**Subject:** Lady & Gentlemen! Cyber Resource Concept introductions

Each of you have a gigantic amount of expertise in this new and growing war against Cyber Terror. Your input is vital in creating a seamless system, while enforcing existing and future laws and keep the internet safe from perpetrators who work from their basement workshops. Rich would you'd take the lead to orchestrate a date/time for a conference call?

Det. William (Bill) Martin Cyber Unit Schiller Park Police, IL bmartin@villageofschillerpark.com

Det. Rich Wistocki Cyber Unit Naperville Police, IL wistockir@naperville.il.us

Jonathan Katz, American Defense Enterprises, LA, CA jonathan@jonathankatz.org

Matt Bettenhausen, Office of Homeland Sec. CA. matthew.bettenhausen@ohs.ca.gov

Cook Co., IL Assist State's Attorney Prosecutor Robert Podlasek rpodlasek@cookcountygov.com

Cook Co., IL Assist State's Attorney Prosecutor Julie Gunnigle jgunnigle@cookcountygov.com

Jonathan has offered to sketch a business plan and write a federal grant and I will let him explain his expertise.

My adopted son Bill's Cyber tracking expertise is priceless

Rich is considered the Guru in anti Cyber Terror and made suggestions on recruiting other notables.

Bob and Julie are experts in the legal aspect of Cyber Terror and soon to be recognized nationally

Matt created CA's Homeland Security that can't be matched to any other state

Below is the link to RCFL – federal version of what we're about to create at the local/state level.

http://www.rcfl.gov/index.cfm?fuseAction=Public.P_locations



PLAINTIFF'S
DEPOSITION EXHIBIT

MARTIN 41    5-8-18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Thank you,

Carol

C. Spizzirri
"Take A BYTE out of Cyber Crime"
Probelle Interlink
P.O. Box 672
Gurnee, Illinois 60031
CS@Probelle.net
847-984-2917 office
847-366-1124 cell

# Exhibit 59

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CYBER CRIME MEETING    (2/24/09)

                                         ph
Carol Spizzirri      847-366-1124        carol.spizzirri.litso@gmail.com
REP Lou LANG          847-673-1131       ReplouLang@aol.com
SGT. DARYL BERNARD   (708)865-6376       dbernard@cookcountygov.com
Sgt. Jim Hennelly     708-865-6188       JHENNELLY@CookCountygov.com
STEVE WERNIKOFF       312 960 5630       swernikoff@ftc.gov
Jim Dodge             217/782-4218       j'dodge@senatedem.ilga.gov
MARK WARNSEL          217/782-0024       nwarnsel@senategop.state.il
Joshua Orenstein      312/814-4987       jorenstein@atg.state.il.us
Dave Haslet           312 814-6121       dhaslet@atg.state.il.us
Cara Smith            312-814-5526       csmith@atg.state.il.us
mike Hood             312.814.5376       mhood@atg.state.il.us
Fran E. Laketek       847-705-1776       F.E.L. Services inc
Rita L. Mullins       847-754-0009       rita@ritamullins.com
Jill Zwick            312-793-8876       jzwick@ilsos.net
Kareem Kenyatta       312-814-3838       kkenyatta@atg.state.il.us
Kathryn Saltmarsh     217-782-9054       ksaltmarsh@   "   "   "   "
Robert Podlasek       773-869-5428       pm1973@aol.com/RPodlasek@
                                                          cookcountygov.com
Al Rep Dan Burche      773471-2299       illhouse@aol.com
St. Rep. Skip Saviano  708-453-7547      Skip@Skip Saviano.com

PLAINTIFF'S
DEPOSITION EXHIBIT
PODLASEK 46
5-2-18 MR

# Exhibit 60

From: Carol Spizzirri [mailto:cjeans@litcomg.com]
Sent: Tuesday, November 17, 2009 6:59 PM
To: 'Robert Podlasek' <rpodlasek@cookcountygov.com>
Cc: cjeans@LitcoMG.com
Subject: RE: Det Martin
Importance: High

Good Morning Bob:  I'm requesting present to you a "Victim's Impact Statement"
against Annabel.

Additionally I request charges of Cyberstalking be brought against her - I
received three emails related to her blog, several prior and you have charges
against her already for having access to and tampering with my personal emails.

Under:

   720 ILCS 5/12-7.5)
     (Text of Section from P.A. 96-328)
     Sec. 12-7.5. Cyberstalking.
     (a) A person commits cyberstalking when he or she, knowingly and without
lawful justification, on at least 2 separate occasions, harasses another person
through the use of electronic communication and:
         (1) at any time transmits a threat of immediate........

Shall I file a police report?

Carol


-----Original Message-----
From: Robert Podlasek [mailto:rpodlasek@cookcountygov.com]
Sent: Friday, November 13, 2009 11:33 AM
To: cjeans@litcomg.com
Subject: Re: Det Martin

Carol,

Melongo took a 12/8/09 date for her next court appearance. I will call Det.
Martin as soon as I finish my response to her motion to dismiss.

Bob

>>> "Carol Spizzirri" <cjeans@litcomg.com> 11/13/09 9:26 AM >>>
Hello Bob: Spoke with Det Martin - he did call and left several messages -
you can call him at 847-671-8539 cell.


Related to our conversation - I spoke with a close friend at Center for Disease
Control - they  may have a source of for Behavioral Science Research in Violence
Prevention - Cyber/Internet behavior.



PLAINTIFF'S
DEPOSITION EXHIBIT
SPIZZIRRI 23
5-11-18

Let me know if someone is interest

Carol

Carol J. Spizzirri

Litco Municipal Group

P.O. Box 65

Palatine, IL 60078

847-366-1124

CJeanS@LitcoMG.com


No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 9.0.707 / Virus Database: 270.14.63/2500 - Release Date: 11/13/09
01:54:00

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 9.0.707 / Virus Database: 270.14.69/2508 - Release Date: 11/17/09
13:26:00


**From:** CS [mailto:CS@Probelle.net]
**Sent:** Sunday, February 21, 2010 12:40 AM
**To:** 'Bill Martin' <bmartin@villageofschillerpark.com>

SPIZZIRRI000001069

# Exhibit 61

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** CS [CS@Probelle.net]
**Sent:** Thursday, May 13, 2010 2:53 PM
**To:** Gunnigle, Julie;Podlasek, Robert
**Subject:** Annabel-Blackberry

Hello Robert and Julie:

I've complained my Blackberry emails disappeared prior to the arrest of Annabel and since non have disappeared. I explained this to Blackberry, who created a case file #20439471 - phone # REDACTED attention Ameekul – who directed me to contact my Host "Blue Host", and they'd work with them.

I did, discovering they keep emails for 3 months(90 days) and have agreed to work with you & Blackberry if you forward a subpoena to

legal@bluehost.com or by mail Blue Host Inc 1958 S. 950 East Provo UT 84606 %Legal Department

I explained, Annabel had access/passwords to SALF's emails (which you have in evidence) Ameekul @ Blackberry said she must still have and could have intervened the Blackberry since the phone/blackberry is the same.

I will stop by Monday to discuss addition information and get your input.

Warmest regards
Thank you

Carol Spizzirri



PLAINTIFF'S
DEPOSITION EXHIBIT

SPIZZIRRI 23
5-11-18

# Exhibit 62

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Fax

| | | | |
|---|---|---|---|
| **To:** | Barry Goldberg -Assist AG | **From:** | Carol Spizzirri |
| **Fax:** | 312-814-2598 | **Fax:** | 847-984-2917 |
| **Phone:** | 312-814-2524 | **Phone:** | 847-984-2317 |
| **Date:** | 6/11/2010 | **Pages:** | 8 |

**Subject:** Robert Half International IT Temps Rodriquez & Melongo

**Notes:** My Cell 847-366-1124

MELONGO V. PODLASEK, ET AL., 13 C 4924
CCSAO 007793

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Carol J. Spizzirri, fmr Pres/Fndr
Save A Life Foundation
P.O. 672
Gurnee, Illinois 60031
847-366-1124 cell
847-984-2917

Friday, June 11, 2010

Assistant Attorney Barry Goldberg
Illinois Attorney General Lisa Madigan
100 West Randolph Floor 11th
Chicago, IL 60601

Dear Mr. Goldberg,

Per your request for a series of events resulting from subcontracting Information Technicians (ITs) of
Office Team/Robert Half International (RHI) to service Illinois based Save A Life Foundation's (SALF) 501
c 3 (████████████) computer mainframe server, that alimentally resulted in the arrest by Schiller Park
Police Cyber Unit and prosecution of Annabelle Melongo, No. 08 CR-10502 by the Cook County State's
Attorney for Computer Tampering, and the closure of SALF, (a timeline follows).

In good faith SALF signed a contract with Office Team/RHI for placement of their IT Victor Rodriquez
October 17, 2005. He was given the computer passwords to conduct his service, which he used to
change to his own, locking SALF out, then refusing to provide the new codes unless SALF provided him
with full time employment. When SALF reported this extortion to RHI, they sent a number of their own
technicians to break in our system.

Weeks later their Technicians broke into the mainframe but were unsuccessful in breaking into most of
SALF's network computers. December 2, 2005, RHI assigned Annabel K. Melongo, with the assurance
she was their top technician and would complete the remainder of the network lockout created by
Rodriquez.

By mid January, 2006 Melongo was still unable to break the codes and concern were brewing within
SALF of her merit. SALF was paying RHI a substantial weekly sum for Melongo yet nothing was
transpiring. Fearful she'd mirror Rodriquez's sabotage, SALF asked RHI to replace her with another
technician, without notice, so not to be placed in jeopardy. RHI agreed.

The morning of April 23, 2006 SALF's employees found their computers/mainframe completely empty and
called Schiller Park Police, Cyber Unit Det. William Martin. He worked with SALF's Host WebHSP,
discovering Melongo had accessed the mainframe then downloaded all SALF data and files through the
DSL during the night. They traced her footprints to her home in Palatine where Martin arrested her and
confiscated her computers with SALF's data still in tack. Martin's brief background check revealed
Melongo has a history of Cyber revenge, by uploading pornographic pictures onto a MO University
Professor computer and stealing files, hoping he'd be arrested. She's here on a student Visa from
Cameroon, but couldn't find a work Visa.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Carol J. Spizzirri, fmr Pres/Fndr
Friday, June 11, 2010
Page 2

SALF contracted Computer Forensics Recovery Teams who recapture about 50% of the data, invoicing SALF +$200,000. Computers were destroyed and down time was extensive. During the Recovery, no one spotted that she had made herself the System Administrator, so after her release on an I Bond, she had access to the server, causing additional damage to SALF's reputation, (goes on to date) leading to her re-arrested two months ago, 1 million Bond, awaiting trail.

Throughout this ordeal SALF employees and I had direct communications with RHI Recruiters, by phone, email and in person. I personally spoke with RHI CEO Harold M. Messner, Jr Secretary Linnea Sloan who asked for our experience in writing. That they then turned over to their council Joel H. Kaplan Seyfarth Shaw LLP in Chicago.
SALF contracted its own council Tom Dillion who received an off by Kaplan for $12,000 with the stipulation SALF would drop any claims against them for Annabelle Melongo, SALF refused. Dillion was reluctant to peruse filing a law suit against RHI so we reached out to Tom DiCianni, Ancel, Glink, Diamond, Bush, DiCianni, Kraftherfer, P.C who requested a retainer of $10,000, for a few letters. He did not file a law suit and eventually fell back unless we gave him more money. By this time SALF was forced to close due to the lack of resources.

Trying to recoup some of our losses to remain open, I contacted Mr. Kaplan by email who refused to discuss unless I had council. Since that date, I've been searching for an attorney to take this on contingency without success. Today a friend suggested contacting you.

I'm aware this was a contractual agreement between RHI/Office Team and SALF. There is a 5 year window to file against RHI. That window comes due April 23 2011. I have support documents to match the attached timeline that apparently proved helpful for the DA.

Nothing will bring back SALF and the good work our Emergency Medical Service providers did for the children of Illinois. I'd like to showcase this tyranny, in conjunction with the criminal case, to alert other corporations from falling victim to extortion or sabotage by temporary placements who have access to sensitive documents and use the internet and computer system to destroy. And require Temporary Agencies to acquire background and Work Visa checks before placement. I've discussed this with AG Madigan who concurs.

I'm truly grateful to Attorney General Madigan, State's Attorney Alvarez who've invested the manpower, resources, outside forensics and special training over these years to convict Melongo. Cyber Terror can only be controlled by those interested in apprehending the perpetrator and setting precedence for our judicial system to base their rulings and these two women are setting the pace.

Sincerely,

Carol Spizzirri fmr Pres/Founder
SALF


Please give my regards to John Finnegain and Elaine Johnson

# Exhibit 63

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** Cjean [snowy@probelle.net]
**Sent:** Monday, August 23, 2010 4:43 PM
**To:** JULIE GUNNIGLE (States Attorney)
**Subject:** Reporter inquiry on Annabel

Hello Julie and Bob-I miss you guys – hope all is going well. How's the little one Julie?

Still live in fear, with nightmares of the unknown. Every day there is something – Now a Jack Kennedy – claims to be reporter for LaDel News Service – 412-334-2443 – called several times – wants to interview me reg: "Annabel Melongo's wire tampering/computer thief case". Call went into voice message but plan to make no comment but to refer to you...caller could be Peter Heimlich.

Also, my cell # is posted on internet connected with case – appears Gordy Pratt's responsible. I'll need to change my phone now....will call w/# when I do.

I'm wearing out – when can I be a human again?

Has Bob found an Attorney referral for me? Been looking around myself. No one believes this....I'm really desperate – can you help me?

Read of case your colleagues are prosecuting – Judge ordered all (websites/related) to be taken down – Can you make this possible in this case too? (After the trial of course - as we discussed).

I need some vindication.

http://www.worldcantwait.net/index.php/home-mainmenu-289/6593-high-stakes-trial-august-24-attacked-by-police-videographer-faces-3-years-in-jail

Warmest
Carol



PLAINTIFF'S
DEPOSITION EXHIBIT

SPIZZIRRI 25
5-11-18

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 09185

# Exhibit 64

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Carol J. Spizzirri
CS@probelle.net
November 25, 2010

Chicago Tribune
Ms. Lisa Black, Reporter
616 Atrium Drive Ste 200
Vernon Hills, Illinois 60061

Re: Exclusive story – State vs Melongo

Dear Ms. Black:

I hope you've been well and had an enjoyable Thanksgiving. I'm writing you in light of recent articles published about Save A Life Foundation (SALF) and the trial now scheduled for mid-December, "State of Illinois County of Cook against Annabel K. Melongo"(Exhibit #1).  Since early 2006, I was directed by IL State's Attorney Special Prosecutor Robert N. Podlasek and Assist. State's Attorney Julie Gunnigle, not to reveal nor counteract to any remarks made against SALF so not to jeopardize their case against Ms. Melongo and co-conspirators. The success of this case will set national precedence against Cyber Crime by the Cook County State's Attorney.  They also advised me to take protective measures for my safety. The recent San Diego Review article made it necessary to again relocate.

Prior to Ms. Melongo's arrest, she established herself as SALF's Network Account Originator, allowing her free access to passwords and its website till 2008 (Mercury Consulting).  This is demonstrated by numerous SALF postings on blogs and websites and may have been a contributing factor to my Blackberry being compromised (Exhibit #1).  Since her initial arrest Ms. Melongo was rearrested and jailed for Wire Tampering last March.

Unfortunately SALF, its associates and thousands of children have suffered by those with personal agendas who've vowed to destroy Dr. Heimlich, myself and the Foundation (re-illustrated by Edward Patrick M.D. vs Cleveland Scene Publishing and Robert Kraft's response for Chicago Tribune reporter Julie Deardorff (Exhibit #2). Peter Heimlich's mother "Jane Heimlich" (wife of Dr. Henry Heimlich) is the heir to the Arthur Murray Dance Studio fortune, which Peter believes SALF had benefited from.

It gravely saddens me to enclosed unflattering, family only, documents to counter falsified accusations and perjured affidavits posted by those wanting to draw attention away and clear charges against Melongo (Exhibits #3 and #4), not limited to the Illinois Attorney General gave SALF $25,000 (Lakeland Press January, 1998).

Each perpetrator has a history of stalking their victims, even for financial gain (Exhibit #4). The use of the internet has allowed them to excel and legitimizes their terror, weakening the true sense of "Freedom of Speech and Professional Journalism".

Due to your reputation in thoroughness in seeking the truth, I'm willing to share additional information by email.

Sincerely,
Encl.
Cc: Robert N. Podlasek & Julie Gunnigle Assist State's Attorney



PLAINTIFF'S DEPOSITION EXHIBIT
SPIZZIRRI 27
5-11-18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Exhibit #1   Annabel K. Melongo - COMPUTER – WIRE TAMPERING - Save A Life Foundation

    A.    Case HTCB-06-01-1028 and Case 08 CR-1502
    B.    Blackberry Customer Support email – compromised unit

Exhibit #2   Co-conspiracy

    A.  Edward Patrick, M.D. Case #05-CV -2791 – Jim Bentley/Peter Heimlich
    B.  Robert Kraft – to Chg Tribune  Julie Deardorff
    C.  Law Office of Malcom P. Chester  - Dr. Silberglitt to Fabricated Affidavit of Gordon Thomas Pratt
    D.  Chg Tribune & Sun Times – conflicting coroner and police reports
    E.  Lakeland Press article – IL Atty. Gen $25,000 question

Exhibit #3   Extortion Polite to vacate criminal charges against Christina Pratt Spizzirri by Laurie Haubeck
creating Order of Protection against Carol Spizzirri

    A.  Order of Protection 92F487
    B.  Gen # 92F987 OP Vacated
    C.  Lake County Sheriff Report – Carlotta Pratt/Spizzirri & Desiree Irwin
    D.  Staben and Kopsick P.C.  vacating  Criminal Charges and OP
    E.  Neuropsych
    F.  Forest Hospital
    G.  Falsified Vehicle Registration of 87 Pontiac #1G2NV11L1HC817448
    H.  Henderson & Henderson Attorney at Law – Christina's  death benefits
    I.  Highland Memorial Park –police watch of Christina Pratt/Spizzirri's grave

Exhibit #4  Order of Protection Case # 656-244 Spizzirri vs Pratt

    A.  Case # 2952
    B.  City of Franklin Wisconsin Police Reports
    C.  Chernov, Croen, Stern S.C.
    D.  Notarized Letter – Carol Chmielewski

    A.  Lavelle, Motta, Klopfenstein & Saletta, Ltd
    B.  Aid Association for Lutherans check to Gordon Pratt – life insurance of Carlotta Pratt

Exhibit #5  Wisconsin vs Gordon T. Pratt as to Estate of Louis A. Marsho

    A.  Case #2mm7PR000332 – Family Estate - Susan Rosenow's (fmr Santoro) Uncle
    B.  Rosenow Esq. Fax to Carol Spizzirri

# Exhibit 65

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Carol Spizzirri
1930-285 W San Marcos Blvd.
San Marcos, CA 92078
760-298-3106

Sunday, March 27, 2011

**Confidential** – Reg: President Obama

Senator Donne E. Trotter
Illinois State Senate
8704 S Constance Suite 324
Chicago, IL 60617

Dear Senator Trotter,

I hope you and yours are well and in good spirits. I miss you and the others I considered Springfield
family including Senator Jones. I'm writing to alert you to a developing conspiracy against President
Obama by those associated with destroying the good name of Save A Life Foundation and anyone
associated with Dr. Henry Heimlich and myself.

The Cook County State's Prosecutors (enclosed) has scheduled her trial for April 5th, meanwhile she
remains in jail. They've been suspicious her acts were not unaided but unable to connect the dots and
directed I **not** disclose to anyone so not to jeopardize their case. They felt the co-conspirators would
eventually reveal themselves. It may have been revealed earlier by SALF's lawsuit against those
connected with the ABC's story, but the lack of resources forced us to dismiss the case so **not** to
compromise restricted funds.

There after, stalking and harassment intensified by anonymous sources against many friends in leadership
who alerted me i.e. Congresswoman Jan Schakowsky. We were not aware our website was being altered
and used against our stakeholders to endanger their career.

Many personal events prompted the State Prosecutors to propose I go undercover for safety, until the trial
was over. It was apparent the incarceration of this perpetrator caused panic among her co-conspirators
who intensified their actions to dismiss the charges before she goes to trail. By recruiting and duping
unsuspected bloggers and journalists, as Chuck Goudie, with fabricated, self composed documents so
they'd do negative stories thus swaying public opinion to free SALF's offender.

Recently and confidently the co-conspirators have revealed themselves. While probing the internet I
accidently discovered SALF's website was also captured and currently alive on another host (SALF's
Host took down our site July, 2009-confirmed by Schiller Park Police). It's being controlled and modified
by a co-conspirator who pasted a picture of President Obama (attached) adding a negative statement to
make it appear there were wrong doings between us and Secretary Arne Duncan. I took a photo because I
have limited computer skills.

From experience, this is their formative pattern in planting a seed, then contacting bloggers and other
media sources to allow them to publicize. They've been harassing Sec. Duncan and Congresswoman
Schakowsky for several years.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 2
Carol Spizzirri
March 27, 2011
Senator Trotter


Please feel free to contact Assistant State's Attorney Robert N. Podlasek Special Prosecutions Bureau **773-869-6283**. I commend State Attorney Anita Alvarez for her years of support and having both Mr. Podlasek and Assistant Julie Gunnigle who've been pillars, deserving the greatest accommodations. Additional gratitude is extended to AG's Cyber Unit and Schiller Park Police Det. Martin.

Please understand my secrecy in this matter.


My sincere and warmest wishes,


Carol Spizzirri

Cc: Robert Podlasek

# Exhibit 66

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Carol J. Spizzirri
1930-285 W. San Marco Blvd.
San Marcos, CA 92078

May 21, 2013

Office of the Attorney General
Brent D. Stratton, Chief Deputy Attorney General
100 West Randolph Street
Chicago Illinois 60601

**RECEIVED**

MAY 2 9 2013

**ATTORNEY GENERAL**

Dear Chief Deputy Stratton:

Please except my apology for the lateness of this letter. But may I/we now thank you for coming to our defense in response to State Senator Tim Bivins inquiry (enclosed). I've kept your letter close when times are most difficult. Instructed to remain mute "so not to jeopardize the case" by Assistant State's Attorney Robert Podlasek who assures justice will prevail. It's hard to fathom when the attacks are so vicious, these past 8 years, all posted on the internet, where your letter is.

My colleagues and I have followed these instructions giving the perpetrators full rein to fabricate stories in an attempt to sway public opinion and dismiss the case. Meanwhile, several have been re-re-indicted and re-re-convicted on several unrelated counts which has delayed a speedy trial for the original "Computer Tampering" case.

We remain grateful to Attorney General Lisa Madigan and State's Attorney Anita Alvarez in standing firm on prosecuting. Their Assistants, have been incredible, knowing this matter became short of life threatening, thus my exit to California. I and my colleagues owe a great deal to these men and women who are still being challenged.

But my personal and sincere appreciation goes to you for your public defense.

2012, I was placed in arms way after my whereabouts was exposed when the perpetrators created subpoenas, forging the signature of Cook County Clerk of Courts Dorothy Brown to obtain 6 years of my personal banking records/signature card. Before American Express complied Prosecutor Robert Podlasek intervened with a "Quash Motion". My current Congressmen Darrell Issa and Brian Bilbray contacted the U.S. Postal Inspector who volunteered his input but as the other officials connected to the case remain cautious so not to compromise it.

The great State of Illinois' law enforcement and judicial system have a difficult and growing task to uphold justice while being brutally attacked. We're confident a positive outcome will set national precedence to protect other companies and individuals attacked by Cyber Terror.

Sincerely,
Carol J. Spizzirri 847-393-6481 &
Mayor Rita Mullins 847-754-0009.

Cc Hon. Lisa Madigan and Hon. Anita Alvarez

AG-000179

# Exhibit 67

**French, Kyle**

| | |
|---|---|
| **From:** | Spillman, Daniel |
| **Sent:** | Wednesday, November 18, 2009 9:09 AM |
| **To:** | French, Kyle |
| **Subject:** | FW: Melongo |

-----Original Message-----
From: Spillman, Daniel
Sent: Monday, November 16, 2009 3:25 PM
To: French, Kyle
Subject: RE: Melongo

Set for December 8.

-----Original Message-----
From: French, Kyle
Sent: Tuesday, November 10, 2009 11:52 AM
To: Spillman, Daniel
Cc: Haslett, David P.
Subject: FW: Melongo

Let me know if you can cover it.

Thursday, 9:30 A.M.
Status Hearing
People v. Malongo (Defendant knowingly and without authorization accessed a computer and caused damage)
Note: Defendant Is Pro Se
Cook County ASA Bob Podlasek (rpodlasek@cookcountygov.com) 26th & California Judge Flood, Ct Room 704

AAG/SAUSA Kyle G. French
Office of the Illinois Attorney General
High Tech Crimes, Illinois ICAC Task Force 100 W. Randolph, 12th Floor Chicago, IL 60601
V: 312-814-1155
Fax: 312-8148283

-----Original Message-----
From: Robert Podlasek [mailto:rpodlasek@cookcountygov.com]
Sent: Monday, November 09, 2009 8:21 AM
To: French, Kyle
Subject: RE: Melongo

thanks Kyle. In the meantime I am responding to motion to dismiss indictment #?????. this time she accuses Det. Martin of committing perjury. Also we are now part of a website on Illinois corruption in full gloriously detailed misrepresentations. I will forward site to you separately.

Bob

>>> "French, Kyle" <kfrench@atg.state.il.us> 11/06/09 4:14 PM >>>
Bob,

I completed revising our discovery response. However, I am still waiting for our forensic experts to sign off on the procedures for producing the content of her hard drives. Upon approval, I will send it to you.

AAG/SAUSA Kyle G. French
Office of the Illinois Attorney General
High Tech Crimes, Illinois ICAC Task Force 100 W. Randolph, 12th Floor Chicago, IL 60601
V: 312-814-1155



PLAINTIFF'S
DEPOSITION EXHIBIT
FRENCH 23
4/5/18

3

# Exhibit 68

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

*OPEN CL*

# CL REPORT

| | | |
|---|---|---|
| **CL:** 100384 | **CASE NUMBER:** | **INV** |

**UNIT:** GOV & FIN CRIME                     **CHARGE:**
**ASA:** GUNNIGLE, JULIE/PODLASEK,       **RD:**                          **OPS CR:**
          ROBERT
**JUDGE:**                                           **AGENCY:**
**REQUESTOR:**                                  **SOURCE:**

**NOTE:**   TARGET WAS INDICTED FOR COMPUTER TAMPERING/INTRUSION IN CASE 08CR-10502. THE
CHARGES STEMMED FROM AN INCIDENT WHERE THE TARGET (AS A FORMER EMPLOYEE)
ENTERED THE COMPUTER SYSTEMS OF A NON PROFIT ORGANIZATION AND DELETED DONOR
LISTS AND OTHER DATA. WHILE THAT CASE IS PENDING MS. MELONGO HAS MAINTAINED A
WEBSITE DETAILING THE "CORRUPTION" OF THE ATTORNEY GENERAL'S OFFICE, OUR
OFFICE, AND THE COURT SYSTEM. SHE HAS BEEN CALLING THE COURT REPORTER'S OFFICE
AND (WITHOUT THEIR KNOWLEDGE OR PERMISSION) TAPED THE CONVERSATIONS. TARGET
THEN POSTS THE CONVERSATION TO THE SITE AS AN AUDIO FILE AND ACCOMPANYING
TRANSCRIPT. TO DATE, THERE ARE THREE CONVERSATIONS POSTED ONLINE AT
WWW.ILLINOISCORRUPTION.NET.

AN ADDITIONAL CONCERN WITH TARGET IS THAT SHE POSTS VAGUE THREATS ("HAS A BIG
SURPRISE IN STORE FOR THE COURT" ON THE NEXT COURT DATE) ON THE WEBSITE AND HAS
TOLD ATTORNEYS SHE WANTS "THE HEAD OF THE DOG PROSECUTOR" (PODLASEK). WE
HOPE TO HAVE ENOUGH TO ARREST HER BEFORE THE NEXT COURT DATE.

| SUBJECT | SUBJECT NAME | ATTORNEY | GANG |
|---|---|---|---|
| 01 | MELONGO, ANNABEL | PRO SE | |

**Place of Employment:**                                                        **Phone**
**Address:** 9200 C HAMILTON CT., DES PLAINES, IL 60616                **IR_NO:**
                                                                                        **DOB:** ███ 1972

IAP NOTE :: SEARCH WARRANTS ISSUED MARCH 25TH FOR THE WEBSITE HOST AND THE CONTACT EMAIL
ADDRESS LISTED ON THE ACCOUNT. A SUBPOENA WILL BE SENT FOR THE REGISTRAR INFORMATION (WILD
WEST DOMAINS). THE EAVESDROPPING STATUTE CRIMINALIZES THE TAPING AND THE DISSEMINATION OF
SUCH A RECORDING -- WE HAVE THIS OTHER PARTY ON THE TAPE IDENTIFYING MS. MELONGO'S VOICE, NOW
THE GOAL IS TO TRACE THE MAINTENANCE OF THE WEBSITE BACK TO THE TARGET. ***** SUPERVISORY
NOTE::

## INCIDENT

**DATE:** 12/10/2009   **TO**   12/16/2009   **TIME**       **POLICE DIST:**
**ADDRESS:** COOK COUNTY                                       **CITY:** ILLINOIS

## VICTIMS

| | NAME | | DOB | GANG | ETHNIC |
|---|---|---|---|---|---|
| 1 | TAYLOR, PAMELA, COURT REPORTER | | | | |

**Address:** 26TH & CALIFORNIA, 4TH FL., CHICAGO, IL 60608
**Phone:** (773) 869-7795

Monday, March 29, 2010                                                          Page 1 of 2



MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 003108

PLAINTIFF'S
DEPOSITION EXHIBIT

GARCIA  6
4-12-18 MR

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# CL REPORT

## EVENTS

01    MELONGO, ANNABEL
      3/29/2010       CL              Scheduled Event:

## DISPOSITIONS

**Monday, March 29, 2010**                                      **Page 2 of 2**

# Exhibit 69

# Northern Illinois Threat Assessment Task Force

| * indicates multiple arrests NAME | DATE | LOCATION | CR# | IR# | FID# | THREAT ON PUBLIC OFFICIAL | INAPPROTRIATE COMMUNICATIONS | STATUS OF CASE | VICTIM | ARREST / THREAT MANAGEMENT | DISPOSITION | LAST DATE OF CONTACT | WEB SITE | ALERT NOTICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Long, Kevin  * | 3/21/2008 | Daley Ctr | 08-506666 | 1364675 | | Yes/verbal | | closed | Judge | Arrest | P/G 1 yr CCDOC | | X | X |
| Epstien, Jeffery | 5/27/2008 | Daley Ctr | 08-512301 | 784878 | | | Yes/Letter | closed | Judge | T/M | | 2/19/2009 | X | X |
| Davis,Larry | 6/11/2009 | Daley Ctr | 08-514270 | 510299 | | | | closed | Judge | T/M | | 10/5/2008 | X | X |
| Long, Kevin  * | 8/20/2008 | Daley Ctr | 08-520702 | 1364675 | | Yes/verbal | | closed | Witness | Arrest | IDOC Parole | 1/2/2010 | X | X |
| Boston, Jerry | 8/25/2008 | CCB | 08-521083 | 492239 | | | Yes/verbal | Closed | Judge | T/M | in IDOC unrelated | | | |
| Reed, Linda | 8/25/2008 | Chicago | 08-521175 | 1948198 | | Yes/verbal | | pending/on bond | Judge | Arrest | | | X | |
| Jackson, Labroon | 9/3/2008 | CCB | 08-521652 | 1294349 | | Yes/verbal | | Closed | ASA | Arrest | P/G 1 yr IDOC | | X | |
| Oliver,Anthony | 9/26/2008 | Daley Ctr | 08-524091 | 426016 | | | Yes | closed by invest | Employee | | | 11/20/2008 | | X |
| Feldman,Michael | 10/6/2008 | Daley Ctr | 08-524789 | 1716483 | | | Yes/letter | closed by invest | Judge | | | | | |
| Baines, Dexter | 10/20/2008 | Daley Ctr | 08-526076 | 303280 | | | Yes | Closed | Judge | T/M | | 1/13/2009 | X | X |
| Jackson, Christopher | 11/17/2008 | D.V.C. | 08-528441 | 1329525 | | Yes/verbal | | Closed | Judge | Arrest | P/G 2 yrs IDOC | | X | |
| Muff, James | 12/11/2008 | Rolling Meadows | 08-530481 | 1718920 | | Yes/verbal | | Closed | Probation | Arrest | P/G 18 mo prob | | X | |
| Brown, Labron | 12/31/2008 | P.C.N. | 08-091835 | 1031467 | | Yes/verbal | | pending/in CCDOC | Judge | Arrest | pending | | X | |
| UKN | 12/31/2008 | Chicago | 09-500149 | | | Yes | | Closed | Judge | | | | | |
| UKN | 12/30/2008 | Chicago | 09-500151 | | | | Yes | Closed | Judge | | | | | |
| Goings, Fredrick | 1/28/2009 | Daley Ctr | 09-502503 | 976349 | | | | Closed | Judge | | | | | |
| Martin, Jon | 2/10/2009 | Chicago | 09-503784 | 1767757 | | | Yes | Closed | CC Tresaure | Arrest | in IDOC unrelated | | | |
| Todd, Michael | 2/19/2009 | Rolling Meadows | 09-503935 | 574802 | | Yes/verbal | | pending/in CCDOC | Judge | Arrest | pending | | X | |
| Reimann, Crystal | 3/3/2009 | Bridgeview | 09-505462 | 1686464 | | | Yes/verbal | closed | Judge | T/M | | 7/25/2009 | X | |
| Scott, Shelia | 3/9/2009 | Juv Ct | 09-505844 | 629511 | | Yes/verbal | | pending/on bond | Judge | Arrest | pending | | X | |
| Wild, Ronald | 4/3/2009 | Daley Ctr | 09-510121 | 1978829 | | | Yes/letter | closed | Judge | T/M | | | X | |
| Weeks,Robert* | 5/8/2009 | Daley Ctr | 09-511576 | 538404 | | Yes/letter | | pending/in IDOC | Judge | Arrest | pending | | X | |
| *Weeks,Robert** | 5/8/2009 | Daley Ctr | 09-511575 | 538404 | | Yes | | pending/in IDOC | Judge | Arrest | pending | | X | |
| *Weeks,Robert** | 6/12/2009 | Rolling Meadows | 09-515015 | 538404 | | Yes | | pending/in IDOC | Judge | Arrest | Pending | | X | |
| *Weeks,Robert** | 6/18/2009 | Chicago | 09-515152 | 538404 | | Yes | | pending/in IDOC | ASA | Arrest | pending | | X | |
| *Weeks,Robert** | 7/22/2009 | Federal Ct Hse | 09-518938 | 538404 | | Yes | | pending/in IDOC | Judge | Arrest | pending | | X | |
| Corbett, Michael | 6/29/2009 | CCB | 09-516104 | 593386 | | Yes/letter | | pending/in CCDOC | Doctor M.M | Arrest | State Nolle case | | X | |
| Klasen, James | 7/27/2009 | Daley Ctr | 09-518891 | | | | Yes/verbal | closed | Judge | T/M | warrant child supp | | X | |
| Stroh, Donald | 9/4/2009 | City Hall | 09-522279 | | | | Yes/phone calls | pending | CC Comm | | Warrant | | | |
| Kleszczewski, Elizabeth | 9/8/2009 | Hickory Hills | 09-522745 | | | | Yes/letter | closed | Judge | T/M | Hospitalized | | X | |
| Lippner, Michael | 9/14/2009 | Lemont | 09-523190 | 1950794 | | | Yes/letter | closed | Judge | T/M | Hospitalized | | X | |
| Olsen, Craig | 11/17/2009 | DVC | 09-529113 | | | | Yes/sent book | suspended | Judge | T/M | | | X- | |
| Machroli,Greg | 10/16/2009 | Chicago | 09-526206 | 720726 | | Yes/verbal (rec) | | Guilty | Judge | Arrest | 3 Years IDOC | | X | |
| Fernandez,George | 12/2/2009 | CCB | 10-500488 | | | | Yes/letter | closed | Judge | | in IDOC unrelated | | X- | |
| Costa, Joseph | 2/8/2010 | CCB | 10-525073 | | | Yes/verbal | | Guilty | ASA | Arrest | 10 Years IDOC | 12/29/2009 | X- | |
| Long, Kevin  * | 2/1/2010 | C.I.U. | 10-503032 | 1364675 | | | Phone call | closed | ASA | T/M | | | X | |
| Rodowski, Mark | 2/23/2010 | C.I.U. | 10-505036 | 2033027 | | | Sovereign | closed | Sheriff | T/M | | | X | |
| Melongo, Annabel | 4/3/2010 | C.I.U. | 10-509350 | 1822117 | | Yes | web site | closed | Judge | Arrest | pending | | X | |
| Shelton, Linda | 4/22/2010 | C.I.U. | 10-510344 | | | | web site | closed | Judge | T/M | | | X | |
| Sito, David | 4/29/2010 | C.I.U. | 10-52639 | 1957975 | | letter | | closed | judge | T/M | | | X | |
| White, Dewayne | 5/21/2010 | C.I.U. | 10-513053 | 1733919 | | Verbal | | guilty | judge | Arrest | 2.5 Years IDOC | | X | |
| Pufunt, Timothy | 5/25/2010 | C.I.U. | 10-513838 | | | | web site | closed | judge | T/M | | | X | |
| More, Dorris | 6/9/2010 | C.I.U. | 10-516024 | 2060656 | | letter | | pending | judge | arrest | pending | | X | |
| White, Anthony | 7/27/2010 | C.I.U. | 10-520270 | R55830 | | letter | | closed | judge | T/M | | | X | |
| Borre, jason | 8/2/2010 | C.I.U. | 10-519937 | | | Verbal | | closed | judge | T/M | | | | |
| Price, Debroh | 9/15/2010 | C.I.U. | 10-524023 | | | Verbal | | pending | judge | arrested | pending | | X | |
| Uppal, Prabhjot | 10/14/2010 | C.I.U. | 10-526954 | 1831580 | | email | | pending | judge | arrested | pending | | X | |

# Exhibit 70

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| (Court Branch) | (Court Date) |
|---|---|

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(3-81) CCMC-1-219   (1)

STATE OF ILLINOIS ... )
               ) SS.
COUNTY OF COOK ... )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COMPLAINT FOR ARREST WARRANT

I, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County State's Attorney's Office, complainant herein, now appear before the undersigned Judge of the Circuit Court of Cook County and request the issuance of arrest warrant as follows:

Annabel K. MELONGO,
F/B, Age 37 (DOB: ▇▇▇Redacted▇▇▇ )
5'05", 120 lbs.,
LKA: 9200 C. Hamilton Court, Des Plaines, IL 60016

I, Kate O'Hara, star # 423, hereby state that I am a sworn law enforcement officer employed by the Cook County State's Attorney's Office as an Investigator in the Financial Crimes Investigations Unit, and has been so employed for four years. For a brief time, your Complainant was employed as an Investigator with the City of Chicago Inspector General's Office, during which she investigated allegations against City Employees in the Department of Ethics, Consumer Services, the Water Department, the Department of Revenue, the Chicago Police Department, and the Chicago Fire Department. Prior to that time, your Complainant was employed as a Grant Writer and Manager for the Cook County State's Attorney's Office for two years. I have assisted in the execution of numerous arrest and search warrants and have been the affiant for many such warrants.

In March 2010, I became involved in the investigation of Annabel Melongo for covertly tape recording conversations between herself and the Court Reporters Office. In 2008, Ms. Melongo was indicted on three counts of Computer Tampering in case 08CR-10502. During the pendency of those charges, Ms. Melongo has maintained a website, www.illinoiscorruption.net,

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| (Court Branch) | (Court Date) |
|---|---|

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(3-81) CCMC-1-219   (1)

STATE OF ILLINOIS )
                   ) SS.
COUNTY OF COOK     )

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COMPLAINT FOR ARREST WARRANT**

detailing the progress of the case.  A further investigation of the site revealed that it was registered to Thomas Fisher and Honorine Mbabe Essono, but paid for with Annabel Melongo's VISA credit card. The site is organized chronologically and contains an entry for each court date.  On or about December 18, 2009, illinoiscorruption.net published a post accusing the Cook County Court Reporter's Office of Treason.  The post contains three audio recordings and accompanying transcripts of conversations between Ms. Melongo and Pamela Taylor of the Court Reporters Office.

The website entry states that on December 10, 2009, Annabel Melongo called the Court Reporter's Office and spoke to supervisor Pamela Taylor.  Ms. Melongo tape recorded the conversation, but did not tell the Ms. Taylor she was doing so nor did she obtain Ms. Taylor's consent. During the conversation, a woman's voice with a distinctive accent identifies herself as Annabel and speaks to another woman's voice who identifies herself as Pamela Taylor.  During the conversation Annabel asks how to get the transcripts and tape recordings for a previous court dates, and Ms. Taylor gives her instructions.

The website entry goes on to state that Ms. Melongo recorded her conversations on two other occasions.  The website states that on December 15th and 16th, Ms. Melongo called Ms. Taylor and recorded the conversations.  They appear at illinoiscorruption.net and are published with accompanying transcripts.  At no time during the taping does either party mention that the conversation is being tape recorded, nor does either party ask for permission to tape.

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| (Court Branch) | (Court Date) |
|---|---|

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

(3-81) CCMC-1-219   (1)

**STATE OF ILLINOIS** )
) SS.
**COUNTY OF COOK** )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COMPLAINT FOR ARREST WARRANT

Ms. Taylor confirms that she is one of the voices on the tape and that she was unaware that she was being recorded. Ms. Taylor identified the voice on the recording as the of Annabel Melongo, based on her subsequent interactions with Ms. Melongo.

Wild West domains confirms that the site was registered on November 3, 2009, to an individual named Thomas Fisher, and paid for with Annabel Melongo's VISA card. On March 11, 2010, the site was re-reregistered to Honorine Mbabe Essono, Annabel Melongo's mother, and paid for with Ms. Essono's VISA card.

Based upon the evidence as outlined herein, I believe that there is probable cause to believe that Annabel Melongo committed the felony offenses of eavesdropping in violation of both 720 ILCS 5/14-2(a) & (c). Therefore, I respectfully request that this Honorable Court issue a warrant to arrest Annabel Melongo for the above offenses.

_Inv. Kate O'Hara #423_
Investigator Kate O'Hara, Star No. 423, Complainant

Subscribed and sworn to

before me on 13 April 2010

at 2:49 AM / PM.

_S.B. Lim 1544_
Judge, Circuit Court of Cook County

3

# Exhibit 71

COPY +7/e
gike of
Anichel Melongo

Exhibit S

MELONGO_014457

# Exhibit 72

1    STATE OF ILLINOIS )
                     )   SS:

2    COUNTY OF COOK   )

3

4           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT-CRIMINAL DIVISION

5    PEOPLE OF THE STATE OF ILLINOIS      )
                                 )

6             -vs-           )   No. 10 CR 8092 01
                                 )

7    ANNABEL MELONGO             )

8

9                             REPORT OF PROCEEDINGS had at the

10  hearing of the above-entitled cause before Mary M. Brosnahan, one

11  of the judges of said division, on the 14th day of January, A.D.,

12  2011.

13

14          PRESENT:

15          MS. ANITA ALVAREZ, Cook County State's Attorney by
           MR. ROBERT PODLASEK, Assistant State's Attorney,

16          MS. JULIE GUNNIGLE, Assistant State's Attorney,

17                on behalf of the People;

18          MR. NICOLAS ALBUKERK,

19                on behalf of the Defendant.

20

21

22

23

24

                                                1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                             MELONGO_013301

1                           I N D E X

2    PROCEEDINGS                                    PAGE

3    Notes from jury

4    Prim instruction given

5    Note from jury

6    Jury hung

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013302

1          (Whereupon the following proceedings were had in court

2              outside the presence of the jury.)

3      THE COURT:  If I could have my deputies stand and face me.

4          Do you solemnly swear that you're going to keep this

5  jury in the jury room in a safe and convenient place provided by

6  the Sheriff of Cook County, keep them there together and don't let

7  anyone talk to them or talk to them about the case yourself and

8  when they've agreed upon their verdict, you're going to bring them

9  back to open court?

10     THE DEPUTY SHERIFFS:  I will.

11                      (Case passed)

12     THE COURT:  Annabel Melongo.

13                  (Pause in proceedings)

14     THE COURT:  All right.  Good morning, ma'am.  We've got Miss

15  Melongo present in court on the jury.

16         For the record the jurors did start deliberating at

17  approximately 10:15 this morning.  The computer was delivered back

18  to them along with the evidence and they started their

19  deliberations on the jury.

20         At about 10:30 a.m. I received a question.  The

21  attorneys have been notified and here is the question:  "Does the

22  Defendant's name have to be on or below line 16 of the transcript

23  that they are present or not?  Should Defendant's name be there?"

24  Signed by the foreperson, Richard Miller.  So proposed answers to

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_013303

1   the question.

2       MR. PODLASEK:  It does not.

3       MR. ALBUKERK:  Judge, I believe -- I believe it's not a

4   question that should be answered.  I believe they should be given

5   the Prim instruction.  You've been given all the evidence to

6   consider.  It's already been answered.

7       THE COURT:  I'll interrupt you for a moment because I'm not

8   giving Prim.  Nobody said anything about being deadlocked or

9   unable to reach a verdict.  They're continuing on with their

10  deliberations.  They're into their fourth hour now so Prim is not

11  a possibility just yet.

12      MR. ALBUKERK:  In any event, Judge, I don't think it's

13  appropriate for us to comment one way or another.  We've already

14  given the evidence to them and they're basically asking for new,

15  additional evidence.  We're not supposed to be doing that.

16      THE COURT:  You're saying it's new evidence so your position

17  is this information -- hold on.  Be quiet.  I'm talking to your

18  lawyer so don't interrupt him.

19          My question to you is is it your position that this

20  evidence never came out during the trial?

21      MR. ALBUKERK:  Personally I don't remember it ever coming out

22  one way or another but I don't -- I don't remember it coming out.

23  I don't remember it coming out.

24      THE COURT:  Okay.  Let me just ask --

4

Case: 1:13-cv-04924 Document #: 295-5 Filed: 10/12/18 Page 48 of 148 PageID #:3988

1    MR. PODLASEK:  It came out through Laurel Laudien and I
2  believe Pam Taylor because my questions, which in part were
3  written out, include those questions.
4    THE COURT:  Let me ask you this:  Does anybody have a
5  transcript of any of the testimony from yesterday?
6    MR. PODLASEK:  I do not.  I left here so late I couldn't --
7    THE COURT:  Sure.  The Court Reporter was here until 10:30.
8  If you want to take a minute and see if those transcripts are
9  available, I'll let you make that phone call and then we can come
10  back and go from there depending on what they're answering.
11    MR. PODLASEK:  All right.
12    THE COURT:  Okay?
13    MR. ALBUKERK:  Judge, for the record we would object to any of
14  the transcript being brought back to the jurors.
15    THE COURT:  All right.  That's a little premature since we
16  don't have one yet.  We'll see if that's even a possibility.
17                    (Case passed)
18    THE COURT:  Bring out Miss Melongo please.  Is she dressed?
19    MR. ALBUKERK:  No.  Do you want me to get her clothes?
20    THE COURT:  You can bring her out in her DOC but she should be
21  dressed because ultimately something is going to happen.
22    MR. ALBUKERK:  Yeah, yeah.
23                    (Pause in proceedings)
24    THE COURT:  Okay.  We've got Miss Melongo present in court.

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013305

1        The jurors had directed an earlier question to us.

2   "Does the Defendant's name have to be on or below line 16 of the

3   transcript that they are present or not?  Should Defendant's name

4   be there?"  And the State at that time did not have a transcript

5   prepared and now you're tendering to me a four page transcript

6   which is not a transcript in total of Miss Laudien's testimony but

7   rather it's a transcript that appears to answer that question.

8   Defense, you've had a chance to review the -- it's actually a page

9   and-a-half of actual questions and answers.

10      MR. ALBUKERK:  Correct.

11      THE COURT:  What's your position?

12      MR. ALBUKERK:  Judge, for the record I have to object.  The

13  evidence has already gone back to the jury.  I believe that

14  tendering any new evidence at this time would put too much

15  emphasis on one piece of evidence over another.  Also tendering

16  this transcript, although it does appear to answer the question, I

17  have to concede that, Judge, you know, you know, again because

18  it's so narrow in its scope it would tend to place undue pressure

19  to that particular point or emphasize that particular point and,

20  therefore, for the record I have to object.

21      THE COURT:  Okay.  I understand your position and it's my duty

22  as the Court where I can if I can answer a juror's question

23  without introducing new evidence to them or in any way trying to

24  influence their decision, it's my obligation to do that.  It was a

6

MELONGO_013306

1   very narrowly drawn question that they had that had to do with

2   People's Exhibit Number 4, the transcript at issue that was in

3   front of Judge Schreier on I believe it's 6-18-08.

4   MR. ALBUKERK:  Yes.

5   THE COURT:  6-18-08.  So this snippet of the direct

6   examination answers exactly the question that they asked and, in

7   fact, if the Court Reporter were to come to court without a

8   transcript prepared and were to be able to find in her notes or

9   her computer the question and answer, I would consider bringing

10  the jury out and having the question and answer read to them.

11          Again this is not any new evidence.  We're not

12  formulating an answer.  It's just giving to them a portion of the

13  transcript that answers directly the question.

14          And I take it based on the fact it says daily copy on

15  top and that we were in the court until 10:30 at night that you at

16  this juncture do not have the entire transcript of the testimony.

17  MR. PODLASEK:  I do not.

18  THE COURT:  All right.  Over the Defense objection then I'm

19  going to send this back.  I believe it accurately answers the

20  narrowly drawn question they have so I'm going to send it back to

21  them.  Deputy, if you could take this back to them please.

22          And, Miss Melongo, I'm going -- I think she should be

23  changed so that when you do bring her out at some point, the

24  jury -- you'll be in front of the jury today so you can change

7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013307

1    into your jury clothes.

2        MR. ALBUKERK:  Judge, my client is asking that the entire
3    Laudien transcript be brought out -- be tendered to the jurors.

4        THE COURT:  Okay.  Well, at this point there is no entire
5    transcript in front -- in front of me to make that ruling.  I
6    don't have the entire transcript.  So if the State is getting that
7    prepared and they have an additional question, of course, I would
8    consider your request at that time but we don't have it.

9        MR. ALBUKERK:  Could we -- could we order -- could we order
10   that transcript then at this time?  I mean because -- and I say
11   this only because when the Defense tries -- tries to add -- tries
12   to get excerpts or tries to get, you know, limited transcripts, we
13   are told that we're not allowed to get that, however, the State is
14   allowed to get limited transcripts and that's the reason I would
15   ask that it be procured in that way.

16       THE COURT:  You're asking for Miss Laudien's direct and cross?
17       MR. ALBUKERK:  Right.  Correct.

18       THE COURT:  Is that getting worked on, if you know?

19       MR. PODLASEK:  I don't know.

20       THE COURT:  Is there anything in particular with the cross
21   examination, a question and answer that you --

22       MR. ALBUKERK:  Yeah.  Well, there is -- there is -- well,
23   first we think that they should look at her testimony in total and
24   there are things in there that -- we have questions about.

8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013308

1       THE COURT:  Well, at this point I don't have that transcript
2    in front of me so I can't rule on sending it back.  It's quite
3    simply not here.

4       MR. ALBUKERK:  Right.

5       THE COURT:  As I said, it was a narrow question they had and I
6    would have had the Court Reporter read those questions and answers
7    that were responsive to that for the jury if they were unable to
8    prepare this short transcript that actually has the question and
9    answer on it.  So basically I can't rule on it because it's not in
10   existence at this point.  If they have another question that
11   relates to Miss Laudien, I will tell the State to inquire to see
12   if it's possible to get the entire transcript prepared but right
13   now we don't have that.  As you know, we were here until 10:30
14   last night and the -- the jury came back at 10:00 this morning so
15   the Court Reporter I understand was in a different courtroom or
16   working.

17      MR. PODLASEK:  She was in a different courtroom.  She came
18   back --

19      THE COURT:  Then they pulled her from the courtroom to go
20   through her notes to find the answer to this question if it was in
21   there.

22      MR. ALBUKERK:  And so at this time our request to have the
23   entire transcript prepared is being denied?

24      THE COURT:  Well, it's not for me to -- I can't order it to be

9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_013309

1   prepared.

2      MR. ALBUKERK:  Our problem is that the Defense -- it has been

3   my experience in ordering transcripts that the Court Reporter's

4   office will not order just portions of transcripts for the

5   Defense.  They will only -- they will only agree to do entire days

6   worth of transcripts.  That's the reason why I'm bringing my

7   request to the Court because in the past when I've asked could you

8   just, you know, give me the direct or the cross or one witness,

9   I've been told no, that's not possible but when the State asks for

10  it, they get it and when the Court asks for it, they get it and I

11  understand it's just a custom thing but all the same I don't have

12  it within my power to order -- to order just the whole transcript.

13     THE COURT:  Well, I will ask the State to call the Court

14  Reporter and ask her what's the possibility of preparing the

15  entire direct and cross examination and approximately how long

16  would that take.

17     MR. PODLASEK:  Okay.

18     THE COURT:  If it does get here, then you can review it and

19  then we'll see if there's anything that would be relevant.  They

20  haven't asked for her whole testimony.  They just had a specific

21  question and answer they were looking for, not -- they didn't ask

22  to review her testimony which at times jurors do as we all know.

23     MR. ALBUKERK:  Sure.

24     THE COURT:  Sometimes they want to review everything from

                                                                    10

1    start to finish.  They haven't requested that.

2        MR. ALBUKERK:  Right.

3        THE COURT:  If you can inquire about that possibility, I'll

4    take it from there.

5        MR. PODLASEK:  We will and before I do may I ask am I ordering

6    this on behalf of the Defense because they are going to send us an

7    invoice.  We had an invoice on this.

8        THE COURT:  You can order it from the Court.

9        MR. ALBUKERK:  Yeah.

10       THE COURT:  Order it from the Court.

11       MR. ALBUKERK:  Thank you.

12       MR. PODLASEK:  I will.

13       MR. ALBUKERK:  I appreciate that.

14       THE COURT:  Okay.  And you brought it back, correct, Deputy?

15       THE DEPUTY SHERIFF:  Yes, yes.  My partner brought it back.

16       THE COURT:  Okay.

17                          (Recess taken)

18       THE COURT:  All right.  We're back on the record.  We've got

19   the parties again present in court.

20           At 11:15 they -- I did receive -- I apologize.  12:15

21   rather I received another note from the jury.  It reads:

22   "Currently at stalemate.  What is next step."  Signed Richard

23   Miller on today's date.  What's the proposed response of the

24   parties?

11

```
1         MR. ALBUKERK:  Judge, our proposed response to, you know,

2    declare the jury hung and mistrial and that's it.  Jury is hung.

3         THE COURT:  What's your response, State?

4         MR. PODLASEK:  We want them to keep deliberating.

5         THE COURT:  Well, I am not going to hang the jury at this

6    point.  They deliberated last night for -- they didn't start until

7    6:40 p.m. -- probably about three and-a-half hours last night.

8    They didn't get started today until 10:15 so it's been another

9    couple of hours today.  So there's voluminous amount of testimony

10   and exhibits that they have to digest.  Granted it wasn't a very

11   long trial but it was filled with an incredible amount of

12   documentation so I do not believe that we are even close to being

13   at the hung stage just yet.

14             Does either -- with that ruling having been made is

15   either party requesting that I Prim them or do you want me to

16   state at this point you have -- you have all the evidence, please

17   continue to deliberate?

18        MR. PODLASEK:  I think we want they have all the evidence,

19   continue to deliberate.

20        MR. ALBUKERK:  Yes.

21        THE COURT:  You're in agreement with that?

22        MR. ALBUKERK:  Yes.

23        THE COURT:  Okay.  That'll be my response then.

24        MR. ALBUKERK:  I'm going to see that the Defendant gets
```

12

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_013312

1    dressed.

2        THE COURT:  Okay.  All right.  We'll see everybody back when

3    we hear anything more from them.

4                              (Recess taken)

5        THE COURT:  Bring out Melongo.

6        THE DEPUTY SHERIFF:  Coming out.

7                         (Pause in proceedings)

8        THE COURT:  All right.  We've got Miss Melongo present in

9    court.  All the parties are here.

10           The note from the jury at 1:35 reads, "Still at

11   stalemate and both sides have stated there's absolutely no way he

12   or she will change their minds.  The vote is eight to four and has

13   been for hours."  What's the position of the parties?

14       MR. PODLASEK:  Ask for a Prim instruction at this time, Judge.

15       MR. ALBUKERK:  Judge, we would ask that the jury be dismissed.

16   The jury is hung and they're not going -- they spent a lot of time

17   doing this.  I don't know if we have an official tally of the

18   numbers of hours at this point or a semi official.

19       THE COURT:  I can get you that in a minute.

20                         (Pause in proceedings)

21       THE COURT:  Six -- approximately six and-a-half hours.

22       MR. ALBUKERK:  Okay.

23       MR. PODLASEK:  It's really not that much time.

24       THE COURT:  Well, I'm not going to hang the jury.  They've

                                                              13

1    been deliberating for a while.  They're definitely going to

2    deliberate longer.

3            And over the Defense objection I'm going to instruct

4    them on -- the Prim law is very clear that you're not to give the

5    Prim instruction prematurely but certainly at this point this is a

6    textbook note that would require a Prim instruction.  I'm going to

7    do that.

8            Take a seat at counsel table and bring out the jury.

9    MR. ALBUKERK:  She's got to get her shoes.

10   THE COURT:  Hold off for one minute.

11   THE DEPUTY SHERIFF:  Okay.

12                       (Pause in proceedings)

13   THE COURT:  Okay.  Bring out the jury.

14   THE DEPUTY SHERIFF:  All rise for the jury.

15           (Whereupon the following proceedings were had in court

16           in the presence of the jury.)

17   THE COURT:  All right, ladies and gentlemen of the jury, I

18   obviously have your note and I have an additional instruction for

19   you.  It is as follows, and you will get this in the back with

20   you:  "The verdict must represent the considered judgment of each

21   juror.  In order to return a verdict, it is necessary that each

22   juror agree thereto.  Your verdict must be unanimous.  It is your

23   duty as jurors to consult with one another and to deliberate with

24   a view to reaching an agreement and if you can do so without

14

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_013314

```
 1    violence to individual judgment.  Each of you must decide the case

 2    for yourself but do so only after an impartial consideration of

 3    the evidence with your fellow jurors.  In the course of your

 4    deliberations, do not hesitate to reexamine your own views and

 5    change your opinion if convinced it is erroneous but do not

 6    surrender your honest conviction as to the weight or effect of

 7    evidence solely because of the opinion of your fellow jurors or

 8    for the mere purpose of returning a verdict.  You are not

 9    partisans.  You are judges, judges of the facts.  Your sole

10    interest is to ascertain the truth from the evidence in the case."

11             And with that instruction having been given please

12    continue on with your deliberations.  Rise for the jury.

13             (Whereupon the following proceedings were had in court

14              outside the presence of the jury.)

15        THE COURT:  All right.  The record should reflect 1:50 p.m.

16    the Prim instruction was given.

17             Okay.  We'll be off the record.

18                        (Recess taken)

19        THE COURT:  Can you bring out Melongo.  Off the record.

20                   (Discussion had off the record)

21        THE COURT:  We've got Miss Melongo back present in court.  I

22    did get another note at 3:25 p.m. and it says, "We have once again

23    executed your directions and are still at a stalemate.  Serious

24    arguing has started and tempers are starting to flare.  Need
```

15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013315

1    advice."  Signed by the foreperson.  What's the position of the
2    parties?

3        MR. ALBUKERK:  Judge, our position is that this is a hung jury
4    at this point.  The last time was four to eight.  There's no
5    indication that it's changed from four to eight.  Four to eight is
6    a serious discrepancy and it's not likely that, you know, at this
7    point that there's going to be any movement.  If -- if -- if, in
8    fact, that's true and they're arguing in that small room, I think
9    we're doing them -- the jurors a great disservice by not ending
10   this.

11       THE COURT:  State.

12       MR. PODLASEK:  We'd ask that you try and find out what the
13   count is at this point.

14       THE COURT:  Well, I do know prior to reading them the Prim
15   instruction it was eight to four.  We know that based upon their
16   note.

17       MR. PODLASEK:  Right.

18       THE COURT:  My thought would be I want to know if there's been
19   any movement at all which will help gauge whether or not we really
20   are in a position of a hung jury, which we may be.  They have been
21   deliberating for sometime but it is only 3:35 p.m. at this point.
22   So my thought would be this:  To send back the note which says
23   without telling me which direction you're leaning, what is the
24   count at now?

16

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_013316

1    MR. ALBUKERK:  Okay.

2    THE COURT:  Do the parties have an objection to that?

3    MR. PODLASEK:  No.

4    MS. GUNNIGLE:  No.

5    MR. ALBUKERK:  I don't have any objection to it either.

6    THE COURT:  Okay.

7                        (Pause in proceedings)

8    THE COURT:  We're back on the record now.

9         I immediately got a response to my note and it says

10   seven to five.

11   MR. ALBUKERK:  Seven to five.

12   THE COURT:  Seven to five.  So --

13   MR. ALBUKERK:  Well, Judge, all the same I would think that

14   we're pretty deadlocked so I think -- I still say this is a hung

15   jury.

16   THE COURT:  State.

17   MR. PODLASEK:  I agree.

18   THE COURT:  I'm in agreement at this point.  I was thinking

19   perhaps it would have moved in the other direction and there would

20   be some light at the end of the tunnel but this just seems to be

21   going in the other direction so I will hang the jury.

22   MR. ALBUKERK:  Okay.

23   THE COURT:  So it's 4:40.  You can tell the jury, Deputy, to

24   stop deliberating and if you can gather up the exhibits, the

17

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_013317

1    instructions and the computer and bring them back out.  Okay?

2        MR. ALBUKERK:  Judge, my client would like to be made of

3    record that she says that the stipulation was not her idea.  It

4    was my idea and --

5        THE COURT:  What stipulation are you talking about?

6        MR. ALBUKERK:  The stipulation that went into evidence.

7        DEFENDANT MELONGO:  It was -- it was something that was

8    imposed on me five minute before the trial.

9        THE COURT:  You know what?  Knock it off.  Knock it off.

10   Imposed on you.  I've had it with you.

11          The stipulation was done by your lawyer and the State.

12   They were working on it for weeks since this jury was set.  I

13   passed the case.  I gave you a chance to review it.  You're not

14   the lawyer of the case.  Mr. Albukerk was the attorney on the

15   case, but you had a chance to review it.

16       DEFENDANT MELONGO:  It was --

17       THE COURT:  There was no objection made and you know what?  He

18   hasn't imposed anything on you.  It was --

19       DEFENDANT MELONGO:  It was five minute before the trial.  I

20   never had the time.

21       THE COURT:  You're not a lawyer.

22       DEFENDANT MELONGO:  And I wanted to change stuff and then he

23   say we won't go to trial if it's not change.  It was imposed on

24   me.

                                                                    18

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1    THE COURT:  You know what, Miss Melongo.  I've seen your
2    behavior and you make stuff up as you go and after things happen
3    and go down, you rewrite history.
4    DEFENDANT MELONGO:  Okay.
5    THE COURT:  Completely rewrite history.  That's not the
6    history of this stipulation.  The stipulation had been worked on
7    from the past court date to the trial.  Your attorney and the
8    State talked about it on the record in front of you previously.
9    They said they were hammering out the specific details of it.
10   Your attorney said he got the final copy that morning.  That part
11   of what you said is true.  And I said go ahead and talk about it
12   with her and he had certainly discussed the stipulation with you
13   and what was going to be in it but it's true you hadn't seen the
14   formal copy of that until that morning but I passed it and let him
15   look through it with you and it was put on the record that
16   everything was fine and you were okay with.  I didn't see him
17   holding you down.  I didn't see him covering your mouth with
18   anything and we proceeded to trial so I don't want to hear
19   anything from you right now.  You are not the lawyer on the case.
20   He is.  And what you're saying is not supported at all by the
21   record or anything I saw.  You walked into the courtroom.  You
22   looked at that stipulation with him.  We passed the case for I
23   think it was 15 minutes to a half hour, if not more.  I believe we
24   were in the posture of waiting for the jury to come in.  You sat

19

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_013319

1    down and your attorney said there's no problem with the

2    stipulation and you didn't say a word and we proceeded on with the

3    trial. So do not rewrite history in my courtroom and try and talk

4    about something that I was present for 100 percent of the time.

5    We're done.

6         MR. ALBUKERK: Judge, in any event, considering it's hung it's

7    actually an irrelevant matter at this point.

8         THE COURT: Well, besides the fact that it's irrelevant but my

9    point is Mr. Albukerk has catered to your every whim. Most

10   attorneys would have turned to you when you just said you wanted

11   to put something on the record about an issue that has no merit

12   anymore because it's a hung jury, they would have told you to be

13   quiet and it's a ridiculous thing to put on the record but not

14   him. He went ahead and put it on the record and you're still

15   arguing about it. Apparently you should have gone to law school

16   to be a lawyer because you really like arguing in court whether it

17   matters or not.

18        DEFENDANT MELONGO: I -- I like it.

19        THE COURT: I can tell you like it. So we'll be here again so

20   the good news is you'll have a chance to do it again.

21        DEFENDANT MELONGO: Okay.

22        THE DEPUTY SHERIFF: Excuse me, Judge. You said that the

23   jurors were hung at 4:40 instead of 3:40.

24        THE COURT: Oh. Thank you for the correction. If I said 4:40

                                                                    20

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                        MELONGO_013320

1   on the record, then let me correct it.  3:40.  Thank you.

2      THE DEPUTY SHERIFF:  So I'm good to stop them now and gather

3  the evidence?

4      THE COURT:  Yes.

5      THE DEPUTY SHERIFF:  Just wanted to make sure.

6      THE COURT:  Yes.  Thanks.  Okay.

7      MR. ALBUKERK:  I've never done this.  Do you give them an

8  instruction or do you just tell them thanks, good bye?

9      THE COURT.  Yeah.  I'm not bringing them out.

10     MR. ALBUKERK:  Okay.

11     MR. PODLASEK:  Can we talk to them?

12     THE COURT:  Yeah.  I'm going to talk to them first and then,

13  you know, their jury service is over.

14     MR. ALBUKERK:  Sure.

15     THE COURT:  If either side wants to talk to them, you're free

16  to do that.

17     MR. ALBUKERK:  Okay.

18     THE COURT:  I'll give them the option, of course.  If they

19  want to just get on their way, they have the option to do that

20  too.

21     MR. ALBUKERK:  Right.

22     THE COURT:  Okay.

23     MR. ALBUKERK:  Thank you.

24     THE COURT:  Mr. Albukerk, if you could just draw that up

21

1    different.  So I'm holding you to trial -- I did hold you to trial

2    on Miss Melongo's matter so I'm not disputing any of that.

3        MR. ALBUKERK:  No.  I know.

4        THE COURT:  My number will be available.  I will actually try

5    to reach out to Judge Love to see if I can catch her.

6        MR. ALBUKERK:  I mean this is not -- the situation is not at

7    all your situation.

8        THE COURT:  Right.

9        MR. ALBUKERK:  Unfortunately Matt misunderstood, Mr. Prengaman

10   misunderstood and gave some poor instructions and now I got to try

11   and --

12       THE COURT:  Okay.  Well, if you craft an order that the matter

13   is set for 9:45 a.m. to begin the jury trial, you know, on that

14   date.  So was it yesterday?

15       MR. ALBUKERK:  Yes.

16       THE COURT:  It was yesterday, of course.

17       MR. ALBUKERK:  Yes.

18       THE COURT:  And that the parties need to be present at 9:45

19   a.m. in room 303 at 26th and California so that will get you out

20   from whatever rock you were under for that.

21       MR. ALBUKERK:  I hope so.

22       THE COURT:  What date do the parties want?  So the mistrial is

23   at 3:40 p.m.  So what position are we in now, ready to set it down

24   again?

22

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1     MR. ALBUKERK:  I'm going to need to talk to my client
2  momentarily.

3     THE COURT:  Sure.

4     MR. ALBUKERK:  But other than that, yeah, I'm ready to try
5  this thing.

6     THE COURT:  Okay.

7     MR. ALBUKERK:  The problem, Judge, I do have is that I'm
8  starting a couple -- I got a couple of trials coming up.  I got
9  my -- and also I have a big jury trial starting February 7th.  I
10  hope to go beyond that at this point.

11     MR. PODLASEK:  Judge, the problem obviously is that Miss
12  Gunnigle will be on leave.

13     THE COURT:  You may have to get someone else to try the case.
14  I'm not giving you a three month date with all due respect.

15     MR. PODLASEK:  I'm not asking for a three month date but I do
16  have two juries up between now and February.

17     THE COURT:  What's the earliest date that you're talking?

18     MR. ALBUKERK:  And, Judge, assuming for -- and just to be safe
19  I assume we're talking about a three day window.

20     THE COURT:  Well, I would say we would put it in a three day
21  window this time just to be on the safe side and if we end sooner,
22  we end sooner.

23     MR. PODLASEK:  It's going to depend on whether there's a
24  stipulation as to the ownership of that website or not because if

23

1    not, we'll have people coming in from out of state.

2         THE COURT: Well, obviously it's a new case so the Defense is

3    not bound by any stipulations or --

4         MR. PODLASEK: I understand that.

5         THE COURT: Well, I know you do. I'm just saying it for the

6    record so that Miss Melongo understands it also. Obviously the

7    Defense is not bound in the new trial by stipulations so --

8         MR. PODLASEK: So until we find out, you know, I can't tell

9    you how long it's going to take.

10        THE COURT: We'll say four days at the most.

11        MR. ALBUKERK: At least at this point. They're going to need

12   at least an extra day.

13        THE COURT: You're going to need --

14        MR. ALBUKERK: It's a big trial. How about the 22nd?

15        THE COURT: 22nd?

16        MR. ALBUKERK: No.

17        THE COURT: 28th.

18        MR. PODLASEK: I have a jury on the 14th and the 28th of

19   February.

20        THE COURT: How about 22? Because we all know these juries

21   don't all go.

22        MR. PODLASEK: These two are. One is before Judge Goebel and

23   one is before Walsh. They're both involving towing cases. Those

24   are fairly old cases.

24

```
1        THE COURT: Give me a date. I'm looking for the sooner date.
2        MR. PODLASEK: How about February 1st or the week of the 31st?
3        MR. ALBUKERK: January 31st.
4        MR. PODLASEK: Yeah.
5        MR. ALBUKERK: I think I'm totally booked.
6        THE COURT: That's fine.
7        MR. ALBUKERK: I have a demand trial set at the Daley Center
8    on the 31st.
9        THE COURT: How about February 1?
10       MR. PODLASEK: February 1 is fine.
11                        (Pause in proceedings)
12       MR. ALBUKERK: No. I've got -- I've got a demand. I've got a
13   demand case on the -- on the 3rd and I got a demand case and
14   then -- and then my calendar is full for those other two days. So
15   I'm sorry. I can't make it before my jury on the 7th. I believe
16   this is all way -- you said your jury is February what?
17       MR. PODLASEK: 14th.
18       MR. ALBUKERK: February 14th.
19       MR. PODLASEK: The first one is on the 14th.
20       THE COURT: How about the 22nd?
21       MR. PODLASEK: How about the 7th, the week of the 7th?
22       MR. ALBUKERK: I'm doing a jury trial starting the 7th.
23       THE COURT: Where is your trial on the 7th?
24       MR. ALBUKERK: The Daley Center. It's a med mal. It should
```

25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                MELONGO_013325

1    take about a week and-a-half.

2         THE COURT:  Well, let me just ask how certain is it that those

3    cases will go?  I'm unfamiliar with civil court.

4         MR. ALBUKERK:  99 percent.  It was set literally -- this case

5    is a ten year old case.

6         THE COURT:  How about this:  You should know probably by the

7    4th if it's really going to go or not, right?  How does it work

8    there?

9         MR. ALBUKERK:  It works -- once it's set literally I had to

10   voluntarily dismiss this case once because that's -- that was my

11   only option.  Once they set them they will not let that date go.

12   It's pretty serious, especially for big cases like this.  They're

13   really serious about them going.  It's not like -- it's not like

14   here where they're always kind of jumping around.  It's a really

15   old case.

16        THE COURT:  How about February 16th as back up because I don't

17   want to give it a two month date.  If for some reason your case

18   falls through on the 14th, you would probably know the 10th

19   whether it's going or not so we can give it the 16th knowing it

20   would be the back up to your 14th jury.

21        MR. PODLASEK:  All right.

22        THE COURT:  Does that work?

23        MR. PODLASEK:  That's fine.

24        MR. ALBUKERK:  Okay, Judge.  Judge, for the record my client

26

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          MELONGO_013326

1    wants at least a two month continuance.  She wants a long

2    continuance.

3        THE COURT:  For what reason?

4        MR. ALBUKERK:  Because she needs to -- she needs to fully

5    assess the case and she needs to get the funds together and she

6    needs to talk to her family so she is the one asking for a long

7    date.  I only put that on the record because obviously it would

8    accommodate my schedule and Mr. Podlasek's schedule as well but I

9    didn't want the record to in any way indicate that we were hurting

10   my client's rights.

11       THE COURT:  I don't understand what you mean.

12       MR. ALBUKERK:  In other words, you know, she has a right to go

13   to trial quickly and I didn't want -- I didn't want any record to

14   be made to say that we were in any way stalling her -- you know,

15   stalling her wishes, you know, the concept of a speedy trial here.

16   So, Judge, with all due respect I'm going to ask for the beginning

17   of March is where I'm good.  It looks like February 28th, 29th.

18       MR. PODLASEK:  28th I'm on trial.

19       MR. ALBUKERK:  February 28th you're on trial?  How long do you

20   think that trial is going to go?

21       MR. PODLASEK:  That one?

22       MR. ALBUKERK:  Yeah.

23       MR. PODLASEK:  At least a week.

24       MR. ALBUKERK:  At least a week.  Can we go to the following

                                                                    27

1    week?  Is that going to cramp you too much?  That would --

2        MR. PODLASEK:  Give me a minute here.

3        MR. ALBUKERK:  March 8th.  Sorry.

4        MR. PODLASEK:  Judge, if we're going into March, my partner

5    tells me she can be back around March 21st.  She'll push back her

6    maternity.

7        THE COURT:  I don't want to give it a two and-a-half month

8    date.  I don't want to do that.

9        MR. PODLASEK:  I was thinking about next week.

10       THE COURT:  So let's -- how about next week?

11       MR. ALBUKERK:  Next week.  Judge, A, my client doesn't have

12   the money, B, my client really wants more time.  She's

13   absolutely -- she's begging for more time.

14       THE COURT:  Well, I can't imagine one shred of discovery that

15   hasn't already been gotten.  I'm not understanding.

16       MR. ALBUKERK:  That's true but my client wants all the

17   transcripts, number one, and that's going to be quite expensive.

18   Number two, my client is going -- has already indicated to me she

19   wants to try the case in a completely different manner.  I mean I

20   wanted to -- obviously it was my judgment that we stipulate.  She

21   wants me to try the case in a completely different manner.

22       THE COURT:  I'm going to do February 16th.  I'm going to set

23   it as a back up date and you can tell me where you're at.  If, Mr.

24   Podlasek, the trial goes, we know about that so if it goes on the

28

1    14th, it'll have to get a different date, but between now and then

2    the parties can talk about the issues such as stipulations, et

3    cetera, so you can let me know where you're at.

4         MR. ALBUKERK:  Okay.

5         THE COURT:  So we'll hold it over by agreement 2-16-11.

6    That'll be with for jury.  As to the other matter, the non-elected

7    case, you're going by agreement February 16th to the same date on

8    the computer tampering?

9         MR. ALBUKERK:  Well, yeah.  Obviously this is the elected case

10   still, right?

11        MR. PODLASEK:  Yeah.

12        MR. ALBUKERK:  Right.

13        THE COURT:  You are still keeping this the elected case?  I

14   guess I should ask that.

15        MR. PODLASEK:  Yes, your Honor.

16        THE COURT:  That'll be for the status of the elected case.

17   We'll see everybody on 2-16 and then obviously you'll be in touch

18   with one another.

19        MR. ALBUKERK:  Thank you.

20                         (Which were all the proceedings had)

21

22

23

24

29

```
 1    STATE OF ILLINOIS )
                        )  SS:
 2    COUNTY OF COOK    )

 3             I, ELIZABETH A. REYES, Official Shorthand Reporter of

 4    the Circuit Court of Cook County, County Department-Criminal

 5    Division, do hereby certify that I reported in shorthand the

 6    evidence had in the above-entitled cause and that the foregoing is

 7    a true and correct transcript of all the evidence heard.

 8

 9

10                                    _____
                                      Official Shorthand Reporter
11                                    License No. 084-001910
                                      Circuit Court of Cook County
12                                    County Department
                                      Criminal Division
13

14    Dated this  26  day of October, 2011.

15

16

17

18

19

20

21

22

23

24
```

30

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_013330

# Exhibit 73

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1 of 2

**(3-81) CCMC-1-220**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois to all peace officers of the state

# SEARCH WARRANT

On this day, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County State's Attorney's Office, Complainant has subscribed and sworn to a complaint for search warrant before me. Upon examination of the complaint, I find that it states facts sufficient to show probable cause.

# I therefore command that you search:

the premises of GoDaddy.com, Inc., headquartered at 14455 N. Hayden Road, suite 219, Scottsdale, Arizona, 85260

# and seize the following information:

Subscriber information for the Go Daddy, Inc. hosted website
**ILLINOISCORRUPTION.NET:**

A. All customer or subscriber account information for each associated account:

    1. subscriber names, user names, screen names, or other identities;

    2. mailing addresses, residential addresses, business addresses, email addresses, and other contact information;

    3. local and long distance telephone connection records, or records of session times and durations;

    4. length of service (including start date) and types of service utilized;

    5. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

    3. means and source of payment for such service (including any credit card or bank account number) and billing records.

*(left margin, handwritten, vertical):* DATE: 3/23/2010 ASA: GUDINAS

*(left margin, vertical):* SEARCH WARRANT # 6227 1454

Complainant _____     Date _____

Subscribed and sworn before me on __3-23__; 2010 at __1:04__ AM/**PM**

*(signature)* MELONGO V. PUTEASEK, et al., 13 C 4924    Judge's No.

CCSAO 000859

*(stamp):* PLAINTIFF'S DEPOSITION EXHIBIT GARCIA 2 4-12-18 mr

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 2 of 2

(3-81) CCMC-1-220

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

B. All records and other information:

    1. records of user activity for any connections made to or from the account, including the date, time, length, and method of connections, data transfer volume, user name, and source and destination Internet Protocol address(es);

    2. non-content information associated with the contents of any communication or file stored by or for the account(s), such as the source and destination email addresses and IP addresses.

    3. correspondence and notes of records related to the account(s).

C. All communications content:

    1. the contents of electronic communications in GoDaddy Inc.'s systems in directories or files owned or controlled by the associated account(s).

and any other items, files, or documents

### which have been used in the commission of, or which constitute evidence of the offense of:

Eavesdropping (720 ILCS 5/14-2(a) & (c))

Complainant _____      Date_____

Subscribed and sworn before me on 3-23- , 2010 at 4.04 AM/PM

MELONGO V. PODLASEK, et al., 13 C 4924      Judge's No.

CCSAO 000860

DATE: 3/23/2010 ASA: [handwritten]

SEARCH WARRANT # 6220 [handwritten]

1967 [handwritten]

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

_____          _____
(Court Branch)              (Court Date)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

_____
                                                    (3-81) CCMC-1-219 (1)

STATE OF ILLINOIS        )
COUNTY OF COOK           ) SS.

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 1 of 5

I, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County State's

Attorney's Office, complainant herein, now appear before the undersigned Judge of the Circuit Court of Cook

County and request the issuance of a <u>warrant to search</u>:

the premises of GoDaddy.com, Inc., headquartered at 14455 N. Hayden Road, suite 219, Scottsdale,
Arizona, 85260

and <u>seize, search and analyze</u>:

The following information for the GoDaddy.com, Inc. hosted Web site **ILLINOISCORRUPTION.NET**:

A. All customer or subscriber account information for each associated account:

1. subscriber names, user names, screen names, or other identities;

2. mailing addresses, residential addresses, business addresses, email addresses, and other contact
information;

3. local and long distance telephone connection records, or records of session times and
durations;

4. length of service (including start date) and types of service utilized;

5. telephone or instrument number or other subscriber number or identity, including any
temporarily assigned network address; and

6. means and source of payment for such service (including any credit card or bank account
number) and billing records.

B. All records and other information:

1. records of user activity for any connections made to or from the account, including the date,
time, length, and method of connections, data transfer volume, user name, and source and

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000920

PLAINTIFF'S
DEPOSITION EXHIBIT

GARCIA 1
4-12-18 MR

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**(Court Branch)**            **(Court Date)**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**(3-81) CCMC-1-219 (1)**

| STATE OF ILLINOIS | ) |
| COUNTY OF COOK | ) SS. |

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 2 of 5

destination Internet Protocol address(es);

2. non-content information associated with the contents of any communication or file stored by or for the account(s), such as the source and destination email addresses and IP addresses.

3. correspondence and notes of records related to the account(s).

C. All communications content:

1. the contents of electronic communications in GoDaddy's systems in directories or files owned or controlled by the associated account(s).

and any other items, files, or documents which have been used in the commission of, or which constitute evidence of the offense of Eavesdropping (720 ILCS 5/14-2(a) & (c))

The terms "records," "email," "information," and "electronic communications" include all of the foregoing items of evidence in whatever form and by whatever means such records, email, information, and electronic communications may be been created and stored.

I.    INTRODUCTION

Complainant, Investigator Kate O'Hara, is a sworn law enforcement officer employed by the Cook County State's Attorney's Office as an Investigator in the Financial Crimes Investigations Unit, and has been so employed for four years. For a brief time, your Complainant was employed as an Investigator with the City of Chicago Inspector General's Office, during which she investigated allegations against City Employees in the Department of Ethics, Consumer Services, the Water Department, the Department of Revenue, the Chicago Police Department, and the Chicago Fire Department. Prior to that time, your Complainant was employed as a Grant Writer and Manager for the Cook County State's Attorney's Office for two years.

II.    CRIMINAL VIOLATIONS

Based upon the following information set forth herein, I believe that probable cause exists to issue a search warrant for the above identified instruments, articles, and things which have been used in the commission or which constitute evidence of the offense 720 ILCS 5/14-2(a) & (c) (Eavesdropping).

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000921

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

_____                    _____
(Court Branch)                     (Court Date)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

<u>(3-81) CCMC-1-219 (1)</u>

STATE OF ILLINOIS          )
COUNTY OF COOK             )  SS.

IN THE CIRCUIT COURT OF COOK COUNTY
**COMPLAINT FOR SEARCH WARRANT**
Page 3 of 5

III.    SOURCES OF INFORMATION RELATED IN THIS COMPLAINT

The facts set forth in this Complaint are based on my personal knowledge and investigation. The Complaint is also based on knowledge from other individuals (including law enforcement officers), by review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described in this Complaint, and information gained through my training and experience.

I submit this Complaint for the limited purpose showing that there is sufficient probable case to support issuing a warrant to search the items identified in Subsection I. This Complaint does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all statements described in this Complaint are related in substance and in part only.

IV.    DESCRIPTION OF CRIMINAL ACTIVITIES

In May 2008, Annabel Melongo was indicted on three counts of Computer Tampering in case 08CR-10502. During the pendency of those charges, Ms. Melongo has maintained a website, www.illinoiscorruption.net, detailing the progress of the case. The site is organized chronologically and contains an entry for each court date. WHOIS, a service used to identify the company registering or hosting a particular website address, lists the registrar of the site as Wild West Domains and the host as Go Daddy. The site directs all questions or comments to concernedillinoiscitizen@yahoo.fr

On or about December 18, 2009, illinoiscorruption.net published a post accusing the Cook County Court Reporter's Office of Treason. The post contains three audio recordings and accompanying transcripts of conversations between Mrs. Melongo and Pamela Taylor of the Court Reporters Office.

The website entry states that on December 10th, Annabel Melongo called the Court Reporter's Office and spoke to supervisor Pamela Taylor. Ms. Melongo tape recorded the conversation, but did not tell the Mrs. Taylor she was doing so nor did she obtain Ms. Taylor's consent. During the conversation, a woman's voice with a distinctive accent identifies herself as Annabel and speaks to another woman's voice who identifies herself as Pamela Taylor. During the conversation Annabel asks how to get the transcripts and tape recordings for a previous court dates, and Ms. Taylor gives her instructions.

The website entry goes on to state that Ms. Melongo recorded her conversations on two other occasions. The website states that on December 15th and 16th, Ms. Melongo called Ms. Taylor and recorded the conversations. They appear at illinoiscorruption.net and are published with accompanying transcripts. At no time during the

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

_____          _____
**(Court Branch)**                **(Court Date)**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**(3-81) CCMC-1-219 (1)**
_____

STATE OF ILLINOIS    )
COUNTY OF COOK      ) SS.

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 4 of 5

taping does either party mention that the conversation is being tape recorded, nor does either party ask for permission to tape.

Ms. Taylor confirms that she is one of the voices on the tape and that she was unaware that she was being recorded. Ms. Taylor identified the voice on the recording as the of Annabel Melongo, based on her subsequent interactions with Ms. Melongo.

V.    GO DADDY'S SERVICES, RECORDS, AND INFORMATION

GoDaddy.com, Inc., is an America computer services company that registers and hosts various Internet web sites. It is currently the largest ICANN-accredited registrar (Internet Corporation for Assigned Names and Numbers), and hosts more than 36 million sites world wide. The subscriber information, user records, and content requested by this warrant are records typically held in the ordinary course of business by webhosting companies.

VI.    AUTHORITY, SERVICE, AND ASSISTANCE

I am familiar with the federal statute that controls the legal process through which we are authorized to obtain electronic information from a service provider. In specific, the Electronic Communications Privacy Act, 18 U.S.C. § 2703, requires the use of a warrant to obtain information from an electronic service provider for the content of email maintained by that provider and authorizes the use of a warrant to obtain other information such as IP addresses, subsriber information, and related account information.

Warrants issued under the Electronic Communications Privacy Act normally operate as subpoenas: civilians from the ISP at which the information is maintained gather the information for the police in much the same way as banks or other large entities search through their records and obtain the appropriate information for the police and investigators pursuant to the subpoena. Therefore, I seek authorization for civilian assistance from GoDaddy.com, Inc., representatives for the execution of this search warrant because their technical assistance will be necessary to obtain information from the GoDaddy.com, Inc.'s, files. Note that pursuant to 18 U.S.C. § 2703(f), my presence is not required for service or execution of the search warrant.

I am also familiar with the GoDaddy.com, Inc.'s subpoena policy which states that GoDaddy.com will accept service by fax or mail of out of state subpoenas issued pursuant to Title 18.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**(Court Branch)**          **(Court Date)**

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

**(3-81) CCMC-1-219 (1)**

**STATE OF ILLINOIS**          )
**COUNTY OF COOK**             ) SS.

### IN THE CIRCUIT COURT OF COOK COUNTY
### COMPLAINT FOR SEARCH WARRANT
Page 5 of 5

VII.   NON-DISCLOSURE

If GoDaddy.com, Inc. alerts the account holder for **ILLINOISCORRUPTION.NET** of the request warrant, the subscriber may flee from prosecution, evidence may be destroyed or otherwise tampered with and/or the investigation of the above identified activities may be seriously jeopardized. Accordingly, I request that the warrant not allow GoDaddy.com, Inc. to notify anyone about the warrant other than people necessary to comply with the purposed search warrant.

Affiant  *Inv. Kate O'Hara #423*

Subscribed and sworn to before me on _3-23-_, 2010 @ 4:04 pm

_____  *1967*
Judge                          # number

*3/23/2010  1454  #6227  ASA Gonzalez*

# Exhibit 74

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1 of 2

(3-81) CCMC-1-220

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois to all peace officers of the state

# SEARCH WARRANT

On this day, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County State's Attorney's Office, Complainant has subscribed and sworn to a complaint for search warrant before me. Upon examination of the complaint, I find that it states facts sufficient to show probable cause.

## I therefore command that you search:

the premises of Yahoo! Inc., 701 First Avenue, Sunnydale, California, 94089

## and seize the following information:

Yahoo!, Inc. subscriber information for **concernedillinoiscitizen@yahoo.fr:**

A. All customer or subscriber account information for each associated account:

1. subscriber names, user names, screen names, or other identities;

2. mailing addresses, residential addresses, business addresses, email addresses, and other contact information;

3. local and long distance telephone connection records, or records of session times and durations;

4. length of service (including start date) and types of service utilized;

5. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

6. means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information:

Complainant _____ Date _____

Subscribed and sworn before me on 3-23- , 2010 at 4:04 AM/PM

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000874

Judge's No.

PLAINTIFF'S DEPOSITION EXHIBIT
GARCIA 3
4-12-18 mr

SEARCH WARRANT # 6228 1455

DATE: 3/23/2010 ASA: Guerrez

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page2of2

(3-81) CCMC-1-220

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

1. records of user activity for any connections made to or from the account, including the date, time, length, and method of connections, data transfer volume, user name, and source and destination Internet Protocol address(es);

2. non-content information associated with the contents of any communication or file stored by or for the account(s), such as the source and destination email addresses and IP addresses.

3. correspondence and notes of records related to the account(s).

C. All communications content:

1. the contents of electronic communications in Yahoo! Inc.'s systems in directories or files owned or controlled by the associated account(s).

and any other items, files, or documents

## which have been used in the commission of, or which constitute evidence of the offense of:

Eavesdropping (720 ILCS 5/14-2(a) & (c))

Complainant _____          Date_____

Subscribed and sworn before me on ___3-23-1___ , 2010 at ___9:04___ AM/PM

MELONGO V. PODLASEK, et al., 13 C 4924          Judge's No.
CCSAO 000875

DATE: 3/23/2010 ASA: GUANNICE

SEARCH WARRANT # COOK 1455

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

__(Court Branch)__          __(Court Date)__

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**(3-81) CCMC-1-219 (1)**

STATE OF ILLINOIS      )
COUNTY OF COOK      ) SS.

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 1 of 5

I, Investigator Kate O'Hara of the Financial Crimes Investigations Unit of the Cook County State's

Attorney's Office, complainant herein, now appear before the undersigned Judge of the Circuit Court of Cook

County and request the issuance of a warrant to search:

the premises of Yahoo! Inc., 701 First Avenue, Sunnydale, California, 94089

and seize, search and analyze:

The following information for the Yahoo!, Inc. subscriber **concernedillinoiscitizen@yahoo.fr**

    A. All customer or subscriber account information for each associated account:

        1. subscriber names, user names, screen names, or other identities;

        2. mailing addresses, residential addresses, business addresses, email addresses, and other contact information;

        3. local and long distance telephone connection records, or records of session times and durations;

        4. length of service (including start date) and types of service utilized;

        5. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

        6. means and source of payment for such service (including any credit card or bank account number) and billing records.

    B. All records and other information:

        1. records of user activity for any connections made to or from the account, including the date,

MELONGO V. PODLASEK, et al., 13 C 4924
CCSAO 000876

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**(Court Branch)**          **(Court Date)**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**(3-81) CCMC-1-219 (1)**

STATE OF ILLINOIS          )
COUNTY OF COOK          ) SS.

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 2 of 5

time, length, and method of connections, data transfer volume, user name, and source and destination Internet Protocol address(es);

2. non-content information associated with the contents of any communication or file stored by or for the account(s), such as the source and destination email addresses and IP addresses.

3. correspondence and notes of records related to the account(s).

C. All communications content:

1. the contents of electronic communications in Yahoo! Inc.'s systems in directories or files owned or controlled by the associated account(s).

and any other items, files, or documents which have been used in the commission of, or which constitute evidence of the offense of Eavesdropping (720 ILCS 5/14-2(a) & (c))

The terms "records," "email," "information," and "electronic communications" include all of the foregoing items of evidence in whatever form and by whatever means such records, email, information, and electronic communications may be been created and stored.

I.          INTRODUCTION

Complainant, Investigator Kate O'Hara, is a sworn law enforcement officer employed by the Cook County State's Attorney's Office as an Investigator in the Financial Crimes Investigations Unit, and has been so employed for four years. For a brief time, your Complainant was employed as an Investigator with the City of Chicago Inspector General's Office, during which she investigated allegations against City Employees in the Department of Ethics, Consumer Services, the Water Department, the Department of Revenue, the Chicago Police Department, and the Chicago Fire Department. Prior to that time, your Complainant was employed as a Grant Writer and Manager for the Cook County State's Attorney's Office for two years.

II.          CRIMINAL VIOLATIONS

Based upon the following information set forth herein, I believe that probable cause exists to issue a search warrant for the above identified instruments, articles, and things which have been used in the commission or

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**(Court Branch)**                    **(Court Date)**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**(3-81) CCMC-1-219 (1)**

STATE OF ILLINOIS     )
COUNTY OF COOK        )  SS.

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COMPLAINT FOR SEARCH WARRANT**
Page 3 of 5

which constitute evidence of the offense 720 ILCS 5/14-2(a) & (c) (Eavesdropping).

III.     SOURCES OF INFORMATION RELATED IN THIS COMPLAINT

The facts set forth in this Complaint are based on my personal knowledge and investigation. The Complaint is also based on knowledge from other individuals (including law enforcement officers), by review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described in this Complaint, and information gained through my training and experience.

I submit this Complaint for the limited purpose showing that there is sufficient probable case to support issuing a warrant to search the items identified in Subsection I. This Complaint does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all statements described in this Complaint are related in substance and in part only.

IV.     DESCRIPTION OF CRIMINAL ACTIVITIES

In May 2008, Annabel Melongo was indicted on three counts of Computer Tampering in case 08CR-10502. During the pendency of those charges, Ms. Melongo has maintained a website, www.illinoiscorruption.net, detailing the progress of the case. The site is organized chronologically and contains an entry for each court date. WHOIS, a service used to identify the company registering or hosting a particular website address, lists the registrar of the site as Wild West Domains and the host as Go Daddy. The site directs all questions or comments to concernedillinoiscitizen@yahoo.fr.

On or about December 18, 2009, illinoiscorruption.net published a post accusing the Cook County Court Reporter's Office of Treason. The post contains three audio recordings and accompanying transcripts pf conversations between Mrs. Melongo and Pamela Taylor of the Court Reporters Office.

The website entry states that on December 10th, Annabel Melongo called the Court Reporter's Office and spoke to supervisor Pamela Taylor. Ms. Melongo tape recorded the conversation, but did not tell the Mrs. Taylor she was doing so nor did she obtain Ms. Taylor's consent. During the conversation, a woman's voice with a distinctive accent identifies herself as Annabel and speaks to another woman's voice who identifies herself as Pamela Taylor. During the conversation Annabel asks how to get the transcripts and tape recordings for a previous court dates, and Ms. Taylor gives her instructions.

MELONGO V. PODLASEK, et al. 13 C 4924
CCSAO 000878

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**(Court Branch)**          **(Court Date)**

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

**(3-81) CCMC-1-219 (1)**

STATE OF ILLINOIS )
COUNTY OF COOK   ) SS.

### IN THE CIRCUIT COURT OF COOK COUNTY
### COMPLAINT FOR SEARCH WARRANT
Page 4 of 5

The website entry goes on to state that Ms. Melongo recorded her conversations on two other occasions. The website states that on December 15th and 16th, Ms. Melongo called Ms. Taylor and recorded the conversations. They appear at illinoiscorruption.net and are published with accompanying transcripts. At no time during the taping does either party mention that the conversation is being tape recorded, nor does either party ask for permission to tape.

Ms. Taylor confirms that she is one of the voices on the tape and that she was unaware that she was being recorded. Ms. Taylor identified the voice on the recording as the of Annabel Melongo, based on her subsequent interactions with Ms. Melongo.

V.   YAHOO!, INC.'S SERVICES, RECORDS, AND INFORMATION

Yahoo!, Inc. is a publicly owned American computer services company that operates various Internet World Wide Web sites, a directory of Internet content, and hosts other services including free email accounts. In addition to offering free services, Yahoo!, Inc. also offers numerous paid services for consumers and businesses such as classified advertising (Premium Services).

Yahoo! Inc.'s Compliance Guide for Law Enforcement states that Yahoo! Inc. maintains records and information which can assist me in identifying who has used the concernedillinoiscitizen@yahoo.fr email address in connection with the above described eavesdropping activities. Yahoo! Inc.'s records and information include when the account was created, what Internet Protocol (IP) addresses were used to create and subsequently access the account, and the content of the subscriber's Yahoo! Briefcase Area.

VI.   AUTHORITY, SERVICE, AND ASSISTANCE

I am familiar with the federal statute that controls the legal process through which we are authorized to obtain electronic information from a service provider. In specific, the Electronic Communications Privacy Act, 18 U.S.C. § 2703, requires the use of a warrant to obtain information from an electronic service provider for the content of email maintained by that provider and authorizes the use of a warrant to obtain other information such as IP addresses, subsriber information, and related account information.

Warrants issued under the Electronic Communications Privacy Act normally operate as subpoenas: civilians from the ISP at which the information is maintained gather the information for the police in much the same way as banks or other large entities search through their records and obtain the appropriate information for the police

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

_____          _____
(Court Branch)                  (Court Date)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

(3-81) CCMC-1-219 (1)

STATE OF ILLINOIS     )
COUNTY OF COOK     )   SS.

IN THE CIRCUIT COURT OF COOK COUNTY
COMPLAINT FOR SEARCH WARRANT
Page 5 of 5

and investigators pursuant to the subpoena. Therefore, I seek authorization for civilian assistance from Yahoo! Inc., representatives for the execution of this search warrant because their technical assistance will be necessary to obtain information from the Yahoo! Inc.'s, files. Note that pursuant to 18 U.S.C. § 2703(f), my presence is not required for service or execution of the search warrant.

I am also familiar with Calipronia Penal Code § 1524.2 which states that all California corporations , such as Yahoo! Inc, must honor legal process for foreign states when the foreign states are seeking electronic evidence under the terms of the Electronic Communications Privacy Act, 18 U.S.C § 2703 *et. seq.*

VII.     NON-DISCLOSURE

If Yahoo!, Inc. alerts the account holder for **concernedillinoiscitizen@yahoo.fr** of the request warrant, the subscriber may flee from prosecution, evidence may be destroyed or otherwise tampered with and/or the investigation of the above identified activities may be seriously jeopardized. Accordingly, I request that the warrant not allow Yahoo!, Inc. to notify anyone about the warrant other than people necessary to comply with the purposed search warrant.

Affiant   *INV. Kate O'Hara #423*

Subscribed and sworn to before me on _3-23-_, 2010 @ 4:04 pm

_____     _____
Judge     1967     # number

# Exhibit 75

```
 1  STATE OF ILLINOIS  )
                       )  SS:
 2  COUNTY OF C O O K  )

 3
            IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4             COUNTY DEPARTMENT-CRIMINAL DIVISION

 5  THE PEOPLE OF THE          )
    STATE OF ILLINOIS,         )
 6                             )
            Plaintiff,         )
 7                             )
            -vs-               )  No. 10 CR 08092 (01)
 8                             )
    ANNABEL MELONGO,           )
 9                             )
            Defendant.         )
10

11          REPORT OF PROCEEDINGS had at the Hearing of the

12  above-entitled cause before the Honorable STEVEN GOEBEL, on

13  June 24, 2011.

14                   PRESENT:

15                   HONORABLE ANITA ALVAREZ,
                     STATE'S ATTORNEY OF COOK COUNTY, by:
16                   MR. ROBERT PODLASEK,
                         Assistant State's Attorney,
17                       for the People;

18                   MR. NICOLAS ALBUKERK,
                         for the Defendant.
19

20

21

22  MARIE K. KOPPERS
    Official Court Reporter
23  2650 South California Avenue, Room 4C02
    Chicago, Illinois  60608
24  License No. 084-004087
```

1       THE CLERK:  Annabel Melongo, in custody.

2       THE COURT:  All right.  Would everyone identify

3  themselves.

4       MR. ALBUKERK:  Nick Albukerk, A-l-b-u-k-e-r-k.

5       MR. PODLASEK:  Robert Podlasek, P-o-d-l-a-s-e-k, for the

6  State.

7       THE COURT:  Good afternoon, Ms. Melongo.

8            All right.  Mr. Albukerk, I will let you start.

9       MR. ALBUKERK:  Thank you, Judge.  Well, Judge, we're

10  here again.  As you know, my client has very, very much

11  wanted to hire other counsel, counsel besides me, and we have

12  to keep getting these continuances to find out if in fact she

13  will be able to hire new counsel.  She has had certain

14  problems, because unfortunately, she's had some -- she tells

15  me -- I spoke to her briefly in the back -- she's had some

16  medical problems.  She needed to undergo some surgery.  And

17  unfortunately, her family -- her mother, specifically, lives

18  in France.  That's something I have been able to confirm,

19  because I have spoken to her there.  And she would like

20  desperately to speak with her mother so that she can hire

21  this other counsel, for the record.  And respectfully, my

22  client is asking for a continuance to call her mother to

23  arrange the funds to hire other counsel.

24       THE COURT:  All right.  I understand.  You also have a

1   motion to withdraw?

2        MR. ALBUKERK:  Correct.

3        THE COURT:  Do you wish to argue that today?

4        MR. ALBUKERK:  Judge, I stand on, you know, what is

5   written in there.  My client has already filed an ARDC

6   complaint against me.

7        THE COURT:  What is the status of the ARDC complaint?

8        MR. ALBUKERK:  I know it was filed and then I had to

9   file a response.  I did file that response over a month ago.

10  And I have not heard back from the ARDC in terms of whether

11  or not they've ruled one way or another.

12       THE DEFENDANT:  After his response, they sent me some

13  papers, and then I have to answer in about two weeks,

14  respond, and provide more documents, and then I did that

15  April 29th.  And then they told me if it's a valid complaint

16  then they are going to investigate.  So I guess they are

17  investigating.

18       THE COURT:  All right.  Well, they would let both

19  parties know if they're going to investigate, with my

20  experience with the ARDC, having dealt with them on a

21  professional level, so that's what they do.

22            Mr. Podlasek, do you have a response?  What's the

23  State's position?

24       MR. PODLASEK:  Judge, as far as the State's concerned,

1  Mr. Albukerk has explained to me the situation he was in

2  months ago.  I believe we had no objection to him withdrawing

3  months ago from this case.  It's just a matter of whether or

4  not the defendant is going to be represented or not.

5      THE DEFENDANT:  I'm going to be represented.

6      THE COURT:  All right.  Here's the situation.  The

7  appellate courts have held just the mere filing of an ARDC

8  complaint does not require withdrawal.  There's been nothing

9  represented to me here today or in the past court appearances

10 that would automatically require a withdrawal.  Otherwise,

11 defendants would simply go around every time they wanted a

12 new attorney and file an ARDC complaint, and the appellate

13 courts have recognized that possibility and have dismissed

14 that possibility and there has to be something more valid to

15 it.  That's why I asked you what the status of the ARDC

16 complaint is.

17      And Ms. Melongo, I'm also very concerned about

18 your status.  Obviously, you have been in custody now for

19 quite sometime and it's important for you to get this matter

20 to trial, because you're sitting in custody, and I don't know

21 ultimately how the case will turn out.  But if you were found

22 guilty, you may be sitting in custody longer than had you

23 gone to trial and the jury found whatever they are going to

24 find.  So it's important for you to get this matter to trial

1    as well.  Do you understand what I'm saying?

2         THE DEFENDANT:  Judge, please I really need time, and

3    actually, I have to see everything that's going on with the

4    first case.  Albukerk never represented me, unless I know

5    exactly what the ARDC is going to say, because there were

6    some things that were done, like motions were filed.  I never

7    knew about them.  There were things that were done behind my

8    back.  I never knew about them.  I want to know all of those

9    things.  It has nothing do with the appellate court.  The

10   relationship between us is really damaged.  And unless

11   Albukerk told me that he didn't want to represent me, I don't

12   want him to represent me any more, so I don't know -- you

13   cannot put us together, because the relationship right now is

14   really damaged, unless maybe what you can do, maybe you can

15   give a stamp to kind of walk on that condition, but I really

16   want to see exactly what -- all the motions, everything in my

17   last file.  Maybe then I can reconsider hiring him back, but

18   right now --

19        THE COURT:  Okay.  What do you want to see from your

20   first case?

21        THE DEFENDANT:  There were things like -- there were

22   motions filed, there were things that Albukerk did and then

23   never informed me about those motions.  There were a lot of

24   motions that were filed and I never knew about them.

1    THE COURT:  A motion that was filed.  Do you know what

2    kind of motion you are concerned with?

3    THE DEFENDANT:  I left -- maybe if I can go back, I left

4    the certificate of disposition in my cell, but I can go date

5    by date.  There were things that were done behind my back.  I

6    never knew that he did those things.  Sometimes he even

7    waived my appearance on something and I was not even aware of

8    my appearance being waived.

9    THE COURT:  All right.  That's usually typical for a

10   court date.  I mean, your appearance cannot be waived for an

11   actual substantive hearing where testimony is heard.  The

12   judge would not accept that or even allow that to go forward.

13   But it's not unusual, it happens all the time, where an

14   attorney will ask for a continuance and waive their client's

15   appearance for various reasons, but nothing substantive

16   happens during those court appearances, and I certainly would

17   not let that happen, either.  You will be present for all

18   substantive matters that any kind of ruling or any kind of

19   argument is being made, because I won't tolerate that.  I

20   will not permit it as a judge on your case, I can assure you

21   that.

22          All right.  This is what we will do --

23   THE DEFENDANT:  For instance --

24   THE COURT:  All right.  Go ahead.

```
1       THE DEFENDANT:  For instance, post trial, there was a
2   remanded file on my bond review, and that bond has been
3   denied, and I never knew that there was a bond review after
4   the trial.  During that time, I was preparing to re-file that
5   bond reduction and everything, but then I saw the certificate
6   and then I saw the bond review and then a remanded file and
7   everything and I was extremely confused, and I don't know
8   what was the mandate for, what my bond -- the motion to
9   review my bond was denied when I never even knew that such a
10  motion was filed.  I never knew.  So I need to see all --
11      THE COURT:  I will rule on Mr. Albukerk's motion to
12  withdraw and your motion to have him dismissed in two weeks.
13  All right?
14      THE DEFENDANT:  Yes.
15      THE COURT:  You don't have an attorney ready and waiting
16  to come in on this case.
17      THE DEFENDANT:  No, I have an attorney waiting.
18      THE COURT:  Who is that?
19      THE DEFENDANT:  Mr. Willis.
20      THE COURT:  Robert Willis?
21      THE DEFENDANT:  Yes.  The only thing is, I have to talk
22  to my family.  And like I said, I can still give Albukerk a
23  chance, but I really need to know exactly what he did.
24  Unless I see what he did, I can never -- I cannot go to him.
```

CC-7

1   He did a lot of things behind my back.

2       THE COURT:  All right.  I am going to continue it for

3   two weeks and then rule on this matter.

4       MR. ALBUKERK:  Judge, in any event, first of all, number

5   one, let's get a date.  Number two, with the permission of

6   the Court, can I prepare an order ordering the Cook County

7   Sheriff to grant my client a long distance overseas phone

8   call to her family?

9       THE COURT:  Yes, I will sign an order for that,

10  absolutely.

11      THE DEFENDANT:  Thank you, Judge.

12      THE COURT:  You're welcome.

13          All right.  July 11th?

14      MR. ALBUKERK:  Yes.

15      THE COURT:  It will be at 1:00 o'clock.

16      MR. ALBUKERK:  All right.  I will be able to fit it in.

17      THE DEFENDANT:  Can you also order Albukerk to show me

18  my entire file?  I want to see everything.

19      THE COURT:  Well, he can go over it.  There are certain

20  things, you know, he cannot show you.  He cannot show you

21  police reports and things like that, but he can go over those

22  with you.

23      THE DEFENDANT:  Okay.

24      MR. ALBUKERK:  Judge, I have already addressed all of

1  her concerns. I have already explained them quite fully. I

2  have already been a visitor in the jail several times. That

3  is exactly what I told the ARDC as well, or something to that

4  effect. What she wants is, she wants transcripts and copies

5  of absolutely everything and every file. She wants

6  mathematical reproductions of the events in the case, and I

7  cannot do that. I cannot give her --

8       THE COURT: What do you mean "mathematical

9  reproductions"?

10       MR. ALBUKERK: She basically wants a word by word

11  reproduction of everything that has occurred in her case over

12  the last year and a half.

13       THE DEFENDANT: That's not true, that's not true.

14       MR. ALBUKERK: I have already gone over with her every

15  single motion. I have already explained to her what went on.

16  And she simply doesn't accept it. That's the problem.

17       THE DEFENDANT: Judge, that's not true. I asked him to

18  bring my entire file to jail and I want to review every

19  motion filed that I was not aware of. I never asked him to

20  make me a copy --

21       THE COURT: I'm sure Mr. Albukerk will go over the

22  motions that were filed.

23       THE DEFENDANT: Just bring any my entire file and let me

24  go through my file.

 1      MR. ALBUKERK:  Judge, I'm not going to do that.

 2      THE COURT:  He cannot do that.  He can go over things

 3  with you, but he cannot just hand over his file to you.

 4  That's not permissible.

 5      THE DEFENDANT:  I don't need to see his copy -- I just

 6  want to see -- I am entitled to know the kind of motion he

 7  has filed.

 8      THE COURT:  Right.  He can go over the motions with you.

 9      MR. ALBUKERK:  I have already been over all of that with

10  you.

11      THE DEFENDANT:  No, you have not, you have not.

12      MR. ALBUKERK:  I have.

13      THE DEFENDANT:  See, that's the issue.

14      THE COURT:  All right.  I can see the two of you do have

15  some issues.  I will rule on this July 11th then.

16                  (Whereupon, the above-entitled matter was

17                  continued to July 11, 2011.)

18

19

20

21

22

23

24

```
 1   STATE OF ILLINOIS   )
                         ) SS:
 2   COUNTY OF C O O K   )

 3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT-CRIMINAL DIVISION
 4

 5          I, MARIE K. KOPPERS, an Official Court Reporter

 6   of the Circuit Court of Cook County, County

 7   Department-Criminal Division, do hereby certify that I

 8   reported in shorthand the proceedings had in the

 9   above-entitled cause and that the foregoing is a true and

10   correct transcript of the proceedings heard before the

11   HONORABLE STEVEN GOEBEL, Judge of said court.

12

13

14                      _____
                        MARIE K. KOPPERS
15                      License No. 084-004087

16

17

18

19

20

21

22

23

24
```

# Exhibit 76

```
1    STATE OF ILLINOIS )
                       )  SS:
2    COUNTY OF COOK    )

3
                 IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
4                      COUNTY DEPARTMENT-CRIMINAL DIVISION

5    PEOPLE OF THE STATE OF ILLINOIS    )
                                        )
6                    -vs-               )  No. 10 CR 8092 01
                                        )
7    ANNABEL MELONGO                    )

8

9                                      REPORT OF PROCEEDINGS had at the

10   hearing of the above-entitled cause before Steven J. Goebel, one

11   of the judges of said division, on the 20th day of September,

12   A.D., 2011.

13
               PRESENT:
14
               MS. ANITA ALVAREZ, Cook County State's Attorney by
15             MR. ROBERT PODLASEK, Assistant State's Attorney,

16                     on behalf of the People;

17             MS. ANNABEL MELONGO,

18                     pro se;

19             MR. NICOLAS ALBUKERK,

20                     also present.

21

22   ELIZABETH A. REYES
     CERTIFIED SHORTHAND REPORTER
23   2650 SOUTH CALIFORNIA AVENUE
     CHICAGO, ILLINOIS 60608
24   ILLINOIS CSR LICENSE NO. 084-001910
```

KK-1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO 021724

1     THE CLERK: Annabel Melongo, in custody.

2     MR. ALBUKERK: Nick Albukerk, A L B U K E R K, former lawyer
3     of Annabel Melongo.

4     MR. PODLASEK: Robert Podlasek, P O D L A S E K, for the
5     State.

6     THE COURT: All right. They're bringing out Miss Melongo.
7     The discovery, were you able to go through that before it is
8     tendered?

9     MR. ALBUKERK: Yes. I think -- well, I'll wait -- I'll wait
10    until she's here and then I'll start talking about it I guess. I
11    think this is all of it.

12    THE COURT: Okay.

13              (Pause in proceedings)

14    THE COURT: Okay. Miss Melongo is before the Court. Good
15    morning, Miss Melongo.

16    DEFENDANT MELONGO: Good morning.

17    THE COURT: Mr. Podlasek.

18    MR. PODLASEK: Robert Podlasek, P O D L A S E K.

19    THE COURT: Mr. Albukerk.

20    MR. ALBUKERK: Nick Albukerk for the record, former lawyer of
21    Miss Melongo.

22    Judge, pursuant to the Court's request I have brought
23    what I believe to be all of the discovery materials. Also I
24    basically brought my entire file to court. And obviously it's my

KK-2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    MELONGO_021725

```
 1   understanding that Ms. Melongo is going to represent herself.  It
 2   has been raised by the State that there's a duty to redact some of
 3   this material.  A lot of this material is material that I
 4   subpoenaed.  It's also -- it's mixed together because it's not
 5   just the -- it's not just the eavesdropping case.  It's also
 6   the -- the computer tampering case as well.  I don't know, your
 7   Honor, if you want to go through these materials with me or if you
 8   want me to go through them -- me to go through them with her.  I
 9   don't know how you exactly want to do this.  Oh, and then the
10   bottom box is essentially all documents.  The top box is all
11   basically clothes.
12       THE COURT:  All right.  State, what's your position?
13       MR. PODLASEK:  Judge, our position is that we need to review
14   it.  We need to redact any witnesses' telephone numbers and/or
15   addresses.  It's my understanding that if Miss Melongo wants
16   somebody to be in court, she's going to have to ask the Court to
17   issue a subpoena.
18       THE COURT:  Miss Melongo, your position?
19       DEFENDANT MELONGO:  Actually the last time I was in court the
20   State, they talk about a Supreme Court rule that actually give
21   them the permission to go to my file and get it.  I went to the
22   law library, went to the Supreme Court rule.  Supreme Court Rule
23   412, 13, 14, 15.  There's nothing there that say once a defendant
24   go pro se the discovery information has to be changed.  In fact,
```

KK-3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1    two years ago I became pro se.  There was not a single page that
2    was changed.

3        THE COURT:  Redacted you mean?

4        DEFENDANT MELONGO:  Yes.  There was nothing that -- actually
5    everything was given to me, all the subpoena, everything.  So why
6    is it two years later then suddenly the State remember, oh, we
7    have to change information.  Where was that knowledge and wisdom
8    two years ago?  Why was -- wasn't it my changed two years ago when
9    I also became pro se?  So I actually fine that extremely
10   suspicious for the State to actually want to get my file and
11   change some information.

12        And, Judge, if you'll notice, if they take my files is
13   such a prejudice to me because in this file are communication
14   between Albukerk and myself that are confidential.  There are
15   things that the State should not see and for the State to come in
16   to request my files actually going to be a great prejudice
17   actually for me and completely.  I don't want the State to get to
18   my file.  Albukerk know what the State want.  Albukerk has to show
19   you the information.  And if the State want it, the State can have
20   it and maybe Albukerk see it, you know.  Albukerk know exactly
21   what kind of information the State want so Albukerk can make two
22   copies, one he keeps and the other one that he gives it to me.

23        I'm not -- I'm not in this case pro se for long and we
24   are actually going in circle.  I received this letter last week

KK-4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO 021727

```
 1    from my mother and you can see it's French. And what the letter
 2    say, she say I have the money. To whom you want me to send the
 3    money for your defense? And I have been trying, calling every day
 4    here to court asking to have access to phone communication and so
 5    that I can give her the information to send the money. I don't
 6    know if you have a French translator there but everything -- you
 7    can make a copy for this. She actually give me dates where I can
 8    call her to give her that information. So eventually a lawyer is
 9    going to get access to my file and the State in no way should get
10    to my file.
11         THE COURT: All right. So what you're telling me essentially
12    is that your mother is going to hire an attorney for you. Is that
13    what you're telling me?
14         DEFENDANT MELONGO: Yes. And --
15         THE COURT: I believe you've been telling --
16         DEFENDANT MELONGO: I need --
17         THE COURT: Hold on. I know you've been telling me for quite
18    a while you're going to have an attorney. And your mom wrote you
19    a letter so you have not spoken to her on the phone at all or have
20    you had any communication through your friend who is always in
21    court, helped you write the last motion -- not helped you write it
22    but delivered it to the Court I should say.
23         DEFENDANT MELONGO: Yes. I can just tell -- she doesn't have
24    access -- she doesn't have an international phone -- phone line.
```

KK-5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021728

1    I can just tell her say this to my mom through somebody else.

2    That's the only way I can tell her, but if I have to respond to

3    this letter, it's going to take another month for me to actually

4    have the response and -- and know if she send the money or how

5    because once you send the money to the Western Union there has to

6    be some money order, tracking number and so that you have to send

7    back for the person to actually cash the money.  And the issue has

8    been give me a local phone and I have an international phone card

9    so give me a phone with a local access so that I can just call my

10   mom and give her that information.  If I call my mom today, by the

11   end of the week I have the money.  And I have been asking this

12   every time I been in court.  The State say, oh, they have some

13   security issue.

14       THE COURT:  Hold on one second.  You said you called your mom

15   once before from the jail?

16       DEFENDANT MELONGO:  Yes.

17       THE COURT:  There was -- there was a translator there?

18       MR. PODLASEK:  Yes.  They had a -- they have a French

19   translator.  And I --

20       THE COURT:  Mr. Albukerk, were you part of that?

21       MR. ALBUKERK:  We -- if I -- if memory serves correctly, this

22   was a while ago.  We got an order for the -- for my client to make

23   a phone call to France and -- and I know that it was my

24   understanding, I wasn't there at the time, but it was my

KK-6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1    understanding that she, in fact, did make phone calls to France.

2    And I have been in communication obviously with my client's mother

3    as well and she -- the mother had told me that she, you know, had

4    received these phone calls.  So it's -- this is going back many,

5    many months obviously, probably over a year now.

6        DEFENDANT MELONGO:  No, that's not true.

7        MR. ALBUKERK:  Well, it was going back many months.

8        DEFENDANT MELONGO:  Actually my -- my -- my social worker call

9    you.

10       THE COURT:  All right.  You're not going to fight with your

11   attorney right now.

12       DEFENDANT MELONGO:  Okay.

13       THE COURT:  Or your former attorney.

14       DEFENDANT MELONGO:  Let me -- let me clarify this.  Before my

15   surgery the social worker called me to request my mother phone

16   number and Nick gave her the phone number and then I make two call

17   from France at the jail and there was a French translator there.

18   So after the surgery when I -- in the presence of the translator

19   say we can do this once per month.  So after the surgery when I

20   requested to make the monthly phone call, then the social worker

21   start jerking me around.  She gave me appointment and then she --

22   she would not hold the appointment and that's why I came here so

23   that it's formally an order so that I can -- I can make those

24   phone calls.

KK-7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021730

1      THE COURT:  All right.  So you understand, if I sign an order
2  to allow you to make a phone call to France to facilitate moving
3  this case along and hopefully you getting an attorney, you
4  understand it's going to be someone else listening to your phone
5  call.

6      DEFENDANT MELONGO:  I know.

7      THE COURT:  Do you understand that?

8      DEFENDANT MELONGO:  That's why there was a France translator
9  there.  She actually listened to my conversation.  She told me you
10  cannot talk about drugs and all those -- those -- those -- she
11  actually tell me exactly the thing I can say and thing I cannot.

12     THE COURT:  All right.  Mr. Albukerk, I'm going to ask you to
13  do one last thing even though you're not counsel anymore.  If you
14  prepare an order to what I just said, I'm going to allow Miss
15  Melongo to have a phone call to France.

16     MR. ALBUKERK:  Right.

17     THE COURT:  However, the jail obviously will have a translator
18  and will be allowed to listen to the phone call for security
19  reasons.

20     MR. ALBUKERK:  Very well.

21     THE COURT:  Okay?

22     MR. ALBUKERK:  Yes.  I'll draft that.

23     THE COURT:  And as far as discovery, I assume there is matters
24  within your discovery file, Mr. Albukerk --

KK-8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1      MR. ALBUKERK:  Yes.

2      THE COURT:  -- that are attorney-client privilege.

3      MR. ALBUKERK:  Judge, I believe -- Judge, I believe there are

4   things in the file that are probably attorney-client privilege and

5   that other things that I subpoenaed that, you know, an attorney

6   wouldn't normally turn over.  I just -- I mean there's a lot of

7   stuff in the file obviously.

8      DEFENDANT MELONGO:  But you never told me.

9      THE COURT:  Hold on, Miss Melongo.

10      DEFENDANT MELONGO:  Okay.

11      THE COURT:  Hold on.  I want to hold this over for a short

12   date.  I want you to tell me what those items are.  The State will

13   not be entitled to those items that are attorney-client

14   privilege --

15      MR. ALBUKERK:  Okay.

16      THE COURT:  -- or that are not discoverable items.  I want to

17   know what those are and we're going to set this down.  Tell me

18   what those items are.  Otherwise the items that are not listed

19   we're going -- I'm going to have you go over those with the State

20   and those items will be redacted.  Miss Melongo, just because the

21   State may or may not have two years ago asked for those items to

22   be redacted does not mean that they can't ask for that now because

23   that's what the law is.  And --

24      DEFENDANT MELONGO:  Judge --

KK-9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1       THE COURT:  -- it's not a waiver issue.

2       DEFENDANT MELONGO:  Judge, can I have the statute or the case

3    law please?

4       THE COURT:  That's what the case law is, Miss Melongo.

5       DEFENDANT MELONGO:  What case?

6       THE COURT:  You're representing yourself now.  It's up to you

7    to find your own case law and find your own statutes.  Okay?  I'm

8    not here to give you case law and statutes.

9       DEFENDANT MELONGO:  No.  Because --

10      THE COURT:  You're representing yourself.  And don't interrupt

11   me.

12      DEFENDANT MELONGO:  Okay.

13      THE COURT:  That's going to be my ruling.  You find it.

14      DEFENDANT MELONGO:  Judge, may I please?

15      THE COURT:  Go ahead.

16      DEFENDANT MELONGO:  Because the last time we were here, the

17   State said there was a Supreme Court rule that allow him to do

18   that and I went to the law library.  There's -- I haven't seen

19   that Supreme Court rule.  If the State can tell me the Supreme

20   Court rule that will allow the State to go to my file and redact

21   information.

22      THE COURT:  Okay.  I'm not going to allow him to go through

23   your whole file.

24      MR. PODLASEK:  I think Judge Joyce was here the last time and

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                     MELONGO 021733

1    he may have cited a rule and I merely said I believe so.  I didn't

2    cite any rules.  I think Judge Joyce did cite a rule to Miss

3    Melongo.  I don't know if that was the correct rule.  I didn't

4    look it up.

5         THE COURT:  Okay.  In either case --

6         DEFENDANT MELONGO:  Okay.

7         THE COURT:  -- it is what the law is and I am going to allow

8    that.  They will not get any confidential attorney-client

9    information or materials.  That is privileged.  You're absolutely

10   correct.  State is not entitled to that and they will not get

11   that.  However, the regular and normal discovery that does include

12   names, addresses will be redacted.

13        DEFENDANT MELONGO:  Okay.

14        THE COURT:  But this whole process could be circumvented if

15   you had an attorney here.  So the first thing we're going to do is

16   have that order signed.

17        DEFENDANT MELONGO:  Yes.

18        THE COURT:  And hold this over for a date and hopefully you

19   can tell me when you can have an attorney here.

20        DEFENDANT MELONGO:  Yes.

21        THE COURT:  And that's going to save Mr. Albukerk and Mr.

22   Podlasek a lot of hours going through the discovery.

23        MR. PODLASEK:  Judge, just for the Court's notice you may get

24   someone from the sheriff's office filing something.

KK-11

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO 021734

 1      THE COURT:  That's fine.  Then they can file it.  But if it

 2  was allowed before, they can certainly allow it again and we need

 3  to get this case moving along.

 4      MR. PODLASEK:  Judge, I'm just --

 5      THE COURT:  That they will be allowed so there's no security

 6  issues to have an interpreter present.

 7      DEFENDANT MELONGO:  Judge, when it's time, can you ask sheriff

 8  give a time, a time line because you sign an order and then they

 9  execute an order like a month later.  If you can give a time line,

10  if they can put this week so I can call my mom.

11      THE COURT:  Right.  I want it within a week so, Mr. Albukerk,

12  put in -- today being obviously the 20th.  I want her to be called

13  by the 27th.

14      DEFENDANT MELONGO:  Okay.

15      THE COURT:  One week.

16      DEFENDANT MELONGO:  And last but not least -- and, Judge,

17  Albukerk never told me that he ever subpoena something and he

18  actually showed me two subpoena and then I asked him so what

19  happens to the subpoena.  He say, oh, they have been quashed and

20  that's why I'm kind of surprised now.  He came now.  I have those

21  subpoena and the information needs to be changed.  I never knew

22  that Albukerk ever subpoena something and those subpoena were

23  actually returned to him.  He never gave me that information so

24  I'm kind of surprised now that he has for which I had no idea that

KK-12

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021735

1    he had documents for which I knew nothing about.

2        THE COURT:  Okay.  Well, we'll deal with that as we proceed

3    here.  Mr. Albukerk has two boxes it looks like.

4        MR. ALBUKERK:  Yes, Judge.  The top box is all clothes and

5    shoes.  The second box below is all documents that either have

6    been tendered to me by the State that I have copied and put

7    together for my trial notebooks.  And then there's a lot of

8    material like I said that I subpoenaed all of which, by the way,

9    Judge, I did, in fact, tell my client about in great detail.

10       THE COURT:  Okay.  Mr. Albukerk, I understand.  Let's go to

11   the first week of October.  What's a good date for you, Mr.

12   Albukerk?

13       MR. ALBUKERK:  What's a good date for us to come back?

14       THE COURT:  Right.

15       MR. ALBUKERK:  Soon I imagine.

16       THE COURT:  First week of October.

17       DEFENDANT MELONGO:  Maybe the 5th, the first Wednesday?

18       THE COURT:  How's the 5th?

19       MR. ALBUKERK:  5th will work out fine.

20       MR. PODLASEK:  That's fine.

21       THE COURT:  All right.  By agreement October 5th.

22       MR. ALBUKERK:  Judge, what was that extension again?

23       MR. PODLASEK:  3359.

24       MR. ALBUKERK:  3359?

KK-13

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021736

1      THE COURT:  The court extension?

2      MR. ALBUKERK:  Yes.

3      THE COURT:  3359.

4      MR. ALBUKERK:  Judge, just to clarify you would like me to --

5  you want me to come up with a -- for the lack of a better term an

6  index of everything I've got?

7      THE COURT.  No.  You don't have to come up with an index of

8  everything you have.  I just want you to tell me what is

9  confidential.  Obviously you don't have to tell the State.  And

10  show -- show me what that could be or just tell me what it could

11  be.  You don't have to show me.

12     MR. ALBUKERK:  Okay.

13     THE COURT:  And I will make a ruling.  If it's attorney-client

14  privilege, it will not be tendered obviously to the State.

15     MR. ALBUKERK:  I could -- how about if I put it into three

16  piles, one being definite, you know, discovery that was tendered

17  to me by the State, one being just I don't know and then the other

18  being definite, you know, attorney-client privilege because

19  there's a lot of stuff that I subpoenaed that it bears on the

20  investigation.  It bears on -- it bears on how one might try

21  either one of the cases.

22     THE COURT:  Was that information tendered to the State in

23  discovery?

24     MR. ALBUKERK:  No, it wasn't.  I mean it was -- because I --

KK-14

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021737

1    it was subpoenaed -- for instance, I subpoenaed materials in the
2    computer tampering case while we were still, you know, on the
3    eavesdropping case.

4        MR. PODLASEK:  Judge, the reason I'm going -- the motion that
5    we have is for all discovery in both cases so if there's material
6    that is going to be presented in the computer tampering case, at
7    some point we would like access to that since they make reference
8    to that in the eavesdropping case.

9        DEFENDANT MELONGO:  It has to be done through motion, not
10   going through my file.

11       MR. PODLASEK:  We have filed a motion, Judge.

12       THE COURT:  Right.  Both sides have an on duty -- ongoing duty
13   to disclose all discovery matters.  So if you want to divide it up
14   in three piles, I will look at it and I will decide.

15       DEFENDANT MELONGO:  Judge, may I?

16       THE COURT:  You may.

17       DEFENDANT MELONGO:  Instead of him dividing can he just wait
18   because once I receive my money the lawyer is there waiting for --
19   it's just a matter of a week.

20       THE COURT:  Okay.

21       DEFENDANT MELONGO:  Instead of him going through my stuff.

22       THE COURT:  We'll see where we're at then.  First week of
23   October, October 5th.  Nothing will be tendered before that date.

24       MR. PODLASEK:  The motion that was filed by Miss Melongo.

KK-15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021738

1     THE COURT:  I'm sorry.

2     MR. PODLASEK:  There's a motion pending.

3     THE COURT:  That will be held as well.

4     MR. PODLASEK:  Okay.

5     THE COURT:  I'm just waiting for Mr. Albukerk to finish the

6  order and it will be continued to October 5th.

7     DEFENDANT MELONGO:  Can I have --

8     MR. ALBUKERK:  Miss Melongo, can you tell me what your ID

9  number is?  Miss Melongo, can I get your ID number please?

10    THE CLERK:  2011-0414060.

11    DEFENDANT MELONGO:  Not 2011.  2010.

12    MR. ALBUKERK:  2010.  You say it again.  Couldn't be 11 but

13  that's okay.  What was the other?

14    THE CLERK:  0414060.

15    DEFENDANT MELONGO:  This is my ID, Judge.  It says 2010.

16    THE COURT:  Okay.  2010.

17               (Pause in proceedings)

18    DEFENDANT MELONGO:  Judge --

19    THE COURT:  Mr. Albukerk, show a copy as well to Miss Melongo.

20    MR. ALBUKERK:  Certainly.

21    THE COURT:  Okay.  I'll be in chambers.

22    MR. PODLASEK:  Just bring it back there?

23    THE COURT:  Yes.

24              (Which were all the proceedings had)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER            MELONGO 021739

1   STATE OF ILLINOIS )
                  )   SS:

2   COUNTY OF COOK   )

3           I, ELIZABETH A. REYES, Official Shorthand Reporter of

4   the Circuit Court of Cook County, County Department-Criminal

5   Division, do hereby certify that I reported in shorthand the

6   evidence had in the above-entitled cause and that the foregoing is

7   a true and correct transcript of all the evidence heard.

8

9

10

11                           Official Shorthand Reporter
                           License No. 084-001910

12                           Circuit Court of Cook County
                           County Department
                           Criminal Division

13

14   Dated this  19  day of November, 2012.

15

16

17

18

19

20

21

22

23

24

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                  MELONGO_021740

# Exhibit 77

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STATE OF ILLINOIS )
                    ) SS:
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE )
STATE OF ILLINOIS, )
                    )
      Plaintiff, )
                    )        CHARGE: CRIMINAL
          vs. )        CASE NO:  10 CR 08092-01
                    )
ANNABEL MELONGO, )
                    )
      Defendant. )
                    )

                 BE IT REMEMBERED, that on the 5th day
of OCTOBER, 2011, A.D, this cause came on to be heard
before the HONORABLE STEVEN GOEBEL, Judge of said court,
herein, the defendant having entered a plea of not
guilty.

          A P P E A R A N C E S:
          HON:  ANITA ALVAREZ,
          State's Attorney of Cook County by;
          MR. ROBERT PODLASEK,
          Asst. State's Attorney,
               On behalf of the People of Illinois;
               * * * * * * * * * * *

          MS. ANNABEL MELONGO,
             Appearing Pro Se.
             * * * * * * * * * * *

JAMIE MITCHELL
OFFICIAL COURT REPORTER
CIRCUIT COURT OF COOK COUNTY

                      LL-1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021741

1
2
3                              I N D E X
4
5              HON:    STEVEN GOEBEL
6              DATE:   10/5/11
7           CHARGE:    CRIMINAL
8            PAGES:    LL-1 THROUGH LL-26
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24     CONTINUED TO...............................10/13/11

                              LL-2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021742

1        THE CLERK: Annabel Melongo.

2        MR. ALBUKERK: For the record, Nick Albukerk,

3 former counsel for Annabel Melongo.

4        MR. PODLASEK: Robert Podlasek on behalf of the

5 State.

6        THE COURT: Good morning, Ms. Melongo, how are

7 you?

8        DEFENDANT MELONGO: Fine.

9        THE COURT: Did you make your phone call?

10       DEFENDANT MELONGO: I didn't -- they haven't

11 let me make a phone call. I ask that --

12       THE COURT: I didn't hear you.

13       DEFENDANT MELONGO: They didn't let me make a

14 call. They didn't let me make a phone call. I wrote you

15 a later. By next week, I'm going to respond. But, your

16 order for the phone call has not been complied with.

17              So, I will ask, at this time, to

18 file a co-counsel and maybe you could fine --

19       THE COURT: As I kind of explained to you

20 before, I really don't have jurisdiction over the jail as

21 far as forcing them to do things like phone calls and

22 library privileges and things like that. All I could do

23 is make an order. But, it's ultimately up to them

24 whether or not they're going to, pursuant to their

LL-3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021743

1    administrative policy and safety requirements at the

2    jail, comply with those orders.

3                        I'm not going to hold the Cook

4    County Jail in contempt of court. Let's proceed with

5    discovery. Mr. Albukerk, where are we at?

6                    MR. ALBUKERK: Judge, pursuant to your order, I

7    brought to the Court, two large sized boxes. The first

8    box is all the clothes, shoes, several outfits that

9    Ms. Melongo used in her last trial and presumably needs

10   to use in any further jury trials. The bottom box is all

11   the documents that I've had in both her cases, both her

12   eavesdropping cases, as well as the other case, the

13   computer tampering case.

14                       I've gone through the entire box.

15   I believe -- I hope that I got out every single document

16   which could be arguably privileged. I believe the

17   documents are definitely privileged. They would be like

18   letters between her and I.

19                  THE COURT: Those are privileged?

20                  MR. ALBUKERK: Exactly. There's some other

21   communications which arguably could be privileged. It's

22   about an inch thick worth of document. With the Court's

23   permission, I would open it up. If the Court wants to

24   review those documents, it could.

                            LL-4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_021744

1          The rest of the box, I believe is

2    all the things that we either subpoenaed as part of my

3    investigation, or that is discovery that was tendered to

4    us, most of which has already been tendered. Some of the

5    subpoenaed materials regarding the computer tampering

6    case has not been tendered to the State. That's because

7    the State elected on the eavesdropping case.

8          THE COURT: But, in your opinion, they are

9    discoverable?

10         MR. ALBUKERK: Oh, yes, absolutely.

11         THE COURT: All right. I do not want to look

12   at any private communications between you and

13   Ms. Melongo. I'm not going to look at those. Do not

14   tender those to me. You could either keep them or give

15   them to Ms. Melongo.

16         MR. ALBUKERK: There are e-mails and stuff.

17         THE COURT: Did you make copies for your files

18   so that you have copies if you need them?

19         DEFENDANT MELONGO: Yes, I want to request that

20   too.

21         MR. ALBUKERK: I did not.

22         THE COURT: Do you wish copies? You should

23   have copies, I would think. That's up to you.

24         MR. ALBUKERK: Well, Judge, I believe that

                        LL-5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021745

1    everything in here -- because she's representing herself,

2    I did not believe that was necessary.

3    DEFENDANT MELONGO: But, Judge, it's necessary

4    because the question is not if I'm going to get counsel,

5    it's when I'm going to get counsel. I don't want to

6    re-subpoena all those documents. Mr. Albukerk, you made

7    a copy so that is given to me. When I get the counsel,

8    then the original files are given to my lawyer. I don't

9    want to -- Judge, see all this? I'm not going to redo

10   everything. Copies has to be made.

11   THE COURT: There will be a copy made for you.

12   I'm not talking about a copy of the documents, I'm

13   talking about -- the State is going to redact and make

14   copies of the documents. I'm talking right now the

15   smaller file Mr. Albukerk is holding in his hand, which

16   is attorney/client privilege, which talks about the

17   contracts and other communications between you and him.

18   That's really all I'm dealing with right now.

19                                 As far as the boxes are concerned,

20   those will be tendered to the State to redact, because

21   they're discoverable. There's nothing private in those

22   documents that are attorney/client privilege. The State

23   will redact those.

24   DEFENDANT MELONGO: Judge, can -- I want to

LL-6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_021746

1    object about the State getting this file, because I

2    haven't even seen this file.  I'm not even sure that

3    Albukerk, what he's saying -- everything is not

4    confidential.  I really have to see and decide what is

5    not confidential.  To give my file to the State, will be

6    really unfair process done to the defendant.  You have

7    really prejudiced the defendant.

8              THE COURT:  The attorney/client privilege these

9    are reports, documents.

10             DEFENDANT MELONGO:  Why I can't --

11             THE COURT:  It's all discoverable material.

12             DEFENDANT MELONGO:  Why can't I just -- why

13   can't we just sit at the table and then one by one and

14   see those documents -- actually see what they are.  I

15   don't need to see the names.  I don't need to see the

16   addresses.  I don't even have that memory to remember

17   addresses and names of all those documents.  I have to

18   see what is in this file before it's been tendered to the

19   State.

20             THE COURT:  Okay.

21                        Well, that's exactly what the law

22   does not allow, because there's certain information

23   within the files that you're not allowed to see --

24             DEFENDANT MELONGO:  Judge --

                          LL-7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_021747

1    THE COURT:  -- like names -- not names, but
2    addresses and things like that.
3        DEFENDANT MELONGO:  Judge, with all due
4    respect, last time after watching the State law --
5    reading the case law -- I've been to the Supreme Court
6    Rules that says once defendant becomes pro se, her file
7    has to be dedacted [sic.]  I've never seen that statute.
8    I've never seen that case law.  I asked you that the last
9    time.
10       THE COURT:  Well, I asked you not to represent
11   yourself because you don't know the law.  All right.
12       DEFENDANT MELONGO:  Okay.
13       THE COURT:  It's not up to me to tell you what
14   the law is as far as giving you case law rules and things
15   like that.  You chose to represent yourself.
16       DEFENDANT MELONGO:  I haven't been helped so
17   far in actually getting a lawyer.  It's been months.
18   I've been asking for phone calls.  The first time it was
19   no, the Court cannot do it because of security issues.
20   I've never seen the -- seen those security issues.
21                    The second time -- and all that
22   was made to make a phone call.  Nobody cares about the
23   orders.  I come here with no -- with no lawyer, and my
24   file had to be tendered to the State because I have no

LL-8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021748

1    lawyer whereas nobody actually helped me to get a lawyer.

2                        It's not if -- like I just say,

3    it's not if I'm going to get a lawyer, it's when I'm

4    going to get a lawyer.  Mr. Albukerk keep my file until I

5    get a lawyer if that's the case.  My file should not be

6    tendered to the State.

7                 THE COURT:  That's why we're going back to the

8    same thing originally.  I mean, I saw your friend.  She's

9    sitting in court giving you the high 5 when you finally

10   discharged Mr. Albukerk.  That was your method of getting

11   rid of Mr. Albukerk and doing what you wanted to do on

12   this case.  You're doing it just so you could buy your

13   time to get a lawyer.

14                 DEFENDANT MELONGO:  I'm not buying time.

15                 THE COURT:  I'm going to proceed with this

16   case.  If you want to represent yourself, you have to

17   represent yourself.  This case is going to go to trial.

18   I'm not going to wait months like it's been since you've

19   been telling me it's going to be a lawyer.  You told me

20   that for months now.  There's no attorney.  I don't even

21   foresee an attorney on the horizon for that matter.

22                        I'm not going to keep delaying

23   this case.  If you chose to represent yourself now,

24   you're going to represent yourself.

                              LL-9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021749

1       DEFENDANT MELONGO:  Okay.

2                   But, right now, my file -- and I

3    will object on the record.  I would really object to it.

4    It will be an unfair prejudice to the defendant to have a

5    file tendered to the defendant before the defendant even

6    see what is in the file.  This is a lawyer I fired.  I

7    don't trust him.  Tell me what is confidential and not in

8    my file.  I have to see what is in my file to decide if

9    it's confidential or not.

10                  THE COURT:  That's not up to you to decide.

11                  DEFENDANT MELONGO:  Okay.

12                  THE COURT:  Your objection is noted for the

13   record.  Objection is overruled and the boxes portion

14   will be tendered to the State.  What Mr. Albukerk has in

15   his hand, that's all the confidential information.

16                  MR. ALBUKERK:  I believe it is.  As you know,

17   it's a fairly big file.  I believe I went through it.  I

18   diligently hope I didn't make any mistakes.  I did the

19   best I could.

20                  THE COURT:  Hopefully you didn't.  State, you

21   go through it, see if there is anything.  If you run

22   across anything, I'm instructing you not to review it at

23   all.  Stop immediately and set it aside.

24                  MR. PODLASEK:  I will.

LL-10

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO 021750

1    THE COURT: Do you understand?

2    MR. PODLASEK: Yes. Judge, there's one box in

3    there, you don't expect us to take the clothes? You

4    don't expect us to take that, do you?

5    THE COURT: No. What does the clothes have to

6    do --

7    MR. ALBUKERK: They're her clothes. I mean, I

8    could, with the Court's permission, there's -- there's

9    someone here in court for Ms. Melongo, I could give her

10   the clothes.

11   DEFENDANT MELONGO: Yes.

12   MR. ALBUKERK: But, those clothes would have to

13   be brought back here obviously for any trial. It's going

14   to be a jury.

15   DEFENDANT MELONGO: I don't even have a trial

16   date now.

17   THE COURT: We don't have a trial date yet.

18   MR. ALBUKERK: The clothes --

19   THE COURT: The name of your friend in the

20   audience is who?

21   DEFENDANT MELONGO: Myeshia Hamilton.

22   THE COURT: Okay.

23         Can you give those clothes to her.

24   That's what you wish, Ms. Melongo?

LL-11

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021751

1          DEFENDANT MELONGO:  Yes.

2          THE COURT:  Okay.

3                    Mr. Albukerk, you could give those

4     clothes to Ms. Hamilton shortly.  All the documents will

5     go to the State for redaction and tender to Ms. Melongo.

6          DEFENDANT MELONGO:  Like I say, can I have a

7     copy of the original, because like I say, it's not if I'm

8     going to get a lawyer, it's when I'm going to get a

9     lawyer.  I don't want to re-subpoena all those documents,

10    Judge.  You really have to be fair on this one.  You have

11    to make an original copy, seal it and give it to the next

12    lawyer and redact the information to me so that when the

13    next lawyer come, we don't need to go through the same

14    process of subpoenaing the documents.

15          THE COURT:  Okay.

16                    That's a fair request.  Make

17    copies.

18          MR. PODLASEK:  Of the entire box?

19          THE COURT:  Of that box.

20          MR. PODLASEK:  Judge, that's -- that's fine,

21    Judge.  But, I can tell you right now, there's a 30 day

22    to 6 week backlog with the copy department.  So, that's

23    how long it's going to take before I could get to redact

24    it.

LL-12

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MELONGO_021752

1   DEFENDANT MELONGO:  Everything, those documents
2   don't even need to be redacted.  That's why we -- we
3   really have to see what is redactable and what is not.
4       THE COURT:  Well, it's going to be the State's
5   job to go through them.  They're going to have to go
6   through them.
7       DEFENDANT MELONGO:  Then I would --
8       THE COURT:  If it's going to take the State
9   that long, then obviously you're going to need some time
10  since you're telling me you're going to get a lawyer.
11      DEFENDANT MELONGO:  Let Albukerk keep my file.
12      THE COURT:  You discharged him.  He's not going
13  to keep them.
14      DEFENDANT MELONGO:  Then my file should be
15  sealed.  I don't need anything in my file right now.  My
16  file is sealed if the next lawyer comes.
17      THE COURT:  No.  We're proceeding with the
18  case.  Your objection has been overruled.  All right.
19  We're here for a date.  Now, let's --
20      DEFENDANT MELONGO:  No, Judge, I have a motion.
21      THE COURT:  Okay.
22      DEFENDANT MELONGO:  I have a pending motion for
23  stand by counsel.  I want to argue it today.
24      THE COURT:  You may proceed, then.

LL-13

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_021753

1    DEFENDANT MELONGO:  Judge, like Paragraph 1 of

2    my motion actually ask for a stand by counsel.  At this

3    time, I'm actually going to consider that as mute because

4    I've been thinking about it.  What happened with my last

5    presentation, I was hurt.  I needed to actually heal from

6    it.  The last thing I need now is to hire a lawyer, give

7    them a substantial amount of money, open doors to my

8    family, open secrets to them, open my emotional heart for

9    them, only to be back stabbed with lies, deception,

10   double-mindedness and greed.  I need time to heal from

11   it.                         The second reason right now I

12   need a stand by counsel also which takes me to Paragraph

13   2 of my motion, which ask for house arrest.

14                         Last but not least, three weeks

15   ago, a judge made an opinion that the Illinois appeal law

16   was unconstitutional.  At this present time, I filed my

17   own motion to dismiss having reviewed all those cases.

18   The motion is already handwritten.  I need time to

19   perfect it, to do reserve, to type it and to file it.

20                         Judge, I'm going to present my

21   motion to dismiss the Illinois appeal law in this court.

22   If you have the courage to grant it, you're going to make

23   the news the next date.

24                         The second reason why I need house

LL-14

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021754

1    arrest is on October 14th, which is like nine days from

2    now, I would have spent in jail a year and a half.  I

3    been charged with a Class 4 felony, six counts run

4    concurrently.  So, by October 14th, even in the best case

5    scenario for the State, if I'm getting found guilty for

6    the two cases, the first one, I'm going to get probation.

7    The second one, I'm going to -- I'm going to serve my

8    time.  In the present case, it's time with my time.  I've

9    already served my time.

10                    The third reason why I also need

11   house arrest, the State can testify to it.  When I got

12   arrested, I was in the process of renewing my immigration

13   document.  Then, that process you need like in person

14   interviews and things have to be taken so that they make

15   a background check on you to see if you have a

16   background.

17                    My current incarceration actually

18   impedes on my immigration status.  So, I need to renew

19   that immigration -- my immigration document.  I cannot do

20   it being in jail.

21                    Last, but not least, the fourth

22   reason why I need house arrest is the Cook County Jail.

23   The female division is over crowded.  It's not

24   something -- it's not something I saw on t.v. it's

LL-15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021755

1   actually something I'm witnessing. On a weekly basis,
2   I'm taken to Kankakee which now is profiting from the
3   overflow of the Cook County Jail. So, here I am being
4   charged with two counts. The first count computer
5   tampering, which has obtained a motion to dismiss, seven
6   counts of perjury by the State's witness, prosecutorial
7   misconduct and second charge is which the law has now --
8   the law has found unconstitutional.

9                   Here I am, Judge. I'm not a
10  criminal. For a year and a half, I have spent resources
11  that should be spent on real criminals. I'm now asking
12  you to grant me house arrest.

13                  To close my argument today, Judge
14  for everything under the sun, there's a time to mourn and
15  there's a time to adjust. There's a time to cry and a
16  time to smile. Judge, my time of crying and mourning is
17  long over due at the Cook County Jail. Today, I'm asking
18  you to give me house arrest so that I could follow my
19  defense, and in the alternative, you could either give
20  the lawyer my bond so that I could bond out or you could
21  even give me I-bond. Thank you.

22                  THE COURT: All right. If I were to give you
23  house arrest, where would you stay?

24                  DEFENDANT MELONGO: I would stay with my

LL-16

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021756

1    friend.

2                THE COURT:  The friend who's in court?

3                DEFENDANT MELONGO:  Yes.

4                THE COURT:  You have to give me more

5    information.  How many people live there?  Is it a single

6    family residence, is it an apartment, what is it?

7                MR. PODLASEK:  Can we argue before you do that?

8                THE COURT:  Absolutely.  I have a couple of

9    questions of Ms. Melongo.

10               MR. ALBUKERK:  Judge, west a 105th Street in

11   Oak Lawn.  It's a condo, second floor.  Ms. Hamilton says

12   she's living there alone.  I actually know the property.

13               THE COURT:  Okay.  You've been there,

14   obviously?

15               MR. ALBUKERK:  I have, actually.  It's

16   actually -- it's owned by a former client of mine, Linda

17   Sheldon.

18               DEFENDANT MELONGO:  With all due respect,

19   Albukerk, stop it.

20               THE COURT:  She doesn't wish you to say

21   anything else, at this point.  State, you could respond.

22   Thank you.

23               MR. PODLASEK:  Judge, just in response

24   Ms. Melongo makes mention of the fact that she's been in

LL-17

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021757

1    Cook County longer than she could have been sentenced for

2    in this case.  Her decision to remain in -- her decision

3    to remain in Cook County is her own.  All of the

4    continuances have been by agreement or motion defendant.

5    She has elected not to go to trial.  This case could have

6    been retried before Judge Brosnahan within a week or two

7    after the jury trial was hung.  I don't think that

8    argument should be considered by the Court.

9                     But, if the Court is considering

10   house arrest, we would ask that it be -- she have

11   limitations placed on her with access to the internet,

12   given the damage she's done with the internet and the

13   computer before.

14                     We understand that she is going to

15   need a computer to write her motions, but to get on the

16   internet and begin again doing what she did in the first

17   case and what we allege she did in the second case --

18   well, for us to bring a third case down the line if we're

19   made aware of it, so we ask that somehow you create -- if

20   you're going to give her house arrest, that she have no

21   access to the internet.

22               THE COURT:  I understand your position.

23               DEFENDANT MELONGO:  Judge, actually, as far as

24   the litigation goes, each party chooses the tactic that

                          LL-18

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021758

1    actually benefit him or her.  If I made some -- I'm not

2    going to make an -- it's not -- if the Illinois law is

3    ever going to find -- I'm not going to rush to trial

4    before waiting for a higher court to decide in months --

5    actually it's not even going to be a matter of months.

6    Either the appeal or the federal Circuit Court or

7    Illinois Supreme Court is going to make a decision on

8    that.  So, I'm not going to -- it would be so foolish on

9    my part to rush to a trial before reaching a decision on

10   each of those higher courts.

11                        The second thing the State talks

12   about is limitations; my access to the internet.  Judge,

13   go to the internet now, just type Annabel Melongo.

14   There's so much things talked about me on the internet.

15   I'm not the one -- I've been in jail for a year and a

16   half.  All that happened when I was in jail.

17                        First the State cannot even -- I

18   don't even think that the State can limit what I can

19   get -- what I can do.  I don't know why the State -- it's

20   kind of a first amendment right.  It's my right to be --

21   I need to re-document my case.  Those document

22   informations are on the internet.  Those documents and

23   information are in the law library.  It's actually the

24   State coming here and saying you have to see the -- give

LL-19

1    the defendant her first amendment right, right to receive

2    information.

3         THE COURT:  All right.  Ms. Melongo, let me

4    tell you.  If I were to give you -- reduce your bond or

5    give you house arrest or give you electronic monitoring,

6    with special conditions of bond, I'm going to consider --

7    that's something I can do in my lawful authority.  I

8    could limit the contact with the internet, with people

9    and with other things as a condition of your bond.  If I

10   were to do that, you would have to agree to do that.

11        DEFENDANT MELONGO:  Okay.

12        THE COURT:  Otherwise, I would not do it.

13        DEFENDANT MELONGO:  Okay.

14        THE COURT:  And I'll tell you right now, I'll

15   limit or order that you have no contact with the

16   internet.

17        DEFENDANT MELONGO:  No, Judge.

18        THE COURT:  Think about this.

19        DEFENDANT MELONGO:  Judge, you could not do

20   that, with all due respect, because even the information

21   specifically the order that I showed you like with Judge,

22   what's his name, Franklin from Crawford, Illinois, those

23   informations that are relevant to my case on the

24   internet.

LL-20

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021760

1          There's no way I could get access
2    to that information.  This opinion was taken from the
3    internet.  So, limiting my access -- it was printed from
4    the internet.  There's no other way being on house arrest
5    that I could have gotten -- I could have access to this
6    document.  So, limiting my access to the internet
7    actually impedes --
8          THE COURT:  Did you get it from Lexus.
9          DEFENDANT MELONGO:  No, this is not from Lexus,
10   this was posted on -- they have a Crawford judge.
11   Everything on the federal court I would need to rely on.
12   Looking at those cases are limiting my access to the
13   internet right now, also impede on my defense because of
14   the federal appeal that I'm awaiting.
15          Federal district court, all that
16   information I need that's on the website.  How I'm going
17   to do it if I don't have access to those documents.  They
18   are extremely relevant to my case and defense.
19          THE COURT:  All right.  What I'm going to do,
20   I'm going to rule on your case and the motion you made on
21   the 13th, which is next Thursday.  Does that give you
22   enough time to file your motion you have been holding up.
23          DEFENDANT MELONGO:  I could not file it.  I
24   still need some time.

LL-21

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021761

1    THE COURT:  Can you file it by the 13th?

2    DEFENDANT MELONGO:  How long I'm going to type

3    it -- I still need --

4    THE COURT:  You could file it handwritten.

5    DEFENDANT MELONGO:  I don't want to do that.

6    I'm a perfectionist, Judge.  I really need to do things

7    to perfection.  I cannot do that.  I could not file

8    unless if you get somebody to do it for me.  I could file

9    it, but the person has to be picked.  I really need some

10   research that I still need to make?  I actually have

11   those cases.

12                    I still need to read to have

13   perfection to this motion.  So, I need to do that, and

14   then once I'm done with this research, I'm going to

15   perfect this motion to dismiss typed and filed.

16   MR. PODLASEK:  Judge, her friend, Ms. Hamilton

17   is in court.  Maybe she can type it if that's the way

18   Ms. Melongo wants it filed and give me a copy, the Court

19   a copy, and we will be done with it.

20   THE COURT:  Well, that's the way she filed her

21   last motion.

22   DEFENDANT MELONGO:  I first need to research.

23   My motion to dismiss is ready to go, but I need to

24   perfect my research before I can --

LL-22

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

1    MR. PODLASEK: Judge, there's cases --

2    DEFENDANT MELONGO: Judge, let me say --

3    THE COURT: Hold on.

4    MR. PODLASEK: I'm just suggesting if there's

5    some way we can move this along.

6    DEFENDANT MELONGO: Judge, the State pressured

7    me how I have to move my case and stuff.  If the State is

8    trying to charge me on something, the State also have to

9    let me -- give me time to prepare my defense.  So, the

10   State cannot rush me on something --

11   THE COURT: All right.  If you don't want to do

12   that, I'll rule on your motion on the October 13th.

13   DEFENDANT MELONGO: And I really need to make

14   some research on my motion to dismiss.  My motion to

15   dismiss is already ready to go, typed, filed and I'm

16   going to present it.

17   THE COURT: All right.  October 13th. By

18   agreement.

19   MR. PODLASEK: By agreement.

20   DEFENDANT MELONGO: Thank you, Judge.

21   THE COURT: Is that by agreement, Ms. Melongo?

22   DEFENDANT MELONGO: Yes.

23   MR. PODLASEK: As to all cases?

24   THE COURT: Correct.

LL-23

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MELONGO_021763

1    DEFENDANT MELONGO:  Judge, actually, I'm going

2    to -- maybe I don't know if I need to make a proper

3    motion for this.  I'm indigent.  I need the money to

4    actually order transcripts of my last trial.  The

5    State -- the Cook County or the State of Cook County

6    would need to provide funds so that I could --

7    THE COURT:  Mr. Albukerk, did you order that in

8    preparation for trial?

9    MR. ALBUKERK:  No, Judge.  I never got that

10    far.  I was informed that my services were no longer

11    needed a few days after the trial.  So, I never ordered

12    the transcripts.

13    THE COURT:  Okay.  Prepare an order.  I'll sign

14    it.

15    DEFENDANT MELONGO:  Huh.

16    THE COURT:  I'll give you free transcripts for

17    the 13th, not right now.  Have it ready for the 13th.

18    DEFENDANT MELONGO:  Can I have an order form,

19    please.

20    THE COURT:  You could just write it on regular

21    paper.

22    DEFENDANT MELONGO:  Okay.

23    MR. ALBUKERK:  My presence will no longer be

24    necessary.

**LL-24**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          MELONGO_021764

1    DEFENDANT MELONGO:  Yes.

2    THE COURT:  Thank you for your services.

3    You're discharged.

4    MR. PODLASEK:  I would like to be discharged

5    also.

6    THE COURT:  You have to stay.

7                        (Which were all the proceedings

8                        had on this day.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LL-25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021765

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

1

2

3

4       I, Jamie Mitchell CSR, an Official Court

5   Reporter for the Circuit Court of Cook County, County

6   Department-Criminal Division, do hereby certify that I

7   reported in shorthand the proceedings had at the hearing

8   of the above-entitled cause; that I thereafter caused the

9   foregoing to be transcribed into typewriting, which I

10  hereby certify to be a true and accurate transcript of

11  the proceedings before the Honorable STEVEN GOEBEL,,

12  Judge of said court.

13

14

15

16

17                              _____
                                Official Court Reporter
18

19

20  Dated this 8th day

21  of OCTOBER, 2012

22

23

24

LL-26

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MELONGO_021766

# Exhibit 78

STATE OF ILLINOIS )
) SS:
COUNTY OF COOK )

## IN THE CIRCUIT COURT OF COOK COUNTY
## CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
)
) 08CR-10502
vs. ) No. 10CR-080902
)
)
ANNABEL K. MELONGO )

### ELECTRONIC MONITORING ORDER

### IT IS HEREBY ORDERED THAT:

1. Defendant shall be placed on the Cook County Sheriff's Electronic Monitoring Program.

2. Defendant shall appear in Court on all scheduled Court dates.

3. Defendant shall report to the Sheriff's Electronic Monitoring Unit as ordered.

4. Defendant shall remain within the confines of his residence 24 hours per day unless prior permission for movement is granted by the Court or the Sheriff's Electronic Monitoring Unit.

5. Any violation of orders of the Court or the rules and regulations of the Sheriff's Electronic Monitoring Program may result in the return of the defendant to the Cook County Jail.

6. Defendant shall pay $ -0- (fee waived) per day for the use of the electronic monitoring equipment.

7. Defendant to allowed to travel to the Cook County Law Library (5 Hours including travel) on Mondays 10 AM - 3 PM.

8. Defendant may only use the internet for purposes of research only and email usage.

Date Entered: _____

ENTERED

JUDGE STEVEN J. GOEBEL - 1954     Judge _____    Judge's Number _____

OCT 1 3 2011

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER